**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| CITY OF ROCKFORD,<br><br>                              Plaintiff,<br><br>        v.<br><br>MALLINCKRODT ARD, INC., MALLINCKRODT PLC,<br>and UNITED BIOSOURCE CORPORATION,<br><br>                              Defendants. | Case No. 3:17-cv-50107<br><br>Hon. Frederick J. Kapala,<br>    Judge<br><br>Hon. Iain D. Johnston,<br>    Magistrate Judge<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT UNITED BIOSOURCE CORPORATION'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL ALLEGATIONS ...................................................................................................3

    A.    General Background ..............................................................................3

    B.    Questcor's and Mallinckrodt's Allegedly Unlawful and Exclusionary Acts...........4

    C.    The Complaint's Scant Allegations Concerning UBC ...........................................4

ARGUMENT ............................................................................................................................5

I.    THE SHERMAN ACT SECTION 1 CLAIM SHOULD BE DISMISSED ......................5

    A.    Rockford Fails To Plausibly Allege That Any
           Agreement Involving UBC Has Harmed Competition ...........................................5

         1.    ASAP Cannot Harm Competition as a Matter of Law ..............................6

         2.    Rockford Does Not Allege That UBC Is a Party to Any Agreement
              Making Curascript the Exclusive Distributor of Acthar, and
              Regardless, the Exclusive Distributorship Cannot Harm
              Competition...............................................................................................7

    B.    Rockford Does Not Have Antitrust Standing To Seek Damages ...........................9

II.    THE RICO CLAIMS SHOULD BE DISMISSED.........................................................10

    A.    Rockford Has Not Alleged That UBC Engaged—or Conspired To
           Engage—in a Pattern of Racketeering Activity....................................................10

    B.    Rockford Has Not Alleged a RICO "Enterprise" or Participation in
           Conduct of the "Enterprise's Affairs"..................................................................10

    C.    Rockford Does Not Allege RICO Injury or Proximate Cause..............................11

    D.    Rockford Does Not Allege Any Facts Concerning Income or Investment ...........12

III.    THE ICFA CLAIM SHOULD BE DISMISSED ..........................................................13

IV.    THE UNJUST ENRICHMENT AND CIVIL CONSPIRACY CLAIMS SHOULD
        BE DISMISSED ............................................................................................................14

CONCLUSION........................................................................................................................15

i

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Adelphia Supply USA*,
No. 15-cv-5826, 2017 WL 57802 (E.D.N.Y. Jan. 4, 2017)..............................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................5

*Atlantic Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990)........................................................................................................6

*Baldwin v. Star Scientific, Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ...............................................................................13

*Banks v. NCAA*,
977 F.2d 1081 (7th Cir. 1992) ........................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................5

*In re Brand Name Prescription Drugs Antitrust Litigation*,
123 F.3d 599 (7th Cir. 1997) ..........................................................................................9

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ........................................................................................13

*In re Capacitors Antitrust Litigation*,
106 F. Supp. 3d 1051 (N.D. Cal. 2015) ..........................................................................7

*Cedric Kushner Promotions, Ltd. v. King*,
533 U.S. 158 (2001)......................................................................................................10

*City of Fairview Heights v. Orbitz, Inc.*,
No. 05-cv-840, 2006 WL 6319817 (S.D. Ill. July 12, 2006) .........................................13

*DeBouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) ............................................................................................13

*District 1199P Health & Welfare Plan v. Janssen, L.P.*,
No. 06-cv-3044, 2008 WL 5413105 (D.N.J. Dec. 23, 2008)..........................................12

*E & L Consulting, Ltd. v. Doman Industries Ltd.*,
472 F.3d 23 (2d Cir. 2006)..........................................................................................7, 8

*Eastern Food Services, Inc. v. Pontifical Catholic University Services Ass'n*,
357 F.3d 1 (1st Cir. 2004) ...............................................................................................8

*Evans v. City of Chicago*,
    434 F.3d 916 (7th Cir. 2006) .......................................................................11

*Farag v. Health Care Service Corp.*,
    No. 17-cv-2547, 2017 WL 2868999 (N.D. Ill. July 5, 2017) ............................9

*Fitzgerald v. Chrysler Corp.*,
    116 F.3d 225 (7th Cir. 1997) .......................................................................11

*Frantzides v. Northshore University HealthSystem*,
    787 F. Supp. 2d 725 (N.D. Ill. 2011) .............................................................5

