**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| **CITY OF ROCKFORD and ACUMENT GLOBAL TECHNOLOGIES, INC.** *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Civil Action No.: 3:17-cv-50107 |
| | Judge Frederick J. Kapala |
| v. | Magistrate Judge Iain D. Johnston |
| **MALLINCKRODT ARD, INC.,** *formally known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** *doing business as* **CURASCRIPT, SD; ACCREDO HEALTH GROUP, INC.,** *and* **UNITED BIOSOURCE CORPORATION** | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MALLINCKRODT ARD INC.'S
AND MALLINCKRODT PLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................4

LEGAL STANDARD.............................................................................................................4

ARGUMENT .........................................................................................................................5

I.  PLAINTIFFS' FEDERAL ANTITRUST CLAIMS (COUNTS VI AND VII) ARE
    ADEQUATELY PLED .............................................................................................5

    A.  The "Indirect Purchaser" Rule of *Illinois Brick* Does Not Bar Plaintiffs' Federal
        Antitrust Claims under Section 2 or Section 1........................................................7

    B.  Plaintiff's Theory of Antitrust Liability Is Plausible Under Federal and State
        Antitrust Laws.........................................................................................................9

II. PLAINTIFFS' STATE LAW ANTITRUST CLAIMS (COUNT VII) ARE
    ADEQUATELY PLED ...........................................................................................15

    A.  Mallinckrodt's Standing Argument Goes Towards Class Certification Under Rule
        23 and Is Not a Proper Basis for Dismissal Under Rule 12(b)(6) ........................15

    B.  Plaintiffs Satisfy the Requirements of *Associated General Contractors of
        California Inc. v. State Council of Carpenters* .......................................................17

    C.  Plaintiffs Have Properly Stated Claims Under the Laws of the Respective
        States .....................................................................................................................18

        1.  Plaintiffs' Illinois Antitrust Claim is Proper.............................................18

        2.  Plaintiffs Have Stated Claims Under Other State Laws ...........................19

III. PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS UNDER RICO
     (COUNTS IX-XI) ................................................................................................ 20

    A.  Plaintiffs Claim Under Section 1962(c) (Count IX) is Properly Stated................22

    B.  Plaintiffs' Claim Under Section 1962(a)(Count X) is Properly Stated.................25

    C.  Plaintiffs' Claim Under Section 1962(d)(Count XI) is Properly Stated. .............26

IV. PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR FRAUD. .................27

V.     PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS FOR
       CONSPIRACY/CONCERTED ACTION AND UNJUST ENRICHMENT
       (COUNTS II, III, AND V)..............................................................................................28

VI.    DISMISSAL BASED UPON UNIDENTIFIED STATUTES OF LIMITATIONS IS
       IMPROPER …..........................................................................................................29

CONCLUSION............................................................................................................................30

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Page(s)**

*Adcock v. Brakegate, Ltd.*,
    164 Ill. 2d 54 (1994) ............................................................................................ 28

*Air Evac EMS, Inc. v. Usable Mut. Ins. Co.*,
    533 S.W.3d 572 (Ark. 2017) ................................................................................ 20

*Amerigas Propane, L.P. v. BP Am., Inc.*,
    691 F. Supp. 2d 844 (N.D. Ill. 2010) ................................................................... 28

*Arizona v. Shamrock Foods Co.*,
    729 F.2d 1208 (9th Cir. 1984) ........................................................................... 7, 8

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) ................................................................................ 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 4

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983) .............................................................................................. 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 4

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104, 107 S. Ct. 484, 93 L. Ed. 427 (1986) ............................................. 6

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) .............................................................................................. 24

*Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*,
    770 F.3d 610 (7th Cir. 2014) ................................................................................ 30

*Citizens for a Better Env't v. Union Oil Co.*,
    861 F. Supp. 889 (N.D. Cal. 1994) ........................................................................ 3

*Cumis Ins. Soc'y v. Peters*,
    983 F. Supp. 787 (N.D. Ill. 1997) .......................................................................... 5

*DeGuelle v. Camilli*,
    664 F.3d 192 (7th Cir. 2011) ......................................................................... 26, 27

*Del Monte Fresh Produce, N.A., Inc. v. Kinnavy*,
    No. 07 C 5902, 2010 U.S. Dist. LEXIS 28687 (N.D. Ill. Mar. 22, 2010) .............. 5

*Developers Sur. & Indem. Co. v. Krause* ,
    No. 14 c 6275, 2015 WL 3962287 (N.D. Ill. June 29, 2015) ............................... 18

*Fagan v. Sunbeam Lighting Co.*,
  303 F. Supp. 356 (S.D. Ill. 1969) ........................................................ 13

*Fontana Aviation, Inc. v. Cessna Aircraft Co.*,
  617 F.2d 478 (7th Cir. 1980) ............................................................... 7

*GE Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ............................................................. 3

*GMAC, L.L.C. v. Hillquist*,
  652 F. Supp. 2d 908 (N.D. Ill. 2009) .............................................. 28, 29

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) .......................................................... 16

*Hanover Shoe v. United Shoe Mach. Corp.*,
  392 U.S. 481, 20 L. Ed. 1231, 88 S. Ct. 2224 (1968) ............................ 7

*Haroco, Inc. v. Am. Nat'l Bank & Tr. Co.*,
  747 F.2d 384 (7th Cir. 1984) ............................................................. 22

*Hawkins v. Groot Indus., Inc.*,
  No. 01 C 1731, 2003 WL 22057238 (N.D. Ill. Sept. 2, 2003) ............... 16

*Ill. Brick Co. v. Ill.*,
  431 U.S. 720 (1977) .......................................................................... 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  123 F.3d 599 (7th Cir. 1997) ........................................................... 6, 7

*In re Broiler Chicken Antitrust Litig.*,
  No. 16 C 8637, 2017 WL 5574376 (N.D. Ill. Nov. 20, 2017) ........... 16, 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  No. 2031, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ....................... 17

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) .............................................................. 25

*In re Opana Er Antritrust Litig.*,
  162 F. Supp. 3d 704 (N.D. Ill. 2016) .................................................. 15

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09 C 7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) ...................... 17

*Jacobs v. Kern Cmty. Coll. Dist.*,
  No. 95-1292, 1996 U.S. LEXIS 4335 (Aug. 5, 1996) ............................. 7

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ............................................................................. 12

*Kaiser Found. Health Plan, Inc. v. Pfizer, Inc.* (*In re Neurontin Mktg. & Sales Practices Litig.*),
712 F.3d 21 (1st Cir. 2013) ................................................................. 21

*Kohen v. Pac. Inv. Mgmt. Co. & PIMCO Funds*,
571 F.3d 672 (7th Cir. 2009) .............................................................. 15

*Lewis v. Casey*,
518 U.S. 343 (1996) ..................................................................... 16, 17

*Loeb Indus. v. Sumitomo Corp.*,
306 F.3d 469 (7th Cir. 2002) .............................................................. 18

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*,
859 F.3d 408 (7th Cir. 2017) .............................................................. 12

*MetroPCS v. Devor*,
215 F. Supp. 3d 626 (N.D. Ill. 2016) ...................................................... 29

*Mitchell v. Nesemeier*,
No. Case No: 11 C 50329, 2013 U.S. Dist. LEXIS 146402 (N.D. Ill. Oct. 9, 2013) .............. 5

*MJ & Partners Rest. Ltd. Pshp. v. Zadikoff* ,
10 F. Supp. 2d 922 (N.D. Ill. 1998) ........................................................ 5

*Morgan v. Bank of Waukegan*,
804 F.2d 970 (7th Cir. 1986) ........................................................ *passim*

*Muehlbauer v. GMC*,
431 F. Supp. 2d 847 (N.D. Ill. 2006) ....................................................... 5

*Myers v. Seung Heun Lee*,
No. 1: 10-cv-131, 2010 U.S. Dist. LEXIS (E.D. Va. Sept. 21, 2010) ................................. 22

*Opoka v. INS*,
94 F.3d 392 (7th Cir. 1996) ................................................................. 3

*Paper Sys. v. Nippon Paper Indus. Co.*,
281 F.3d 629 (7th Cir. 2002) .............................................................. 6, 7

*Payton v. County of Kane*,
308 F.3d 673 (7th Cir. 2002) .......................................................... 16, 17

*Reiser v. Residential Funding Corp.*,
380 F.3d 1027 (7th Cir. 2004) ............................................................. 29

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ......................................................................... 24

*Rohlfing v. Manor Care*,
172 F.R.D. 330 (N.D. Ill. 1997) ............................................................. 5

*Scholes v. Lehmann*,
56 F.3d 750 (7th Cir. 1995) ................................................................. 3

*Sedima v. Imrex Co.*,
473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 346 (1985) ......................... 21

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ............................................................................ 19

*Shapo v. O'Shaughnessy*,
246 F. Supp. 2d 935 (N.D. Ill. 2002) .................................................. 26

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........................................................................ 15

*St. Joseph Hosp. v. Corbetta Constr. Co.*,
21 Ill. App. 3d 925 (1974) .................................................................. 28

