## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### Western Division

| | |
|---|---|
| **CITY OF ROCKFORD and ACUMENT GLOBAL TECHNOLOGIES, INC.** *on behalf of themselves and all others similarly situated,* | **Civil Action No.: 3:17-cv-50107** |
| Plaintiffs, | Honorable Frederick J. Kapala Judge Presiding |
| v. | Magistrate Judge Iain D. Johnston |
| **MALLINCKRODT ARD INC.,** *formerly known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** doing business as **CURASCRIPT, SD; ACCREDO HEALTH GROUP, INC.;** *and* **UNITED BIOSOURCE CORPORATION,** | |
| Defendants. | |

### MALLINCKRODT DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF

### MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 2

I.    FEDERAL ANTITRUST CLAIMS FAIL (Counts VI and VII) ...................................... 2

    A.    *Illinois Brick* Bars Plaintiff' Federal Antitrust Claims ........................... 2

    B.    Plaintiffs' Claims are Not Plausible ................................................................ 4

        1.    Plaintiffs Cannot Circumvent Their Pleading Requirements ..................... 4

        2.    Plaintiffs Do Not Plausibly Allege an Exclusive Distribution Arrangement or Related Sherman Act Violation. ...................................... 5

        3.    Plaintiffs Do Not Plausibly Allege that the Purchase of Synacthen violated the Sherman Act .......................................................... 7

II.    STATE LAW CLAIMS FAIL (Count VIII) ................................................................ 8

    A.    Plaintiffs Lack Standing to Bring State Law Claims. ............................................. 8

    B.    Plaintiffs Fail to State Claims Under the Laws of Various States. ......................... 9

        1.    Arizona, Hawaii, Utah, and Nevada .......................................................... 9

        2.    Illinois .......................................................................................................... 10

        3.    Arkansas ..................................................................................................... 10

III.    PLAINTIFFS' RICO CLAIMS FAIL (Counts IX, X, and XI). ..................................... 10

    A.    Plaintiffs Have Not Pleaded Plausible RICO Injuries or Violations. .................. 10

    B.    Plaintiffs Fail to State a Claim Under Section 1962(c) (Civil RICO). ................. 11

        1.    Plaintiffs Have Not Sufficiently Alleged a RICO Enterprise or Conduct. .................................................................................................... 12

        2.    Plaintiffs Identify No Predicate Acts or Pattern of Racketeering. ........... 15

        3.    Plaintiffs Entirely Ignore Their Proximate Cause Deficiencies ............... 16

    C.    Plaintiffs Fail to State a Claim Under Section 1962(a) (RICO Investment) ......... 16

    D.    Plaintiffs' Section 1962(d) Conspiracy Claim Similarly Fails. ........................... 17

i

IV.    PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL (Counts IV, V, II, III) ...................................................................................................................... 17

    A.    Each of Plaintiffs' State Law Claims Fails to Satisfy Rule 9(b)........................... 17

    B.    Plaintiffs' Fraud Claim Fails................................................................................ 18

    C.    Plaintiffs Forfeit Their Conspiracy and Unjust Enrichment Claims..................... 19

V.    LEAVE TO AMEND IS UNNECESSARY ..................................................................... 20

CONCLUSION................................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. USAble Mutual Ins. Co.*,
 533 S.W.3d 572 (2017) ...............................................................................12

*Alinsky v. U.S.*,
 No. 98 C 6189, 2002 WL 844714 (N.D. Ill. May 1, 2002) ....................................24

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)......................................................................................2, 4

*Assoc. General Contractors of Cal. Inc. v. Cal. State Council of Carpenters*,
 459 U.S. 519 (1983).....................................................................................9, 10

*Association Benefit Servs., Inc. v. Caremark RX, Inc.*,
 493 F.3d 841 (7th Cir. 2007) .............................................................................23

*In re ATM Fee Antitr. Liti.*,
 686 F.3d 741 (9th Cir. 2012) ..............................................................................3

*Baker v. IBP, Inc.*,
 357 F.3d 685 (7th Cir. 2004) .............................................................................14

*Beckler v. Visa U.S.A.*, Inc., Civ.
 No. 09-04-C-00030, 2004 WL 2115144 (N.D. Dist. Aug. 23, 2004).....................10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)......................................................................................1, 2

*Bigalke v. Creditrust Corp.*,
 162 F. Supp. 2d 996 (N.D. Ill. 2001) ...................................................................2

*Bober v. Illinois Workers' Comp. Comm'n*,
 2012 IL App (1st) 102042-U ..............................................................................23

*Boisjoly v. Morton Thiokol, Inc.*,
 706 F. Supp. 795 (D. Utah 1988)........................................................................10

*Borsellino v. Goldman Sachs Grp., Inc.*,
 477 F.3d 502 (7th Cir. 2007) .............................................................................20

*In re Brand Name Prescription Drugs Antitrust Litig.*,
 No. 94 C 897, 1996 WL 167350 (N.D. Ill. Apr. 4, 1996), *opinion modified on
 reconsideration*, No. 94 C 897, 1996 WL 351178 (N.D. Ill. June 24, 1996),
 *rev'd*, 123 F.3d 599 (7th Cir. 1997) ......................................................................3

*In Re Broiler Chicken,*
290 F. Supp. 3d 772 (N.D. Ill. 2017) ....................................................................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
429 U.S. 477 (1977)............................................................................................10

*Car Carriers, Inc. v. Ford Motor Co.,*
745 F.2d 1101 (7th Cir. 1984) ............................................................................2, 6

*Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.,*
211 F. Supp. 712 (N.D. Ill. 1962) ..........................................................................5

*Conley v. Gibson,*
355 U.S. 41 (1957)...................................................................................................2

*Cont'l T. V., Inc. v. GTE Sylvania Inc,*
433 U.S. 36 (1977)...............................................................................................2, 7

*Cumis Ins. Soci., Inc. v. Peters,*
983 F. Supp. 787 (N.D. Ill. 1997) ...........................................................................1

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,*
No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ...........................9, 12

*Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
878 F. Supp. 1156 (N.D. Ill. 1995) .......................................................................23

*Damon Corp v. Geheb,*
1982 WL 1927 (1982)..............................................................................................5

*Developers Sur. & Indem. Co. v. Krause*
No. 14 C 6275, 2015 WL 3962287 (N.D. Ill. June 29, 2015) ...............................10

*Diskin v. Daily Racing Form, Inc.,*
No. 92 CIV. 6347 (MBM), 1994 WL 330229 (S.D.N.Y. July 7, 1994)...................4

*In re Dynamic Random Access Memory (Dram) Antitrust Litigation,*
516 F. Supp. 2d 1072 (N.D. Cal. 2007) .................................................................10

*E&L Consult., Ltd. v. Doman Indus. Ltd.,*
472 F.3d 23 (2nd Cir. 2006).....................................................................................7

*Fishman v. Estate of Wirtz,*
807 F.2d 520 (7th Cir. 1986) ...................................................................................8

*Fitzgerald v. Chrysler Corp.,*
116 F.3d 225 (7th Cir. 1997) .................................................................................14

