IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **CITY OF ROCKFORD,** *et al.*<br>                                    Plaintiffs,<br><br>            v.<br><br>**MALLINCKRODT ARD INC.,**  *et al.*,<br>                                    Defendants. | **Case No. 3:17-cv-50107**<br>Honorable Frederick J. Kapala<br>Magistrate Judge Iain D. Johnston |
| **MSP RECOVERY CLAIMS, SERIES LLC**, *et al.,*<br>                                    Plaintiffs,<br><br>            v.<br><br>**MALLINCKRODT ARD INC.,**<br>                                    Defendants. | **Case No. 1:18-cv-00379**<br>Honorable Frederick J. Kapala<br>Magistrate Judge Iain D. Johnston |

**AGREED ORDER ESTABLISHING PRODUCTION PROTOCOL FOR
ELECTRONICALLY STORED INFORMATION**

This matter has been brought before the Court by the parties in the above-captioned litigation and the parties through counsel have agreed to the form and entry of this Order establishing a protocol for the production of documents in this matter.  The procedures and protocols outlined herein govern the production of Electronically Stored Information ("ESI," as defined below) by a party during the pendency of this litigation as described in Federal Rules of Civil Procedure 26, 33, 34, 37 and 45.  The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this case on electronic discovery issues.  Furthermore, the Parties acknowledge the spirit of the Seventh Circuit's ESI Pilot Program and agree to adhere to its Principles.

I.        **PURPOSE**

This Stipulated Order ("Order") will govern the discovery and use of ESI in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable local orders and

rules. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

## II.       COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

## III.      E-DISCOVERY LIAISONS

Each party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring concerning ESI. Each E-discovery Liaison will:

a.       be knowledgeable about the party's e-discovery efforts;

b.       be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

c.       be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

Each party will notify the other of any changes of its designated E-discovery Liaison.

## IV.      EXCHANGE OF ESI-RELATED INFORMATION

Within 60 days of the entry of this Agreed Order, the parties agree to exchange in writing the information listed in items (a) through (e) below. The parties agree and understand that their respective responses are based on their knowledge and understanding as of the date of the response, and each party agrees to amend or supplement its responses in a timely manner if it learns that in some material respect its response is incomplete or incorrect:

a.      A preliminary list of custodians (including current employees, former employees and any other individuals or companies) likely to have discoverable information, including job title and a brief description of job responsibilities for each individual, and a general description of the devices and/or storage systems on which the custodian's ESI is located;

b.      A general description of any other systems for electronic communications and ESI storage ("non-custodial sources") that may contain discoverable information;

c.      A general description or, at the party's option, a copy of the party's operative document retention policies, throughout the relevant time period, pertaining to any electronic communications and or/ESI storage system(s) that may contain discoverable information;

d.      A description of any potentially discoverable ESI that the party is aware of having been lost or destroyed;

e.      A description of any potentially discoverable ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

i.      the reasons for the party's contention regarding accessibility; and

ii.      the proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

## V.    PARTIES' AGREED TO TERMS

### A.  Scope

1.    As used in this Agreed Order, the term ESI means discoverable documents and data existing in electronic form consistent with Fed. R. Civ. P. 34(a), including e-mail, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after export by the responding party into a reasonably usable form, and other reasonably accessible electronically stored information relevant to the claim(s) or defense(s) of any party subject to discovery pursuant to Fed. R. Civ. P. 26(b)(1).

2.    Nothing in this Agreed Order shall supersede the provisions of any Court-approved Protective Order entered in this case.

3.    The parties agree that the following sources of information are presumed to be inaccessible[1] and are not required to be preserved or produced unless and until a specific need for such information has been shown.

    a.    Deleted, slack, fragmented, or unallocated data on hard drives, or other data only accessible by forensics.

    b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

    d.    Back-up data that is substantially duplicative of data that are more accessible elsewhere.

---

[1] Sources of information that do not appear on this list may also be inaccessible.

     e.     Server, system or network logs.

     f.     Electronic data (e.g. email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), *provided that a copy of all such electronic data is routinely saved elsewhere* (such as on a server, laptop, desktop computer, or "cloud" storage).

4.     Within a reasonable period of time after receiving requests for document production, the producing party shall conduct a reasonable and good faith search for ESI that is responsive to the requests for document production, or portions thereof, for which the producing party has agreed or been ordered to produce responsive documents. ESI which is neither privileged nor otherwise protected shall be timely reviewed and, if responsive to a request for document production, or portion thereof, produced in accordance with the Federal Rules of Civil Procedure, the Local Rules of this Court and the guidelines herein.

