**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| **CITY OF ROCKFORD** | |
| Plaintiff, | |
| | Civil Action No.: 3:17-cv-50107 |
| v. | |
| | Judge Frederick J. Kapala |
| **MALLINCKRODT ARD, INC.,** *formally known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** *doing business as* **CURASCRIPT, SD; ACCREDO HEALTH GROUP, INC.,** *and* **UNITED BIOSOURCE CORPORATION** | Magistrate Judge Iain D. Johnston |
| Defendants. | |

**ORDER**

AND NOW, this ____ day of _____, 2019 upon consideration of

Defendants, the Express Scripts Entities' Motion for Reconsideration, or, in the Alternative,

Motion to Certify an Interlocutory Appeal and Plaintiff's Response thereto, it is hereby

**ORDERED** and **DECREED** that the Motion is **DENIED.**

_____

J.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| **CITY OF ROCKFORD**<br><br>                           Plaintiff,<br><br>    v.<br><br>**MALLINCKRODT ARD, INC.,**<br>***formally known as* QUESTCOR**<br>**PHARMACEUTICALS, INC.;**<br>**MALLINCKRODT PLC; EXPRESS SCRIPTS**<br>**HOLDING COMPANY; EXPRESS SCRIPTS,**<br>**INC.; CURASCRIPT, INC.,** ***doing business as***<br>**CURASCRIPT, SD; ACCREDO HEALTH**<br>**GROUP, INC.,** ***and*** **UNITED BIOSOURCE**<br>**CORPORATION**<br>                         Defendants. | Civil Action No.: 3:17-cv-50107<br><br>Judge Frederick J. Kapala<br><br>Magistrate Judge Iain D. Johnston |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS EXPRESS SCRIPTS**
**HOLDING COMPANY'S, EXPRESS SCRIPTS, INC.'S CURASCRIPT, INC.'S,**
**ACCREDO HEALTH GROUP, INC.'S AND UNITED BIOSOURCE CORPORATION'S**
**MOTION FOR RECONSIDERATION, OR, IN THE ALTERNATIVE,**
**<u>MOTION TO CERTIFY AN INTERLOCUTORY APPEAL</u>**

## TABLE OF CONTENTS

**Page**

STANDARDS FOR RECONSIDERATION ................................................................ 2

ARGUMENT .......................................................................................................... 4

I.      THE EXPRESS SCRIPTS ENTITIES' MOTION FOR RECONSIDERATION
SHOULD BE DENIED. .................................................................................... 4

   A.   None of the "rare" circumstances for reconsideration are presented in this case. .............. 4

   B.   The Express Scripts Entities improperly reargue their Motion to Dismiss. ...................... 5

      1.   In denying the Express Scripts Entities' Motion to Dismiss, this Court properly
found the Second Amended Complaint established that the Express Scripts
Entities were involved in the Synacthen Acquisition. ...................................................... 5

      2.   The Express Scripts Entities' argument that the alleged "exclusive distribution
agreements cannot have harmed competition" constitutes a re-argument of a
rejected legal position, for which there has been no change in the law. .......................... 8

II.     INTERLOCUTORY APPEAL IS IMPROPER AS A MATTER OF LAW .................... 12

   A.   Express Scripts' Proposed Appeal is Untimely. ............................................................ 12

   B.   The Question of Law Raised by the Express Scripts Entities Is Not "Contestable". ....... 14

   C.   The Express Scripts Entities Proposed Issues For Interlocutory Appeal Will Not
Expedite The Ultimate Resolution of the Litigation. ..................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*,
    99 F.R.D. 99 (E.D. Va. 1983) ....................................................................... 2-3, 3

*Ahrenholz v. Bd. of Trs.*,
    219 F.3d 674 (7th Cir. 2000) ................................................................................ 12

*Am. Acad. Suppliers, Inc. v. Beckley-Cardy, Inc.*,
    922 F.2d 1317 (7th Cir. 1991) .............................................................................. 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 10

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
    906 F.2d 1185 (7th Cir. 1990) .......................................................................... 2, 5

*Beatty v. Accident Fund Gen. Ins. Co.*,
    No. 3:17-CV-1001-NJR-GCS, 2019 U.S. Dist. LEXIS 43904 (S.D. Ill. Mar. 18, 2019) ...... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 10

*Brand Name Prescription Drugs Antitrust Litig.*,
    878 F. Supp. 1078 (N.D. Ill. 1995) ...................................................................... 15

*Broaddus v. Shields*,
    665 F.3d 846 (7th Cir. 2011) .................................................................................. 3

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
    90 F.3d 1264 (7th Cir. 1996) .................................................................................. 3

*Casten v. Durso*,
    No. 11 C 50252, 2012 U.S. Dist. LEXIS 151556 (N.D. Ill. Oct. 22, 2012) .................. *passim*

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.* ,
    370 U.S. 690, 8 L. Ed. 777, 82 S. Ct. 1404 (1962) ...................................... *passim*

*E & L Consulting, Ltd. v. Doman Indus.* ,
    472 F.3d 23 (2d Cir. 2006) .................................................................................... 9

*EEOC v. Wal-Mart Stores, Inc.*,
    No. 17-cv-739-jdp, 2019 U.S. Dist. LEXIS 41331 (2019) ..................................... 16

