**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| CITY OF ROCKFORD, | Case No. 3:17-cv-50107 |
| Plaintiff, | Hon. Frederick J. Kapala, Judge |
| v. | |
| MALLINCKRODT ARD, INC., et al., | Hon. Iain D. Johnston, Magistrate Judge |
| Defendants. | Oral Argument Requested |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
EXPRESS SCRIPTS HOLDING COMPANY'S, EXPRESS SCRIPTS, INC.'S,
CURASCRIPT, INC.'S, ACCREDO HEALTH GROUP, INC.'S, AND UNITED
BIOSOURCE CORPORATION'S MOTION FOR RECONSIDERATION, OR, IN
THE ALTERNATIVE, MOTION TO CERTIFY AN INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I. THE COURT SHOULD RECONSIDER THE PORTIONS OF THE MTD
ORDER THAT DENIED THE EXPRESS SCRIPTS ENTITIES' MOTION TO
DISMISS ............................................................................................................... 3

    A. Contrary to the MTD Order, the SAC Does Not Allege That Any Express
Scripts Entity Was Involved in the Synacthen Acquisition ..................................... 3

    B. The MTD Order Contains Manifest Errors of Law Because the Exclusive
Distribution Agreements Cannot Have Harmed Competition ................................. 5

        1. The Exclusive Distribution Agreements Cannot Have Enhanced
Mallinckrodt's Monopoly Power, Its Ability to Raise Prices, or Its
Ability to Restrict Output ........................................................................... 6

        2. The Exclusive Distribution Agreements Cannot Have Prevented
Another Pharmaceutical Manufacturer From Developing an
Alternative to Acthar ................................................................................... 8

        3. The Express Scripts Entities' Alleged Failure to Exercise Their
Purported Market Power to "Force Competition" Cannot Violate
the Antitrust Laws ...................................................................................... 9

II. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN
INTERLOCUTORY APPEAL ............................................................................ 10

    A. The Express Scripts Entities' Motion to Certify an Interlocutory Appeal Is
Timely ................................................................................................................. 11

    B. The Express Scripts Entities Pose Questions of Law ........................................... 12

    C. The Questions of Law Are Controlling ............................................................... 12

    D. The Questions of Law Are Contestable ............................................................... 12

    E. Prompt Resolution of These Questions Would Materially Advance the
Litigation ............................................................................................................ 13

CONCLUSION ................................................................................................................. 14

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Boim v. Quranic Literacy Institute*,
　291 F.3d 1000 (7th Cir. 2002) .........................................................................................11

*In re Brand Name Prescription Drugs Antitrust Litigation*,
　867 F. Supp. 1338 (N.D. Ill. 1994) ...............................................................................5, 7

*E & L Consulting, Ltd. v. Doman Industries Ltd.*,
　472 F.3d 23 (2d Cir. 2006)................................................................................................7

*Jefferson Parish Hospital District No. 2 v. Hyde*,
　466 U.S. 2 (1984).............................................................................................................9

*Morton College Board of Trustees v. Town of Cicero*,
　25 F. Supp. 2d 882 (N.D. Ill. 1998) ...............................................................................12

*Republic Bank of Chicago v. Desmond*,
　No. 13 C 6835, 2015 WL 4397781 (N.D. Ill. July 17, 2015) ..........................................11

*Republic Tobacco Co. v. North Atlantic Trading Co.*,
　381 F.3d 717 (7th Cir. 2004) ............................................................................................6

*Schor v. Abbott Laboratories*,
　457 F.3d 608 (7th Cir. 2006) ............................................................................................7

*Sterk v. Redbox Automated Retail, LLC*,
　672 F.3d 535 (7th Cir. 2012) ..........................................................................................14

*In re Text Messaging Antitrust Litigation*,
　630 F.3d 622 (7th Cir. 2010) .............................................................................12, 13, 14

*Valbruna Slater Steel Corp. v. Joslyn Manufacturing Co.*,
　No. 1:10-CV-044-JD, 2016 U.S. Dist. LEXIS 53348 (N.D. Ind. Apr. 21, 2016) ............11