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) .......................................................................................12

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) .....................................................................................9

*Jennings v. Emry*,
    910 F.2d 1434 (7th Cir. 1990) .....................................................................10

*Jepson, Inc. v. Makita Corp.*,
    34 F.3d 1321 (7th Cir. 1994) ......................................................................10

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007) .....................................................................................6

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
    No. 12-cv-9033, 2013 WL 1858590 (N.D. Ill. May 1, 2013) ..........................14

*Omnicare, Inc. v. UnitedHealth Group*,
    629 F.3d 697 (7th Cir. 2011) ...................................................................7, 14

*Philadelphia Indemnity Insurance Co. v. Chicago Title Insurance Co.*,
    771 F.3d 391 (7th Cir. 2014) .......................................................................13

*Rao v. BP Products North America, Inc.*,
    589 F.3d 389 (7th Cir. 2009) .......................................................................12

*Republic Tobacco Co. v. North Atlantic Trading Co.*,
    381 F.3d 717 (7th Cir. 2004) .........................................................................8

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ....................................................................................11

*Rosales v. Weltman, Weinberg & Reis Co.*,
    No. 15-cv-06943, 2017 WL 1436957 (N.D. Ill. Apr. 24, 2017) ......................13

*Sidney Hillman Health Center v. Abbott Laboratories,*
  192 F. Supp. 3d 963 (N.D. Ill. 2016) ...............................................................12

*Siegel v. Shell Oil Co.,*
  612 F.3d 932 (7th Cir. 2010) ............................................................................14

*Suburban Buick, Inc. v. Gargo,*
  No. 08-cv-370, 2009 WL 1543709 (N.D. Ill. May 29, 2009)............................14

*United Food & Commercial Workers Unions v. Walgreens Co.,*
  719 F.3d 849 (7th Cir. 2013) ............................................................................11

*VBR Tours, LLC v. National RR. Passenger Corp.,*
  No. 14-cv-804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015)............................8

*Warren General Hospital v. Amgen Inc.,*
  643 F.3d 77 (3d Cir. 2011)..................................................................................9

## STATUTES

18 U.S.C. § 1961 ...............................................................................................10

18 U.S.C. § 1962..................................................................................10, 11, 12

18 U.S.C. § 1964 ...............................................................................................11

Defendant United BioSource Corporation ("UBC")[1] respectfully submits this Memorandum of Law in support of its Motion to Dismiss all claims in the Complaint against UBC under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This case concerns Defendant Mallinckrodt's[2] alleged exorbitant pricing of the medication Acthar, which is used to treat infantile spasms and other rare conditions. Because Acthar is the only medication containing adrenocorticotropic hormone ("ACTH") that is approved by the Food & Drug Administration ("FDA"), Mallinckrodt allegedly enjoys a monopoly in the putative market for ACTH drugs. The Complaint alleges that Mallinckrodt has exercised its purported monopoly power to increase the price of Acthar 85,000 percent, from $40 a vial in 2001 to more than $34,000 a vial today. The Complaint further alleges that Mallinckrodt has maintained its monopoly by, among other things: (i) obtaining "orphan drug" status for Acthar from the FDA to secure exclusivity as the only ACTH product approved to treat infantile spasms; (ii) acquiring the rights to develop and market Synacthen—a synthetic version of Acthar used to treat infantile spasms—in the United States; (iii) subsequently not developing Synacthen for approval by the FDA; and (iv) limiting distribution of Acthar to one distributor (non-party Curascript SD ("Curascript")). The Complaint also alleges that Mallinckrodt falsely describes Acthar's chemical composition and potency on its labeling. Based on these allegations, Plaintiff City of Rockford ("Plaintiff" or "Rockford")—on behalf of a putative class of self-funded entities, end-payors for Acthar—brings claims against Mallinckrodt under federal antitrust and RICO laws, the Illinois Consumer Fraud Act ("ICFA"), and common law

---

[1] The complaint names UBC as a defendant, but that entity ceased to exist in approximately 2013 when UBC became United BioSource LLC.

[2] UBC refers herein to Mallinckrodt ARD, Inc. and Mallinckrodt plc collectively as "Mallinckrodt."

conspiracy and unjust enrichment.