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .............................................................................. 15

*Stone v. Bd. of Trs. of N. Ill. Univ.*,
38 F. Supp. 3d 935 (N.D. Ill. 2014) ...................................................... 5

*Supreme Auto Transp. L.L.C. v. Mittal*,
238 F. Supp. 3d 1032 (N.D. Ill. 2017) ............................................... 16

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ................................................................ 4

*Thompson's Gas & Elec. Serv. v. BP Am. Inc.*,
691 F. Supp. 2d 860 (N.D. Ill. 2010) ................................................. 28

*U.S. Textiles, Inc. v. Anheuser-Busch Cos.*,
911 F.2d 1261 (7th Cir. 1990) ....................................................... 20-21

*United Food & Comm. Unions & Emp'rs Midwest Health Benefits Fund v. Walgreens Co.*,
719 F.3d 849 (7th Cir. 2013) ...................................................... 22, 24-25

*United States ex rel. Presser v. Acacia Mental Health Clinic, L.L.C.*,
836 F.3d 770 (7th Cir. 2016) .............................................................. 27

*United States v. Arnold, Schwinn & Co.*,
388 U.S. 365, 87 S. Ct. 1856, 18 L. Ed. 1249 (1967) .................... 12-13

*United States v. Baines*,
812 F.2d 41 (1st Cir. 1987) ................................................................ 29

*Vicom, Inc. v. Harbridge Merch. Servs.*,
20 F.3d 771 (7th Cir. 1994) ..................................................... *passim*

*Williams v. Indep. News Co.*,
    485 F.2d 1099 (3d Cir. 1973) ............................................................. 13

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
    372 F.3d 899 (7th Cir. 2004) ............................................................. 29

**Statutes**

15 U.S.C. § 1 ............................................................................................... *passim*

15 U.S.C. § 2 ............................................................................................... *passim*

15 U.S.C. § 4 ............................................................................................... 6

15 U.S.C. § 16 ............................................................................................. 6

15 U.S.C. § 26 ............................................................................................. 6

15 U.S.C. § 1962 ........................................................................................ *passim*

15 U.S.C. § 1964 ........................................................................................ 22

**Other**

Fed. R. Civ. P. 8(a)(2) ............................................................................... 5

Fed. R. Civ. P. 12(b)(6) ............................................................................. 4

Plaintiffs, the City of Rockford ("Rockford") and Acument Global Technologies, Inc. ("Acument") (collectively "Plaintiffs") by and through their undersigned counsel, hereby respond to Defendant Mallinckrodt ARD Inc.'s and Mallinckrodt PLC's Motion to Dismiss the Second Amended Class Action Complaint ("SAC") (hereinafter "*Mallinckrodt Br.*") as follows:

## INTRODUCTION

The City of Rockford has been joined by Acument[1] in this class action to have declared unlawful and to enjoin the conduct of Mallinckrodt[2] and Express Scripts[3] (collectively "Defendants") in acting collectively to maintain and enhance Mallinckrodt's monopoly power in the U.S. market for adrenocorticotropic hormone (ACTH) drugs in violation of the antitrust laws and other laws. Plaintiffs seek to represent a class of similarly-situated payors who purchased H.P. Acthar ("Acthar") for their employees and beneficiaries.

Sadly, beginning with its Introduction, Mallinckrodt presents a false narrative to try to contradict the well-pleaded factual allegations of the SAC, which this Court must accept as true. While it is correct Acthar is "critical in the care of treatment of babies suffering from a rare condition of infantile spasms" ("IS"), *Mallinckrodt Br.* at 1, that uncontested medical fact (SAC ¶¶ 43, 45) did not give Questcor license to collude with its largest customer, Express Scripts, to

---

[1] Acument is a manufacturing company with facilities in 12 locations in the United States and Mexico, including locally in Belvedere, Illinois as well as Spencer, Tennessee. *See* Second Amended Class Action Complaint ("SAC") at ¶21.

[2] "Mallinckrodt" refers to Mallinckrodt ARD Inc., formally known as Questcor Pharmaceuticals, Inc. ("Questcor") and its parent company, Mallinckrodt plc. SAC ¶¶ 1, 21, 24-25.

[3] Express Scripts" refers to Mallinckrodt's exclusive agent for the delivery of its products, Express Scripts Holding Company ("ESHC"), and Express Scripts, Inc. ("ESI"), including their three (3) wholly-owned subsidiaries, CuraScript, Inc., doing business as CuraScript, SD. ("CuraScript"), Accredo Health Group, Inc. ("Accredo"), and United BioSource Corporation ("UBC"). SAC ¶¶ 1, 26-34.

defraud and enhance its monopoly power and raise Acthar prices to unconscionable levels, to the substantial detriment of the parents of such babies, like the Rockford employees in this case, and their employers, like Rockford. SAC ¶¶ 7-9, 81-83. For a drug that cost less than $200 to treat a sick infant in 2001 ($40 for each of 4 recommended injections), Defendants charged Rockford nearly $500,000.00 for 2 such infants. *Id.*

Furthermore, it is entirely false that Acthar is "instrumental in treating adults with conditions ranging from multiple sclerosis to arthritis." *Mallinckrodt Br.* at 1. That Mallinckrodt leads with such a claim underscores why its Motion to Dismiss should be denied. Acument has paid for the care of one such adult, at an exorbitant cost of nearly $900,000.00. SAC ¶¶ 10. Yet, contrary to Mallinckrodt's claims, the Medical Director of its co-Defendant Express Scripts has stated publicly that Acthar is not worth what Defendants charge, especially for adult indications where its efficacy has been seriously questioned. SAC ¶¶ 88, 94-100.[4]

Contrary to Mallinckrodt's false narrative, this case involves a 65-year old, brand-name prescription drug that once cost $40.00 per dose, but now costs nearly $40,000.00 per injection, a **thousand times price increase**. SAC ¶¶ 9, 38. In the decades since Acthar was first discovered in 1953, nothing has changed about the quality or condition of the product, only its price. The precipitous rise in Acthar prices began after Questcor acquired the Acthar product line from Aventis in 2001 for just $100,000.00. SAC ¶ 3. By 2014, the self-described "one product company" Questcor was sold to Mallinckrodt for $5.9 billion, a nearly **sixty-fold** increase in value. SAC ¶¶ 3, 38, 44. Such extraordinary price (and value) increases are not normal. They do

---

[4] *See also*, http://aetna.com/cpb/medical/data/700_799/0762.html (wherein the leading insurer Aetna explains that it does not cover Acthar for adult conditions because it is "not medically necessary" for such conditions as "it has not been proven to be more effective than [generic] corticosteroids for these indications.").

not happen in a competitive market involving old medicines, but only where the sole supplir is positioned to exercise enormous degrees of monopoly power.

This case brought by Rockford and Acument follows those brought by the Federal Trade Commission ("FTC") and Mallinckrodt's competitor Retrophin, both of which charged Mallinckrodt with antitrust violations, and both of which cases Mallinckrodt settled, for $100 million and $15.5 million, respectively. SAC ¶¶ 115 (incorporating FTC Complaint as Exhibit "B"), 146 (incorporating Retrophin Complaint at Exhibit "C"), 150, 155. Significantly, in the FTC case, Mallinckrodt also agreed to divest itself of the U.S. marketing rights to the synthetic version of Acthar (Synacthen) that it had unlawfully acquired to defend and maintain its monopoly power.[5] Mallinckrodt's voluntary decision to enter into a permanent injunction stands as a judicial admission here,[6] which should alone be sufficient to allow this case to advance beyond where the government's case left off, to ensure that payors like Rockford and Acument see justice.

---

[5] *See generally,* Jan. 30, 2017 Stipulated Order for Permanent Injunction and Equitable Monetary Relief at 1:17-cv-00120, D.D.C., Dkt No. 15. This Court can and should take judicial notice of the Court's stipulated injunction in the FTC case, as the fact of the settlement is in the complaint. SAC ¶¶ 99, 155. *See, GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081-82 (7th Cir. 1997)("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records."). *Opoka v. INS,* 94 F.3d 392, 394 (7th Cir. 1996)(recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed); *Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir. 1995)(allowing judicial notice of facts recited in a plea agreement); *see also, Citizens for a Better Env't-Cal. V. Union Oil Co.,* 861 F.Supp. 889, 896 (N.D. Cal. 1994)(taking judicial notice of consent decree), aff'd, 83 F.3d 1111 (9th Cir. 1996).

[6] Plaintiffs do not contend that Mallinckrodt's settlements standing alone are proof of wrongful conduct, given that Mallinckrodt did not admit liability in either case. However, Mallinckrodt 's decision to voluntarily agree with the FTC to license Synacthen to a competitor to ensure that competition is restored to the market for ACTH products is a fact about which this Court can and should take judicial notice at the pleading stage, especially since the facts are detailed in Plaintiffs' complaint.