*FTC v. Mallinckrodt ARD, Inc.*,
    F.T.C. No. 1310172 (D.D.C. Jan. 30, 2017) .............................................................5

*Goren v. New Vision Int'l. Inc.*,
    156 F.3d 729 (7th Cir. 1998) ...................................................................18, 19

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Ill. 2007) ...................................................12

*Grove Fresh Distrib., Inc. v. Flavor Fresh Foods, Inc.*,
    720 F. Supp. 714 (N.D. Ill. 1989) .........................................................19

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
    492 U.S. 248 (1989) ...............................................................................13

*Hawkins v. Groot Indus., Inc.*,
    No. 01 C 1731, 2003 WL 22057238 (N.D. Ill. Sept. 2, 2003) ...............8

*In re Insurance Brokerage Antitrust Litig.*,
    618 F.3d 300 (3rd Cir. 2010). ...............................................................16

*Int'l Bhd. of Teamsters, Local 734 Health & Welfare Tr. Fund v. Philip Morris Inc.*,
    196 F.3d 818 (7th Cir. 1999) .................................................................10

*Jennings v. Emry*,
    910 F.2d 1434 (7th Cir. 1990) ...............................................................13

*Jones v. Connors*,
    No. 11 C 8276, 2012 WL 4361500 (N.D. Ill. Sept. 20, 2012) ..............22

*Kaiser Foundation Health Plan Inc. v. Pfizer, Inc. (In re Neurontin Mktg. & Sales Practices Litig.)*,
    712 F.3d 21 (1st Cir. 2013) ....................................................................12

*Kanne v. Visa U.S.A., Inc.*,
    723 N.W.2d 293 (Neb. 2006) .................................................................10

*Lorix v. Crompton Corp.*,
    736 N.W.2d 619 (Minn. 2007) ...............................................................10

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ...............................................................13

*Minn-Chem, Inc. v. Agrium Inc.*,
    657 F.3d 650 (7th Cir. 2011) ...................................................................9

*Morgan v. Bank of Waukegan*,
   804 F.2d 970 (7th Cir. 1986) ..................................................................13

*In Re Opana ER Antitrust Litigation*,
   162 F. Supp. 3d 704 (N.D. Ill. 2016) ......................................................11

*Orr v. Beamon*,
   77 F. Supp. 2d 1208 (D. Kan. 1999) .......................................................10

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
   868 So. 2d 331 (Miss. 2004) ....................................................................10

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
   281 F.3d 629 (7th Cir. 2002) ......................................................................3

*Patterson Dental Co. v. McGaughey*,
   Civ. No. 85-469-PA, 1985 WL 25732 (D. Or. Dec. 9, 1985)...................10

*In re Plasma-Derivative Protein Therapies Antitr. Litig.*,
   MDL No. 2109, 1:09-cv-07666, 2012 WL 39766 (N.D. Ill. 2012) .......8, 9

*In re Potash Antitr. Litig.*,
   667 F. Supp. 2d 907 (N.D. Ill. 2009) .........................................................9

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
   836 F.3d 770 (7th Cir. 2016) ....................................................................20

*Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*,
   381 F.3d 717 (3rd Cir. 2004) ......................................................................6

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)...................................................................................16

*Shapo v. Engle*,
   No. 98 C 7909, 2000 WL 876994 (N.D. Ill. July 3, 2000) ......................20

*Shapo v. O'Shaughnessy*,
   246 F. Supp. 2d 935 (N.D. Ill. 2002). ......................................................19

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
   192 F. Supp. 3d 963 (N.D. Ill. 2016) .......................................................18

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
   873 F.3d 574 (7th Cir. 2017) ....................................................................13

*Siegel v. General Star Management Co.*,
   2007 WL 1239058 (N.D. Ill. 2007) ............................................................4

*Slaney v. Int'l Amateur Athletic Fed'n*,
    244 F.3d 580 (7th Cir. 2001) ........................................................17, 19

*Southard v. Visa U.S.A., Inc.*,
    734 N.W.2d 192 (Iowa 2007) ............................................................10

*Stark v. Visa U.S.A., Inc.*,
    No.03-0555030-CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004) ................10

*Strang v. Visa U.S.A., Inc.*,
    No. 03 CV 011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) ....................11

*Sullivan v. All Web Leads, Inc.*,
    No. 17C1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017) ......................................2

*Thompson's Gas & Elec. Services, Inc. v. BP America, Inc.*,
    691 F. Supp. 2d 860 (N.D. Ill. 2010) ...............................................21, 22

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ...........................................................20

*U.S. v. Arnold, Schwinn & Co.*,
    388 U.S. 365 (1967)......................................................................2, 7

*United Food & Comm. Unions & Employers Midwest Health Benefits Fund v.
Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ...............................................14, 15, 16, 19

*VBR Tours, LLC. v. Nat'l R.R. Passenger Corp.*,
    No. 14-cv-804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ..................................7

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ..........................................................13, 17

*Vinci v. Waste Management, Inc.*,
    36 Cal. App. 4th 1811 (1995) ............................................................10

*Williams v. Aztar Indiana Gaming Corp.*,
    351 F.3d 294 (7th Cir. 2003) ............................................................17

*In re Yasmin*,
    Nos. 3:09-cv-20071, 3:09-md-02100, 2010 WL 3119499 (S.D. Ill. Aug. 5,
    2010) ....................................................................................18

**Statutes**

15 U.S.C. § 16(a) ...........................................................................5

18 U.S.C. § 1962(a) ........................................................................18

18 U.S.C. § 1962(c)(d) ..................................................................................................14, 19

740 Ill. Comp. Laws 10/7(2) .............................................................................................11

**Rules**

Fed. R. Civ. Proc. § 9(b) ...........................................................................................17, 20, 23

Fed. R. Civ. Proc. § 23 .......................................................................................................11

Mallinckrodt plc and Mallinckrodt ARD Inc. ("Mallinckrodt") submit this Reply Memorandum in Support of Motion to Dismiss the City of Rockford and Acument Global Technologies, Inc. (collectively, "Plaintiffs")' Second Amended Class Action Complaint (the "Complaint" or "SAC").

## INTRODUCTION

Much like its Complaint, Plaintiffs' opposition is a highly-charged attack against Mallinckrodt, the manufacturers of a life-saving drug. Although Plaintiffs argue this case is not about pricing, Plaintiffs' Complaint makes it plain that it is entirely about pricing. Nevertheless, setting aside their accusatory language, the facts alleged do not support any causes of action here. The legal analysis is relatively straightforward, and Plaintiffs' Complaint should be dismissed with prejudice.