5.     ESI Search: The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. The parties anticipate that they will agree on search terms, date restrictions, and custodian restrictions. The documents on which the search terms hit and that are within the date and custodian restrictions are referred to as the "Review Set."

     a.     Search Terms:

          1.     Prior to implementing search terms, the producing party will provide a list of proposed search terms to the requesting party and the parties will meet and confer regarding any additional terms proposed by

the requesting party. Once an initial list of terms is agreed upon, the producing party will provide a search term hit list or hit report after global de-duplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). The parties will use the report to modify terms, if necessary.

2.      If a party disputes a specific term as being overly broad, the producing party can agree to review a statistically valid sample  of documents from that term to determine if the term is returning mostly responsive documents.  The producing party agrees to share the results of that review and any responsive documents so that the parties can make an informed decision regarding modifications to the specific term in dispute.

3.      If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter or report, with a discussion of the relevance and/or burden associated with the search terms in dispute.

4.      The producing party agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set.  The size of the statistically random sample shall be calculated using a confidence level of 95% and a

6

margin of error of 2%. If responsive documents are found during the Null Set review, the producing party agrees to produce the responsive documents separate and apart from the regular production. The parties will then meet and confer to determine if any additional terms, or modifications to existing terms, are needed to ensure substantive, responsive documents are not missed.

b. Technology Assisted Review: Prior to using predictive coding, also known as technology assisted review ("TAR"), for the purpose of identifying or culling the documents to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives. This discussion will include:

1. Whether any culling measures were taken prior to the application of TAR. If key terms are used, then the protocol above would apply to that part of the process;

2. The vendor being used to manage the application of the technology;

3. The method(s) used to derive the seed or exemplar set;

4. The method for validating the computer decisions; and

5. The measures taken to check the quality of the computer decisions.

6. Once the Review Set is segregated for review, each party will then determine the best method to review those hits for responsiveness and privilege – either manually or using

technology assisted review – and shall inform the other party of which method(s) it chooses to use.  If the party chooses TAR, the subsection b. above will apply.

**B. Processing/Production Instructions**

    1.      A summary of processing and production standards is attached as Exhibit A.

    2.      **Files Not Processed.**  At the time of processing, electronic documents shall be compared to the list of common non-user-generated files maintained by the National Institute of Standards and Technology (NIST) and any files that are contained on the most current version of the NIST list shall not be processed.  Container files should have their contents extracted during processing, but the container files themselves do not need to be produced unless so ordered by the Court.  Embedded images may be extracted if responsive to a Request.  Reasonable requests to have a document containing an embedded object reprocessed to extract the embedded object or provided in native format will be accommodated pursuant to Fed. R.Civ.P. 26(b)(2).

    3.      **TIFF/JPG Format.**  ESI, other than the data identified in Section B.4 below, shall be produced electronically in black and white, single-page Group 4 TIFF images that reflects how the source document would have appeared if it were printed via an attached printer.  Parties will accommodate reasonable requests to provide a color version (in single page JPG format) if the receiving party determines that color is necessary to understand the document.  However, the parties note that documents where this is more likely to matter (PowerPoints and Excel spreadsheets) are being produced natively.

    4.      **Native Format:**  Spreadsheets, audio/visual files, and presentation (e.g., PowerPoint) files will be produced in their native format unless redacted, in which instance, they will be produced in TIFF (or JPG if color).  A TIFF placeholder indicating the document was provided in native format, along with the Bates Number and confidentiality should accompany

the database record.  If database files are not legible in their native format, the parties will meet and confer on how to run reports from the database to produce data in a meaningful manner.

5.     **Structured Data:** Parties agree to meet and confer with regard to the production of data from structured data sources, including databases, after the producing party has shared certain information about the structured data sources as detailed in the attached Exhibit A.

6.     **Proprietary Software Required:**  If documents can be processed, but not imaged and viewed without proprietary software, the parties agree to meet and confer with regard to the best method for production.

7.     **Duplicate Production Not Required.**  A party producing ESI in electronic form need not produce the duplicate document in paper format. A producing party may de-duplicate the documents globally, across custodians, provided that it is possible to identify (in the metadata load file) all custodians of the document.   However, attachments to e-mails shall not be eliminated from the parent e-mail regardless of whether or not the attachment is a duplicate of another electronic document (i.e., de-dupe at the parent level).