*Endsley v. City of Chi.*,
    230 F.3d 276 (7th Cir. 2000) ................................................................................ 10

*Fontana Aviation, Inc. v. Cessna Aircraft Co.*,
    617 F.2d 478 (7th Cir. 1980) ................................................................................ 10

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.*,
No. 06 C 0949, 2006 U.S. Dist. LEXIS 29667 (N.D. Ill. Apr. 19, 2006) ...................... 14-15

*Great Escape, Inc. v. Union City Body Co.*,
791 F.2d 532 (7th Cir. 1986) ............................................................................. 10

*Harriston v. Chi. Tribune Co.*,
136 F.R.D. 482 (N.D. Ill. 1991) ........................................................................... 9

*Hill-Harriss v. Gingiss Int'l, Inc.*,
No. 91 C 6682, 1992 U.S. Dist. LEXIS 3548 (N.D. Ill. Mar. 19, 1992) ................................. 2

*Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*,
935 F.2d 1469 (7th Cir. 1991) ............................................................................. 11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
186 F.3d 781 (7th Cir. 1999) ............................................................................. 10

*In re Brand Name Prescription Drugs Antitrust Litig.*,
867 F. Supp. 1338 (N.D. Ill. 1994) ...................................................................... 6

*In re Folding Carton Antitrust Litig.*,
75 F.R.D. 727 (N.D. Ill. 1977) ........................................................................... 15

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ............................................................................. 14

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984) ........................................................................................... 10

*Kleen Prods. L.L.C. v. Int'l Paper*,
306 F.R.D. 585 (N.D. Ill. 2015) ......................................................................... 10

*Kostal v. Life Ins. Co. of N. Am.*,
No. 09-CV-31-JPS, 2011 U.S. Dist. LEXIS 129035 (E.D. Wis. Nov. 7, 2011) ................. 12

*LB Credit Corp. v. Resolution Tr. Corp.*,
49 F.3d 1263 (7th Cir. 1995) ............................................................................. 3

*Mercatus Grp., L.L.C. v. Lake Forest Hosp.*,
641 F.3d 834 (7th Cir. 2011) ............................................................................. 10

*Morton Coll. Bd. of Trs. v. Town of Cicero*,
25 F. Supp. 2d 882 (N.D. Ill. 1998) ................................................................... 13

*Oto v. Metro. Life Ins. Co.*,
224 F.3d 601 (7th Cir. 2000) ............................................................................. 3

*Paper Sys. v. Nippon Paper Indus. Co.*,
281 F.3d 629 (7th Cir. 2002) ............................................................................. 10

*Republic Bank of Chi. v. Desmond,*
  No. 13 C 6835, 2015 U.S. Dist. LEXIS 93020 (N.D. Ill. July 17, 2015) ............................. 13

*Republic Bank of Chi. v. Desmond,*
  No. 13 C 6835, 2015 U.S. Dist. LEXIS 93020, 2015 WL 4397781 (N.D. Ill. July 17, 2015)  13

*Schor v. Abbott Labs.,*
  457 F.3d 608 (7th Cir. 2006) ................................................................................................... 9

*Sedrak v. Callahan,*
  987 F. Supp. 1063 (N.D. Ill. 1997) ........................................................................................ 3

*Sterk v. Path, Inc.,*
  No. 13 CV 2330, 2014 U.S. Dist. LEXIS 183878, 2014 WL 8813657 (N.D. Ill. Aug. 8, 2014)  13

*Trading Techs. Int'l v. BCG Partners, Inc.,*
  883 F. Supp. 2d 772 (N.D. Ill. 2012) ............................................................................. *passim*

*Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.,*
  No. 1:10-CV-044-JD, 2016 U.S. Dist. LEXIS 53348 (N.D. Ind. Apr. 21, 2016) ................. 13

*VBR Tours, L.L.C. v. AMTRAK,*
  No.: 14-cv-00804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ........................................... 9

*Weir v. Propst,*
  915 F.2d 283 (7th Cir. 1990) ................................................................................................. 13

*Wingerter v. Chester Quarry Co.,*
  185 F.3d 657 (7th Cir. 1999) ................................................................................................. 12

**Statutes**

28 U.S.C. § 1292(b) (2012) ........................................................................................................ 16

**Other**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 1

Plaintiff, the City of Rockford (***"Rockford"***) by and through its undersigned counsel, hereby responds to Defendants Express Scripts Holding Company's, Express Scripts, Inc.'s, CuraScript, Inc.'s, Accredo Health Group, Inc.'s and United Biosource Corporation's (collectively "***Express Scripts Entities"***) Motion for Reconsideration, or, in the Alternative, Motion to Certify an Interlocutory Appeal (the ***"Motion"***). The Motion seeks reconsideration of this Court's well-reasoned Memorandum Opinion and Order dated January 25, 2019 ("Jan. 25 Order") at Dkt. No. 178.

The Motion should be denied for the following reasons.

First, the Express Scripts Entities alone seek reconsideration; Mallinckrodt has not chosen to join with its co-Defendants in claiming this Court committed any error in its decision. That is significant because, no matter what the Court decides on the Express Scripts Entities' Motion, Rockford's case will advance against Mallinckrodt on the antitrust claims at issue.