*VBR Tours, LLC v. National Railroad Passenger Corp.*,
　No. 14-cv-804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015)...........................................7

*Weir v. Propst*,
　915 F.2d 283 (7th Cir. 1990) ..........................................................................................11

### STATUTES

28 U.S.C. § 1292(b) ...............................................................................................11, 12, 13, 14

The Express Scripts Entities respectfully submit this Reply Memorandum of Law in support of their Motion for Reconsideration, or, in the Alternative, Motion to Certify an Interlocutory Appeal.[1]

## INTRODUCTION

Rockford's opposition brief ("Opp.") fails to substantively respond to, much less refute, the Express Scripts Entities' arguments that the Court should reconsider the MTD Order and dismiss the antitrust claims against them.[2]

***First***, with regard to the Synacthen Acquisition, Rockford does not dispute any of the Express Scripts Entities' points establishing that the MTD Order fundamentally misapprehended the SAC's allegations, made a decision outside the adversarial issues presented, and made an error not of reasoning but of apprehension. Specifically, Rockford does not dispute that the SAC is devoid of allegations that any Express Scripts Entity participated in the Synacthen Acquisition—let alone factual allegations explaining what any such entity possibly could have done to effectuate or facilitate the acquisition. Nor does Rockford deny that the SAC's allegations are copied nearly verbatim from the FTC Complaint and the Retrophin Complaint against Mallinckrodt, which do not allege that any Express Scripts Entity had a role in that acquisition. Finally, Rockford does not assert that it even argued at the motion to dismiss stage that any Express Scripts Entity was involved in the Synacthen Acquisition. Rockford instead

---

[1] Throughout this brief, the Express Scripts Entities will use the abbreviations defined in their Memorandum of Law. (ECF No. 191 ("Mem.").)

[2] Rockford contends, without citing any support, that it need not "re-argue" the merits of the Express Scripts Entities' arguments for reconsideration. (Opp. at 4 n.3.) Instead, Rockford argues that if reconsideration is granted, the Court should order an additional briefing schedule so that Rockford can present its substantive positions. (*Id.*) There is no legal basis for Rockford's contention. Rockford's opportunity to argue its substantive positions was in its opposition, a 17-page brief that exceeded the 15-page limit provided for in Local Rule 7.1. The Court should reject the baseless argument that Rockford is entitled to ***additional*** briefing in connection with this motion.

contends that reconsideration of the MTD Order would improperly compartmentalize Rockford's antitrust allegations. But given the absence of allegations in the SAC that any Express Scripts Entity participated in the Synacthen Acquisition, there is simply nothing to compartmentalize.

*Second*, Rockford's opposition fails to counter the Express Scripts Entities' arguments that the MTD Order contains manifest errors of law because it overlooked the authority they cited at the motion to dismiss stage establishing that Rockford's three theories of competitive harm are not viable as a matter of law. Rockford incorrectly argues that reconsideration is not warranted because the Express Scripts Entities (i) had an "undeniable role in 'exclusive distribution agreements,'" (ii) do not explain how there has been any "change in the law," and (iii) do not demonstrate how the MTD Order "'misunderstood' or 'misapprehended' their legal argument." (Opp. at 8-9.) But the Express Scripts Entities' "undeniable role" in the agreements at issue is presumptively legal under Seventh Circuit precedent. Further, the motion for reconsideration does not rely on any change in the law. And Rockford disregards the points in the moving brief demonstrating that the MTD Order never addressed the Express Scripts Entities' arguments—or the cited authority—establishing that each of Rockford's theories of competitive harm is not viable.

Rockford's failure to substantively respond to—let alone refute—the Express Scripts Entities' arguments confirms that reconsideration is warranted, and indeed, is necessary, to correct the MTD Order's errors and to avoid embroiling the Express Scripts Entities in years of costly litigation even though no plausible theory has been asserted against them.