None of these allegations have anything to do with Defendant UBC. Rather, UBC's sole alleged connection to this case is its arm's-length contractual relationship with Mallinckrodt, pursuant to which UBC administers the Acthar Support & Access Program ("ASAP"). Through ASAP, UBC is alleged to provide certain services such as confirming patient insurance coverage or other payment for Acthar. UBC is not alleged to have any control over Mallinckrodt's pricing or marketing of Acthar.

Notwithstanding the lack of any factual allegations that connect UBC to any purported wrongdoing, Rockford nevertheless attempts to lump UBC in with Mallinckrodt as a Defendant—ostensibly because certain elements of its claims, such as forming an anticompetitive agreement or a RICO enterprise, require multiple parties. Tellingly, UBC is ***not*** a defendant in Rockford's monopolization claim—the gravamen of its Complaint (Count I). In any event, each of Rockford's claims against UBC fails as a matter of law.

***First***, Rockford's claim under Section 1 of the Sherman Act (Count II) should be dismissed because Rockford does not plausibly allege that any agreement involving UBC harms competition. Indeed, the only alleged connection between UBC and Mallinckrodt is ASAP, which merely supports patients' access to Acthar. Moreover, Rockford lacks standing to seek damages because the Complaint fails to plead facts demonstrating that Rockford or its employees purchased Acthar directly from any Defendant, and only direct purchasers have standing to pursue damages claims under federal antitrust law.

***Second***, the RICO claims (Counts III to V) should be dismissed because Rockford does not allege that UBC committed, or conspired to commit, any predicate act. Rockford alleges that the exclusive distribution network for Acthar constitutes racketeering activity, but the Complaint

does not allege that UBC distributes Acthar, and such a distribution network cannot be racketeering activity as a matter of law. Rockford also fails to plead a distinct RICO enterprise or that UBC conducted the affairs of such an enterprise, as opposed to simply carrying out its arm's-length contractual obligations to Mallinckrodt. Finally, Rockford lacks RICO standing because it does not plausibly allege that the purported RICO enterprise increased the price of Acthar and, therefore, fails to plead both RICO injury and proximate cause.

*Third*, Rockford's ICFA claim (Count VI) should be dismissed because municipalities lack standing to bring ICFA claims. Even ignoring this fatal defect, Rockford fails to state an ICFA claim because it does not allege that: UBC made representations (let alone misrepresentations) about Acthar's composition; UBC knew of the purported falsity of Acthar's labeling; or anyone relied on the purportedly false labeling in purchasing or prescribing Acthar.

*Fourth*, Rockford's unjust enrichment and civil conspiracy claims (Counts VII and VIII) are predicated on the same theories as its other claims and fail for the same reasons.

## FACTUAL ALLEGATIONS[3]

### A. General Background

Acthar is an injection containing ACTH that is the only therapeutic ACTH product sold in the United States. (Doc. 1, Complaint ("Compl.") ¶¶ 1-2, 63.) Among other conditions, Acthar treats infantile spasms, a rare seizure disorder. (*Id.* ¶ 6.) Rockford, which pays for its employees' health care benefits, has paid $489,058 for 14 administrations of Acthar. (*Id.* ¶ 21.)

"Mallinckrodt manufactures, markets, distributes and sells Acthar." (*Id.* ¶ 2.) Mallinckrodt acquired the rights to Acthar in 2014 when it bought Questcor Pharmaceuticals, Inc. ("Questcor"), which obtained those rights in 2001. (*Id.* ¶¶ 5, 22.) Since 2001, Questcor and

---

[3] UBC accepts Rockford's factual allegations as true only for purposes of this motion.

Mallinckrodt have significantly raised the price of the product. (*Id.* ¶ 58.)

**B.** **Questcor's and Mallinckrodt's Allegedly Unlawful and Exclusionary Acts**

When Questcor acquired the rights to Acthar, it was an "off-label" treatment for infantile spasms because the FDA had not yet approved it to treat that condition. (*Id.* ¶ 34.) Questcor later filed a supplemental New Drug Application ("sNDA") to market Acthar for the treatment of infantile spasms. (*Id.* ¶ 36.) In 2010, the FDA approved Questcor's sNDA and granted Questcor an exclusivity period of seven years during which no other ACTH product could receive FDA approval to treat infantile spasms. (*Id.*)