## BACKGROUND

As set forth in the SAC, "the tale of how a 65-year-old brand medication could rise in price from $40 per vial in 2001 to $40,840.80 per vial by 2015, raising the value of the brand from $100,000.00 to $5.9 billion, is a story of perhaps the most egregious fraud and monopolistic conduct in U.S. history by a prescription drug company." SAC ¶ 38. The facts which compromise this "story"[7] are set forth in Plaintiffs' detailed 93-page, 409-averment, complaint. Since the facts are largely ignored by Mallinckrodt in its brief, and must otherwise be presumed to be true at this juncture, the discussion here is limited to those facts which Mallinckrodt contests in discussion of their Motion. A fulsome description of the collusion between Mallinckrodt and Express Scripts is included in the Background section of Plaintiffs' Memorandum in Opposition to Express Scripts' Motion to Dismiss ("*ESI Br.*") and is incorporated herein by reference thereto.

## LEGAL STANDARD

In seeking dismissal of Plaintiffs' SAC with prejudice, Mallinckrodt resorts to the oft-cited (but often misunderstood) cases of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ascroft v. Iqbal*, 556 U.S. 662 (2009). *Mallinckrodt Br.* at 1-2. These cases are addressed in greater detail in Plaintiffs' Memorandum in Opposition to Express Scripts' Motion to Dismiss.

The standard on a motion dismiss is familiar to this Court:

> [w]hen deciding a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. To state a claim under the Federal Rules, a

---

[7] The Seventh Circuit held in *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010) that "the plaintiff must give enough details about the subject matter of the case to present a story that holds together." Plaintiffs' story, already told in part by the federal government and Mallinckrodt's competitor, plainly holds together.

> complaint need only contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).
> "[D]etailed factual allegations" are not required, but the plaintiff must
> allege facts that, when "accepted as true . . . state a claim to relief that is
> plausible on its face." In analyzing whether a complaint has met
> this standard, the "reviewing court [must] draw on its judicial experience
> and common sense."

*Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 943 (N.D. Ill. 2014) (J. Kapala)(citations

omitted); *see also*, *Mitchell v. Nesemeier*, No. 11 C 50329, 2013 U.S. Dist. LEXIS 146402, at

*6-7 (N.D. Ill. Oct. 9, 2013) (J. Kapala). A motion to dismiss tests the sufficiency of the

complaint, *not* the merits of the Plaintiffs' allegations. *See, e.g.*, *Muehlbauer v. GMC*, 431 F.

Supp. 2d 847, 851 (N.D. Ill. 2006). Indeed, "the court may dismiss the complaint *only if* it

appears *beyond a doubt* that the plaintiff can prove *no* set of facts in support of his claim that

would entitle him to relief." *Cumis Ins. Soc'y v. Peters*, 983 F. Supp. 787, 791 (N.D. Ill. 1997)

(emphasis added); *see also*, *MJ & Partners Rest. Ltd. Pshp. v. Zadikoff*, 10 F. Supp. 2d 922, 926

(N.D. Ill. 1998); *Rohlfing v. Manor Care*, 172 F.R.D. 330, 348 (N.D. Ill. 1997); *Del Monte Fresh*

*Produce, N.A., Inc. v. Kinnavy*, No. 07 C 5902, 2010 U.S. Dist. LEXIS 28687, at *9 (N.D. Ill.

Mar. 22, 2010) ("Specific facts are not necessary.").

The Plaintiffs' SAC meets these standards.

## ARGUMENT

### I. PLAINTIFFS' FEDERAL ANTITRUST CLAIMS (COUNTS VI AND VII) ARE ADEQUATELY PLED.

Mallinckrodt acknowledges, as it must, that Plaintiffs have asserted "two antitrust claims

under the Sherman Act – one alleging monopolization under Section 2, and another alleging

anticompetitive agreements in restraint of trade under Section 1." *Mallinckrodt Br.* at 2. Yet,

Mallinckrodt ignores the important factual and legal distinctions these alternative theories of

liability present in seeking to have Plaintiffs' antitrust claims dismissed (1) under the *Illinois*

*Brick*[8] doctrine, and (2) as implausible. Both arguments fail.

The Court of Appeals for the Seventh Circuit has repeatedly held that the *Illinois Brick* doctrine does not apply to a vertical price-fixing conspiracy under Section 1, as alleged in Count VII of the SAC. *See, e.g., Paper Systems, Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002); *In re Brand Name Prescription Drugs Antitrust Litig.* ("*Brand Name Prescription Drugs*"), 123 F.3d 599, 604-605 (7th Cir. 1997)(if a manufacturer and wholesaler are sued for overcharges under the Sherman Act, "any indirect-purchaser defense would go by the board")(citations omitted). The doctrine also does not bar claims for declaratory and injunctive relief, as alleged in both Counts VI and VII of the SAC, even if brought by truly "indirect" purchasers. 15 U.S.C. § 26 ("*any person*, firm, corporation, or association shall be entitled to sue for and have injunctive relief … against threatened loss or damage by a violation of the antitrust laws….")(emphasis added); *Cargill, Inc., v. Monfort of Colorado, Inc*., 479 U.S. 104, 111, 107 S.Ct. 484, 490, 93 L.Ed. 427, 436 (1986) (distinguishing "§ 4 [which] requires a plaintiff to show actual injury, but § 16 requires a showing only of 'threatened' loss or damage").

The "indirect purchaser" rule presents no bar to a claim for monopolization under Section 2, as alleged in Count VI of the SAC, wherein the claim is premised upon the monopolist's unlawful exercise of its monopoly power in colluding with an intermediary, here its largest buyers agent, to agree to limit distribution in exchange for higher end payer prices. This claim is identical to the claim brought by the FTC and Retrophin. *See* SAC Exhibits "B" and "C".

Finally, as set forth below, the "plausibility" of Plaintiffs' antitrust claims is demonstrated by their similarity to the antitrust claims brought by the FTC and Retrophin, but

---

[8] *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

also by the well-pleaded theories of liability in the SAC which Mallinckrodt chooses to ignore. Plaintiffs' SAC provides even greater detail than either the FTC or Retrophin included in their respective pleadings, warranting rejection of Mallinckrodt's Rule 12(b)(6) challenges.

### A. The "Indirect Purchaser" Rule of *Illinois Brick* Does Not Bar Plaintiffs' Federal Antitrust Claims under Section 2 or Section 1.

The "indirect purchaser" rule of *Illinois Brick* does not "categorically bar" all antitrust claims by so-called "indirect purchasers", as charged. *Mallinckrodt Br.* at 2. To the contrary, in cases like this, wherein Plaintiffs allege a "vertical conspiracy" between a manufacturer and its intermediary to maintain and enhance monopoly power and to fix prices, the Court of Appeals for the Seventh Circuit has routinely held that *Illinois Brick* does not limit antitrust litigation. *See, e.g., Paper Systems*, 281 F.3d at 631-32 ("The right to sue middlemen that joined the conspiracy is sometimes referred to as the co-conspirator 'exception' to *Illinois Brick*, but it would be better to recognize that *Hanover Shoe*[9] and *Illinois Brick* allocate to the first non-conspirator in the distribution chain the right to collect 100% of the damages"); *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir. 1980); *Brand Name Prescription Drugs*, 123 F.3d at 604-605. This Court has held that such a "vertical conspiracy does not involve pass-on damages because the so-called 'indirect purchaser' is the party directly injured by the antitrust violation." *Brand Name Prescription Drugs*, 1996 U.S. LEXIS 4335 (N.D.Ill. April 4, 1996) at *88 (*citing Arizona v. Shamrock Foods, Co.*, 729 F.2d 1208, 1211 (9th Cir. 1984), *cert. denied*, 469 U.S. 1197, 83 L.Ed. 2d 982, 105 S.Ct. 980 (1985).

In *Shamrock Foods*, consumers sued the manufacturers and distributors of dairy products for wholesale price fixing. After the defendants moved for partial summary judgment "on the

---

[9] *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 20 L.Ed. 1231, 88 S.Ct. 2224 (1968).

ground that the consumers' claims for pass-on damages from purchases of dairy products

through grocery stores were barred by *Illinois Brick*", the consumers "altered their theory of

recovery to allege a retail price-fixing conspiracy including the intermediate grocery stores, thus

avoiding *Illinois Brick*." *Id*. at 1210. In reversing the grant of summary judgment in favor of the

dairy producers, the Court of Appeals for the Ninth Circuit agreed with the consumers that their

new theory did not depend on pass-on of damages; thus "*Illinois Brick* did not apply." *Id*. at

1211. *Illinois Brick* was "no bar to suit … [e]ven if the plaintiffs were claiming a two-tier

conspiracy", involving a horizontal conspiracy to fix wholesale prices and a vertical conspiracy

to fix retail prices of dairy products. *Id*. The Court noted that "[n]umerous other courts have

found *Illinois Brick* inapplicable to claims against remote sellers when the plaintiffs allege that

the sellers conspired with intermediaries in the distribution chain to the fix the prices at which

plaintiffs purchased." *Id*. at 1212 (citations omitted).