Plaintiffs' legal analysis is riddled with flaws. For example, first, despite the fact that FTC consent orders are not admissions of liability, Plaintiffs critically depend on the existence of the FTC matter and the Retrophin case to avoid dismissal.[1] Although Plaintiffs concede that "Mallinckrodt did not admit liability in either case," they nonetheless argue that the portion of the consent order including injunctive relief is a "judicial admission." (Pls. Opp. Br. 3, fn. 6). Case law and the consent order itself say otherwise. Second, while Plaintiffs suggest that Defendants misapprehend *Twombly*, they rely on pre-*Twombly* cases as if they were good law. For example, Plaintiffs cite *Cumis Ins. Soci., Inc. v. Peters*, 983 F. Supp. 787 (N.D. Ill. 1997) for the standard that "the court may dismiss the complaint only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." (Pls. Opp. Br. 5). Yet, this proposition is directly attributed to *Conley v. Gibson*, 355 U.S. 41, 45–46

---

[1] In seeking to avoid dismissal, Rockford attempts to incorporate by reference the entire FTC Complaint which was attached as Exhibit B to its original complaint but was omitted from the current complaint filed on December 8, 2017 in response to Mallinckrodt's motion to strike.

(1957), which *Twombly* retired, and does not reflect the current state of the law. Third, and in a similar vein, Plaintiffs choose to ignore controlling precedent on the issue of exclusive distribution and instead urge reliance on a case that was overruled in 1977, *U.S. v. Arnold, Schwinn, & Co.*, 87 S. Ct. 1856 (1967), *overruled by Cont. T.V., Inc. v. GTE Sylvania Inc.*, 97 S.Ct. 2549 (1977). Finally, Plaintiffs fail to respond to many of Mallinckrodt's arguments, particularly with respect to the application of *Illinois Brick*, legality of the distribution arrangement, and the failure to sufficiently allege RICO claims.

## LEGAL STANDARD

As Plaintiffs agree, this Court should "draw on its judicial experience and common sense" when deciding the instant motion and whether plausible claims to relief have been alleged following *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). While Plaintiffs repeatedly state that the Court "must" accept their facts as true, their Complaint is wrought with conclusory allegations which are not considered "facts" and must be ignored. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sullivan v. All Web Leads, Inc.*, No. 17C1307, 2017 WL 2378079, at *4 (N.D. Ill. June 1, 2017). As the Seventh Circuit has made clear, "conclusory statements must be accompanied by supporting factual allegations." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1110 (7th Cir. 1984). This court is "neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claim." *Bigalke v. Creditrust Corp.*, 162 F. Supp. 2d 996, 997 (N.D. Ill. 2001).

## I.     FEDERAL ANTITRUST CLAIMS FAIL (COUNTS VI and VII).

### A.     *Illinois Brick* Bars Plaintiffs' Federal Antitrust Claims.

Plaintiffs argue that the circumstances of this case are outside of the reach of *Illinois Brick*, which prohibits indirect purchasers from recovering damages under federal antitrust law.

Specifically, Plaintiffs contend that any allegation of a "vertical conspiracy" means "*Illinois Brick* does not limit antitrust litigation." (Pls. Opp. Br. 7).

"Vertical conspiracies," however, are not broadly exempt from *Illinois Brick*'s reach as Plaintiffs suggest.[2] To be sure, vertical conspiracies where the plaintiff purchases from a co-conspirator may not implicate *Illinois Brick* in certain situations. *See Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 634 (7th Cir. 2002) ("first buyer from a conspirator is the right party to sue"). Here, as detailed in Plaintiffs' Complaint, Acument purchased from CVS Caremark, a company which is not alleged to be a co-conspirator. (SAC ¶ 196). There certainly is no basis to apply the co-conspirator exception to the claims of Acument or other putative class members that did not purchase from an alleged co-conspirator. *Illinois Brick* is a bar to their recovery.

Furthermore, even alleged purchases from a co-conspirator do not automatically save an indirect purchaser's claim. "For the indirect purchaser to merit standing under this exception, the conspiracy must fix the price paid by the plaintiffs." *In re ATM Fee Antitr. Liti.*, 686 F.3d 741, 749 (9th Cir. 2012). Here, there are no plausible allegations that the prices that Plaintiffs paid were set by an agreement between Mallinckrodt and Express Scripts.[3] Instead, Plaintiffs allege that "Mallinckrodt set the average wholesale price used by Express Scripts for reimbursement." (SAC ¶ 80). However, ESI charged Rockford for Acthar pursuant to the terms of a *separate* agreement between Rockford and ESI. (SAC ¶ 81). Similarly, Acument "contracted with CVS Caremark for the provision of specialty drugs like Acthar" and "made direct payments to CVS

---

[2] Plaintiffs rely on the reversed case of *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 167350, at *1 (N.D. Ill. Apr. 4, 1996), *opinion modified on reconsideration*, No. 94 C 897, 1996 WL 351178 (N.D. Ill. June 24, 1996), and *rev'd*, 123 F.3d 599 (7th Cir. 1997).

[3] Plaintiffs define "Express Scripts" to refer collectively to five separate defendants: Express Scripts Holding Company ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc., doing business as CuraScript, SD ("CuraScript"), Accredo Health Group, Inc. ("Accredo"), and United BioSource Corporation ("UBC"). (SAC ¶ 1).

Caremark." (SAC ¶¶ 196, 246). Thus, the prices that Rockford and Acument paid were set by their agreements with ESI and CVS Caremark respectively, not by any agreement between Mallinckrodt and Express Scripts.

In sum, there are insufficient allegations of a conspiracy to invoke a "co-conspirator" exception here. While Plaintiffs make conclusory allegations of "price-fixing," more specific allegations *contradict* the notion that Express Scripts and Mallinckrodt fixed the price paid by Plaintiffs.[4] Plaintiffs' allegations show nothing other than a garden variety distribution system involving a wholesale price (that Mallinckrodt set) and a retail price (set by agreement between Plaintiffs and ESI or CVS Caremark, their pharmacy benefit managers ("PBMs")). Plaintiffs' legal conclusions regarding the existence of a price-fixing conspiracy are not facts and provide no basis for invoking an exception to *Illinois Brick*. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").[5]

### B. Plaintiffs' Federal Antitrust Claims are Not Plausible.

#### 1. *Plaintiffs Cannot Circumvent Their Pleading Requirements.*

Plaintiffs make a sweeping argument that the plausibility of their case "is demonstrated by their similarity to the antitrust claims brought by the FTC and Retrophin." (Pls. Opp. Br. 6). First, Plaintiffs gloss over the fact that the FTC action had nothing to do with the vertical

---

[4] This Court has previously recognized that "a single count cannot contain contradictory allegations." *Siegel v. General Star Management Co.*, 2007 WL 1239058 (N.D. Ill. 2007).

[5] Plaintiffs summarily argue—without any reference to legal authority—that "the 'indirect purchaser' rule presents no bar to a claim for monopolization under Section 2 . . . wherein the claim is premised upon the monopolist's unlawful exercise of its monopoly power in colluding with an intermediary." (Pls. Opp. Br. 6). However, to the extent Plaintiffs have alleged a Section 2 claim based on the same conduct, it is also barred by *Illinois Brick*. *See generally Diskin v. Daily Racing Form, Inc.*, No. 92 CIV. 6347 (MBM), 1994 WL 330229, at *8 (S.D.N.Y. July 7, 1994) ("direct-purchaser rule bars plaintiff from bringing a Sherman Act § 2 claim as an indirect purchaser").

distribution agreement at issue in their Complaint. Instead, both the FTC and Retrophin matters were focused exclusively on the purchase of Synacthen from Novartis.