8.     If the parties are using e-mail threading to aid review, the parties must nonetheless produce all relevant and non-privileged emails contained in that thread.

9.     **Document Unitization/Families.**  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file or computer of the producing party or shall be documented in a load file or otherwise electronically tracked.

10.     **Metadata.**  To the extent that any of the metadata fields listed in Paragraph 6 of Exhibit A are available for the electronic document, the producing party will produce those metadata fields to the requesting party.  For paper documents, the metadata set forth on Exhibit

A, Paragraph 7 shall be produced to the extent available. If a party requests additional metadata about a particular document, the parties agree to meet and confer as to whether and how such a request can be accommodated.

11. **Extracted Text/OCR.** Full extracted text and/or Optical Character Recognition ("OCR") text shall be produced for all documents as described in Exhibit A, Paragraph 4. OCR is not an acceptable substitute for native text extraction for non-redacted documents. Note that Paragraph 4 requires slipsheets indicating that a document is being withheld because it is privileged or not responsive to be OCR'd.

12. **Load files.** The producing party shall provide an .opt load file to accompany the images and a .dat file as described in Exhibit A, Paragraph 5.

13. **Bates Numbering.** Each page of a produced document produced in TIFF/JPG format shall have a legible, unique page identifier (Bates Number) electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with information from the source document. Any native file shall be renamed to be a single Bates Number and the original file name shall be produced in the metadata load file.

14. **Confidentiality Designation.** Responsive documents produced shall be stamped with the appropriate confidentiality designation at a location that does not obliterate or obscure information from the source document in accordance with the Protective Order in this case. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

15. **Production Media.** The producing party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production

Media").  Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media (e.g., "Plaintiffs Production Sept. 15 2018") as well as the sequence of the material in that production wave (e.g. "-00001", "-00002").  For example, if the production comprises document images on three DVDs, the producing party may label each DVD in the following manner "Plaintiffs Production Sept. 15 2018-00001", Plaintiffs Production Sept. 15 2018-00002", Plaintiffs Production Sept. 15 2018-0003".  Additional information that shall be identified on the physical Production Media includes:   (1) text referencing that it was produced in <u>City of Rockford v. Mallinckrodt, Case No. 3:17 CV 50107</u> (2) the Bates Number range of the materials contained on the Production Media; and (3) the confidentiality designation(s) if the documents qualify for confidential treatment pursuant to the terms of the Protective Order in this matter. The parties may also agree to produce documents via a secure FTP site in lieu of producing the documents on physical media.

16.    **Security.**  All parties shall make reasonable efforts to ensure that productions are free from viruses and that any copy of a production on physical media is encrypted.  Any copies made of the production for internal use should also be encrypted or stored on a computer system that requires a password to access.

**C. Privilege**

1.    **Privilege Logs.**  A party withholding documents based on one or more claims of privilege will produce a privilege log within 60 days after producing the documents pursuant to the specific production request. If supplemental production of documents occurs under Rule 26(e), a privilege log will be provided simultaneously with that supplemental production. .  The parties may modify the deadlines for production of the privilege logs by agreement.

When there is a chain of privileged e-mails contained within one record, the producing party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately, provided that the description of the e-mail chain is accurate as to all e-mails in the chain.

If a "family" of documents is entirely privileged, each document in the family shall be listed on the privilege log separately, and the family relationship shall be indicated on the log. In the event a "family" of documents exists that contains both privileged and non-privileged documents, the parties agree that the privileged documents in the family may be replaced with a slipsheet indicating, "Privileged Document Withheld." The withheld document will be logged and the remaining non-privileged documents in the "family" will be produced. The Bates Number of the slipsheet for the document withheld in this manner will be provided.

Documents produced in a redacted format shall be logged as well, unless the basis for a redaction is included with the redaction label on the face of the produced document.

Privileged Attorney Client communications with in-house or outside counsel after the date the action was commenced do not need to be logged. In addition, a party's privileged communications with its outside counsel advising that party on other litigation or investigatory matters, whether before or after the date the action was commenced, do not need to be logged. In the event there is a privileged email to either in house or outside counsel dated after the date that this litigation commenced, and that has attachments to it that are responsive, non-duplicative, and not privileged in and of themselves, it is acceptable to produce those documents as though they were loose documents without any reference to the fact that they were part of an email family sent to counsel.