Second, the Express Scripts Entities' Motion simply seeks to relitigate matters already considered and decided by this Court. Thus, reconsideration is an improper vehicle for obtaining relief. Relying exclusively on a 27-year old, unreported, and inapposite decision of this Court, the Express Scripts Entities fail to carry their heavy burden of showing any of the "extraordinary circumstances" courts have found warrant reconsideration of a ruling on a motion to dismiss. Instead, the Express Scripts Entities complain only that this Court was "mistaken" in "credit[ing] Rockford's theories" of antitrust liability against the Defendants. Motion at 2. But, in doing so, this Court followed the well-established standards under Fed.R.Civ.Proc. 12(b)(6), and thus did not commit a "manifest error of law or fact", as required for reconsideration.

Finally, the Express Scripts Entities' request that this Court certify the matter for interlocutory appeal is the proverbial "hail mary" pass the courts frown upon, especially at such

an early stage in the lawsuit. Here, through no fault on the part of the Court as it took the needed

time to get its ruling right from the start, the City of Rockford waited nearly a year for this

Court's ruling in order to proceed to discovery in this nearly two-year old case. In seeking

certification of two questions for appeal, Express Scripts fails to satisfy any of the prerequisites,

especially the need to demonstrate that their appeal will "speed up" the litigation. On this

important issue, Express Scripts simply argues that, should the Seventh Circuit agree with its

position, "such a ruling would likely end this case." Express Scripts' Mem. at 15. But, that is

clearly not the case as Rockford is proceeding with its claims against Mallinckrodt, and will

continue to do so during the pendency of any appeal by Express Scripts.

## STANDARDS FOR RECONSIDERATION

In seeking the extraordinary relief of reconsideration of this Court's well-reasoned January

25, 2019 Order, denying in part the Motions to Dismiss of all Defendants, Express Scripts

reaches for the ***non-binding***, ***unreported*** 1992 decision of this Court in *Hill-Harriss v. Gingiss*

*Int'l, Inc.*, No. 91 C 6682, 1992 U.S. Dist. LEXIS 3548 (N.D.Ill. Mar. 20, 1992) as precedent. In

doing so, Express Scripts ignores the many ***reported*** decisions of this Court, and ***binding***

decisions of the Court of Appeals for the Seventh Circuit, addressing the extremely limited

circumstances which warrant reconsideration, and the rarity with which such motions have been

granted since Judge Korcoras's 1992 decision on inapposite facts. As discussed below,

reconsideration is not warranted in this case, and should be denied, before the Court reaches the

merits of Express Scripts Entities' arguments.

Motions to reconsider should be granted only in rare circumstances. *Trading Technologies*

*International v. BCG Partners, Inc.*, 883 F. Supp. 2d 772, 775 (N.D. Ill. 2012)(citing *Bank of*

*Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above*

*the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)) (". . .the motion to reconsider should be equally rare."). "A party moving for reconsideration bears a heavy burden and its motion must be supported by a showing of extraordinary circumstances." *Id.* (citing *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.,* 90 F.3d 1264, 1270 (7th Cir. 1996)).

To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact.[1] *Oto v. Metropolitan Life Insurance Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citing *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.* (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

As this Court has acknowledged, "[i]t is well established that a motion to reconsider is ***only appropriate*** where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Casten v. Durso*, No. 11 C 50252, 2012 U.S. Dist. LEXIS 151556, at *3 (N.D. Ill. Oct. 22, 2012)(Kapala, J.)(citing *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011))(emphasis added).

"A motion for reconsideration is not an appropriate vehicle for relitigating arguments that the court previously rejected or for arguing issues that could have been raised during the

---

[1] Express Scripts is not introducing new evidence at this time as it is only asking this Court to reconsider a Motion to Dismiss which was entirely based on the allegations of Rockford's Second Amended Complaint. Therefore, there is no need to analyze this prong of the reconsideration standard.

consideration of the motion under reconsideration." *Trading Technologies International,* 883 F. Supp. 2d at 775.

In this case, Express Scripts fails to carry its "heavy burden" of "showing [] extraordinary circumstances" for reconsideration. *Id.* The Motion does not show where Express Scripts was "misunderstood" by this Court,[2] or where the Court "made an error of apprehension (not of reasoning)" in its Jan. 25 Order. Similarly, the Motion does not show where the Court "has made a decision outside the adversarial issues presented to the court by the parties", or "where a significant change in the law has occurred", or "where significant new facts have been discovered." Failing such showing, the Motion must be denied.

## **ARGUMENT**

### I. **THE EXPRESS SCRIPTS ENTITIES' MOTION FOR RECONSIDERATION SHOULD BE DENIED.**

#### A. **None of the "rare" circumstances for reconsideration are presented in this case.**

A request for reconsideration of a court order involves a two-step process. First, the Court must consider whether the standards for reconsideration have been met. Then, and only then, should the Court reach the merits of the movant's underlying arguments seeking reconsideration.[3]

In citing *Hill-Harriss*, an extremely rare occurrence where a judge of this Court granted reconsideration of a ruling on a Rule 12 motion to dismiss on unique facts wherein new evidence was presented, the Express Scripts Entities demonstrate what this Court has ruled previously:

---

[2] For example, the Express Scripts Entities urge that this Honorable Court "misunderstood the SAC's allegations", not their arguments about the SAC. Motion at 4.