In the alternative, the Express Scripts Entities have shown that the Court should certify an interlocutory appeal on the two questions presented. As explained below, Rockford's arguments to the contrary misconstrue the applicable legal criteria and relevant case law.

2

## ARGUMENT

**I.    THE COURT SHOULD RECONSIDER THE
PORTIONS OF THE MTD ORDER THAT DENIED
THE EXPRESS SCRIPTS ENTITIES' MOTION TO DISMISS**

There is no real dispute as to the relevant standard on a motion for reconsideration.[3]  The parties agree that motions for reconsideration are designed to correct "manifest errors of law or fact," and are appropriate when:  "(1) a court has patently misunderstood a party; (2) a court has made a decision outside the adversarial issues presented; (3) a court has made an error not of reasoning but of apprehension; or (4) a change in the law or facts has occurred since the submission of the issue."  (Mem. at 4; *see also* Opp. at 3.)  That standard has been satisfied here.[4]

**A.    Contrary to the MTD Order, the SAC Does Not Allege That
Any Express Scripts Entity Was Involved in the Synacthen Acquisition**

In their moving brief, the Express Scripts Entities established that reconsideration is warranted because the MTD Order misunderstood the SAC's allegations regarding the Synacthen Acquisition, made a decision outside the adversarial issues presented, and made an error not of reasoning but of apprehension.  (Mem. at 4-6.)  Rockford's opposition wholly fails to counter the Express Scripts Entities' arguments.

Rockford ***does not identify any paragraph*** in the SAC alleging that the Express Scripts

---

[3] Rockford's criticism that the Express Scripts Entities cited "a 27-year old, unreported, and inapposite decision" (Opp. at 1) is particularly perplexing given that the standard articulated in that decision is nearly the same as Rockford's own propounded standard, and Rockford fails to distinguish the decision.

[4] Rockford suggests that reconsideration is unwarranted because the Express Scripts Entities only argue that the "Court 'misunderstood the SAC's allegations', not their arguments about the SAC."  (Opp. at 4 n.2.)  But Rockford mischaracterizes the Express Scripts Entities' positions.  With regard to the alleged exclusive dealing agreements, the Express Scripts Entities have explained that the MTD Order did not address their arguments—or distinguish the cited authority—demonstrating that Rockford's theories of competitive harm are contrary to well-settled law.  (Mem. at 3, 7-12.)  And with regard to the Synacthen Acquisition, the Express Scripts Entities have explained that the MTD Order not only misunderstood the SAC's allegations, but also rendered a decision outside the adversarial issues presented and made an error not of reasoning but of apprehension.  (*Id.* at 4.)

Entities were involved in the Synacthen Acquisition. And Rockford does not dispute that neither the MTD Order nor the SAC explains how any Express Scripts Entity could have effectuated or facilitated that acquisition. Nor does Rockford explain why the SAC is replete with allegations suggesting that only Mallinckrodt—not any Express Scripts Entity—participated in the Synacthen Acquisition. (*See id.* at 5 (citing SAC ¶¶ 104-06, 108-10, 114, 127-30, 132-35, 141-45, 151-54).) For these reasons alone, reconsideration of the MTD Order is warranted.

Moreover, Rockford does not deny that its allegations regarding the Synacthen Acquisition are copied nearly verbatim from the FTC Complaint and the Retrophin Complaint, neither of which alleges that any Express Scripts Entity had a role in the acquisition nor names any Express Scripts Entity as a defendant. Finally, Rockford does not contend that it even argued at the motion to dismiss stage that any Express Scripts Entity was involved in the Synacthen Acquisition—further highlighting that the MTD Order reached a decision outside the adversarial issues presented.