Questcor also allegedly maintained exclusivity by acquiring the rights to develop, market and sell a synthetic version of Acthar, Synacthen. (*Id.* ¶¶ 7-9, 55, 66-67.) Although it has not been approved by the FDA, Synacthen is used as an alternative to Acthar in other countries. (*Id.* ¶¶ 75, 77.) Questcor outbid several companies, each of which allegedly planned to "develop and launch Synacthen in the United States in direct competition with Acthar" (*id.* ¶ 81), and acquired the rights to Synacthen in June 2013 (*id.* ¶ 84). In January 2017, the Federal Trade Commission ("FTC") sued Mallinckrodt for unlawful monopolistic conduct based on Questcor's Synacthen acquisition, and entered a consent decree pursuant to which Mallinckrodt paid $100 million and agreed to license Synacthen to a third party. (*Id.* ¶¶ 89-90.) Mallinckrodt also paid $15.5 million to settle a lawsuit brought by Retrophin, one of the companies Questcor outbid. (*Id.* ¶ 91.)

Rockford also alleges that Mallinckrodt's labeling of Acthar is inaccurate. (*Id.* ¶¶ 96, 99-107.) Specifically, Rockford alleges that the product insert and label contain a diagram that incorrectly depicts the identity of two peptides in Acthar's peptide sequence and that Acthar contains less of its active ingredient than the label indicates. (*Id.* ¶¶ 105-06, 112-14.)

**C.** **The Complaint's Scant Allegations Concerning UBC**

The allegations against UBC solely involve contractual services relating to ASAP. For

example, Rockford alleges that through ASAP, UBC confirms patients' insurance coverage or other source of payment for Acthar. (*Id.* ¶ 46.) Rockford also alleges that patients authorize UBC to provide certain services, "including reimbursement and coverage support, patient assistance and access programs, medication shipment tracking, and home injecting training." (*Id*. ¶ 48.) UBC is not alleged to have participated in the pricing or marketing of Acthar.

Rockford alleges that non-party Curascript, which has the same corporate parent as UBC, is the exclusive distributor of Acthar to the specialty pharmacies that sell Acthar to patients. (*Id.* ¶¶ 3-4, 50-51.)

## ARGUMENT

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

## I.    THE SHERMAN ACT SECTION 1 CLAIM SHOULD BE DISMISSED

### A.    Rockford Fails To Plausibly Allege That Any Agreement Involving UBC Has Harmed Competition

To state a claim under Section 1 of the Sherman Act, a plaintiff must plead facts plausibly "suggesting that: (1) Defendants entered into a contract, combination, or conspiracy ('an agreement'); (2) Plaintiffs suffered an accompanying antitrust injury; and (3) the contract, combination or conspiracy resulted in an unreasonable restraint of trade in the relevant market." *Frantzides v. Northshore Univ. Health Sys.*, 787 F. Supp. 2d 725, 731 (N.D. Ill. 2011).[4]

---

[4] Rockford's Section 1 claim is brought under the "Rule of Reason" and not as a per se violation of the Sherman Act. (*See* Compl. ¶¶ 146-53.) The Rule of Reason, which requires a plaintiff to demonstrate

*(cont'd)*

When a complaint does not plead facts plausibly alleging that an agreement harms competition, it should be dismissed for failure to allege an unreasonable restraint of trade. *See Banks v. NCAA*, 977 F.2d 1081, 1093-94 (7th Cir. 1992) (affirming dismissal of "complaint [that] fails to explain how the[] alleged restraints diminish competition").[5]

### 1.    ASAP Cannot Harm Competition as a Matter of Law

Notwithstanding Rockford's conclusory assertion that ASAP harms competition by enabling "Mallinckrodt's willful maintenance and unlawful exercise of monopoly power in the market for ACTH drugs" (Compl. ¶ 148), the factual allegations concerning ASAP do not plausibly suggest that it causes any harm to competition. As alleged, through ASAP, UBC provides services to patients, such as confirming insurance coverage and home injection training for Acthar. (*Id.* ¶¶ 46, 48.) This conduct cannot harm competition between Mallinckrodt and any other pharmaceutical company, particularly because the Complaint alleges that Mallinckrodt has no competitors in the putative relevant market for ACTH drugs. Further, Rockford does not—and cannot—allege that these services prevent other pharmaceutical companies from developing a product to compete with Acthar or would prevent them from selling such a product if it were to be developed. Indeed, as alleged, Mallinckrodt has maintained its purported ACTH monopoly because of the difficulty of developing such treatments and receiving FDA approval (*see id.* ¶¶ 64-65, 67), the exclusivity the FDA granted Questcor (*see id.* ¶ 36) and Questcor's

_____

*(cont'd from previous page)*
that a challenged agreement causes anticompetitive effects outweighing its procompetitive benefits, applies to vertical agreements (i.e., those between firms at different levels of the distribution chain) like the alleged relationship between Mallinckrodt and UBC concerning ASAP. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007).