It is not surprising that Mallinckrodt tries to gloss over this important distinction in

Plaintiffs' case. *Mallinckrodt Br.* at 4, n.1 ("This allegation that Plaintiffs purchased from co-

conspirators is irrelevant...".) Its co-Defendant, Express Scripts, has conceded in its brief that

"ESI is Rockford's pharmacy benefit manager". Mem. of Law in Support of [Express Scripts']

Motion to Dismiss ("*ESI Br.*") at 6, 7.[10] Note that, Express Scripts **does not challenge**

Rockford's standing to sue as a direct purchaser under *Illinois Brick*. *See, e.g, ESI Br.* at 3

(challenging only Acument's "lack of standing"); 15-16 (arguing *Illinois Brick* only as to

Acument). Indeed, Express Scripts concedes this case involves a "vertical agreement[] … like

the alleged relationship" between Mallinckrodt and Express Scripts. *ESI Br.* at 9, n.11. Express

---

[10] Importantly, "[t]he Express Scripts Entities accept Plaintiffs' factual allegations as true only for purposes of this Motion." *ESI Br.* at 4, n.5.

Scripts also cites *Brand Name Prescription Drugs* favorably for the proposition that Acument's claims should be dismissed as indirect, *ESI Br*. at 15, but it fails to acknowledge that case plainly holds *Illinois Brick* presents no bar to standing in cases alleging a vertical conspiracy.

### B. Plaintiffs' Theory of Antitrust Liability Is Plausible Under Federal and State Antitrust Laws.

In its second Motion to Dismiss,[11] Mallinckrodt claims "the crux of the case [involves] a grievance over the price of Acthar." *Mallinckrodt Br*. at 1; 2 ("grievances about high prices"). While Plaintiffs do challenge the lawfulness of Acthar prices, their legal challenge is not simply that prices are too high. This case concerns instead "the lawfulness of Mallinckrodt's *exercise* of its monopoly power by taking *actions to maintain and enhance* that monopoly power", **not** "whether Mallinckrodt *possessed* monopoly power for Acthar" in the first place. SAC ¶¶4, 5.

**All parties agree that Mallinckrodt is a monopolist**. *Compare* SAC ¶¶2 ("Mallinckrodt is a monopolist"), 38 (describing "the most egregious … monopolistic conduct") *with Mallinckrodt Br*. at 2 (arguing, "a monopolist has no duty to reduce its prices or keep them low."); 5 (arguing, "[s]imply possessing monopoly power and charging monopoly prices does not violate §2"). However, Mallinckrodt argues that its status as a monopolist permits it to do two (2) things which the SAC claims are unlawful: (1) contract in 2007 with its largest distributor (Express Scripts) to limit Acthar distribution, and (2) purchase in 2013 (for tenfold more than what a competitive bidder was willing to pay) the only competitive product in the

---

[11] Per this Court's Scheduling Order (Dkt. No. 44), on August 22, 2017, Mallinckrodt first moved to dismiss Rockford's initial Complaint (Dkt. No. 1). *See* Dkt. Nos. 69 and 70. On agreed Motion (Dkt. No. 79), which this Court granted (Dkt. No. 83), Rockford then amended its Complaint adding additional Express Scripts defendants. Dkt. No. 84. Rockford then sought leave by agreed Motion (Dkt. No. 96) to file a Second Amended Complaint to add Acument as a party, which this Court granted. Dkt. No. 97. The SAC (Dkt. No. 98) is the operative Complaint which Defendants now move to dismiss.

marketplace, in order to shelve the product and foreclose the expected condition that the entry of this product would entail. That is where Mallinckrodt's challenges for lack of "plausibility" fail, because Mallinckrodt fails to address Plaintiffs' actual claims, especially the role of Express Scripts in assisting Mallinckrodt in maintaining and enhancing its monopoly power.[12] In addition, Mallinckrodt does not get to argue for a "more plausible" explanation for its antitrust conduct at the pleading stage, where the Plaintiffs' allegations are taken as true. *See Mallinckrodt Br*. at 11-12. The same is true with respect to Mallinckrodt's argument that its arrangement with Express Scripts "does not violate Section 1" because Plaintiffs' allegations are purportedly "contradicted by" other, "more specific" allegations. *Mallinckrodt Br*. at 10-11. All allegations are deemed true at this juncture, and all reasonable inferences are made in Plaintiffs' favor.

As the SAC makes clear, Express Scripts plays a unique role in the pharmaceutical marketplace so that Mallinckrodt's agreement with it is particularly important in defending, maintaining, and enhancing its monopoly pricing power over Acthar. Express Scripts is the nation's largest PBM, and as such has substantial buying power in pharmaceutical markets. SAC ¶¶ 56-57. It serves as the bargaining agent for large numbers of third party payors, including Rockford. SAC ¶¶ 48, 76, 78. Its function is to negotiate with drug companies the lowest possible prices for its clients. SAC ¶¶ 77, 82-83, 95. This function has been directly articulated by Express Scripts' management. SAC ¶¶ 88, 94-103.

---

[12] Mallinckrodt describes its "exclusive distribution arrangement" in a manner that suits its purposes, but fails to adhere to Plaintiffs' description in the SAC. *See Mallinckrodt Br.* at 5-9. A broader description of the arrangement is provided in Plaintiffs' Memo in Opposition to Express Scripts' Motion due to the challenges interposed by Express Scripts. However, that description is incorporated by reference herein to make clear Plaintiffs' factual averments.

In some cases, instead of negotiating lower prices for specific specialty drugs, Express Scripts has moved to create less expensive alternatives. It followed this route in the case of Daraprim after its price exploded from $13.50 per pill to $750.00. SAC ¶¶ 85-88.

The striking feature of the current matter is that Express Scripts followed neither route in the case of Mallinckrodt's Acthar. SAC ¶ 101. Its price increased even more rapidly than did Daraprin's price, but Express Scripts did nothing in response. Indeed, no efforts were made to restrain prices even though Express Scripts' management explicitly observed that Mallinckrodt's product was "vastly overpriced for its value." SAC ¶ 97.

In the SAC, Plaintiffs allege that Express Scripts' inaction resulted specifically from its participation in Mallinckrodt's pricing and distribution scheme. SAC ¶¶ 95, 101-103. In effect, Express Scripts had gained a share of the returns for this vertical arrangement and as a result had no incentive to move for lower prices of Acthar. Even in the presence of monopoly, prices depend on the willingness of buyers to pay the seller's price, which always depends on the buyer's judgment of the product's value. There is thus, even with monopoly, a limit on how much a single seller can charge. However, that restraint is removed when the monopolistic seller and the largest buyers' agent collude, as is here the case.

Mallinckrodt's legal argument for dismissal of Plaintiffs' Section 2 claim proceeds from the faulty premise that Plaintiffs argue the *possession* of monopoly power and *charging* monopoly prices is unlawful. *Mallinckrodt Br*. at 5. It thus urges that its conduct amounts to "unremarkable business activities". *Id*. But since Plaintiffs' case is not about mere possession of monopoly power, Mallinckrodt's cases are inapposite. In its discussion of antitrust cases, Mallinckrodt fails to clearly distinguish between the two acts Plaintiffs plainly demarcate whereby Mallinckrodt unlawfully acted to *enhance* its monopoly power: its actions in 2007 to

11

restrict distribution (SAC ¶¶ 222-225) and its actions in 2013 to acquire the lone competitive

product, Synacthen. SAC ¶¶ 127-154, 226-231. This is important because Mallinckrodt fails to

tie the principles espoused in its cited authorities to the actual averments of the SAC.

This problem presents itself most clearly in Mallinckrodt's discussion of its "exclusive

distribution arrangement" with Express Scripts. *Mallinckrodt Br.* at 5-9. In urging that such

arrangements are "well accepted", "beneficial", "common" and "only rarely anticompetitive",

Mallinckrodt is simply cherry-picking favorable lines from an array of cases without regard for

the facts of ***this case***. Case in point is Mallinckrodt's citation to Judge Posner's 2017 decision in

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 859 F.3d 408, 401 (7th Cir. 2017), for the

proposition that exclusive dealing is "common". *Mallinckrodt Br.* at 7. In describing

Methodist's "quite simple" antitrust case, Judge Posner explained that it involved one hospital

suing another dominant competitor in a market for the practice of "pursuad[ing] insurance

companies to enter into exclusive contracts with it" to create restricted provider networks. 859

F.3d at 409. It was in that context that the Judge stated, "what could be more common than

exclusive dealing? *Id*. at 410. But, this case does not involve horizontal competitors vying for

contracts in a competitive marketplace; to the contrary, it involves a self-proclaimed monopolist

contracting with the dominant buyers' agent in a vertical relationship that removed the

competitive force of Express Scripts from the market.[13]

In this regard, this case is more akin to a case Judge Posner argued before the Supreme

Court 50 years earlier when he was a young lawyer at the Department of Justice, *United States v.*

---

[13] Mallinckrodt also strongly cites the concurring opinion of Justice O'Conner in another
inapposite hospital contracting case, arguing it is somehow "fatal" to Plaintiffs' claims.
*Mallinckrodt Br.* at 7 (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 45 (1984)
(O'Conner, J., concurring), abrogated on other grounds by *Ill. Tool Works Inc. v. Indep. Ink, Inc.,*
547 U.S. 28 (2006)).

*Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed. 1249 (1967). In *Schwinn*, the Court rejected the notion, espoused by the manufacturer, that the "challenged distribution system" promoted competition[14] simply because "Schwinn sought a better way of distributing its product: a method which would promote sales, increase stability of its distributor and dealer outlets, and augment profits." *Id*. at 374-375, 87 S.Ct. at 1863, 18 L.Ed. at 1257-1258. Such argument "is not enough to avoid the Sherman Act proscription; because, in a sense, every restrictive practice is designed to augment profit and competitive position of its participants." *Id*. Importantly, the Court in *Schwinn* was "dealing [] with a vertical restraint embodying the unilateral program of a single manufacturer", similar to this case. *Id*. at 378, 87 S.Ct. at 1865, 18 L.Ed. 1260. The *Schwinn* Court's determination of the unlawfulness of such a "vertical restraint" turned on "the unilateral adoption by a single manufacturer of an agency or consignment patterns and the Schwinn type of restrictive distribution system". *Id*. at 381, 87 S.Ct. at 1866, 18 L.Ed. 1261. Importantly, where there was alleged price fixing, as alleged here, and a lack of "adequate sources of alternate products", as here, the Court held there may be antitrust. *Id*. The issue depends upon whether the manufacturer "retains title, dominion, and risk with respect to the product", a contested factual issue in this case for which discovery is required. *Id*. at 380, 87 S.Ct. at 1866, 18 L.Ed. 1261; *see also*, *Fagan v. Sunbeam Lighting Co*., 303 F.Supp. 356, 361 (S.D.Ill. 1969)("[i]f the manufacturer parts with dominion over his product or transfers risk of loss to another, he may not reserve control over its destiny or the conditions of resale"); *Williams v. Independent News Co*., 485 F.2d 1099, 1103 (3d Cir. 1973)(same).

---

[14] *See Mallinckrodt Br.* at 7, n.3. (urging "procompetitive reasons for the distribution arrangement here").

The facts of this case demonstrate not only a "plausible" theory of antitrust liability under Section 2, but a meritorious one. Mallinckrodt tries to confuse this Court by arguing non-issues, like the fact that it is a monopolist and that it only contracted with its distributor. This case *begins* with those propositions but builds upon them based upon Mallinckrodt's further conduct to maintain and enhance its monopoly power by contracting with its largest distributor and the largest buyers' agent, Express Scripts. In so acting in 2007, Mallinckrodt committed a Section 2 violation because the buying side is critical with a single, monopolistic seller.

Mallinckrodt's argument for dismissal of the Section 2 claim premised on its purchase of Synacthen and decision to shelve the product is perhaps its weakest. Realizing that such charge of Section 2 monopolization was made by **both** the FTC and Retrophin, and that it chose to settle, rather than fight these allegations, it is forced to merely "den[y] that the acquisition of Synacthen was an antitrust violation." *Mallinckrodt Br.* at 9. Instead, it argues that Plaintiffs have not suffered injury. Plaintiffs respectfully disagree. The collective $1.5 million they paid for a drug that should have cost only thousands of dollars in the absence of Mallinckrodt's actions to enhance its monopoly power and raise Acthar prices speaks volumes about the Plaintiffs' injury. Plaintiffs amply plead how the injury could have been avoided by Mallinckrodt not interceding to take Synacthen away from Retrophin. That Retrophin sought to purchase the product to bring it to market is amply demonstrated by its Complaint attached as Exhibit "C to Plaintiffs' SAC and incorporated therein. Mallinckrodt's arguments about the "rigorous drug approval process" are outside the complaint. *Mallinckrodt Br.* at 10. In addition, Mallinckrodt's entire argument falls flat when the Court considers Mallinckrodt agreed with the FTC to license Synacthen to a competitor in settlement of the government's antitrust claims.

14

Plaintiffs look forward to taking discovery of Retrophin and the new license about how the intended to proceed to market.

## II. PLAINTIFFS' STATE LAW ANTITRUST CLAIMS (COUNT VII) ARE ADEQUATELY PLED.

### A. Mallinckrodt's Standing Argument Goes Towards Class Certification Under Rule 23 and Is Not a Proper Basis for Dismissal Under Rule 12(b)(6).

Mallinckrodt argues that Plaintiffs' state law claims contained in Count VIII should be dismissed. *Mallinckrodt Br*. at 12-17. Mallinckrodt first claims that the Plaintiffs lack Article III standing to bring such claims. *Mallinckrodt Br*. at 12-14. Standing under Article III of the U.S. Constitution requires an injury in fact that is fairly traceable to the alleged conduct of the defendant, and likely to be addressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016).

Mallinckrodt argues that Plaintiffs lack standing to bring state antitrust claims on behalf of residents from states **other than** Illinois or Tennessee because the named Plaintiffs only reside in these states. *Mallinckrodt Br*. at 12-14. This argument is flawed, because "Article III's injury in fact requirement 'has nothing to do with the text of the statute relied upon.'" *In re Opana ER Antitrust Litig.*, 162 F.Supp.3d 704, 722 (N.D. Ill. 2016), *quoting Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 (1988). "As long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen v. Pacific Inv. Mgmnt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009).

There is no dispute that Plaintiffs have alleged an injury in fact by alleging that they paid inflated prices which can be "fairly traced" to Defendants' conduct and which can be "redressed" by a favorable judicial decision. Indeed, Mallinckrodt concedes that Plaintiffs have standing to bring state antitrust claims in Illinois and Tennessee. "For the time being – meaning at the

pleading state and prior to analysis of the class allegations under Rule 23 – this analysis suffices to establish the named plaintiffs' standing to assert the claims of class members in other states." *In re Broiler Chicken Antitrust Litigation,* 2017 WL 5574376, *25 (N.D. Ill. November 20, 2017). "Whether the named plaintiffs 'may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions." *In re Opana ER Antitrust Litig.* at 722, *quoting Lewis v. Casey,* 518 U.S. 343, 395–96 (1996) (Souter, J., concurring in part, dissenting in part, and concurring in the judgment) (alterations and internal quotation marks omitted), *see also Arreola v. Godinez,* 546 F.3d 788, 795 (7th Cir.2008) ("We ... conclude that [the plaintiff] did have standing to pursue his lawsuit. Whether he is entitled to relief on any or all of those claims and whether he may serve as an adequate class representative for others asserting such claims are separate questions ...."); *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002) (Only "once a class is properly certified" should "standing requirements ... be assessed with reference to the class as a whole" as opposed to "the individual named plaintiffs."); *Supreme Auto Trans. LLC v. Arcelor Mittal*, 238 F.Supp.3d 1032, 1038 (N.D. Ill. 2017) ("For now, whether named plaintiffs can bring claims under the laws of other states and whether plaintiffs are adequate class representatives do not pose Article III barriers to subject-matter jurisdiction.").

Several of the cases cited by Mallinckrodt address standing as it relates to Rule 23 class certification, and thus provide no support for Mallinckrodt's argument for dismissal under Rule 12(b)(6). *E.g.*, *Hawkins v. Groot Indus., Inc.*, 2003 WL 22057238 (N.D. Ill. Sep. 2, 2003), *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). The remaining cases cited by Mallinckrodt do not address the Supreme Court and Seventh Circuit case law discussed above. As one Court recently explained in expressly rejecting the argument raised by Mallinckrodt here:

> Defendants rely on a number of decisions to the contrary from courts in this district. *See, e.g., In re Plasma–Derivative Protein Therapies Antitrust Litig.,* 2012 WL 39766 (N.D. Ill. Jan. 9, 2012*); In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,* 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013). With regard to *Plasma–Derivative* and *Dairy Farmers* in particular, however, the courts did not address the reasoning from *Lewis* and *Payton* the Court relies on here. Those courts focused on the principle that "named plaintiffs who represent a class must allege and show that they have personally been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Plasma–Derivative*, 2012 WL 39766, at *6 (quoting *Lewis*, 518 U.S. at 357, 116 S.Ct. 2174); *see also Dairy Farmers*, 2013 WL 4506000, at *8 ("[I]t bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." (quoting *Payton,* 308 F.3d at 682)). But *Plasma–Derivative* and *Dairy Farmers* failed to account for the fact that in *Payton* the named plaintiffs—like the named plaintiffs here—were able to establish their own standing apart from that of the class. 308 F.3d at 682 ("This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members."). As the Supreme Court put it in *Lewis*, "the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." 518 U.S. at 395, 116 S.Ct. 2174. For these reasons, the Court finds the holdings of *Plasma–Derivative* and *Dairy Farmers* unpersuasive on this issue. The Indirect Plaintiffs have plausibly alleged Article III standing for all their claims.

*In re Broiler Chicken Antitrust Litig.* at *25.

Mallinckrodt has admitted that Plaintiffs have Article III standing for state antitrust claims in Illinois and Tennessee. Whether the named plaintiffs are adequate class representatives for state antitrust claims in other states is an issue to be addressed under Rule 23, and is not a basis for dismissal for failure to state a claim.