Second, the referenced consent order between the FTC and Mallinckrodt (which, again, relates only to the purchase of Synacthen) specifically states: "This Order *shall not be used as evidence in any proceedings other than a proceeding by Plaintiffs or the Synacthen Sublicensee regarding enforcement or modification of this Order.*" Stipulated Order for Permanent Injunction and Equitable Monetary Relief, *FTC v. Mallinckrodt ARD Inc.,* F.T.C. No. 1310172, at 8 (D.D.C. Jan. 30, 2017) (emphasis added). This corresponds to the fact that consent judgments are not *prima facie* evidence of an antitrust violation under the Clayton Act. *See* 15 U.S.C. § 16(a). Section 5(a) of the Clayton Act expressly precludes evidence of consent judgments in civil cases and has been relied on by courts to strike portions of complaints that refer to consent decrees. *Id.*; *see Damon Corp v. Geheb*, 1982 WL 1927 at *2 (1982); *see generally Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 211 F. Supp. 712, 724 (N.D. Ill. 1962) ("If the judgment referred to would not be admissible in evidence at the trial of this action, then it should not be pleaded.").

Overall, notwithstanding Plaintiffs' recognition that "Mallinckrodt did not admit liability in either case," they inexplicably argue that Mallinckrodt made a "judicial admission" in the portion of the Consent Order imposing an injunction.  (Pls. Opp. Br. 3, fn. 6).  However, they cite no supporting authority, and the statutory and case law (and the consent order itself) provide that the order is not an admission.

> ### 2. Plaintiffs Do Not Plausibly Allege an Exclusive Distribution Arrangement or Related Sherman Act Violation.

Plaintiffs argue that there is an exclusive distribution arrangement for Acthar through Express Scripts entities—a distributor, CuraScript; a hub, UBC; a PBM, ESI; and a special

pharmacy, Accredo. (*See* SAC ¶¶ 46−84). As set out in Mallinckrodt's initial brief, Plaintiffs also allege that Acument purchased Acthar from CVS Caremark and thus concede that distribution and sales of Acthar are **not** handled exclusively through the ESI entities.[6] Although Acument did not buy from an Express Scripts entity, the Complaint alleges that it pays the same supposedly inflated prices. Clearly then, it was not an exclusive distribution chain that led to the pricing about which Plaintiffs complain. Plaintiffs failed to respond to this argument in their opposition brief.

Further, even if there were an exclusive distribution arrangement, such arrangements are "presumptively legal" with "procompetitive benefits." *Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 738 (3rd Cir. 2004). Accordingly, to avoid dismissal, Plaintiffs must allege an anticompetitive effect resulting from exclusive distribution. *See Car Carriers*, 745 F.2d at 1107. In trying to explain how the Acthar distribution arrangement could plausibly be conceived as anticompetitive, Plaintiffs' state the following:

> Even in the presence of monopoly, prices depend on the willingness of buyers to pay the seller's price, which always depends on the buyer's judgment of the product's value. There is thus, even with monopoly, a limit on how much a single seller can charge. However, that restraint is removed when the monopolistic seller and the largest buyers' agent collude, as is here the case.

(Pls. Opp. Br. 11). Not surprisingly, Plaintiffs cite no authorities to support this position, which both reason and case law contradict. Plaintiffs' extensive reliance on the *long-overruled* case of *U.S. v. Arthur, Schwinn & Co.* shows the feebleness of Plaintiffs' position.[7]

---

[6] In fact, Acthar is sold through multiple specialty pharmacies other than Accredo and a significant percentage of the putative class would have obtained their Acthar outside of the supposed exclusive distribution chain.

[7] The Supreme Court in *Schwinn* incorrectly judged the challenged distribution system by applying a *per se* rule. The case was overruled by *Cont'l T. V., Inc. v. GTE Sylvania Inc*, 433 U.S. 36, 37 (1977) which changed the standard by which such vertical restraints should be judged to a "rule of reason" because of

The case law after *Schwinn* was overruled shows that distribution arrangements of the sort at issue here are typically procompetitive. In particular, it is firmly established that an exclusive distribution arrangement "provides no monopolistic benefit to [defendant] that it does not already enjoy." *See E&L Consult., Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2nd Cir. 2006); *VBR Tours, LLC. v. Nat'l R.R. Passenger Corp.*, No. 14-cv-804, 2015 WL 5693735, *12−13 (N.D. Ill. Sept. 28, 2015) (rejecting implausible allegations that exclusive distribution arrangement entered into by monopolist foreclosed competition). Despite their conclusory arguments, Plaintiffs' allegations fail to plausibly allege an anticompetitive effect of the arrangement through which Acthar is distributed to patients.

3. *Plaintiffs Do Not Plausibly Allege that the Purchase of Synacthen violated the Sherman Act.*

Next, Plaintiffs do not make any plausible allegations that the acquisition of Synacthen was anticompetitive. As set out in Mallinckrodt's initial brief, Plaintiffs must allege how the market for Acthar would have been different "but-for" the purchase of Synacthen. *See generally Fishman v. Estate of Wirtz*, 807 F.2d 520, 550 (7th Cir. 1986) (showing fact of damage requires "quantifying the difference between what actually happened and what would have happened in a hypothetical free market"). Plaintiffs theorize that if a company other than Questcor had bought Synacthen, the drug would have been on the market and either disciplined Acthar pricing or have been a substitute product that Plaintiffs could have purchased at a lower price. Yet, there are no specific factual allegations to support their prediction or make their claims plausible. Even if a different company had acquired Synacthen and tried to bring it to market, Plaintiffs recognize the "uncertainty that Synacthen, a preclinical drug, would be approved by the FDA" since "FDA

---

the "redeeming virtues" of vertical restraints; "[v]ertical restrictions promote interbrand competition by allowing the manufacturer to achieve certain efficiencies in the distribution of his products."

approval is required to market pharmaceuticals to U.S. consumers." (SAC ¶¶ 122, 128). Ultimately, their claim that Synacthen would have successfully been brought to market is much too speculative to survive dismissal.[8]

## II. STATE LAW ANTITRUST CLAIMS FAIL (Count VIII).

### A. Plaintiffs Lack Standing to Bring State Law Claims.

Article III requires that a named plaintiff have standing as to each discrete claim. *See, e.g.*, *Hawkins v. Groot Indus., Inc.*, No. 01 C 1731, 2003 WL 22057238, at *2 (N.D. Ill. Sept. 2, 2003). Plaintiffs only allege purchases of Acthar in Illinois and Tennessee; there is no alleged conduct or injury in any other state. Plaintiffs ask this Court to postpone the assessment of Article III standing, and while it is true that "courts have not always taken a uniform view" as to whether Article III standing should be addressed prior to or after class certification. *Plasma*, 2012 WL 39766. This Court can—and should—consider the issue now.