2. **Disclosure of Privileged Information.** Should any party produce privileged ESI the producing party shall so notify the receiving party in writing after discovering the production, and the receiving party shall promptly sequester the document and all copies of it. If the parties are using a review database, the privileged document should be replaced with a slipsheet indicating the document was sequestered pending the resolution of the issue. Where applicable, the parties do not need to remove any copies that may remain on server backups after deletion from the active computer system. The parties will meet and confer as to how to handle the original production containing the privileged document, i.e., whether the original production may be maintained with the privileged document or whether the producing party will provide a replacement production with a slipsheet inserted where the privileged document was located. Within a reasonable period of time thereafter, in accordance with the Protective Order, the party claiming privilege must furnish information to the requesting party supporting its claim of privilege.

3. **Non Waiver of Privilege Under F.R.E. 502(d).** The production of privileged or work-product protected documents, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Agreed Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). However, nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of its own documents, ESI, or information (including metadata), for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Nothing herein shall limit the receiving party from arguing that the document is not in fact privileged, in accordance with the Protective Order. Rather, this

paragraph is intended only to prohibit arguing that the document has lost its privilege due to production.

## D. Timing and Sequencing of Electronic Discovery

The parties will proceed with the production of ESI in a timely manner consistent with time considerations to be developed by the parties and the Court. The parties shall meet and confer to arrange an orderly production of ESI. Rolling productions are encouraged and will be discussed by the parties as they meet and confer.

## E. Exceptions to Protocol

If the forms of production allowed by this protocol present an undue burden or cost for a producing party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion to seek individual relief from this protocol.

## F. Costs of Production

Each party will presumptively bear its own costs of production. However, the parties reserve the right to seek cost shifting, and/or to object to any proposed cost-shifting, as appropriate at a later time. Nothing in this Agreed Order is intended or should be interpreted as affecting, in any way, a parties' rights to seek reimbursement for costs associated with the collection, review, and/or production of documents as allowed by law.

## G. Discovery, Admissibility and Objections

1.    Nothing in this Agreed Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at the appropriate time.

2.    Nothing in this Agreed Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-

product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and/or ESI.

3.     Nothing in this Agreed Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

## H. Authenticity

Nothing in this Agreed Order shall be construed to affect the authenticity or admissibility of any document or data.  All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

## I.  Third-Party Production

1.     A party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Agreed Order with the subpoena and state that the parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein.

2.     The Issuing Party is responsible for producing any documents obtained under a subpoena to all other parties.

3.     The Issuing Party shall produce to all other parties the documents obtained under a subpoena in the format in which such documents are received by the Issuing Party.

4.     If the non-party production is not Bates-stamped, to the extent feasible and not unreasonably cost-prohibitive, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other parties.

Date:  August 14, 2018          By:  _____

                                     Iain D. Johnston
                                     United States Magistrate Judge

15

**Counsel for MSP Plaintiffs**

/s/ Pedram
Esfandiary_____
Pedram Esfandiary
R. Brent Wisner
Michael L. Baum
Adam M. Foster
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233
rbwisner@baumhedlundlaw.com
mbaum@baumhedlundlaw.com
afoster@baumhedlundlaw.com
pesfandiary@baumhedlundlaw.com

David M. Hundley, Of Counsel
PENDLEY, BAUDIN & COFFIN, LLP
516 N. Ogden Ave #134
Chicago IL 60642-6421
dhundley@pbclawfirm.com

Christopher L. Coffin
PENDLEY, BAUDIN & COFFIN, LLP

1515 Poydras Street, Suite 1400 New
Orleans, LA 70112
Tel: (504) 355-0086
ccoffin@pbclawfirm.com

**COUNSEL FOR PLAINTIFFS,
CITY OF ROCKFORD, ACUMENT
GLOBAL TECHNOLOGIES, INC. AND
THE CLASS**

s/ Donald E. Haviland, Jr.
Donald E. Haviland, Jr.
*(admitted pro hac vice)*
haviland@havilandhughes.com

**COUNSEL FOR DEFENDANTS
MALLINCKRODT plc and
MALLINCKRODT ARD INC.**

s/ Scott Collins Sullivan
Scott Collins Sullivan
Williams McCarthy LLP
120 West State St.
P.O. Box 219
Rockford, IL 61105-0219
(815) 987-8900
ssullivan@wilmac.com