[3] In view of this two-step process, the City of Rockford does not seek to re-argue the merits of the Express Scripts Entities' arguments for reconsideration in this opposition. Instead, should reconsideration be granted by this Court, Rockford expects that the Court will establish a briefing schedule on the underlying issues, at which time Rockford can present its re-argue substantive positions.

4

[a] motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. **Such problems rarely arise and the motion to reconsider should be equally rare.**

*Casten v. Durso*, 2012 U.S.Dist. LEXIS 151556 (N.D.Ill. Oct. 22, 2012)(Kapala, J.)(emphasis

supplied) at * 3-4 (*quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185,

1191 (7th Cir. 1990)).  However, the Express Scripts Entities excised from their quotation of the

above standard the critical last line, to wit, such problems "rarely arise", which means that such

motions "should be equally rare." *Id.*

There has been no change in the law in the last 27 years.

    **B.**    **The Express Scripts Entities improperly reargue their Motion to Dismiss.**

        **1.**    **In denying the Express Scripts Entities' Motion to Dismiss, this Court properly found the Second Amended Complaint established that the <u>Express Scripts Entities were involved in the Synacthen Acquisition</u>.**

The Express Scripts Entities concede that Rockford's Second Amended Complaint

("SAC") alleged "two purportedly anticompetitive actions" by Mallinckrodt and Express Scripts:

(1) an "exclusive dealing arrangement" and (2) the "Synacthen Acquisition".  Motion at 1.

However, they ignore the fact that these actions were part of an overarching antitrust scheme to

monopolize the ACTH market and to fix the prices of Acthar.  *See, e.g.*, Jan. 25 Order at 3

("Plaintiffs further allege various acts that enabled defendants to use the ASAP to price fix and

maintain Mallinckrodt's monopoly.")

In urging reconsideration of the Court's ruling on the antitrust claims as they pertain to

the Synacthen Acquisition, the Express Scripts Entities focus first on the second of two

conspiratorial acts, the one which came 6 years after the 2007 exclusive agreement was entered.

This is significant because the Express Scripts Entities seek to compartmentalize Rockford's

allegations about the Synacthen Acquisition, removing the same from the overall context of the unlawful monopolization, exclusive dealing and price fixing claims alleged. The courts have held that such compartmentalization is inappropriate in ruling on dismissal of antitrust claims. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 867 F.Supp. 1338, (N.D.Ill. 1994)(*quoting Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99, 8 L.Ed. 777, 82 S.Ct. 1404 (1962)("In [conspiracy anti-trust cases] plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. '…The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'")

The Express Scripts Entities claim this Court "fundamentally misapprehended the allegations of the SAC", arguing in support that "the SAC does not even allege that any Express Scripts entity was involved in the Synacthen Acquisition." Motion at 2. In so arguing, the Express Scripts Entities themselves "misapprehend" the nature and scope of Plaintiff's antitrust claims, as succinctly framed by the Court as follows:

> Express Scripts employed its market power to effectuate these goals [of the Mallinckrodt exclusive dealing arrangement], allowing Mallinckrodt to maintain its monopoly, thereby increasing both their profits, and prevent[ing] competitors from challenging that monopoly. Thus, Mallinckrodt's decision to purchase the rights to Synacthen 'at the eleventh hour' only to 'shelve' the product upon acquiring it was simply an intended goal of the ASAP, effectuated by both defendants. Specifically, Express Scripts agreed not to push back on Mallinckrodt's decisions to inflate Acthar's price beyond the competitive level, in contrast to when Express Scripts took the opposite approach in 2016 with respect to Turing's drug, Daraprim. While defendants appear to isolate the exclusive dealing arrangement from the Synacthen Acquisition, taking the allegations in the SAC s true, plaintiffs allege that these anticompetitive acts were part of the same conspiracy.

6

Jan. 25 Order at 12-13.

As further found by this Court, the SAC alleges the following facts[4]:

"The SAC contains various allegations about the roles of each Express Script entity such that each entity is put on notice as to which defendants engaged in which acts that allowed Express Scripts to effectuate the alleged antitrust violations."  *Id*. at n. 2.

"Plaintiffs allege that Mallinckrodt was acting in concert with Express Scripts in an exclusive dealing arrangement well before the Synacthen Acquisition, and thus, plaintiffs plausibly allege that defendants' conspiracy encompassed and facilitated the Acquisition."  *Id*. at 24.

 "Rockford alleged that defendants conspired to price-fix and prevent competitors from entering the market, implemented through a joint-effort (the ASAP) that allowed Mallinckrodt to unlawfully acquire the rights to Synacthen.  One can plausibly infer that the Synacthen Acquisition and Mallinckrodt's immediate 'shelving' of Synacthen had no legitimate business justification and resulted in the maintenance and entrenchment of Mallinckrodt's monopoly."  *Id*. at 25.

"Specifically, Express Scripts agreed not to push back on Mallinckrodt's decisions to inflate Acthar's price beyond the competitive level, in contrast to when Express Scripts took the opposite approach in 2015 with respect to Turing's drug, Daraprim."  *Id*. at 12.