Rather than arguing that it actually alleged that the Express Scripts Entities participated in the Synacthen Acquisition, Rockford instead regurgitates passages from the MTD Order. (Opp. at 7-8.)[5] But this approach makes little sense given that the Express Scripts Entities have explained that the MTD Order itself erred in reaching its conclusions regarding the Synacthen Acquisition. Indeed, as already established in the moving brief, the MTD Order based its conclusions regarding the Express Scripts Entities' purported involvement in the Synacthen Acquisition on paragraphs in the SAC suggesting that ***Mallinckrodt acted unilaterally*** in

---

[5] Notably, of the five passages Rockford quotes, three do not reference the Synacthen Acquisition. (Opp. at 7-8 (quoting MTD Order at 2 n.2, 12, 22).) The other passages address Synacthen (*id.* (citing MTD Order at 24, 25)), but as explained above and in the moving brief, they do not show that the SAC contains any allegation that the Express Scripts Entities had a role in the Synacthen Acquisition.

4

effectuating that acquisition. (Mem. at 4-5.)[6]

In addition, Rockford contends that the Express Scripts Entities—by highlighting the SAC's complete absence of allegations linking them to the Synacthen Acquisition—inappropriately "compartmentaliz[e]" Rockford's allegations. (Opp. at 6.) But in the decision Rockford cites to support its argument—*In re Brand Name Prescription Drugs Antitrust Litigation*, 867 F. Supp. 1338 (N.D. Ill. 1994), *rev'd*, 123 F.3d 599 (7th Cir. 1997)—the plaintiffs had evidence regarding each defendant's involvement in the purported conspiracy. *See id.* at 1341-42. Here, by contrast, Rockford's SAC contains *no* allegation of any kind, let alone any plausible factual allegation, that the Express Scripts Entities had *any* involvement in the Synacthen Acquisition. Thus, Rockford's argument concerning compartmentalization is inapposite because there are no allegations to compartmentalize.

### B. The MTD Order Contains Manifest Errors of Law Because the Exclusive Distribution Agreements Cannot Have Harmed Competition

As demonstrated in the moving brief, the MTD Order contains manifest errors of law because it overlooked the authority cited by the Express Scripts Entities at the motion to dismiss stage that establishes that the three types of competitive harm allegedly resulting from the exclusive distribution agreements at issue are not viable as a matter of law. (Mem. at 3, 7-12.)

Rockford's opposition does not refute the Express Scripts Entities' arguments. Rather, Rockford argues that reconsideration is unwarranted as to all three theories because the Express Scripts Entities (i) had an "undeniable role in 'exclusive distribution agreements,'" (ii) do not explain how there has been any "change in the law," and (iii) do not demonstrate how the MTD Order "'misunderstood' or 'misapprehended' their legal argument." (Opp. at 8-9.) The first two

---

[6] Rockford also directs the Court to paragraphs "238 through 252 of the SAC" (Opp. at 7 n.4), but none of those paragraphs even *mentions* Synacthen.

arguments are red herrings, and the third is plainly incorrect.

*First*, the mere existence of the vertical exclusive distribution agreements alleged in the SAC provides no support for Rockford's opposition—such agreements are **presumptively legal**. *See Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 736 (7th Cir. 2004) ("[V]ertical exclusive distributorships . . . are presumptively legal . . . because of their procompetitive benefits."). As a result, the SAC's allegations as to the existence of the exclusive distribution agreements, standing alone, cannot adequately plead harm to competition.

*Second*, Rockford's argument that the law has not changed is irrelevant as the Express Scripts Entities do not base their motion for reconsideration on a change of law.

*Third*, Rockford's only remaining argument is that the Express Scripts Entities fail to explain the misunderstanding or misapprehension in the MTD Order that resulted in a manifest error of law. But, as discussed below, Rockford's threadbare and unsupported assertions on this score fail to rebut the Express Scripts Entities' arguments.

          1.      The Exclusive Distribution Agreements Cannot
                      Have Enhanced Mallinckrodt's Monopoly Power,
                      <u>Its Ability to Raise Prices, or Its Ability to Restrict Output</u>

The MTD Order made a manifest error of law by crediting Rockford's theory that because the exclusive distribution agreements reduced the number of distributors of Acthar from three to one, they enhanced Mallinckrodt's monopoly power and its ability to increase prices for—and restrict output of—Acthar. In their moving brief, the Express Scripts Entities highlighted case law—cited at the motion to dismiss stage, but not addressed by Rockford or the MTD Order—establishing that these agreements cannot have enhanced Mallinckrodt's monopoly power, its ability to raise prices, or its ability to restrict output. (Mem. at 7-9.) Rather, it is firmly established that an alleged monopolist (like Mallinckrodt) can control its own pricing and output to the same extent, regardless of the number of distributors it uses. (*Id.* at 8-

6

9.)