[5] A complaint that fails to plausibly allege harm to competition also is dismissible for failure to plead antitrust injury. *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) ("The antitrust injury requirement ensures that a plaintiff can recover only if [its] loss stems from a competition-*reducing* aspect or effect of the defendant's behavior.").

acquisition of the rights to Synacthen (*see id.* ¶ 55).  Rockford does not allege that UBC was involved in—or "conspired" with Questcor or Mallinckrodt concerning—any of this conduct.[6]

### 2. Rockford Does Not Allege That UBC Is a Party to Any Agreement Making Curascript the Exclusive Distributor of Acthar, and Regardless, the Exclusive Distributorship Cannot Harm Competition

Rockford also cannot base its Section 1 claim on any agreement to make non-party Curascript the exclusive distributor of Acthar.  As an initial matter, Rockford does not allege that UBC participated in any manner in Questcor's decision to make Curascript the exclusive distributor of Acthar.  *See Omnicare, Inc. v. UnitedHealth Grp.*, 629 F.3d 697, 706 (7th Cir. 2011) (Section 1 conspiracy requires "conscious commitment to a common scheme designed to achieve an unlawful objective").  The only alleged nexus between that decision and UBC is the corporate relationship between Curascript and UBC, which is insufficient to state a conspiracy claim.  *See In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1066-71 (N.D. Cal. 2015) (dismissing Sherman Act claims for lack of plausible conspiracy allegations against corporate relatives of entities against which Sherman Act claims survived).

Further, a Section 1 claim challenging the exclusive distribution agreement would fail as a matter of law.  Exclusive agreements between an upstream monopolist and a distributor cannot harm competition because they "provide[] no monopolistic benefit to [the monopolist] that it does not already enjoy and would not continue to enjoy" absent the exclusive agreement.  *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006).  A monopolist can control its pricing and output to the same extent regardless of the number of distributors it employs.  *See id.* at 30 ("The power to restrict output to maximize profit is complete in the manufacturing

---

[6] When they sued Mallinckrodt, neither the FTC nor Retrophin brought any claim against UBC.  In fact, neither made any allegations regarding ASAP or the distribution of Acthar.  (*See* Compl., Exs. B, C.)

monopoly, and there is no additional monopoly profit to be made by creating a monopoly in the retail distribution of the product."). In fact, "vertical exclusive distributorships . . . are presumptively legal . . . because of their procompetitive benefits," *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 736 (7th Cir. 2004), such as incentivizing the distributor to invest in the distribution system. *See E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n*, 357 F.3d 1, 8 (1st Cir. 2004). Accordingly, courts routinely dismiss antitrust challenges to exclusive distribution agreements. *See, e.g.*, *E & L*, 472 F.3d at 30-31 (plaintiff failed to allege "harm to competition caused by the exclusive distributorship . . . because the alleged single source and price increase, even if monopolistic, is something [the monopolist] can achieve without the aid of a distributor"); *VBR Tours, LLC v. Nat'l RR. Passenger Corp.*, No. 14-cv-804, 2015 WL 5693735, at *12-13 (N.D. Ill. Sept. 28, 2015) (same).

Here, Mallinckrodt's use of non-party Curascript as its exclusive distributor cannot harm competition as a matter of law. Given its alleged 100% monopoly share in the putative market for ACTH drugs (Compl. ¶ 63), Mallinckrodt could monopolize the distribution of these products; therefore, its decision to outsource this function to Curascript is not anticompetitive. *See E & L*, 472 F.3d at 29-30. Tellingly, the Complaint fails to plead facts supporting its conclusory allegation that the exclusive distributorship "foreclosed and excluded competition from other potential ACTH manufacturers or distributors." (Compl. ¶ 148.) For example, there is no explanation as to how the distributorship could have impaired another company from developing its own ACTH product. Moreover, the Complaint explains why it would be efficient and procompetitive for Mallinckrodt to use an exclusive distributor: Acthar is an expensive drug that has "complicated storage and use requirements" (*id.* ¶ 3), and the investment needed to transport and store Acthar is the type of conduct that exclusive distributorships incentivize.