### B.     Plaintiffs Satisfy the Requirements of *Associated General Contractors of California, Inc. v. California State Council of Carpenters*.

Mallinckrodt next argues that the Plaintiffs lack standing to bring state law antitrust claims under *Assoc. General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535, n. 31 (1983) ("AGC.") AGC discusses factors that a court must consider in evaluating whether a plaintiff is a proper party to bring claims under federal antitrust statutes,

including directness of the injury; risk of duplicate recovery or complex damage apportionment; type of injury and whether it was one Congress sought to redress; causal connection between the violation and the harm; speculative nature of the damages; and presence of improper motive. *See Loeb Indus. Inc. v. Sumitomo Corp.*, 306 F.3d 469, 484 (7th Cir. 2002).

Mallinckrodt claims in a footnote that Illinois and other states have held that at least some of the AGC factors should be applied, and that other states have held that state antitrust law should be interpreted in harmony with federal law. *Mallinckrodt Br.* at 14, fn. 7. Mallinckrodt does not identify any case law which sets forth what AGC elements apply to a particular state's antitrust claims, or otherwise provide this Court with any legal authority which holds that a state antitrust claim should be dismissed for failure to satisfy the requirements imposed upon federal statutory antitrust claims under AGC. Without this information, there is no basis to dismiss the state antitrust claims, and Mallinckrodt's argument is waived. *See Developers Surety and Indemnity Co. v. Krause*, 2015 WL 3962287 (N.D. Ill. June 29, 2015) (Defendants waived Rule 12 (b) (6) motion where they fail to reference any authority for their argument).

The only factor that Mallinckrodt raises is its consistent claim that the Plaintiffs are indirect purchasers. *Mallinckrodt Br.* at 15. As discussed elsewhere in this memo, this is not an impediment to Plaintiffs' federal claims, and Mallinckrodt provides no explanation as to how this is basis to dismiss the state law claims. Again, Mallinckrodt has waived any argument for dismissal of the state claims based upon ACG. *See, id.*

### C. Plaintiffs Have Properly Stated Claims Under the Laws of the Respective States.

#### 1. Plaintiffs' Illinois Antitrust Claim is Proper.

Mallinckrodt argues that Plaintiffs have failed to state claims under various state statutes. *Mallinckrodt Br.* at 15-17. Mallinckrodt argues that the Illinois Antitrust Act does not apply

because, while it allows for recovery by indirect purchasers, it provides that "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General." 740 ILCS 10/7 (2). This is a procedural rule, not a substantive rule, and thus does not apply to class action claims brought in federal court. *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010); *In re Broiler Chicken Antitrust Litigation*, 2017 WL 5574376 at *30.

### 2. Plaintiffs Have Stated Claims Under Other State Laws.

Mallinckrodt next argues that Plaintiffs have failed to state claims under the antitrust and consumer protection statutes of other states because the laws in these states limit their reach to activities occurring within the state. *Mallinckrodt Br.* at 15-17. The SAC alleges claims on behalf of residents of these states, and thus alleges activities occurring within the state. *See* SAC ¶¶ 260-266, 269-289, 293-336, 341-348, 353-356).

Mallinckrodt also argues that claims under the Arizona, Hawaii, Utah and Nevada antitrust statutes should be dismissed because plaintiffs failed to provide timely notice to the respective state's attorney general. Mallinckrodt does not cite any case which says failure to comply with any of these notice requirements is grounds for dismissal, and nothing in the statutes themselves say that a case must be dismissed if not is not given. Thus, these statutes provide no basis for dismissal, especially given Plaintiffs' post-filing efforts to provide notice.

Finally, Mallinckrodt argues that the Arkansas Deceptive Trade Practices Act does not apply to practices "which are subject to and comply with any rule, order or statute administered by the Federal Trade Commission." *Mallinckrodt Br.* at 17. Ironically[15], Mallinckrodt claims

---

[15] Elsewhere, Mallinckrodt argues that the relatedness between this case and the FTC case should not matter. Mallinckrodt cannot have it both ways.

that paragraph 155 of the Complaint alleges that Mallinckrodt was subject to an FTC order relating to the allegations in the SAC, and therefore the Arkansas Deceptive Trade Practices Act should not apply. *Mallinckrodt Br.* at 17.

Tellingly, no case law is cited to support its interpretation of the Arkansas Act. In fact, the Arkansas Supreme Court has made clear that the safe harbor provisions of the Act apply according to the specific conduct rule, "meaning that it precludes claims only when the actions or transactions at issue have been specifically permitted or authorized under laws administered by" the FTC. *Air Evac EMS, Inc. v. USAble Mutual Ins. Co.*, 533 S.W.3d 572, 575 (2017).

Paragraph 155 of the Complaint alleges that Questcor and Mallinckrodt agreed to pay $100 million to settle FTC charges relating to Questcor's acquisition of the rights to Synacthen from Novartis in 2013. Nowhere does the SAC say that Mallinckrodt's wrongful conduct was specifically authorized by the FTC. Accordingly, the safe harbor language does not apply, and Plaintiffs have properly alleged claims under the Arkansas law.

## III. PLAINTIFFS HAVE ADEQUATELY STATED CLAIMS UNDER RICO (COUNTS IX-XI)

Mallinckrodt urges this Court to use its "common sense" when analyzing Plaintiffs' RICO claims. *Mallinckrodt Br.* at 17. While Plaintiffs certainly would not urge this Court to do otherwise, to the extent Mallinckrodt seeks to gloss over the well-pleaded factual averments of RICO in the Plaintiffs' SAC, and in particular the ASAP Enterprise, its invitation to employ "common sense" in the place of its own legal analysis and argument in support of its various grounds for dismissal should be rejected. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994)(citing *United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d

1261, 1269 (7th Cir. 1990).[16]  Indeed, it is nonsensical for Mallinckrodt to seek to avoid civil

liability under RICO for its conduct with Express Scripts on grounds that it "bears no

resemblance to the organized criminal conduct" which led to the passage of RICO.  *Mallinckrodt*

*Br*. at 17.  Too many courts have found that civil liability attaches under RICO for there to be

any question that a civil RICO claim may be stated against a drug company.  *See, e.g., Kaiser*

*Foundation Health Plan, Inc. v. Pfizer, Inc. (In re Neurontin Mktg. & Sales Practices Litig*.), 712

F.3d 21 (1st Cir. 2013)(affirming $140 million jury trial verdict under civil RICO); *Morgan v.*

*Bank of Waukegan*, 804 F.2d 970, 973-974 (7th Cir. 1986)(reversing dismissal of civil RICO

claim, noting "the expansiveness of civil RICO" and that "[t]his Court has consistently held that

RICO must be given the broad effect mandated by its plain language").

Speaking directly to Mallinckrodt's suggested approach here, the Seventh Circuit has

admonished that "[t[he sweep of RICO is admittedly broad, and our function is to apply the

language of the statute as drafted by Congress, not to rewrite the statute as we might prefer it to

be."  *Id*. at 974 (citing *Sedima v. Imrex, Inc.*, 473 U.S. 479, 499, 105 S.Ct. 3275, 3286-3287, 87

L.Ed. 346, 361 (1985)).  Indeed, the Supreme Court expressly stated, "[i]t is true that private

civil actions under the statute are being brought almost solely against [both legitimate and

illegitimate enterprises], rather than against the archetypal, intimidating mobster."  *Id*.  In

affirming the Seventh Circuit about the proper scope of civil RICO,[17] the Supreme Court held

---

[16] The Court in *United States Textiles* made clear that "a natural and common-sense approach" applies "to the pattern element of RICO" only.  *Id*. at 1269.  Here, Mallinckrodt interposes no serious challenge Plaintiffs' satisfaction of the "pattern element", relying on its own "threadbare recitals."  *E.g*., Mallinckrodt Br. at 22 ("*a priori* [Plaintiffs] fail to allege a pattern of racketeering activity"); 25 (claiming injury is "devoid of factual support").  Because such arguments wholly fail to address the well-pleaded averments of the complaint, they should be rejected.  *See* SAC ¶¶ 365-372 (for Count IX), 375-376, 378 (for Count X).
[17] The Seventh Circuit acknowledged the Supreme Court's affirmance on this point at *Morgan*, 804 F.2d at 974 ("the Supreme Court has affirmed our reasoning").  It is noteworthy that

that "the statute requires no more than [] the plaintiff alleg[ing] each element of the violation." *Id*. at 497, 105 S.Ct. at 3285, 87 L.Ed. at 359 (c*iting Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 398 (1984), aff'd, *post*, p.606).

### A. Plaintiffs Claim Under Section 1962(c) (Count IX) Is Properly Stated.

The Court in *Morgan* held that "Section 1964 of RICO enables a private plaintiff to bring a civil suit based on a violation of Section 1962." 804 F.2d at 972. "A violation of 1962(c) requires conduct of an enterprise through a pattern of racketeering activity." *Id*. at 973. A "crucial element" in both Section 1962(c) and 1962(a) "is the existence of a pattern of racketeering activity." *Id*. Both subsections require Plaintiffs to show an enterprise. *Id*.