This Court has dismissed cases where Article III standing was lacking. For example, *In re Dairy Farmers of Am., Inc. Cheese Antitr. Litig.* the plaintiffs "urge[d] the Court to postpone its inquiry into Article III standing until after class certification" but the Court was unpersuaded. No. 09 CV 3690, 2013 WL 4506000 (N.D. Ill. Aug. 2, 2013). The Court went on to assess whether plaintiffs had "standing to assert claims in states in which they did not allege that they purchased Defendants' products" and ultimately found dismissal was appropriate for claims in states "in which [Plaintiffs] do not reside and/or did not purchase the products at issue." *Id.*; *see also In re Potash Antitr. Litig.*, 667 F. Supp. 2d 907, 924 (N.D. Ill. 2009) (dismissing state antitrust and unfair competition claims in states where plaintiffs do not reside), *rev'd on other*

---

[8] Finally, with respect to both the Acthar distribution arrangement and purchase of Synacthen, Plaintiffs contend that they were injured by high prices. However, Plaintiffs entirely fail to respond to Mallinckrodt's argument regarding the relevance of the Orphan Drug Act to Acthar pricing. This goes directly to the plausibility assessment since, even at the motion to dismiss stage, antitrust claims must be "plausible in light of the competing explanations." *See Plasma–Derivative*, 764 F. Supp. 2d at 1002.

*grounds by Minn-Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011); *In re Plasma-Derivative Protein Therapies Antitr. Litig.*, MDL No. 2109, 1:09-cv-07666, 2012 WL 39766 at * 6 (N.D. Ill. Jan. 9, 2012) (lack of standing where plaintiff "does not claim to suffer its own personalized injury by virtue of defendants' alleged violations of non-California state-law").

*Assoc. General Contractors of Cal. Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983) (hereinafter, "*AGC*"), requires a separate determination on antitrust standing. Although there is some variation by state in the application of *AGC*'s multi-factor balancing test, the factors weigh against a finding of standing here. Notably, Plaintiffs make no meaningful effort to demonstrate antitrust standing under the *AGC* test. Instead, Plaintiffs devote space to arguing that Defendants have "waived" the argument that this Court should consider *AGC*. Plaintiffs' reliance on *Developers Sur. & Indem. Co. v. Krause* for their waiver argument is misplaced, however, since that case dealt with a complete failure to "develop [an] argument in any meaningful way" by "not including reference to any legal doctrine or authority." No. 14 C 6275, 2015 WL 3962287, at *2 (N.D. Ill. June 29, 2015). Here, in contrast, Mallinckrodt devoted over a page of argument to the issue, with supporting authorities.

## B.     Plaintiffs Fail to State Claims Under the Laws of Various States.

Generally, a lack of standing dooms Plaintiffs' state law claims, but there are additional bases for dismissal in particular states. Plaintiffs' attempt to counter Mallinckrodt's state-specific arguments with respect to Illinois, Arizona, Hawaii, Utah, Nevada, and Arkansas laws, are unavailing.

### 1.     *Arizona, Hawaii, Utah, and Nevada.*

Plaintiffs' opposition vaguely refers to "post-filing efforts to provide notice," without reference to a particular state, and this is insufficient. (Pls. Opp. Br. 19). Plaintiffs effectively

concede that they failed to provide timely, pre-filing notice to the respective Attorneys General in Arizona, Hawaii, Utah, and Nevada.

> 2.    *Illinois.*

Plaintiffs concede that the Illinois Antitrust Act expressly prohibits class actions. 740 Ill. Comp. Laws 10/7(2). However, they argue that Federal Rule of Civil Procedure 23 governs to ultimately allow their putative class claim to proceed under state law. In *In Re Opana ER Antitrust Litigation*, this Court found the bar to be "part of [the] State's framework of substantive rights and remedies" and thus dismissed an indirect purchaser class claim. 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016); *but see In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772 (N.D. Ill. 2017). The Court should apply the same reasoning here.

> 3.    *Arkansas.*

Plaintiffs do not dispute the existence of an exception to Arkansas's statute, but whether the exception applies here.  Notably, *Air Evac EMS, Inc. v. USAble Mutual Ins. Co.*, 533 S.W.3d 572, 575 (2017), relied on by Plaintiffs, addressed the application of a prior iteration of ADTPA *without* specific reference to Federal Trade Commission regulations. More to the point, the alleged conduct of Mallinckrodt in purchasing Synacthen and in utilizing a vertical distribution arrangement for Acthar should not even fall within the statute's scope. The statute is limited to certain enumerated conduct plus other practices which typically "affront[] the sense of justice, decency, or reasonableness." And, this latter "catch all provision" has previously been found to exclude antitrust claims. *See In re Graphics Proces. Units Antitr. Litig.*, 527 F. Supp. 2d 1011, 1029−30 (N.D. Ill. 2007) (statute does not apply to price-fixing); *In re Dairy Farmers of Am., Inc. Cheese Antitr. Litig.*, No. 9 CV 3690, 2015 WL 3988488, *17 (N.D. Ill. June 29, 2015).

## III.    PLAINTIFFS' RICO CLAIMS FAIL (Counts IX, X, and XI).

### A.    Plaintiffs Have Not Pleaded Plausible RICO Injuries or Violations.

Nothing in Plaintiffs' opposition cures the various insurmountable pleading deficiencies that are fatal to each of their RICO claims. Plaintiffs cite several cases involving application of RICO in a civil setting (Pls. Opp. Br. 21−22), but those authorities provide no support for Plaintiffs in the instant case, who negotiated contracts related to the purchase of Acthar.[9] Indeed:

> [w]hile it is clear that the scope of civil RICO extends beyond the prototypical mobster or organized crime syndicate, *H.J., Inc.,* 492 U.S. at 248–49, 109 S.Ct. at 2905, it is equally evident that RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992); *see also Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 782 (7th Cir. 1994).

Plaintiffs have not pleaded cognizable RICO claims. Plaintiffs' opposition makes clear that their RICO claims are all centered on the theory that "Defendants" engaged in anticompetitive conduct and colluded to charge "inflated" prices for Acthar. (*See, e.g.*, Pls. Opp. Br. 25). Plaintiffs claim the purported RICO enterprise was "established to . . . commit fraud so all Defendants could unfairly and illegally profit from the monopolistic and anti-competitive sale of Acthar." (SAC ¶¶ 360.a, 376). But as Mallinckrodt already noted, "a violation of antitrust law is not a predicate act under RICO." *Jennings v. Emry*, 910 F.2d 1434, 1437 (7th Cir. 1990). Plaintiffs offer no response; each of their RICO claims fail.

### B. Plaintiffs Fail to State a Claim Under Section 1962(c) (Civil RICO).

#### 1. *Plaintiffs Have Not Sufficiently Alleged a RICO Enterprise or Conduct.*

Plaintiffs make no meaningful response to the point that a company plus its agents is not an "enterprise" under RICO. *Fitzgerald v. Chrysler Corp*., 116 F.3d 225, 227 (7th Cir. 1997);

---

[9] Plaintiffs' reliance on *Kaiser Found. Health Plan Inc. v. Pfizer, Inc.*, 712 F.3d 21 (1st Cir. 2013) is misplaced because the Seventh Circuit has rejected the First Circuit's reasoning. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 578 (7th Cir. 2017). Further, *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir. 1986) is inapposite because there the plaintiff adequately alleged conduct of an enterprise through a pattern of racketeering activity, unlike Plaintiffs here. *See infra*, p.15.

*Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004). Plaintiffs have neither attempted to distinguish *Chrysler* and *Baker* nor have they cited any case law supporting the notion that a plaintiff may sustain a RICO claim where the alleged enterprise consists solely of the defendants plus their respective agents.[10] (*See* Pls. Opp. Br. 22−23).

Nor is there any support for Plaintiffs' bald contention that the activities of the supposed enterprise differ from each Defendant's day-to-day activities. (*See* Pls. Opp. Br. 25); *United Food & Comm. Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853−54 (7th Cir. 2013). To the contrary, Plaintiffs admit that the ASAP program is used by Mallinckrodt to "distribute and sell Acthar directly to patients" and that the purported enterprise has the "common purpose of selling, purchasing, and administering Acthar to Plaintiffs and their individual participants, and deriving profits from these activities." (SAC ¶¶ 23, 360, 376).

There are no allegations of activities by Mallinckrodt, or any of the Defendants, that were on behalf of the enterprise and not their own self interests. As in *Walgreen*, in which the Seventh Circuit rejected the employee benefit plan's RICO claim based upon allegations that Walgreen and a drug manufacturer overcharged for prescriptions, there is "nothing in the complaint reveal[ing] how one might infer that [the companies' regular communications] or actions were undertaken on behalf of the enterprise as opposed to on behalf of Walgreen and [the drug manufacturer] in their individual capacities, to advance their individual self-interests." *Id.* at 855.

Plaintiffs contend *Walgreen* is "inapposite" for two reasons. First, Plaintiffs claim the "distribution chain" is different since *Walgreen* "involved the sale of generic drugs at a retail pharmacy, not the direct distribution of specialty drugs." (Pls. Opp. Br. 25). This is a distinction

---

[10] Plaintiffs bizarrely claim that by making this argument, Mallinckrodt admits Express Scripts is its agent "to avoid liability." (Pls. Opp. Br. fn. 19). It is *Plaintiffs* who characterized Express Scripts as an "agent" and Mallinckrodt simply observed how Plaintiffs' own agency allegations defeat their RICO enterprise claim. (*See, e.g.*, SAC ¶¶ 1, 20, 33, 52−53, 74, 94, 96, 221, 224−25, 232−33, 250, 366, 381, Ex. A).

without merit. Plaintiffs do not attempt to explain how any differences in the distribution chain (e.g. retail pharmacy versus specialty pharmacy) render *Walgreen's* holding about what is required to sufficiently allege existence and conduct of a RICO enterprise to survive a motion to dismiss inapplicable. Second, Plaintiffs claim the ASAP program is a "separate system" from Mallinckrodt's normal business activities. This is entirely devoid of support. Plaintiffs falsely, and disingenuously, claim "Mallinckrodt concedes that ASAP was a separate 'system' from its normal business operations" and claim "[t]his critical concession should allow Plaintiffs' RICO claim to proceed to discovery." (*See* Pls. Opp. Br. 25, citing Defs. Br. 19). Far from conceding that ASAP was not part of its normal business operations, Mallinckrodt was explaining why Plaintiffs' characterization of the "ASAP program" was inconsistent with a RICO enterprise:

> The RICO enterprise is allegedly "manifested in the ASAP program." (SAC ¶¶ 360, 376). But ASAP is simply the system Mallinckrodt utilizes with Express Scripts to, as Plaintiffs note, "distribute and sell Acthar directly to patients."

(Defs. Br. 19) (citing SAC ¶ 23).

Plaintiffs seize on the word "system" in an apparent attempt to draw analogies to an illegal "system of bid rigging" at issue in *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 378 (3d Cir. 2010). (*See* Pls. Opp. Br. 25). But, "[s]ystem" is not a RICO term of art. Regardless of whether the ASAP program is described as a "system" or "program" or "framework" or some other synonymous term, the important—and for Plaintiffs, fatal—point is that Plaintiffs' allegations do not reveal any conduct by the Defendants that was not plausibly a part of their normal business operations in getting Acthar to customers.

*In re Insurance Brokerage* does not help Plaintiffs. The plaintiff there plausibly alleged an enterprise consisting of an insurance broker and insurers that rigged bids. The *Walgreen* court expressly considered *In re Insurance*, and found it to be "inapt" because the defendants there:

could not have achieved their goals – namely, fixing a competitive bidding process in order to win insurance contracts at inflated prices – without cooperation that fell outside the bounds of the parties' normal commercial relationships. Companies competing for business in a legitimate market that assigns business through bidding do not disclose their bids to one another in advance. **By contrast, while it is true that Walgreens does not make drugs and Par does not fill prescriptions, and that the two companies must therefore "cooperate" in order for drugs to reach consumers, such cooperation describes virtually every prescription pharmaceutical chain**.

*Walgreen*, 719 F.3d at 856 (emphasis added). Similarly, there is no basis to infer that Mallinckrodt was conducting the affairs of an enterprise where, as here, there are no allegations plausibly indicating that the cooperation between the Defendants constituted anything other than what is required to distribute specialty pharmaceuticals to the end user.

Plaintiffs' contention that they sufficiently alleged Mallinckrodt's participation in and control over enterprise activities, as required by *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993), does not survive scrutiny. Plaintiffs claim Mallinckrodt directed enterprise affairs by:

exerting control over the ASAP Enterprise, solely establishing and controlling the prices of Acthar, controlling the ASAP Program materials, controlling the website which enrolled patients in the distribution network, utilizing the mail and wires to process payments received from Plaintiffs to fund the ASAP Enterprise, and utilizing the mail and private shipping services to ship Acthar.

(Pls. Opp. Br. 24, *citing* SAC ¶¶ 364−367). But the only allegations pertaining specifically to Mallinckrodt[11] at SAC ¶¶ 364−367 are Plaintiffs' conclusory statements that Mallinckrodt (1) "establishes the prices of Acthar through fraudulent conduct" (SAC ¶ 364(a)) and (2) "process[ed] prescriptions via mail and the wire and receiv[ed] payments from Rockford" (SAC ¶ 366(d)). Plaintiffs do not, and cannot, allege any other activities or control specific to Mallinckrodt. The rest of Plaintiffs' allegations improperly lump together "Defendants" or refer

---

[11] And, of course, Plaintiffs' definition of "Mallinckrodt" improperly includes Mallinckrodt ARD Inc. and its parent company, Mallinckrodt plc. (SAC ¶ 1). Plaintiffs entirely ignore this defect.

to "Mallinckrodt and Express Scripts" together without specifying who supposedly did what.[12] (SAC ¶¶ 364−367). This is insufficient to state a RICO claim. *See, e.g.*, *Vicom*, 20 F.3d at 778.