G. Patrick Watson
Lindsay Sklar Johnson
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree St., NW
Atlanta, GA 30309
(404) 572-6600
patrick.watson@bclplaw.com
lindsay.johnson@bclplaw.com

Rebecca A. Nelson
Herbert R. Giorgio, Jr.
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
ranelson@bclplaw.com
herb.giorgio@bclplaw.com

Philip D. Bartz
Bryan Cave Leighton Paisner LLP
1155 F Street, N.W.
Washington, DC 20004
(202) 508-6000
philip.bartz@bclplaw.com

| | |
|---|---|
| William H. Platt II<br>*(admitted pro hac vice)*<br>platt@havilandhughes.com<br>**HAVILAND HUGHES**<br>201 South Maple Avenue, Suite 110<br>Ambler, PA 19002<br>T: 215-609-4661<br>F: 215-392-4400<br><br>Peter J. Flowers<br>(IL Attorney ID No. 06210847)<br>*pjf@meyers-flowers.com*<br>Jonathan P. Mincieli<br>(IL Attorney ID No. 06274091)<br>*jpm@meyers-flowers.com*<br>**MEYERS & FLOWERS, LLC**<br>3 North Second Street, Suite 300<br>St. Charles, IL 60174<br>T: 630-232-6333<br>F: 630-845-8982<br><br>Kerry F. Partridge<br>*kerry.partridge@rockfordil.gov*<br>Ifeanyi C. Mogbana<br>*Ifeanyi.mogbana@rockfordil.gov*<br>425 East State Street<br>Rockford, IL 61104-1068<br>T: 779-348-7154<br>F: 815-967-9649 | |
| | /s/ Matthew M. Martino<br>Matthew M. Martino (admitted *pro hac vice*)<br>Robert A. Fumerton (admitted *pro hac vice*)<br>Patrick G. Rideout (admitted *pro hac vice*)<br>Michael H. Menitove (admitted *pro hac vice*)<br>Evan R. Kreiner (admitted *pro hac vice*)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>Four Times Square<br>New York, NY 10036<br>Telephone: (212) 735-3000<br>Facsimile: (212) 735-2000 |

17

|  | matthew.martino@skadden.com<br>robert.fumerton@skadden.com<br>patrick.rideout@skadden.com<br>michael.menitove@skadden.com<br>evan.kreiner@skadden.com<br><br>Amy Van Gelder<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>155 North Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 407-0700<br>Facsimile: (312) 407-8567<br>amy.vangelder@skadden.com<br><br>*Attorneys for Defendants Express Scripts*<br>*Holding Company, Express Scripts, Inc.,*<br>*CuraScript, Inc., Accredo Health Group,*<br>*Inc., and United BioSource Corporation* |
|---|---|

<u>**EXHIBIT A**</u>

1. **PROCESSING INSTRUCTIONS**
   - Common system files as defined by the NIST library (http://www.nsrl.nist.gov/), need not be produced
   - Container files (zips/psts) should have their contents extracted during processing, and the container files themselves do not need to be processed/produced
   - Embedded documents do not need to be extracted (although upon request may need to be provided)
   - De-duplication method: Parties may de-duplicate stand-alone documents or entire document families (at the parent level) globally using MD5 or SHA-1 Hash value matching so long as duplicate custodians and duplicate custodian file paths are identified

2. **IMAGES:**
   - Single Page Group IV TIFF files for black and white images. Where color is specifically requested, single page JPG files for color images. Image Resolution at least 300 DPI
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 3, below), or that are withheld for Privilege or Relevance (see Section 8 and Section 9, below)
   - Bates Numbers & Confidentiality designations shall be placed in a location that does not obscure in formation from the source document.

3. **NATIVE PRODUCTION:**
   - Spreadsheet and presentation file types (If redactions are required, files may be produced in Tiff if black and white or JPG if color)
   - Databases and other structured data will be produced as specified in the designated section below.
   - Audio/Video Media File Types
   - File types that cannot be processed without proprietary software may be initially produced in native format and/or withheld while the parties meet and confer as to another method of production
   - File types that can be processed, but not imaged/viewed may either be produced in native format with metadata, or withheld while the parties meet and confer as to another method of production
   - File name should be a single bates number. If document is confidential, the confidentiality designation should be included in the file name as well, if possible.

4. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types (Redacted text will not be produced)
   - Re-OCR documents produced with a slip-sheet indicating that a document is being withheld because it is privileged or not responsive, so that the slipsheet is searchable.
   - Production format: Document level text, not page level text
   - File Naming Convention: Match Beg Bates Number

5. **LOAD FILE SPECIFICATIONS:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT (see section 3):** Reference File Path to TEXT file in DAT file
   - **Native Files Produced (see Section 2):** Reference File Path to Native file in DAT file

6. **ESI PRODUCTION METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Page Count**: Page Count
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **DupCustNames**: Custodian information for documents that were not processed because of duplicate status
     - **The above two fields may also be combined into one ALL CUSTODIAN field if desired**.
   - **FileName**: Filename of the original digital file name
   - **File Ext:** File Extension
   - **File Size:** File Size
   - **Native File**: Path and filename to produced Native file (see section 2)
   - **EmailSubject**: Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document
   - **Author**: Author field extracted from the metadata of a non-email document
   - **Subject**: Subject field extracted from the metadata of a non-email document
   - **From**: From field extracted from an email message
   - **To**: To or Recipient field extracted from an email message
   - **Cc**: CC or Carbon Copy field extracted from an email message
   - **BCC**: BCC or Blind Carbon Copy field extracted from an email message
   - **DateRcvd**: Received date of an email message (mm/dd/yyyy format)
   - **TimeRcvd**: Received time of an email message
   - **DateSent**: Sent date of an email message (mm/dd/yyyy format)
   - **TimeSent**: Sent time of an email message
   - **DateCreated**: Date that a file was created (mm/dd/yyyy format)
   - **TimeCreated**: Time that a file was created
   - **DateModified**: Modification date(s) of a non-email document
   - **TimeLastMod**: Time that a file was last modified
   - **MD5:** MD5 hash value generated by creating a binary stream of the file
   - **SHA-1:** SHA-1 hash value generated by creating a binary stream of the file

11774931.3

- **DocType**:  Record type description of the file (e.g., email, email attachment, calendar item, etc.)
- **ExtractedText**: File path to Extracted Text/OCR File
- **Confidentiality**:  Indicates if a document has been designated under the Protective Order
- **Redacted** (to indicate the reason a document has a redaction), to the extent feasible
- **Original Location Path** (where the documents was stored in the normal course of business), to the extent feasible
- **Email Folder path** (where the email was stored in the normal course of business), to the extent feasible
- **Meeting Start Date** (Calendar Entries Only)
- **Meeting Start Time** (Calendar Entries Only)
- **Conversation Index**, to the extent feasible

## 7. PAPER DOCUMENTS METADATA FIELDS:
- **BegBates**: Beginning Bates Number
- **EndBates**: Ending Bates Number
- **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format

## 8. PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA
- Generally, data from databases should be produced in a mutually agreeable data exchange format.  To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:
  - Database Name
  - Type of Database
  - Software Platform
  - Software Version
  - Business Purpose
  - Users
  - Size in Records
  - Size in Gigabytes
  - A List of Standard Reports
  - Database Owner or Administrator's Name
  - Field List
  - Field Definitions (including field type, size and use)
- Upon review of the list, the parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

## 9. FAMILY, EMAIL THREADING, NEAR DUPLICATES
- Forwards to counsel of documents after the litigation has commenced are not a true family, and the attachments may be produced as though they were loose documents
- All responsive emails in an email thread must be produced, even if the party is using threading to aid review

## 10. PRIVILEGE

- Only log last email in chain, provided description is accurate as to entire chain.
- Log each document in a family separately if all docs in family are privileged and note family relationship on log
- If family is mixed privileged and non-privileged, produce non-privileged documents and provide a slipsheet indicating "Privileged Document Withheld" for the privileged document and indicate bates number of slipsheet on the log
- Include redacted documents on log, noting the beg bates number of the document
- Do not log communications with in-house or outside counsel after date the action commenced.
- Do not log any communications with outside counsel of record or other counsel advising on this matter or other litigation or investigatory matters.

## 11. PRODUCTION MEDIA

- If produced on physical media, the media must be labeled with case name, date of production, bates range, and any applicable confidentiality designation. The production must be encrypted and/or the drive itself must have a password on it.
- Alternatively, a secure FTP site may be used for transmission of productions.