"The ASAP [administered exclusively by Express Scripts Entities] thus allowed Mallinckrodt to maintain its dominant monopoly power in the ACTH drug market, maintain

---

[4] Beyond those allegations of the SAC the Court focused on in its Jan. 25 Order, it is noteworthy that the Express Scripts Entities fail to address the lengthy explanation of their "role" in antitrust conduct at issue as set forth in averments 238 through 252 of the SAC.

prices at artificially high levels, and exclude less expensive competitive products from the ACTH drug market." *Id.* at 22 (brackets added).

Express Scripts seeks to relitigate this issue, already decided by this Court. In their opening and reply briefs, the Express Scripts Entities pressed their argument about their purported "lack of involvement" in the Synacthen Acquisition. *See, e.g.*, Dkt. No. 104 at 13 ("Plaintiffs do not allege that any Express Scripts Entity was involved in – or 'conspired' with Questcor or Mallinckrodt concerning – any of this conduct."); Dkt. No. 136 at 2 ("Plaintiffs nowhere allege – nor could they allege – that any Express Scripts Entity was involved in Mallinckrodt's acquisition of Synacthen.") This Court rejected such arguments, explaining how the Synacthen Acquisition related to the overarching conspiracy and agreements between the Defendants to maintain Mallinckrodt's monopoly and to allow continued Acthar price-fixing. Nothing more is required at this juncture, as the Court plainly acknowledged. *Id*. at 13 ("The court anticipates that further discovery will shed light on Express Scripts' knowledge of an role in the Synacthen Acquisition, if any."); 25 ("The court will await discovery to determine how best to characterize defendants' conduct.")

On the Synacthen Acquisition, this Court did not "misunderstand" or "misapprehend" the Express Scripts Entities' arguments. It rejected them based upon the well-pleaded allegations of the SAC. Accordingly, reconsideration is unwarranted.

> **2. The Express Scripts Entities' argument that the alleged "exclusive distribution agreements cannot have harmed competition" constitutes a re-argument of a rejected legal position, for which there has been no change in the law.**

The Express Scripts Entities urge reconsideration of the Court's decision denying their Motion to Dismiss Rockford's antitrust claim involving their undeniable role in "exclusive

distribution agreements"[5] as part of Mallinckrodt's "new strategy" to limit distribution to enhance its monopoly power, limit competition and raise the prices for Acthar. In support, they claim that the alleged agreements "cannot have harmed competition". However, they do not explain how there has been any "change in the law" in regard to Plaintiff's antitrust claims, nor do show that this Court "misunderstood" or "misapprehended" their legal argument in their Motion. *Casten v. Durso*, No. 11 C 50252, 2012 U.S. Dist. LEXIS 151556, at *3. As a result, there is no basis for reconsideration.

While conceding that the Court "accepted all three theories" espoused by Rockford, the Express Scripts Entities quibble that "none of Rockford's theories of competitive harm is viable as a matter of law." Motion at 7. In urging reconsideration, however, the Express Scripts entities present no new legal arguments based on an intervening change in the law. Instead, they argue the **same three cases** as argued in their opening brief, *E&L Consulting*,[6] *VBR Tours*,[7] and *Schor*.[8] Their primary authority, *E&L Consulting*, is a non-binding decision of the Court of Appeals for the Second Circuit, while their secondary authority is an unreported decision of this Court.

---

[5] The Express Scripts Entities do not deny they are signatories to various exclusive agreements with Mallinckrodt. Nor could they, as Magistrate Judge Johnston ordered the production of all such agreements in February, 2018. Dkt. No. 114. Consequently, as Rockford now has the actual agreements at issue in hand, which agreements were explicitly referenced in its SAC, the Express Scripts Entities should not be heard to argue about what those agreements do or do not say, or what they mean or do not mean. In particular, the Express Scripts Entities should not be heard to argue that "those agreements [did not] increase[] [Mallinckrodt's] ability to increase prices", when they know full well that those agreements explicitly address the setting of Acthar prices and by whom. All parties are obligated to conduct a reasonable inquiry into the facts represented to the Court. *Harriston v. Chicago Tribune Co.*, 136 F.R.D. 482, 484 (N.D. Ill. 1991).

[6] *E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23 (2d Cir. 2006)(cited at Dkt. No. 104 at 11).

[7] *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, No. 14-cv-804, 2015 WL 5693735 (N.D.Ill. Sept. 28, 2015) (cited at Dkt. No. 104 at 10).

[8] *Schor v. Abbott Labs*. 457 F.3d 608 (7th Cir. 2006) (cited at Dkt. No. 104 at 10).

In urging that "Rockford's theory flies in the face of well-accepted antitrust jurisprudence", Motion at 8, the Express Scripts Entities ignore the "well-accepted antitrust jurisprudence" this Court relied upon in rendering its decision. Specifically, this Court looked to the precedential, binding decisions of the Seventh Circuit in determining that Rockford's theory of vertical conspiracy was plausible. *See, e.g.*, Jan 25 Order at 14 (citing *Paper Systems, Brand Name Prescription Drugs, Fontana Aviation* and *Kleen Products*)[9]; 24-225 (citing *The Great Escape, Endsley, AM. Acad. Suppliers,* and *Mercatus Group*)[10]. The Express Scripts Entities present no reasonable basis for this Court to reconsider its legal holding.