Rockford asserts that the Court should disregard the cases cited by the Express Scripts Entities because they have previously been cited. (*See* Opp. at 9.) But as in its opposition to the motion to dismiss, Rockford fails to explain why the Court should reject the well-supported legal conclusion that the exclusive distribution agreements at issue cannot have enhanced Mallinckrodt's monopoly power. Rockford argues, in conclusory fashion, that the Court should ignore a directly on-point Second Circuit case and a decision in this district,[7] though it identifies no fault in their holdings. (*See id*.) (Presumably, Rockford believes the Court should disregard the cited Seventh Circuit precedent—*Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006)—but it does not offer even a perfunctory explanation why.)

Rather than rebutting this precedent, Rockford wrongly asserts that the MTD Order rejected the Express Scripts Entities' arguments. (*See* Opp. at 10.) Rockford's assertion relies on mere misdirection. The MTD Order did not consider these arguments. Indeed, the Court cited the decisions referenced in Rockford's brief (*see id.*) for the proposition that the *Illinois Brick* rule does not bar Rockford's Sherman Act claims[8] and to set forth the basic elements of a Sherman Act § 2 claim.[9] The MTD Order did not evaluate whether an exclusive distribution arrangement can harm competition when an alleged monopolist has complete power to control

---

[7] *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 30 (2d Cir. 2006); *VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, No. 14-cv-00804, 2015 WL 5693735, at *13 (N.D. Ill. Sept. 28, 2015).

[8] *See* MTD Order at 14-15 (citing *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629 (7th Cir. 2002); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997); *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478 (7th Cir. 1980)).

[9] *See* MTD Order at 23-25 (citing *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011); *Endsley v. City of Chi.*, 230 F.3d 276 (7th Cir. 2000); *Am. Acad. Suppliers, Inc. v. Beckley-Cardy, Inc.*, 922 F.2d 1317 (7th Cir. 1991); *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532 (7th Cir. 1986)).

price and output on its own, and Rockford does not explain how such an arrangement could plausibly harm competition or how the cases the Court cited for inapposite propositions could support such a conclusion.

        2.     The Exclusive Distribution Agreements Cannot Have Prevented Another
                <u>Pharmaceutical Manufacturer From Developing an Alternative to Acthar</u>

The MTD Order also erroneously accepted the SAC's unsupported assertion that the exclusive distribution agreements "prevent[ed] a competitive product from entering the market." (MTD Order at 12 (quoting SAC ¶ 222).) As set forth in the moving brief, there is no legal or factual basis to conclude that the distribution agreements could have prevented a pharmaceutical manufacturer from developing, or introducing, an Acthar alternative. (Mem. at 9-11.)

Rockford responds by asserting that the MTD Order was decided in its favor and the Express Scripts Entities "offer nothing new." (*See* Opp. at 10.) But that argument is inapposite given the Express Scripts Entities' position that the MTD Order erred by failing to consider their arguments at the motion to dismiss stage.

For its part, Rockford offers nothing substantive at all—old or new. Rockford fails to identify where or how the SAC plausibly alleges that the exclusive distribution agreements at issue prevented development of a new drug or impeded another manufacturer from entering the market. This failure is unsurprising given that the SAC's allegations regarding barriers to entry in the putative ACTH market suggest that market factors, not action by any Express Scripts Entity, kept potential Acthar alternatives from being developed. (*See* Mem. at 10 n.5.) Thus, as a matter of logic and antitrust law, there is no basis to conclude that the distribution agreements could have prevented a manufacturer from developing a competitive alternative to Acthar, or

from introducing a new drug to the market.[10]

> 3. The Express Scripts Entities' Alleged Failure to Exercise Their Purported Market Power to "Force Competition" Cannot Violate the Antitrust Laws

As explained in the Express Scripts Entities' moving brief, the Seventh Circuit has held that there is no duty under the antitrust laws (even for an alleged monopolist) to force competition or to push back on price increases. (Mem. at 12.) To the extent the MTD Order holds otherwise, it contravenes binding precedent.