Thus, because Rockford has not plausibly alleged harm to competition attributable to any purported agreement involving UBC, its Section 1 claim should be dismissed.

**B.**     **Rockford Does Not Have Antitrust Standing To Seek Damages**

Pursuant to the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), a plaintiff must purchase directly from a member of an alleged conspiracy to have standing to seek damages. *Id.* at 728-29, 735. Under the *Illinois Brick* doctrine, courts routinely dismiss damages claims brought by indirect purchasers—i.e., plaintiffs who did not purchase directly from a member of an alleged conspiracy. *See, e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 605-07 (7th Cir. 1997) (*Illinois Brick* doctrine barred pharmacies' federal antitrust claims against pharmaceutical manufacturers because pharmacies are indirect purchasers vis-a-vis manufacturers); *Farag v. Health Care Serv. Corp.*, No. 17-cv-2547, 2017 WL 2868999, at *5 (N.D. Ill. July 5, 2017) (dismissing Sherman Act damages claims against pharmaceutical company because individuals "who purchased [product] at pharmacies or through intermediary health plans" are indirect purchasers).

Here, Rockford does not plausibly allege that its employees purchased Acthar directly from—and Rockford provided reimbursement directly to—any Defendant. While Rockford conclusorily alleges that Mallinckrodt sells Acthar "directly" to patients (Compl. ¶ 23), that assertion is devoid of factual support and should carry no weight, particularly because it is contrary to Rockford's allegations that Curascript is the exclusive distributor of Acthar to specialty pharmacies (*id.* ¶ 51) and that specialty pharmacies sell Acthar to patients (*id.* ¶ 3). *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 82 (3d Cir. 2011) (rejecting plaintiff's conclusory allegation that it was a "direct purchaser" and affirming dismissal of antitrust claim against pharmaceutical manufacturer). Because no Defendant is a specialty pharmacy from which Rockford's employees could have purchased—let alone did purchase—Acthar, Rockford

does not have standing under the *Illinois Brick* doctrine to seek damages.

## II.     THE RICO CLAIMS SHOULD BE DISMISSED

### A.     Rockford Has Not Alleged That UBC Engaged—or Conspired To Engage—in a Pattern of Racketeering Activity

Each of Rockford's RICO claims requires factual allegations plausibly suggesting that UBC engaged—or conspired to engage—in a pattern of racketeering activity. *See* 18 U.S.C. § 1962(a), (c), (d). The Complaint alleges that the exclusive distribution of Acthar constitutes RICO predicate acts. (*See* Compl. ¶ 162 ("Defendants' fraudulent scheme consisted of confining patients to an exclusive distribution network . . . ."); *see also id.* ¶¶ 160, 175.) But UBC is not the distributor of Acthar. And such a distribution system is not racketeering activity, *see* 18 U.S.C. § 1961(1), nor could it be even if such a distribution system violated antitrust law (which it does not). *See Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) (antitrust violation "is not a predicate act under RICO"). Rockford's RICO claims fail for this reason alone.[7]

### B.     Rockford Has Not Alleged a RICO "Enterprise" or Participation in Conduct of the "Enterprise's Affairs"

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001). A manufacturer and its agents do not constitute a RICO enterprise where the manufacturer deals with its "agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental, differing not at all from what it would be if these agents were

---

[7] While the Complaint does not plead that the purported misstatements on the Acthar label constitute predicate racketeering activity, any RICO claim based on such allegations would fail because Rockford does not—and cannot—allege any predicate acts concerning UBC, let alone with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, Rockford does not allege that UBC made any statement, knew any statement was false or had any role concerning the Acthar label. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327-28 (7th Cir. 1994).

10

the employees of a totally integrated enterprise." *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997). Because Rockford repeatedly characterizes UBC as Mallinckrodt's agent in operating ASAP (*see* Compl. ¶¶ 43, 45, 51), and UBC's role in the alleged distribution system is "entirely incidental," there can be no "ASAP Enterprise," and the § 1962(c) and (d) claims should be dismissed. *See United Food & Commercial Workers Unions v. Walgreen Co.*, 719 F.3d 849, 856-57 (7th Cir. 2013) (failure to plausibly allege violation of § 1962(c) requires dismissal of § 1962(d) claim "based on those same facts").