For purposes of both subsections, Plaintiffs allege that the enterprise is the same, consisting of the same two "persons": Mallinckrodt and Express Scripts. SAC ¶¶ 359-360, 376. The SAC labels this enterprise the "ASAP Enterprise" only as a convenience to coincide with the name given to the program jointly created by Mallinckrodt and Express Scripts to conduct the affairs of their "association-in-fact" enterprise. SAC ¶ 360.[18] The enterprise is more than

---

Mallinckrodt makes no mention of *Morgan* anywhere in its brief, when its cited authority *Vicom* cites *Morgan* as the leading authority on RICO pleading standards. *See Vicom*, 20 F.3d at 780 ("our [] case law has continued to find helpful the factors we set out in *Morgan*").

[18] Mallinckrodt claims "ASAP is simply the system Mallinckrodt uses with Express Scripts" to sell Acthar. *Mallinckrodt Br.* at 19. But the fact of this purported "system" does not undermine the existence of the distinct enterprise Plaintiffs alleged Mallinckrodt created with Express Scripts. Indeed, there is no factual basis in the complaint for this Court to agree with Mallinckrodt that its "system" is part of its "normal day to day activities", as alleged. *Id*. Mallinckrodt's citation to *Myers v. Seung Heun Lee*, No. 1: 10-cv-131, 2010 U.S. Dist. LEXIS 99707 (E.D. Va. Sept. 21, 2010), an unpublished, nonprecedential opinion from the Eastern District of Virginia, and to *United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849 (7th Cir. 2013) for this proposition is wholly misguided as those cases are inapposite. In *Myers*, the plaintiff merely alleged an enterprise where there was "complete overlap between the defendants" as they were all part of the same *affiliated* entities controlled by one person, Sung Heun Lee. That is not the case here. In *Walgreens*, though the enterprise defined by the plaintiff consisted of two different entities,

adequately described. SAC ¶¶ 361 (describing the date of formation and duration), 362-365 (describing the conduct of and control over the enterprise).

The "pattern of racketeering activity" also is the same, and consisted of various acts of mail and wire fraud committed over more than a ten year period. SAC ¶¶ 366a-f. In particular, Plaintiffs point to, among other things, the ASAP forms Mallinckrodt had Express Scripts (via United BioSource) mail to its Rockford employees whose infant children were inflicted with IS, after the patient's medical provider contacted Mallinckrodt to purchase Acthar, SAC ¶¶ 33, 51, and the processing of prescriptions and payments in relation thereto. SAC ¶¶ 366d, f, 367-370.

The involvement of both Mallinckrodt and Express Scripts, by and through their wholly-owned subsidiary companies, also is clearly demarcated. Contrary to Mallinckrodt's claims, the two Defendants here are not "lumped together". *Mallinckrodt Br.* at 18.[19] Instead, the complaint describes UBC, acting as the "HUB" for both Mallinckrodt and Express Scripts, coordinating all

---

Walgreens and Par, the plaintiffs failed to show the alleged enterprise's *purpose* as opposed to just running their individual businesses for their "individual self-interests". *Walgreens*, 719 at 854-855. Plaintiffs here specified the purpose of the ASAP Enterprise as formed by Mallinckrodt and Express Scripts, but Plaintiffs also pled specifically that their payments for Acthar funneled through the ASAP Enterprise and were siphoned off to the ASAP Enterprise to operate UBC, the "hub" for Mallinckrodt and Express Scripts, which solely existed for the purpose of benefiting the enterprise. SAC ¶¶ 50-75 (describing the functions of the ASAP Enterprise with charts of the money flows being "siphoned" off to the enterprise); ¶ 366 (itemizing the specific payments from Plaintiffs for Acthar that were funneled through the ASAP Enterprise for the benefit of the ASAP Enterprise).

[19] It is curious that in opposition to Plaintiffs' RICO claims Mallinckrodt seeks to claim Express Script as its "agent" to avoid liability. *Mallinckrodt Br.* at 18-19. Yet, in opposition to the Plaintiffs' antitrust claims, Mallinckrodt argues Rockford is an "indirect purchaser" due to the separate, intermediate layer of Express Scripts. Mallinckrodt cannot have it both ways, and the fact that it takes inconsistent positions about its relationship with Express Scripts compels that its motion to dismiss be denied, so discovery into the actual facts may proceed.

aspects of the ASAP Enterprise.[20]  SAC ¶¶ 33, 51-54.  The details of the "interaction of all 4 elements of Express Scripts' functions on behalf of Mallinckrodt" are described in the complaint, including both the product and money flows.  SAC ¶¶ 55-75.

Mallinckrodt claims Plaintiffs' complaint insufficiently alleges its role in directing the affairs of the ASAP Enterprise.  *Mallinckrodt Br.* at 19-20.  Not so.  The SAC alleges specifically that Mallinckrodt's role in directing the affairs of the ASAP Enterprise included, but was not limited to, exerting control over the ASAP Enterprise, solely establishing and controlling the prices of Acthar, controlling the ASAP Program materials, controlling the website which enrolled patients in the exclusive distribution network, utilizing the mail and wires to process payments received from Plaintiffs to fund the ASAP Enterprise, and utilizing the mail and private shipping services to ship Acthar.  SAC ¶¶364-367.

Mallinckrodt's cited cases do not address situations like this case.[21]  Instead, Mallinckrodt places heavy reliance on the *Walgreens* case.  *United Food & Comm. Unions &*

---

[20] It is noteworthy that since this case was filed, Express Scripts has sold UBC to another company, thereby creating a third distinct "person" as part of the ongoing ASAP Enterprise. SAC ¶ 32.  Thus, Mallinckrodt's claim that there are "seven distinct companies" is factually wrong, and legally, there is no ground for dismissing a complaint which specifically defines the two (now three) distinct defendant companies, including all relevant subsidiaries, and then specifies the role of each in the pattern of racketeering activity.

[21] *Reves v. Ernst & Young,* 507 U.S. 170 (1993) is inapposite because the defendant firm did not directly participate in the operation or management of an enterprise.  Here, Plaintiffs allege that both Mallinckrodt and Express Scripts directly participated in the ASAP Enterprise and directly benefited from their participation.  SAC ¶¶ 48-75.
*Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158 (2001), is equally misguided.  The United States Supreme Court reversed the judgment of the Second Circuit upholding the district court's dismissal of the complaint, and remanded noting that, while the enterprise required by the statute must be more than a person operating under another name, the requisite distinctness between the corporate owner and his corporation was established since they were legally different entities. Here, Plaintiffs allege Mallinckrodt and Express Scripts participated in the ASAP Enterprise for the benefit of the ASAP Enterprise.   SAC ¶¶ 48-75, 357-373

*Employers Midwest Health Benefits Fund v. Walgreens Co.*, 719 F.3d 849 (7th Cir. 2013)(cited at *Mallinckrodt Br.* at 19, 20, 25). But *Walgreens* is inapposite for several reasons.

First, *Walgreens* involved the sale of generic drugs at retail pharmacy, not the direct distribution of specialty drugs, as here. Thus, the "distribution chain" is different. *Id*. at 856.

Second, *Walgreens* involved "activities... entirely consistent with Walgreens and Par each going about its own business.", *Id*. at 855. Here, the ASAP Enterprise is an entirely new (as of 2007) "system" created by Mallinckrodt with Express Scripts to ensure that Acthar's inflated prices were paid by Rockford, Acument and the Class. Mallinckrodt Br. at 19. Mallinckrodt, like Par, is in the business of "manufacturing ... drugs and marketing its products to pharmacies.". *Id*. Express Scripts is a PBM, in the business of contracting with payors, like Rockford, to obtain lower drug prices. Neither is in the business of coordinating the independent decision making of patients, doctors and payors to ensure that a drug manufacturer's inflated drug prices are passed on to the payors, bypassing the cost containment obligations of the PBM. The ASAP Enterprise in fact undermines the stated business of a PBM.

Finally, this case is more akin to *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300 (3d Cir. 2010), distinguished by the *Walgreens* Court. *Insurance Brokerage* involved "a system of bid rigging", which the Third Circuit found to be an enterprise despite the congruent interests of its members. *Walgreens*, 719 F.3d at 855-56. Here, Mallinckrodt concedes that ASAP was a separate "system" from its normal business operation. *Mallinckrodt Br.*at 19 This critical concession should allow Plaintiffs' RICO claim to proceed to discovery.

### B.    Plaintiffs' Claim Under Section 1962(a)(Count X) is Properly Stated.

Count X of Plaintiffs' complaint states a claim for the Defendants' violation of RICO with regard to their use and investment of income to advance their ASAP Enterprise. SAC ¶¶

374-379. "A violation of 1962(a) requires the receipt of income from a pattern of racketeering and the use of that income in the operation of an enterprise." *Morgan*, 804 F.2d at 972-73; *see also Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 965 (N.D. Ill. 2002) (holding plaintiff stated a claim for violation of §1962(a) when provided all reasonable inferences isn its favor, as required).