### 2. *Plaintiffs Identify No Predicate Acts or Pattern of Racketeering.*

Plaintiffs fail to allege any false statements, misrepresentations, or concealment of material facts with the specificity required by Rule 9(b) to support the theory that Defendants employed a "fraudulent scheme." *See Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003); (SAC ¶ 364(f)). Nor have Plaintiffs alleged the predicate mail and wire fraud acts with the requisite specificity, as they have not sufficiently identified a *single* instance of mail or wire fraud. *Slaney v. Int'l Amateur Athl. Fed'n*, 244 F.3d 580 (7th Cir. 2001).

Plaintiffs ignore Mallinckrodt's arguments and gloss over their pleading failure by simply saying "[t]he 'pattern of racketeering activity' is also the same, and consisted of various acts of mail and wire fraud committed over more than a ten year period." (Pls. Opp. Br. 23). This falls flat. Plaintiffs "point to" the (1) ASAP forms and (2) "the processing of prescriptions and payments in relation thereto." (Pls. Opp. Br. 23). But Plaintiffs do not begin to explain how any such communications or actions were fraudulent or (i) contained a misrepresentation, (ii) made to Plaintiffs, and (iii) reasonably relied upon by them. *Goren v. New Vision Int'l. Inc.*, 156 F.3d 729 (7th Cir. 1998).

### 3. *Plaintiffs Entirely Ignore Their Proximate Cause Deficiencies.*

Plaintiffs do not even attempt to address their fatal proximate causation defects; they simply ignore Mallinckrodt's argument and authorities altogether in the hopes that this Court will too. But this Court, as others, has rejected similar claims brought by third-party payors (TPPs) seeking to recoup purported losses of prescription reimbursements. *See, e.g.*, *Sidney*

---

[12] This is improper since "Express Scripts" is defined to refer collectively to five separate defendants and "Mallinckrodt" is defined to refer collectively to two separate defendants. (SAC ¶ 1).

*Hillman Health Ctr. of Rochester v. Abbott Labs.*, 192 F. Supp. 3d 963, 968 (N.D. Ill. 2016) (collecting cases) (dismissing TPPs' putative class action for lack of causation), *aff'd sub nom. Abbott Labs*, 873 F.3d 574; *In re Yasmin*, Nos. 3:09-cv-20071, 3:09-md-02100, 2010 WL 3119499, at *5 (S.D. Ill. Aug. 5, 2010). Plaintiffs' concession that reimbursements involve "independent decision making of patients, doctors and payors" only reinforces the lack of proximate causation here. (Pls. Opp. Br. 25).

### C. Plaintiffs Fail to State a Claim Under Section 1962(a) (RICO Investment).

Plaintiffs' opposition does nothing to rehabilitate their failed 1962 (a) RICO investment claim, which fails for the same reasons that their civil RICO claim fails, and also because Plaintiffs have not adequately alleged harm from the purported use or investment of racketeering income that is distinct from the 1962(c) harm. *See Grove Fresh Distrib., Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716−17 (N.D. Ill. 1989). Plaintiffs conflate the purported harm from their 1962(c) and 1962(a) claims as being "inflated reimbursements" and "overpayment" for Acthar. (SAC ¶¶ 371, 377). Plaintiffs claim they allege "many individual payments for Acthar as income to the ASAP Enterprise" (Pls. Opp. Br. 26), but fail to allege: (1) how such income was used or invested in the enterprise or (2) how the harm was unique from the 1962(c) harm. Plaintiffs' own cited authority recognizes that a RICO claimant must allege, other than in "conclusory fashion," how the racketeering income was invested to injure the plaintiff and how the plaintiff "suffered an investment injury separate and distinct from the predicate acts." *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 965−66 (N.D. Ill. 2002). But Plaintiffs allege only that "the use and investment of racketeering income by Mallinckrodt and Express Scripts directly and proximately injured the Plaintiffs and the Class in a manner that was distinct from the injury caused by the pattern of racketeering activity described above." (SAC ¶ 378). This is insufficient.

### D. Plaintiffs' Section 1962(d) Conspiracy Claim Similarly Fails.

Where, as here, a 1962(c) claim fails, a 1962(d) conspiracy claim premised upon the same facts also fails. *Walgreen*, 719 F.3d at 856; *Goren*, 156 F.3d at 732. Plaintiffs have failed to state a claim for a RICO violation for the reasons set forth above. And Plaintiffs' assertion that "the SAC has stated a RICO claim under § 1962(c), and thus a conspiracy to violate § 1962(d) is pled" is simply not accurate. (Pls. Opp. Br. 26). A conspiracy claim requires the additional elements of an *illicit* agreement. *Slaney*, 244 F.3d at 600. Plaintiffs offer no non-conclusory allegations evidencing the existence of an illicit agreement or an agreement to violate RICO, but only an entirely permissible and unremarkable commercial distribution arrangement. Plaintiffs reliance on *DeGuelle v. Camilli*, 664. F.3d 192 (7th Cir. 2011) for the proposition that their allegations "allow[] the inference of an agreement to carry out the scheme to inflate prices and maximize profits" is misplaced. (Pls. Opp. Br. 27). In *DeGuelle*, there were sufficient facts alleged to infer the existence of an agreement to violate RICO where defendants allegedly "acted in tandem" by engaging in tax fraud, altering and/or destroying records, and acting to conceal their fraud by attempting to silence or terminate an employee. *Id.* at 205. Here, Plaintiffs have not alleged facts showing illicit activities or coordination by Defendants to carry them out.

## IV. PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL (Counts IV, V, II, III).

### A. Each of Plaintiffs' State Law Claims Fails to Satisfy Rule 9(b).

Plaintiffs fail to satisfy the heightened pleading standard for their claims of fraud, conspiracy to defraud, and unjust enrichment. *See Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (claims that "sound of fraud" are subject to heightened pleading requirements). Plaintiffs' own authority recognizes that "plaintiffs must use some means of injecting precision and some measure of substantiation into their allegations of fraud." *U.S. ex*

*rel. Presser v. Acacia Mental Health Clinic, LLC*[13], 836 F.3d 770, 776 (7th Cir. 2016) (internal citations omitted) (Pls. Opp. Br. 27). Against the Rule 9(b) standard, their allegations are entirely inadequate in their level of detail. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007) (requiring the "who, what, when, where, and how").