In arguing that the exclusive distribution agreements at issue "cannot have prevented" competition, Motion at 9-11, the Express Scripts entities simply cite *Iqbal*[11] to re-argue that the SAC's averments "are purely conclusory". Motion at 10. But this Court applied *Iqbal*'s pleading standard, along with *Twombly*,[12] in finding the "Rockford has plausibly stated that defendants' conduct amounted to violations of §§ 1 and 2 and that it was injured by this conduct…". Jan 25 Order at 9. The Express Scripts Entities offer nothing new on this score.[13]

---

[9] *Paper Sys. Inc. v. Nippon Paper Indus. Co.,* 281 F.3d 629 (7th Cir. 2002); *In re Brand Name Prescription Drugs Antitrust Litig.,* 186 F.3d 781 (7th Cir. 1997); *Fontana Aviation, Inc. v. Cessna Aircraft Co.,* 617 F.2d 478 (7th Cir. 1980); and *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585 (N.D. Ill. 2015) aff'd sub nom. *Kleen Prod. LLC v. Int'l Paper Co.,* 831 F.3d 919 (7th Cir. 2016).
[10] *The Great Escape, Inc. v. Union City Body Co.,* 791 F.2d 532 (7th Cir. 1986); *Endsley v. City of Chicago,* 230 F.3d 276 (7th Cir. 2000); *Am. Acad. Suppliers, Inc. v. Beckley-Cardy, Inc.,* 922 F.2d 1317 (7th Cir. 1991); and *Mercatus Grp., LLC v. Lake Forest Hosp.,* 641 F.3d 834 (7th Cir. 2011).
[11] *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).
[12] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).
[13] In citing for the first time on reconsideration the Supreme Court decision in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 45 (1984), Motion at 11, Defendants seek to interject additional grounds for illegal exclusive dealings, that involving unreasonably depriving other suppliers of a market for their products. However, reconsideration is no place to interject a legal argument that can and should have been made in the principle briefing on the initial motion. *Trading Technologies International,* 883 F. Supp. 2d at 775 ("A motion for reconsideration is not an appropriate vehicle for …arguing issues that could have been raised during the consideration of the motion under reconsideration.").

Finally, the Express Scripts Entities argue that the Court's conclusions as to Rockford's theories of liability were "erroneous" as the theories are allegedly "untenable" and there needs to be some "principled limitation" on the alleged "problematic scope" of Rockford's theory. Motion at 12, n. 6. But, the Express Scripts Entities fail to cite any legal authority supporting a right to reconsideration where the basis is a claimed error in the court's conclusion in not limiting the scope of a plaintiff's antitrust theory. Further, Defendants interposed this same argument in their Reply in support of their Motion to Dismiss. *See* Dkt. No. 136 at 7 (*citing Illinois ex rel. Burris v. Panhandle E. Pipe Line Co.*, 935 F.2d 1469, 1484 (7th Cir. 1991)). The Court rejected the argument, agreeing with Rockford that an antitrust agreement to "employ[] Express Scripts' market power not to push for lower-costs alternatives" to Acthar was both plausible and legally cognizable. Jan. 25 Order at 21-22; *see also*, *id*. at 4.[14] The Express Scripts Entities do not deny the underlying alleged facts that (1) they were in a "unique position" to negotiate lower Acthar prices, given their large buying power in the marketplace, or (2) that their exclusive distribution agreements with Mallinckrodt played a role in their decision to not "push back", due to their share of the monopoly profits earned by the increased Acthar prices. Nor can they plausibly do so at this juncture, consistent with Rule 11, knowing as they do that Rockford has seen the actual language of the unlawful agreements at issue and can cite the same to the Court *in camera*.

For all these reasons, reconsideration of the Court's January 25, 2019 Order is not warranted.

---

[14] "Arguing that this price increase [in 2007] was made possible by an unlawful conspiracy between defendants, plaintiff allege that Express Scripts did not push back on this price increase despite acknowledging that Acthar was vastly overpriced, and still has not pushed back on even higher prices as of the filing of the SAC. Express Scripts was in a unique position to negotiate the most competitive prices for specialty drugs in the United States as a result of its representation of the largest number of buyers in the pharmaceutical marketplace."

## II.     INTERLOCUTORY APPEAL IS IMPROPER AS A MATTER OF LAW

### STANDARDS FOR CERTIFICATION OF
### INTERLOCUTORY APPEALS

"The Seventh Circuit has indicated that interlocutory appeals are generally disfavored because they are an exception to the final judgment rule, ***they interrupt the progress of a case and prolong its disposition***, and an avalanche of interlocutory appeals would result if every procedural ruling was subject to appellate review." *Kostal v. Life Insurance Co. of North America*, No. 09-CV-31-JPS, 2011 U.S. Dist. LEXIS 129035, at \*2-3 (E.D. Wis. Nov. 7, 2011)(citing *Wingerter v. Chester Quarry Co.*, 185 F.3d 657, 669 (7th Cir. 1999)).

"There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up litigation." *Beatty v. Accident Fund General Insurance Co.*, No. 3:17-CV-1001-NJR-GCS, 2019 U.S. Dist. LEXIS 43904, at \*15 (S.D. Ill. Mar. 18, 2019)(citing *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000)). Additionally, "the petition must be filed in the district court within a reasonable time after the order sought to be appealed." *Id*. (quoting *Ahrenholz* at 675). "Unless all these criteria are satisfied, the district court may not and should not certify its order to [the appellate court] for an immediate appeal under section 1292(b)." *Id*. (quoting *Ahrenholz* at 676).