Rockford again does not dispute the Express Scripts Entities' position. Instead, it contends, incorrectly, that the Express Scripts Entities are seeking reconsideration because the MTD Order failed to limit the scope of Rockford's antitrust theory. (*See* Opp. at 11.) But the Express Scripts Entities' actual argument is that the MTD Order reached a conclusion contrary to law. (Mem. at 11-12.) As Rockford acknowledges, reconsideration is warranted in any circumstance when a party identifies a manifest error of law. (*See* Opp. at 3.)

Rockford also suggests reconsideration is unwarranted because the Express Scripts Entities "interposed this same argument . . . in support of their Motion to Dismiss." (*Id.* at 11.) But that suggestion misses the point, as the Express Scripts Entities have argued that reconsideration is warranted ***because*** the MTD Order failed to consider well-settled law cited in support of their motion to dismiss. As a result, Rockford's argument provides no assistance in answering the question at issue—i.e., whether the MTD Order contains a manifest error of law.

Moreover, Rockford incorrectly argues that the Court should reject the Express Scripts

---

[10] Rockford argues that the Court should disregard the Express Scripts Entities' citation to *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2 (1984), because a motion for reconsideration is "no place to interject a [new] legal argument." (*See* Opp. at 10 n.13.) But the Express Scripts Entities do not advance a new legal argument. They merely cite *Jefferson Parish* to illustrate the MTD Order's manifest error of law. (Mem. at 10-11.) Accordingly, even if the Court were to decline to consider *Jefferson Parish*, reconsideration still would be warranted for the reasons articulated in this brief.

Entities' argument because they did not dispute the SAC's allegations that they have market power and did not force new competition.[11]  Even accepting the SAC's factual allegations as true (as required at the motion to dismiss stage), the Express Scripts Entities cannot have harmed competition because, under Seventh Circuit precedent, there is no duty under the antitrust laws to force competition or push back on price increases.  Thus, ***even assuming*** the Express Scripts Entities did not force competition or push back on price increases, their purported inaction cannot violate the antitrust laws.[12]

## II.  IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY AN INTERLOCUTORY APPEAL

If the Court declines to grant reconsideration, the Express Scripts Entities have requested that the Court certify the following questions for interlocutory appeal:

> Does the SAC plausibly allege that the Express Scripts Entities worked to effectuate the Synacthen Acquisition pursuant to an agreement with Mallinckrodt?

> Does the SAC plausibly allege that the exclusive distribution agreements between Mallinckrodt and the Express Scripts Entities harmed competition by:  (1) enhancing Mallinckrodt's monopoly power and increasing its ability to raise prices for—and restrict output of—Acthar; (2) preventing other pharmaceutical manufacturers from developing an alternative drug to Acthar; or (3) eliminating the Express Scripts Entities' "incentive" to exercise their purported market power to "force competition"?

(Mem. at 13.)

---

[11] Rockford also incorrectly suggests that the SAC alleges that the Express Scripts Entities entered into an "agreement" with Mallinckrodt not to push for lower-cost alternatives to Acthar.  (Opp. at 11.)  As explained in the moving brief, the SAC does not allege any such agreement, but instead alleges that the distribution agreements eliminated ESI's "incentive" to negotiate lower prices.  (Mem. at 11-12 & n.6.)

[12] Rockford seeks to inject new allegations concerning the terms of the exclusive distribution agreements. (*See* Opp. at 11.)  But its spurious arguments regarding these agreements are not part of the motion to dismiss record and are irrelevant to the present motion.  If the litigation advances, Rockford is free to advance any interpretation of these agreements that is consistent with ***its*** Rule 11 obligations.  But lest any misrepresentation take hold, the Express Scripts Entities' agreements with Mallinckrodt are lawful. Any assertion to the contrary misunderstands or misrepresents those agreements.