Moreover, § 1962(c) requires that a RICO defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). A complaint does not plausibly suggest "conduct" where "the activities the complaint describes are entirely consistent with [enterprise members] each going about [their] own business." *United Food*, 719 F.3d at 855-56; *see also Abbott Labs. v. Adelphia Supply USA*, No. 15-cv-5826, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4, 2017) (listing acts courts have found insufficient to constitute "conduct"). Rockford does not plausibly allege "conduct" as to UBC. The Complaint merely describes a normal, arm's-length commercial relationship between UBC and Mallinckrodt, pursuant to which UBC runs a patient support program. *See United Food*, 719 F.3d at 856. Rockford's § 1962(c) and (d) claims should thus be dismissed.

**C.**   **Rockford Does Not Allege RICO Injury or Proximate Cause**

To have standing for any RICO claim, an entity must plausibly allege that it was "injured in [its] business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "RICO injury requires proof of a 'concrete financial loss' and does not encompass mere 'injury to a valuable intangible property interest.'" *Evans v. City of Chi*, 434 F.3d 916, 932 (7th Cir. 2006) (citations omitted), *overruled on other grounds*, 724 F.3d 965 (7th Cir. 2013). For an injury to be "by reason of" a RICO violation, the RICO violation must be both a "but for" and

11

proximate cause of the injury. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 8 (2010). And "[p]roximate cause for RICO purposes . . . requires 'some direct relation between the injury asserted and the injurious conduct alleged,'" and "a link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* at 9 (citation omitted).

Here, Rockford has not plausibly alleged RICO injury or proximate cause. Just as Rockford failed to plausibly allege competitive harm resulting from the exclusive distribution of Acthar—including because Mallinckrodt would be able to charge the same allegedly monopolistic price regardless of how Acthar is distributed (*see supra*, Argument § I.A.2)—Rockford similarly fails to plead any facts supporting its claim that the way Acthar is distributed "drastically inflate[d] the prices charged for Acthar." (Compl. ¶ 162.) Thus, Rockford has failed to allege the requisite concrete financial loss caused by the purported RICO enterprise.[8]

## D. Rockford Does Not Allege Any Facts Concerning Income or Investment

Rockford's § 1962(a) claim (Compl. ¶¶ 166-72) should be dismissed because Rockford does not properly allege that UBC received any income from "racketeering activity" nor how it invested that income. *See Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 398-99 (7th Cir. 2009) (listing elements of and dismissing boilerplate § 1962(a) claim).

---

[8] Even if Rockford had attempted to link Acthar's purportedly inaccurate label to its RICO claims (which it has not), it could not plausibly allege RICO injury or proximate cause based on the label. Rockford does not allege that Acthar failed to treat infantile spasms. *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, No. 06-cv-3044, 2008 WL 5413105, at *5-8 (D.N.J. Dec. 23, 2008) (third party payor did not suffer RICO injury based on alleged overcharges for medication purportedly due to fraudulent marketing where plaintiff did not allege medication failed to treat condition for which it was prescribed). And the causal chain between the allegedly inaccurate label and Rockford paying for its employees' children's Acthar prescriptions is too attenuated to demonstrate proximate cause. *See Sidney Hillman Health Ctr. v. Abbott Labs.*, 192 F. Supp. 3d 963, 971 (N.D. Ill. 2016) ("[I]ntervening events between the alleged misrepresentations and the . . . alleged overpayments . . . —doctors' independent medical decisions to prescribe [the medication] over other medications and patients' decisions to fill those prescriptions, for example—make the causal chain too attenuated." (collecting cases)).

## III.     THE ICFA CLAIM SHOULD BE DISMISSED

As an initial matter, Rockford's ICFA claim should be dismissed because "[u]nder the ICFA, a municipality is not a person capable of bringing suit." *City of Fairview Heights v. Orbitz, Inc.*, No. 05-cv-840, 2006 WL 6319817, at *6 (S.D. Ill. July 12, 2006) (citing 815 Ill. Comp. Stat. § 505/1(c) and *Bd. of Educ. v. A, C & S*, 546 N.E. 2d 580, 599 (Ill. 1989)).

Even ignoring this fatal defect, Rockford's ICFA claim fails.  To state an ICFA claim, a plaintiff must plausibly allege "a deceptive act or practice by the defendant[,] . . . the defendant intended that the plaintiff rely on the deception" and "actual damage to the plaintiff" that was "proximately caused by the deceptive act." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).  Because Rockford's ICFA claim is based on Mallinckrodt's (and Questcor's) allegedly fraudulent and deceptive labeling and marketing practices (*see* Compl. ¶¶ 96, 191-92), it is subject to the heightened pleading standard of Rule 9(b).  *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014).