Mallinckrodt argues that "Plaintiffs offer only boilerplate allegations" and that its claim is "devoid of factual support" *Mallinckrodt Br*. at 24-25. The SAC specifically pleads Plaintiffs' many individual payments for Acthar as income to the ASAP Enterprise generated from their pattern of racketeering, and the use of that income from the Plaintiffs by the ASAP Enterprise to operate their enterprise via the ASAP Program. SAC ¶¶ 50-75, 366, 374-379.

### C. Plaintiffs' Claim Under Section 1962(d)(Count XI) is Properly Stated.

Count XI similarly states a claim for RICO conspiracy under §1962(d). To state a claim for §1962(d) conspiracy, a plaintiff must allege that (1) the defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) the defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011).

Mallinckrodt argues that, since a conspiracy claim is predicated upon a RICO violation, the conspiracy claim fails because Plaintiffs failed to allege a RICO violation under §1962(c). As discussed above, the SAC has stated a RICO claim under §1962(c), and thus a conspiracy to violate §1962(c) under §1962(d) is pled.

Mallinckrodt also argues that the SAC fails to allege an illicit agreement. To the contrary, Plaintiffs allege that Mallinckrodt and Express Scripts explicitly contracted to have

26

Express Scripts serve as Mallinckrodt's exclusive agent so that they they could inflate the prices and limit distribution of Acthar in violation of §1962(c). SAC ¶48-75, 382. Additionally, the interactions between Mallinckrodt and Express Scripts with respect to the ASAP Program allows the inference of an agreement to carry out the scheme to inflate prices and maximize profits. SAC ¶383-384. *See DeGuelle*, 664 F.3d at 2011(dismissal improper because coordinated actions by defendants to conceal their fraud allows the inference of a conspiracy). Plaintiffs have properly pled a claim for conspiracy under §1962 (d), and the motion to dismiss must be denied.

## IV.    PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR FRAUD.

Mallinckrodt next contends that Count IV fails to state a claim for fraud because Plaintiffs have not pled this claim with particularity. *Mallinckrodt Br*. at 25-27. The "particularity" pleading requirement for fraud is found in Federal Rule 9(b). While a plaintiff ordinarily must describe the who, what, when, where and how of the fraud, the Seventh Circuit has repeatedly warned that "courts and litigants often erroneously take an overly rigid view of the formulation, and that the precise details that must be included in a complaint may vary on the facts of a given case." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal citations omitted).

Mallinckrodt first argues that Plaintiffs failed to sufficiently plead any false statements made by Mallinckrodt. *Mallinckrodt Br*. at 25-26. To the contrary, Plaintiffs allege that the Defendants materially misrepresented the value of the product in the marketplace. SAC ¶ 204, 366 (b). These false representations were made over a period of years, and Plaintiff cannot plead them with any more specificity at this juncture.

Mallinckrodt also argues that Plaintiffs have not alleged that they justifiably relied upon any false statements. *Mallinckrodt Br*. at 26-27. However, Plaintiffs allege that they relied

upon Defendants' misrepresentations about the value of Acthar in purchasing and/or reimbursing Acthar at the inflated amounts charged by the Defendants, and as a result, overpaid for Acthar. SAC ¶ 205, 208 - 210. These allegations allege reliance sufficiently.

Mallinckrodt argues that Plaintiffs are alleging that the Acthar prices were themselves fraudulent statements, and that the courts in *Thompson's Gas & Elec. Services, Inc. v. BP America, Inc.*, 691 F.Supp.2d 860 (N.D. Ill. 2010) and *Amerigas Propane, LP v. BP America, Inc.*, 691 F.Supp.2d 844 (N.D. Ill. 2010) rejected such a claim. The Court in both cases dismissed the fraud claims, finding that the plaintiffs did not allege that the defendants made any false representations to plaintiffs themselves, or that the plaintiffs relied upon such representations to their detriment. *Thompson's* 691 F.Supp.2d at 870, *Amerigas* at 691 F.Supp.2d 853. While the Court recognized that under Illinois law, false representations need not be made directly to the party claiming to have relied on them, *id.* (citing *St. Joseph Hospital v. Corbetta Construction Co., Inc.*, 21 Ill. App. 3d 925 (1st Dist. 1974)), the Plaintiffs did not allege that they were recipients of false statements.

In stark contrast, Plaintiffs' claims are based upon false statements made directly to them. SAC ¶¶ 205-208.

## V.   PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS FOR CONSPIRACY/CONCERTED ACTION AND UNJUST ENRICHMENT (COUNTS II, III, AND V)

Mallinckrodt next moves to dismiss Plaintiffs' claim for conspiracy to defraud/concerted action. *Mallinckrodt Br.* at 27. "Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *GMAC, LLC v. Hillquiet*, 652 F.Supp.2d 908, 922 (N.D. Ill. 2009) (quoting *Adcock v. Brakegate*, 164 Ill.2d 54, 63 (1994). Under Illinois law, a claim for

conspiracy to commit fraud requires: (1) a conspiracy); (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud. *MetroPCS v. Devor*, 215 F.Supp.3d 626, 634 (N.D. Ill. 2016). The effect of a conspiracy claim is that all parties of the conspiracy are liable for all of the wrongful acts of others. *GMAC,* 652 F.Supp.2d at 923; *see also, U.S. v. Baines,* 812 F.2d 41, 42 (1st Cir. 1987) ("conspiracy is like a train," in that "(w)hen a party knowingly steps aboard, he is part of the crew and assumes conspirator's responsibility for the existing freight—or conduct—regardless of whether he is aware of just what is composed.")

Plaintiffs have sufficiently pled all of the elements for a civil conspiracy, and unjust enrichment. They alleged that the defendants entered into an agreement to defraud and deceive in violation of federal and state common law. SAC ¶¶ 212-217. Accordingly, Plaintiffs have properly stated a claim for conspiracy to defraud, as their underlying claims are properly pled. *See MetroPCS* 215 F.Supp.3d at 634.

## VI.   DISMISSAL BASED UPON UNIDENTIFIED STATUTES OF LIMITATIONS IS IMPROPER.

Finally, Mallinckrodt argues that unspecified claims may fall outside of unidentified statutes of limitations and therefore should be dismissed. *Mallinckrodt Br.* at 28-29. A statute of limitations defense is an affirmative defense, and dismissing complaints on the ground of statutes of limitations is typically improper, as plaintiffs need not anticipate and attempt to plead around all potential defenses. *See Reiser v. Residential Funding Corp.* 380 F.3d 1027 (7th Cir. 2004); *Xechem, Inc., v. Bristol-Myer Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Complaints need not contain any information about defenses and may not be dismissed for that omission."). As a result, dismissal based upon the statute of limitations is only appropriate if the plaintiff has affirmatively pled himself out of court, and the complaint must plainly reveal that the action is

untimely under the governing statute of limitations. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014).

Mallinckrodt has failed to show that Plaintiffs have pled themselves outside of the statute of limitations. It has not even identified an applicable statute of limitations that would bar any claims, let alone provided this Court with any basis to dismiss any portion of any claim based upon the statute of limitations.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' companion brief filed in opposition to Express Scripts' Motion (to the extent they substantially overlap), Mallinckrodt's Motion to Dismiss should be denied. In the event this Court finds any claim is insufficiently pled, Plaintiff should be given the opportunity to re-plead via amendment, as this is the Court's first opportunity to review Defendants' challenges to Plaintiffs' complaint.[22]

Dated: March 29, 2018                                    Respectfully submitted,


                                                         *s/ Donald E. Haviland, Jr.*
                                                         Donald E. Haviland, Jr., Esq.
                                                         (Pro Hac Vice)
                                                         *haviland@havilandhughes.com*
                                                         William H. Platt II, Esq.
                                                         (Pro Hac Vice)
                                                         *platt@havilandhughes.com*
                                                         **HAVILAND HUGHES**
                                                         201 South Maple Avenue
                                                         Suite 110
                                                         Ambler, PA 19002
                                                         T: 215-609-4661
                                                         F: 215-392-4400

---

[22] Plaintiff's respectfully direct the Court to their argument expressly addressing Express Scripts claim that leave to amend should not be allowed. *See ESI Br.* at Section V.

Peter J. Flowers, Esq.
(IL Attorney ID No. 06210847)
*pjf@meyers-flowers.com*
Jonathan P. Mincieli, Esq.
(IL Attorney ID No. 06274091)
*jpm@meyers-flowers.com*
**MEYERS & FLOWERS, LLC**
3 North Second Sreet, Suite 300
St. Charles, IL 60174
T: 630-232-6333
F: 630-845-8982

Kerry F. Partridge, Esq.
*kerry.partridge@rockfordil.gov*
Ifeanyi C. Mogbana, Esq.
*Ifeanyi.mogbana@rockfordil.gov*
City Attorney, Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154
F: 815-967-9649

*Attorneys for Plaintiffs,*
*City of Rockford, Acument Global*
*Technologies, Inc. and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 29, 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