### B. Plaintiffs' Common Law Fraud Claim Fails.

Plaintiffs have utterly failed to plead a claim for fraud as they do not, and cannot, identify a single false statement made by Mallinckrodt. Plaintiffs assert only that "Defendants materially misrepresented the value of the product in the marketplace" and cite two paragraphs of their Complaint: 204 and 366(b). (Pls. Opp. Br. 27). Their allegations do not come close to identifying a fraudulent statement.[14] While Plaintiffs' misrepresentation allegations are hopelessly vague, they appear to claim the price of Acthar was in and of itself a fraudulent misrepresentation.[15]

Plaintiffs' attempts to distinguish controlling Illinois case law rejecting the premise that price can be a fraudulent misrepresentation are unavailing. In *Thompson's Gas & Elec. Services, Inc. v. BP America, Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) plaintiff attempted unsuccessfully to assert a fraud claim by arguing that the defendants' allegedly "inflated" propane prices constituted false statements of fact. *Id.* The court flatly rejected this contention:

---

[13] In any event, *Acadia*, which involved the Wisconsin False Claims Act, provides no support here. Unlike cases of fraud, *Acadia* recognized that a False Claims Act plaintiff need not allege the specific fraudulent bills submitted to the government which the nurse practitioner plaintiff would not have been in a position to see herself, and where she adequately alleged the nature and scope of the underlying fraudulent activity. *Id.* at 777. Further, even with the less exacting standard applied to such claims, the *Acadia* court still dismissed all but one of the fraudulent scheme claims for failure to state a claim with the required specificity. *Id.* at 780−81. Here, Plaintiffs are the very entities that purportedly received and relied on the alleged misrepresentations, so they should be able to allege the surrounding circumstances with particularity.

[14] At SAC ¶ 366(b), Plaintiffs claim "Mallinckrodt and Express Scripts misled Rockford by fraudulently stating over the internet and through the mail that Rockford and the Class would receive affordable healthcare and contained costs of Acthar." At SAC ¶ 204, Plaintiffs claim "Defendants" made some unspecified "material misrepresentations" that the prices for Acthar "represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace."

[15] *See, e.g.*, SAC ¶¶ 205, 206, 209.

> Plaintiffs cite no case law to support their assertion that [the price] qualifies as a misrepresentation, and it is difficult to see how it does . . . The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow "false." . . . Without allegations of a false statement relied upon by Plaintiffs, Plaintiffs' fraud claim must fail.

*Id.* Similarly, in *BP America*, the court found that a fraud claim requires reliance "on a particular statement at issue" and held that a "fraud on the market theory" could not support a claim for common law fraud. 691 F. Supp. 2d at 853. Plaintiffs' attempt to base a fraud claim upon an "inflated price" in lieu of actual misrepresentations fails as a matter of law.

### C. Plaintiffs Forfeit Their Conspiracy and Unjust Enrichment Claims.

Plaintiffs forfeit their conspiracy to defraud and unjust enrichment claims by failing to respond to Defendants' arguments and authorities and offering no analysis of their claims whatsoever. Apart from reciting the elements of conspiracy claim, Plaintiffs' entire argument for this and their unjust enrichment claim consists of three sentences:

> "Plaintiffs have sufficiently pled all of the elements for a civil conspiracy and unjust enrichment. They alleged that the defendants [sic] entered into an agreement to defraud and deceive in violation of federal and state common law. SAC ¶¶ 212−217. Accordingly, Plaintiffs have properly stated a claim for conspiracy to defraud, as their underlying claims are properly pled. *See MetroPCS* 215 F. Supp. 26 at 634[16]."

(Pls. Opp. Br. 28−29). Plaintiffs' paltry effort fails to preserve their claims.[17] *See Jones v. Connors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("failure to respond to arguments . . . in a motion to dismiss operates as a waiver or forfeiture of the claim").

In any event, both claims fail for the reasons set out in Mallinckrodt's opening brief— none of which Plaintiffs even attempt to address. These include, *inter alia*: (1) failing to allege

---

[16] *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634 (N.D. Ill. 2016) affords Plaintiffs no support. There, the Court granted plaintiff a default judgment on a host of claims arising out of defendants' theft and illegal reselling of telephone handsets for use on plaintiff's wireless service. *Id.* The court found plaintiff sufficiently pleaded a conspiracy claim by detailing overt acts reflecting an agreement amongst defendants "to illicitly acquire, advertise, traffic and resell unlawfully unlocked [handsets]." *Id.*

[17] Plaintiffs' efforts to preserve their conspiracy claims are insufficient, but they make absolutely no effort whatsoever to respond, analyze, or defend their unjust enrichment claim.

facts with specificity under Rule 9(b) showing that Defendants[18] agreed to defraud Plaintiffs (and not simply a lawful distribution agreement); (2) failing to identify any overt acts in furtherance of the alleged conspiracy; and (3) failing to identify any underlying tort or unlawful conduct.

Plaintiffs concede their common law claims are based on the exact same conduct as their deficient antitrust and RICO claims. (Pls. Opp. Br. 29, SAC ¶¶ 212−217; SAC ¶¶ 192, 200). Plaintiffs' antirust and RICO pleading deficiencies thus also render their conspiracy and unjust enrichment claims defective as a matter of law. *Damato v. Merrill Lynch*, 878 F. Supp. 1156, 1161 (N.D. Ill. 1995) (dismissing conspiracy claim based on same conduct as failed RICO and fraud claims); *Assoc. Bene. Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 855 (7th Cir. 2007) ("resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well"); *Bober*, 246 F.3d at 943 (dismissing unjust enrichment claim where fraud claim failed).

## V.     LEAVE TO AMEND IS UNNECESSARY

Plaintiffs have twice amended their complaint already, and Plaintiffs make passing reference to seeking to amend for a third time.[19] However, leave to amend "is not to be automatically granted," and Plaintiffs fail to make a meaningful argument for leave here. Furthermore, "[l]eave to amend is inappropriate where to do so would be futile." *Alinsky v. U.S.*, No. 98 C 6189, 2002 WL 844714, at *1 (N.D. Ill. May 1, 2002). For the reasons set out above, especially the application of *Illinois Brick*, leave would be futile here.

## CONCLUSION

The Court should, respectfully, dismiss the Complaint against Mallinckrodt with prejudice in its entirety.

---

[18] Plaintiffs' "group pleading" and lumping together of the Defendants is also insufficient to state a claim. *See Bober v. Illinois Workers' Comp. Comm'n,* 2012 IL App (1st) 102042-U, ¶ 46 (dismissing conspiracy claim where the defendants were "lumped together").

[19] Plaintiffs seek to incorporate by reference their arguments for leave from their contemporaneous response to the Express Scripts Defendants.

Dated: April 30, 2018

Respectfully Submitted,

**COUNSEL FOR DEFENDANTS
MALLINCKRODT plc and
MALLINCKRODT ARD INC.**


/s/ Scott Collins Sullivan

Scott Collins Sullivan
WilliamsMcCarthyLLP
120 West State St.
P.O. Box 219
Rockford, IL 61105-0219
(815) 987-8900
ssullivan@wilmac.com

G. Patrick Watson (pro hac vice)
Lindsay Sklar Johnson (pro hac vice)
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@ bclplaw.com
lindsay.johnson@ bclplaw.com

Rebecca A. Nelson
Herbert R. Giorgio, Jr.
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
ranelson@ bclplaw.com
herb.giorgio@ bclplaw.com

Philip D. Bartz (pro hac vice)
Bryan Cave Leighton Paisner LLP
1155 F Street, N.W.
Washington, DC 20004
(202) 508-6000

21

philip.bartz@bclplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Scott Collins Sullivan

Scott Collins Sullivan
WilliamsMcCarthyLLP
120 West State St.
P.O. Box 219
Rockford, IL 61105-0219
(815) 987-8900
ssullivan@wilmac.com