### A.     Express Scripts' Proposed Appeal is Untimely.

First and foremost, as a matter of law, Express Scripts Entities' request to certify this Court's Motion to Dismiss ruling for interlocutory appeal is late. The Order denying Express Scripts Entities' Motion to Dismiss was entered on January 25, 2019. The Express Scripts Entities' waited an entire month to file their request to certify the interlocutory appeal of that decision and provided this Court with no explanation as to why it took so long to do so. This

alone should be grounds to deny the request to certify an interlocutory appeal. *Morton College Board of Trustees v. Town of Cicero*, 25 F. Supp. 2d 882, 885 (N.D. Ill. 1998). In *Morton*, this Court considered a request to certify an appeal filed 30 days after the Order was entered and denied the request stating that "it would be an abuse of the court's power to amend the order at this late date." *Id.* Like the purported appellant in *Morton*, the Express Scripts Entities waited 30 days to seek the interlocutory relief, which is essentially a request for an amendment of this Court's Jan. 25 Order denying Express Scripts' Motion to Dismiss (which did not include a §1292(b) certification). In *Morton,* the Court held that "if the court were to amend its September 1, 1998 order or issue another order certifying the order for appeal under § 1292(b), the court would be taking an action that would undermine the ten-day limitation period of § 1292(b)." *Id.* (denying the motion for certification because the motion as untimely).

Here, like the movants in *Morton*, the Express Scripts Entities cannot justify their 30-day delay in filing their motion, and in fact make no attempt to do so.

"With regard to timeliness, the standard in the Seventh Circuit is that [a section 1292(b) motion] should be filed promptly after the original order unless a good reason for the delay is given." *Valbruna Slater Steel Corp. v. Joslyn Manufacturing Co.*, No. 1:10-CV-044-JD, 2016 U.S. Dist. LEXIS 53348, at *17 (N.D. Ind. Apr. 21, 2016)(citing *Republic Bank of Chicago v. Desmond,* No. 13 C 6835, 2015 U.S. Dist. LEXIS 93020 (N.D. Ill. July 17, 2015), 2015 U.S. Dist. LEXIS 93020, 2015 WL 4397781, at *3 (citing *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir.1990)). While there is no explicit time limit provided by the statute for seeking a certificate of appealability, requests filed more than a month or so after the order sought to be appealed are often deemed untimely. *Id.* (citing *Sterk v. Path, Inc.*, No. 13 CV 2330, 2014 U.S. Dist. LEXIS 183878, 2014 WL 8813657, at *3 (N.D. Ill. Aug. 8, 2014).

**B.** **The Question of Law Raised by the Express Scripts Entities Is Not "Contestable".**

The Express Scripts Entities raise two questions for interlocutory appeal based on their erroneous belief that this Court committed error.[15]  In doing so, the Express Scripts Entities rely on one case, *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010).  In *Text Messaging*, Judge Posner conducted a thorough analysis of the impact of *Twombly* in an antitrust case filed well-over ten years ago.  Judge Posner concluded:

> The plaintiffs have conducted no discovery. Discovery may reveal the smoking gun or bring to light additional circumstantial evidence that further tilts the balance in favor of liability. All that we conclude at this early stage in the litigation is that the district judge was right to rule that the second amended complaint provides a sufficiently plausible case of price fixing to warrant allowing the plaintiffs to proceed to discovery.

630 F.3d 622, 629.  Judge Posner thus ruled in Plaintiff's favor on the Defendants' interlocutory appeal based on plausibility.  As such, the issues raised by the Express Scripts Entities concerning plausibility are now foreclosed by *Text Messaging*.  Indeed, Judge Posner's ruling in *Text Messaging* supports this Court's ruling on Express Scripts' Motion to Dismiss and no substantial ground exists for an immediate appeal.  "If the controlling court of appeals has ruled on a question, then no substantial ground for difference of opinion exists, and there is no reason for immediate appeal."  *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 0949, 2006 U.S. Dist.

---

[15] Express Scripts raises two issues for appeal:

    1.    Does the SAC ***plausibly allege*** that the Express Scripts Entities worked to effectuate the Synacthen Acquisition pursuant to an agreement with Mallinckrodt? (***"Appeal Issue 1"***) and

    2.    Does the SAC ***plausibly allege*** that the exclusive distribution agreements between Mallinckrodt and the Express Scripts Entities harmed competition by: (1) enhancing Mallinckrodt's monopoly power and increasing its ability to raise prices for—and restrict output of—Acthar; (2) preventing other pharmaceutical manufacturers from developing an alternative drug to Acthar; or (3) eliminating the Express Scripts Entities' "incentive" to exercise their purported market power to "force competition"?(***"Appeal Issue 2"***).

LEXIS 29667, at *8 (N.D. Ill. Apr. 19, 2006)(citing *In re Brand Name Prescription drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995) (quoting *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 738 (N.D. Ill. 1977))).