The parties agree that an interlocutory appeal may be certified when a party satisfies the requirements of 28 U.S.C. § 1292(b), as distilled by the Seventh Circuit, and also seeks certification within a "reasonable time" of the order to be appealed.  (Mem. at 13; *see also* Opp. at 12.)  The Express Scripts Entities' moving brief established that both questions posed for appeal meet all criteria for certification.  Rockford's opposing arguments lack merit.

### A.  The Express Scripts Entities' Motion to Certify an Interlocutory Appeal Is Timely

Rockford incorrectly asserts that the Express Scripts Entities were untimely in seeking certification of an interlocutory appeal.  Rockford acknowledges, as it must, that "there is no explicit time limit provided by the statute for seeking a certificate of appealability," but incorrectly states that requests filed "more than a month or so after the order to be appealed are often deemed untimely."  (Opp. at 13.)  In fact, the Seventh Circuit has held that motions for certification of an interlocutory appeal are timely when filed 35 and 36 days after an order denying a motion to dismiss.  *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1008 (7th Cir. 2002).  Indeed, Rockford largely cites cases in which motions seeking to certify interlocutory appeals were deemed untimely only after months-long delays—significantly longer than the "a month or so" standard posited.[13]

But even if Rockford had correctly stated the standard, it ***has been met*** here.  The Express Scripts Entities moved for interlocutory appeal only 28 days after the Court issued the MTD Order.[14]  Rockford does not cite a single case holding that a motion for interlocutory

---

[13] *See Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044-JD, 2016 U.S. Dist. LEXIS 53348, at *21 (N.D. Ind. Apr. 21, 2016) (motion for appeal of "years-old" orders untimely); *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990) (delay of over two months deemed untimely); *Republic Bank of Chi. v. Desmond*, No. 13 C 6835, 2015 WL 4397781, at *2-3 (N.D. Ill. July 17, 2015) (14-month delay deemed untimely).

[14] Rockford incorrectly states that the Express Scripts Entities filed their motion after a "30-day delay."

*(cont'd)*

appeal was untimely under those circumstances.[15]

### B.    The Express Scripts Entities Pose Questions of Law

As set forth in the Express Scripts Entities' moving brief, the Seventh Circuit recognizes that the sufficiency of the allegations of a complaint presents a question of law suitable for interlocutory appeal. (Mem at 14.) Rockford does not dispute that the Express Scripts Entities pose questions of law.

### C.    The Questions of Law Are Controlling

The Express Scripts Entities also explained that the Seventh Circuit recognizes that a question of law is "controlling" for purposes of Section 1292(b) if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so. (*Id*.) Here, the questions of law posed are controlling because if the SAC does not state a claim, this case is likely over. (*Id*.) Rockford's opposition does not dispute that the questions of law are controlling.

### D.    The Questions of Law Are Contestable

The questions of law posed also are contestable. In arguing to the contrary, Rockford asserts that the Express Scripts Entities rely on a single case, *In re Text Messaging Antitrust Litigation*, 630 F.3d 622 (7th Cir. 2010), and that interlocutory appeal is foreclosed. (*See* Opp. at 14-16.) Both assertions are wrong.

As an initial matter, the Express Scripts Entities actually cited several cases in support of

---

*(cont'd from previous page)*
(Opp. at 13.) The MTD Order was entered on January 25, 2019. The Express Scripts Entities' moving brief was filed on February 22, 2019.

[15] Rockford's reliance on *Morton College Board of Trustees v. Town of Cicero*, 25 F. Supp. 2d 882 (N.D. Ill. 1998), in which there actually *was* a 30-day delay prior to filing a motion for certification of an appeal, is misplaced for this reason alone. *Morton* is also readily distinguishable because there the court concluded that the moving party's motion was untimely in part because it was filed two weeks after the moving party ignored a deadline to answer the complaint. *See id.* at 885. No such delay is present here.

their argument that the questions of law posed are contestable. (Mem. at 15 (citing three cases, none of which is *Text Messaging*).) These cases demonstrate that questions of law are contestable when there is substantial ground for difference of opinion, and the Seventh Circuit may view the issues in a materially different light. As explained in the moving brief and above (*see supra*, Section I), both criteria are met here.