Here, Rockford does not allege that UBC has anything to do with the labeling of Acthar, i.e., that UBC engaged in the purportedly deceptive conduct.  *See Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (plaintiff "must produce specific misrepresentations made by *specific* Defendants").  Nor does Rockford allege that UBC knew of the purported falsity of statements on the Acthar label or whether UBC intended that any individual rely on those statements in deciding whether to purchase Acthar.  *See Rosales v. Weltman, Weinberg & Reis Co.*, No. 15-cv-6943, 2017 WL 1436957, at *5 n.8 (N.D. Ill. Apr. 24, 2017).  Moreover, Rockford does not allege proximate cause because it does not allege that its employees or their doctors read or relied on the purportedly deceptive portions of Acthar's label.  *See DeBouse v. Bayer AG*, 922 N.E.2d 309, 316, 319 (Ill. 2009) (holding "[i]f a consumer has neither seen nor heard any such [deceptive] statement, then she cannot have relied on the statement," thus

13

plaintiff who "fail[ed] to allege that her particular doctor was actually deceived by any of

Bayer's advertisements or statements" had failed to allege proximate cause).

## IV.     THE UNJUST ENRICHMENT AND CIVIL<br>CONSPIRACY CLAIMS SHOULD BE DISMISSED

To plead a civil conspiracy under Illinois law, "a plaintiff must allege:  (1) an agreement

between at least two people for the purpose of accomplishing some unlawful purpose or some

lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators

in furtherance of the agreement."  *Suburban Buick, Inc. v. Gargo*, No. 08-cv-370, 2009 WL

1543709, at *11 (N.D. Ill. May 29, 2009).  "To state a cause of action based on a theory of unjust

enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the

plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental

principles of justice, equity, and good conscience."  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937

(7th Cir. 2010).

Rockford's unjust enrichment and civil conspiracy claims are predicated upon its

Sherman Act, RICO and state consumer fraud claims.  Accordingly, because those claims fail, so

too must Rockford's unjust enrichment and civil conspiracy claims.  *See Omnicare*, 629 F.3d at

723 (dismissing unjust enrichment claim where plaintiff "could not demonstrate an illegal

conspiracy and thus could not possibly demonstrate that Defendants were thereby enriched");

*Siegel*, 612 F.3d at 937 ("[A]bsent that the defendants engaged in an unfair practice [under the

ICFA], Siegel's unjust enrichment claim is not viable.");  *Suburban Buick*, 2009 WL 1543709, at

*11-12 (dismissing civil conspiracy claim where "plaintiff has not pled its underlying fraud

claims with particularity").  Separately, the unjust enrichment claim also should be dismissed

because Rockford does not allege that it provided UBC with any benefit.  *See LoggerHead

Tools, LLC v. Sears Holding Corp.*, No. 12-cv-9033, 2013 WL 1858590, at *7 (N.D. Ill. May 1,

14

2013) (dismissing unjust enrichment claim where plaintiff did "not plead an unjust benefit" to the defendant "that was detrimental to [plaintiff]").

## **CONCLUSION**

For the foregoing reasons, all claims against UBC should be dismissed.


Dated: August 22, 2017                    Respectfully submitted,

                                          /s/ Eric Gorman
                                          Eric J. Gorman (#6229337)
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          155 N. Wacker Drive
                                          Chicago, IL 10036
                                          Telephone: (312) 407-0700
                                          Facsimile: (312) 407-8567
                                          eric.gorman@skadden.com

                                          Matthew M. Martino (admitted *pro hac vice*)
                                          Robert A. Fumerton (*pro hac vice* application pending)
                                          Patrick G. Rideout (*pro hac vice* application pending)
                                          Michael H. Menitove (admitted *pro hac vice*)
                                          Evan R. Kreiner (admitted *pro hac vice*)
                                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
                                          Four Times Square
                                          New York, NY 10036
                                          Telephone: (212) 735-3000
                                          Facsimile: (212) 735-2000
                                          matthew.martino@skadden.com
                                          robert.fumerton@skadden.com
                                          patrick.rideout@skadden.com
                                          michael.menitove@skadden.com
                                          evan.kreiner@skadden.com

                                          *Attorneys for Defendant United BioSource Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2017, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ Eric Gorman