In this case, consistent with Judge Posner's holding in *Text Messaging*, this Court held throughout its opinion that the SAC stated plausible legal theories with facts specifically pled in support thereof.  For example, the Court cited the following:

1.  With regard to the Express Scripts Entities' anticompetitive conduct and their respective roles in Mallinckrodt's acquisition of Synacthen (***Appeal Issue 1***) and the ASAP Program:

    ***The court will await discovery to determine how to best characterize defendants' conduct***.  But at this stage, the court finds that Rockford has ***plausibly*** alleged that defendants' conduct was anticompetitive ***under the Seventh Circuit's broad definition of exclusionary, predatory, or anticompetitive conduct***.  As noted with respect to Rockford's § 1 claims, Rockford alleged that defendants conspired to price-fix and prevent competitors from entering the market, implemented through a joint-effort (the ASAP) that allowed Mallinckrodt to unlawfully acquire the rights to Synacthen.  One can plausibly infer that the Synacthen Acquisition and Mallinckrodt's immediate "shelving" of Synacthen had no legitimate business justification and resulted in the maintenance and entrenchment of Mallinckrodt's monopoly.

Jan. 25 Order at 25-26. (emphasis added).

2.  With regard to cost containment services provided by Express Scripts via PBM Contracts:

    In later proceedings, ***with the benefit of discovery*** and applicable rules of contract interpretation, the court may be able to determine whether "cost containment" programs were merely an example of what "PBM Services" may generally include or whether, and to what extent, they constitute an enforceable obligation of Express Scripts.  But, drawing all reasonable inferences in favor of Rockford, the court concludes that "cost containment" is alluded to in the operative terms of the PBM Agreement and therefore the court will not dismiss Rockford's claim based upon Express Scripts' "prefatory language" argument.

*Id.* at 43. (emphasis added).

3. With regard to Rockford purported "group pleading" as to Express Scripts Entities:

> *It may come about in discovery* that there are insufficient facts to support claims against the specific Express Scripts entities. *But at this stage, the court accepts plaintiffs' allegations that the Express Scripts entities worked together, through various lines of business, to effectuate the Synacthen Acquisition, and does not find that plaintiffs' group pleading provides the Express Scripts defendants insufficient notice of the claims against them*.

*Id*. at 2, n.2 (emphasis added).

This is precisely what Judge Posner instructed in *Text Messaging* when the Seventh Circuit Court of Appeals denied an appeal almost identical to Express Scripts' plausibility argument here.

As such, the plausibility issues raised in Appeal Issues 1 and 2 were resolved by the Seventh Circuit, and the Express Scripts Entities cannot establish a "substantial ground for difference of opinion" pursuant to § 1292(b) and its request for certification should be denied.

**C.    The Express Scripts Entities Proposed Issues For Interlocutory Appeal Will Not Expedite The Ultimate Resolution of the Litigation.**

28 U.S.C. § 1292(b) also requires that a nonfinal order for interlocutory appeal be certified by the District Court if the appeal "may materially advance the ultimate termination of the litigation." *EEOC v. Wal-Mart Stores, Inc*., No. 17-cv-739-jdp, 2019 U.S. Dist. LEXIS 41331, at *5 (W.D. Wis. Mar. 14, 2019). This requirement is not satisfied here.

First, the factual record in this matter has not even begun to be developed as the Express Scripts Entities have refused to provide any responses to Rockford's discovery requests. *See EEOC v. Wal-Mart Stores, Inc.*, No. 17-cv-739-jdp, 2019 U.S. Dist. LEXIS 41331, at *5 (W.D. Wis. Mar. 14, 2019)("the factual record of this case is not yet fully developed so it does not make much sense to take an appeal of the legal point now").

Second, even if successful, Rockford should have a right to amend its allegations (as this Court permitted it to do as to the Counts that were dismissed in its Rule 12 dismissal Order). Discovery would then be delayed further, as Express Scripts would likely file another motion to dismiss. This matter is finally beginning to progress as the parties are negotiating a case management order which is being presented to the Court this week. Certification of an interlocutory appeal at this juncture will only slow this case down, substantially and for this reason alone, the Express Scripts Entities' Motion to certify an interlocutory appeal should be denied.

Dated: March 25, 2019

Respectfully submitted,

*s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr., Esq.
(Pro Hac Vice)
*haviland@havilandhughes.com*
William H. Platt II, Esq.
(Pro Hac Vice)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
T: 215-609-4661
F: 215-392-4400

Peter J. Flowers, Esq.
(IL Attorney ID No. 06210847)
*pjf@meyers-flowers.com*
Jonathan P. Mincieli, Esq.
(IL Attorney ID No. 06274091)
*jpm@meyers-flowers.com*
**MEYERS & FLOWERS, LLC**
3 North Second Sreet, Suite 300
St. Charles, IL 60174
T: 630-232-6333
F: 630-845-8982

Kerry F. Partridge, Esq.
*kerry.partridge@rockfordil.gov*
Ifeanyi C. Mogbana, Esq.
*Ifeanyi.mogbana@rockfordil.gov*
City Attorney, Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154
F: 815-967-9649

*Attorneys for Plaintiff,*
*City of Rockford and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 25, 2019, a true and correct copy of Plaintiff's Opposition to the Motion for Reconsideration, or, in the Alternative, Motion to Certify an Interlocutory Appeal of the Express Scripts' Defendants was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