In addition, contrary to Rockford's assertion, the Express Scripts Entities did not cite *Text Messaging* in support of their arguments on contestability, but that case also supports the position that the issues here are contestable. In *Text Messaging*, the Seventh Circuit reached two holdings. 630 F.3d at 622. First, while it did not specifically discuss contestability, it held that the sufficiency of the allegations of a complaint is a suitable issue for interlocutory appeal because it meets all four criteria applicable under Section 1292(b), which include contestability. *Id*. at 627. Second, on the fully briefed appeal, the court held that the complaint at issue had sufficiently pled its claims. *Id*. at 629. But the second holding addressed only the specific allegations before the Seventh Circuit. Rockford erroneously conflates these two holdings, contending that because the Seventh Circuit granted an appeal regarding the sufficiency of a complaint and found ***that specific complaint*** plausibly stated a claim, the question of whether ***any complaint*** has plausibly stated a claim is no longer contestable. In so doing, Rockford argues that *Text Messaging* has foreclosed ***any*** appeal as to whether claims have been plausibly alleged. This is simply not the holding of that decision.

### E. Prompt Resolution of These Questions Would Materially Advance the Litigation

Finally, the resolution of these questions of law would materially advance the litigation. (Mem. at 15.) Rockford incorrectly contends to the contrary because the factual record has not been developed, and because Rockford intends to replead, even if the Seventh Circuit holds that

13

it has not plausibly stated a claim.

But the status of the factual record is not a ground for refusing to certify an interlocutory appeal. Indeed, on multiple occasions the Seventh Circuit has agreed to hear appeals of motion to dismiss rulings when the factual record also had not yet been developed. *See Text Messaging*, 630 F.3d at 625; *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012).

And the Seventh Circuit has held:

> [A]ll that section 1292(b) requires . . . is that an immediate appeal ***may*** materially advance the ultimate termination of the litigation. . . . [N]either the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court.

*Sterk*, 672 F.3d at 536. Thus, even assuming Rockford would be granted a fourth attempt to state a claim, an appeal decided in the Express Scripts Entities' favor clearly "may materially advance the ultimate termination of the litigation," either by potentially ending this case, or at least substantially narrowing the issues.[16]

## CONCLUSION

For the foregoing reasons, the Express Scripts Entities respectfully request that the Court reconsider the MTD Order and dismiss the remaining claims against them, or, in the alternative, certify an interlocutory appeal regarding the questions raised in this motion.

---

[16] Rockford also suggests that relief is unwarranted because Mallinckrodt is not a party to this motion, and as a result, Rockford's case will go forward in any event. (*See* Opp. at 1.) But Rockford is mistaken for two reasons. First, the only remaining claims are based on allegedly unlawful agreements between the Express Scripts Entities and Mallinckrodt. (MTD Order at 12, 19, 23 n.14.) Thus, if the claims against the Express Scripts Entities were dismissed, it is unclear how Rockford could continue against Mallinckrodt. Second, even if a portion of Rockford's claims could continue against Mallinckrodt, an appeal still may be certified as it may entirely remove one group of defendants from the case, ending the case as to those defendants and also substantially narrowing the remaining issues.

Dated:  April 8, 2019

Respectfully submitted,

/s/ Matthew M. Martino
Matthew M. Martino (admitted *pro hac vice*)
Patrick G. Rideout (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
matthew.martino@skadden.com
patrick.rideout@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

Amy Van Gelder
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, IL 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-8567
amy.vangelder@skadden.com

*Attorneys for Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., Accredo Health Group, Inc., and United BioSource Corporation*

15

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 8, 2019, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Matthew M. Martino