# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| City of Rockford, | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 17 CV 50107 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Mallinckrodt ARD, Inc., *et al.*, | ) |
| | ) |
|     *Defendants*. | ) |

| | |
|---|---|
| MSP Recovery Claims, Series LLC, *et al.*, | ) |
| | ) |
|     *Plaintiffs*, | ) |
| | ) Case No. 20 CV 50056 |
| v. | ) |
| | ) Magistrate Judge Lisa A. Jensen |
| Mallinckrodt ARD, Inc., *et al.*, | ) |
| | ) |
|     *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants Mallinckrodt ARD, Inc. and Mallinckrodt PLC ("Mallinckrodt") have moved for a protective order to preclude the deposition of Mallinckrodt PLC's President and CEO Mark Trudeau. *Rockford* Dkt. 328; *MSP* Dkt. 283.[1] Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc., Accredo Health Group, Inc., and United BioSource LLC ("Express Scripts") have moved for a protective order to prevent the depositions of George Paz, the former CEO and Chairman of the Board of Express Scripts, Inc., and Tim Wentworth, the current President of Express Scripts Holding Co. and former President and CEO of Express Scripts, Inc.

---

[1] Plaintiff City of Rockford filed a complaint in Case No. 17 CV 50107 ("Rockford"). Plaintiffs MSP Recovery Claims, Series LLC, MAO-MSO Recovery, II, LLC, Series PMPI, and MSPA Claims 1, LLC filed a second amended complaint in Case No. 20 CV 50056 ("MSP"). On March 23, 2020, the Honorable John Z. Lee dismissed MSP's amended complaint without prejudice and allowed MSP leave to file a second amended complaint within 45 days. *MSP* Dkt. 320.

*Rockford* Dkt. 326; *MSP* Dkt. 281. For the following reasons, the Court denies their motions. Status hearing remains set for May 7, 2020 at 2:30 p.m.

## **ANALYSIS**[2]

Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(c)(1) allows district courts, for good cause, to issue a protective order limiting discovery to protect a party from oppression, undue burden or expense. Fed. R. Civ. P. 26(c)(1). "Before restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

The party seeking protection from discovery bears the burden of presenting "a particular and specific demonstration of fact" as to the need for that protection. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citations omitted); s*ee also Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017) (collecting cases). A strong showing is required before a party will be denied entirely the right to take a deposition. *Nucap*, 2017 WL 6059770, at *4 ("[C]ompletely prohibiting a deposition is an extraordinary measure.").

This burden does not shift simply because a party seeks to prevent the deposition of an apex witness (i.e., a high-ranking executive). *See Nucap*, 2017 WL 6059770, at *2. In *Nucap,* the defendants argued that even though they sought a protective order to prevent the deposition of an apex witness, the plaintiff bore the burden of proving that the apex witness has unique, non-cumulative, first-hand relevant knowledge that cannot be maintained by other less intrusive means. The defendants relied on the Seventh Circuit case of *Patterson*, 281 F.3d 676, to support their argument that when an apex witness is involved the burden of proof shifts. The court disagreed. "[T]his view misreads *Patterson* and contradicts the well-established principle that the party seeking protection from discovery bears the burden of presenting 'a particular and specific demonstration of fact' as to the need for that protection." *See Nucap*, 2017 WL 6059770, at *2 (citations omitted).

---

[2] Although MSP's amended complaint was dismissed without prejudice, MSP has informed the Court that it intends to file a second amended complaint. Without an operative compliant in the *MSP* case, this ruling will apply only to the claims outlined in Rockford's second amended complaint. However, due to the significant overlap among the claims asserted by both Rockford and MSP, should MSP file a second amended complaint that is similar to its amended complaint, the Court strongly encourages the parties to meet and confer on the applicability of this ruling to the newly filed MSP complaint before refiling a discovery motion on this topic.

2

While the Seventh Circuit in *Patterson* did not shift the burden in cases involving apex witnesses, they did acknowledge that in determining whether to allow an apex deposition courts may weigh the value of the material sought against the burden of providing it and in doing so may take into consideration the burden that a deposition of an apex witness would place on the company, other reasonably available means of discovery, and the amount in controversy in the case. *Patterson*, 281 F.3d at 682. While not specifically adopted by the Seventh Circuit, some district courts in the Seventh Circuit have utilized a four-part checklist to determine whether to grant a protective order to prevent the deposition of an apex witness. Courts may protect high-level executives from being deposed when any of four circumstances exist: (1) the official has "no unique personal knowledge of the matter in dispute"; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's duties. *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) (citing cases). However, "the apex doctrine…is not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Dyson Inc. v. Sharkninja Operating LLC*, No. 1:14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (internal quotes and citation omitted).

Mallinckrodt argues that Mr. Trudeau, as the President and CEO of Mallinckrodt PLC from 2013 to the present, was not personally involved in and thus has no knowledge of the alleged events giving rise to Plaintiffs' claims because those events occurred several years prior to Mallinckrodt's acquisition of Questcor in 2014 and Mr. Trudeau was never employed by Questcor. Thus, they argue Mr. Trudeau lacks personal knowledge of the "core allegations about which Plaintiffs will seek to obtain testimony to prove their claims." Mallinckrodt's Motion at 2, *Rockford* Dkt. 328; *MSP* Dkt. 283.

It is true that the two main components of Rockford's antitrust claims are their allegations that Mallinckrodt conspired with Express Scripts in two areas: entering into an exclusive distribution agreement for Acthar in 2007 and acquiring a potential competitive product (Synacthen) in 2013. Rockford alleges that this resulted, in part, in the ability of Mallinckrodt to raise Acthar prices exorbitantly.

However, Rockford did not begin to experience damages as a result of the alleged antitrust conspiracy until 2015. Rockford's Second Amended Complaint at 20, *Rockford* Dkt. 98. The second amended complaint alleges that from 2015 through the time of filing of the second amended complaint, Mallinckrodt has continued to increase the price of Acthar and that these price increases are direct evidence that the antitrust violations continue. *Id.* at 23-24, 29. The second amended complaint seeks injunctive relief to stop the ongoing antitrust violations. *Id.* at 3, 59; *see Johnson v. Jung*, 242 F.R.D. 481, 484 (N.D. Ill. 2007) (observing that "personal involvement" is not a prerequisite for deposing a corporate officer if the executive has knowledge of relevant facts).

3

Rockford alleges that as the current President and CEO, Mr. Trudeau has relevant information concerning Mallinckrodt's continuation of the antitrust conduct through the present. Specifically, Rockford points to emails which tend to indicate that Mr. Trudeau was intimately involved in the pricing strategy for Acthar.[3] *See* Plaintiff's Sealed Response, *Rockford* Dkt. 358. In one email for example, Mr. Trudeau discusses the risks the company is facing regarding Acthar and the possibility of increasing the price significantly. *See Travelers Rental Co. v. Ford Motor Co.*, 116 F.R.D. 140, 146 (D. Mass. 1987) (finding that information concerning corporate motive or intent resides with executives with greatest level of authority).

Mallinckrodt did not file a supporting affidavit regarding Mr. Trudeau or otherwise deny that he was significantly involved in Acthar strategy and pricing during his tenure. It argues only that this strategy was discussed in emails that were sent to or reference other deponents or at a meeting that over 21 other people were invited to, including several persons that Rockford is already planning to depose. It is unclear how deposing these other individuals would shed more light on the Acthar strategy than deposing the person who was involved in, if not responsible for, setting the strategy, namely Mr. Trudeau. Depositions of other employees would not necessarily overlap with Mr. Trudeau's personal knowledge. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 127 (D. Md. 2009) ("First, the Court has concluded that Mr. Foster possesses some unique and personal knowledge. Deposition of another is not a substitute. Second, while others may share his knowledge on some subjects, there is no assertion that this deposition is unreasonably cumulative or duplicative.").

The Court must balance the competing interests in allowing this discovery and protecting Mallinckrodt and Mr. Trudeau from undue burden. Even considering that Mr. Trudeau is the highest-ranking executive of a multinational corporation, with costs clearly associated with having to sit for a deposition, Mallinckrodt has not made the strong showing required for an outright denial of the right to depose Mr. Trudeau where he is alleged to have direct knowledge of the conduct underlying Rockford's claims. *See Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 103-07 (S.D.N.Y. 2001) (compelling depositions of Chairman and other executives because they were familiar with the pricing policies of Sony's motion picture subsidiary that were relevant to plaintiff's antitrust claim and had some knowledge of allegedly anticompetitive practices); *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) ("Federal courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case.").

---

[3] Mallinckrodt argues that Rockford's reliance on Mr. Trudeau's public representations on behalf of Mallinckrodt are inapposite citing *Affinity Labs of Texas v. Apple, Inc.*, No. C 09-4436 CW JL, 2011 WL 1753982, at *16 (N.D. Cal. May 9, 2011). But unlike the party in *Affinity*, Rockford has also pointed to Mr. Trudeau's unique, firsthand knowledge regarding issues relevant to its claims. Nevertheless, the Court acknowledges that Rockford has cited numerous documents that appear to have no relevance to their claims and no connection to relevance is sufficiently explained.

4

Moreover, Mallinckrodt has provided the Court with no basis to conclude that Plaintiffs are seeking Mr. Trudeau's deposition solely for harassment or abuse. *See In re Bridgestone*, 205 F.R.D. at 536 (finding that one rationale for barring deposition of an apex witness "is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts"). Mallinckrodt's only claim for harassment stems from Plaintiffs' failure to depose other lower-level executives and employees that were more closely tied to the relevant events before proceeding with Mr. Trudeau's deposition.

At the hearing, Rockford's counsel acknowledged the need to get to the apex by deposing lower-level executives first. The Court agrees with this procedure. Plaintiffs should first attempt to obtain the information they seek by deposing other lower-level executives and employees with more knowledge of the relevant events in 2007 and 2013 as they relate to their claims for damages and injunctive relief before deposing Mr. Trudeau. *See Travelers*, 116 F.R.D. at 145 (acknowledging the need to "permit deferment of the depositions of higher executives until subordinates with supposedly equal or greater knowledge have been deposed"). In ordering that these other depositions proceed first, the Court is not otherwise limiting the determination that Mr. Trudeau's deposition can proceed because he has unique personal knowledge relevant to the claims. However, for Plaintiffs to distil and streamline the information they seek from Mr. Trudeau, they should first proceed with other witnesses that might have more knowledge to narrow the line of questioning necessary for Mr. Trudeau.

Mallinckrodt references 30 depositions that Plaintiffs intend to take of other Questcor and Mallinckrodt employees that were likely to have been involved in the relevant events. Mallinckrodt specifically identifies Don Bailey, Steve Cartt, Michael Mulroy, David Medeiros, Eldon Mayer, and Hugh O'Neill. This may not be an exhaustive list, but the Court is hopeful that the parties can agree to a reasonable list of witnesses that should proceed before deposing Mr. Trudeau to limit unnecessary questioning and lessen any resulting hardship.

As for the depositions of Mr. Paz and Mr. Wentworth, Express Scripts similarly seeks to prevent Plaintiffs from taking these depositions entirely. The Court will first address a threshold issue as to Mr. Paz.

The Court finds that Express Scripts has not shown that Mr. Paz qualifies as an apex witness in this case. Express Scripts has identified Mr. Paz as the former CEO and Chairman of the Board of Express Scripts, Inc. The Court assumes that Mr. Paz remains as Chairman, but Express Scripts has not identified whether Mr. Paz currently holds this position, or any other position that would qualify him as an apex witness under the circumstances.[4] *See Minter v. Wells*

---

[4] The Court notes that Express Scripts could have prevented any confusion by filing an affidavit identifying Mr. Paz's current position and responsibilities. However, Defendants have elected not to file affidavits for any of the requested protective orders.

*Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009) ("While Mr. Foster is CEO of L & F, he does not qualify as an 'apex' executive for the purposes of this case. . . . Mr. Foster has asserted that he is no longer a busy corporate executive, but works a limited schedule. [ ] A deposition would seemingly not interfere with any of his corporate responsibilities."). It is not for this Court to make arguments for the parties. Moreover, Express Scripts does not rely on Mr. Paz's current employment status or responsibilities to claim that a deposition would impose an undue hardship. *Compare Van Den Eng v. Coleman Co.*, No. 05-MC-109-WEB-DWB, 2005 WL 3776352, at *2 n.3 (D. Kan. Oct. 21, 2005) (finding that because the deponent was no longer working for Coleman and had no corporate responsibilities, this militated against the application of the apex doctrine, noting that the deponent's "current occupation, if any, is unknown, and Defendants fail to even argue that this deposition would interfere with any current responsibilities he might have") *with Robertson v. McNeil-PPC Inc.*, No. LACV1109050JAKSSX, 2014 WL 12576817, at *17 (C.D. Cal. Jan. 13, 2014) ("Given that Goggins, as the Worldwide Chairman of Johnson & Johnson's Consumer Group, was an executive at the highest level of the corporation, and that she currently maintains other significant, corporate responsibilities, the apex doctrine applies."). By contrast, Express Scripts specifically argues that Mr. Wentworth's duties as the current President of Express Scripts Holding Co. place considerable constrains on his time.

Regardless, whether applying Rule 26 or the factors for apex witnesses, the Court finds that Express Scripts has not made "a particular and specific demonstration of fact" as to the need to completely preclude the depositions of either Mr. Paz or Mr. Wentworth. *See Gulf Oil Co.*, 452 U.S. at 102 n.16. Express Scripts makes the conclusory argument that Plaintiffs have not shown that these individuals have unique personal knowledge.

Yet, it is Express Scripts' burden to demonstrate that good cause exists to justify entry of the requested protective order. Express Scripts has not filed affidavits from either executive denying knowledge of relevant facts. Instead, Express Scripts generally argues that they have no relevant knowledge because neither were identified in any of the parties' initial disclosures, they were not signatories to the 2007 agreement or any amendments, and Express Scripts does not intend to call them at trial or offer their declarations in support of any "key" motions. Defendants' Motion at 8, *Rockford* Dkt. 326; *MSP* Dkt. 281. This is not enough to show good cause to prevent these depositions.

Express Scripts does not directly address the fact that Mr. Paz's executive tenure with Express Scripts from 1998 through 2015 overlaps with the two main components of Rockford's claims: the 2007 agreement and the 2013 acquisition. Rockford also point to evidence indicating that Mr. Paz was involved in Acthar strategy following Mallinckrodt's purchase of Questcor in 2014 when attending meetings with Mr. Trudeau. *See Travelers Rental Co.*, 116 F.R.D. at 146 (finding that information concerning corporate motive or intent resides with executives with greatest level of authority). Express Scripts also generally alleges that Plaintiffs merely identify

6

these individuals on email distribution lists that discuss Acthar. However, Rockford has pointed to an email which tends to indicate that Mr. Wentworth had some level on knowledge about pricing strategy. *See Six West Retail Acquisition, Inc.*, 203 F.R.D. at 103-07 (compelling depositions of Chairman and other executives because they were familiar with the pricing policies of Sony's motion picture subsidiary that were relevant to plaintiff's antitrust claim and had some knowledge of allegedly anticompetitive practices); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 C 50107, 2019 WL 2763181, at *2 (N.D. Ill. May 3, 2019) ("[A]n express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result.") (quotation marks and citation omitted).

The Court will not grant the extraordinary relief of completely prohibiting the depositions of Mr. Paz and Mr. Wentworth where Express Scripts has not shown that taking their depositions would impose an undue hardship or that these individuals otherwise have no knowledge relevant to the claims. *See Nucap*, 2017 WL 6059770, at *4. Moreover, Express Scripts' only claim for harassment or abuse is that by not seeking any written discovery regarding Mr. Paz or Mr. Wentworth's alleged involvement in, or knowledge of, the acts giving rise to their claims, Plaintiffs must be seeking these depositions to place undue pressure on the individuals and Express Scripts. However, Express Scripts has provided no evidence of any such abuse or harassment.

Even considering whether the information could be obtained from other witnesses or discovery methods, Rockford has provided enough evidence produced in discovery to indicate that both Mr. Paz and Mr. Wentworth are likely to have unique personal knowledge of relevant information. This is not a situation where Rockford needs to conduct additional discovery to determine whether Mr. Paz or Mr. Wentworth have relevant knowledge. *See, e.g., Patterson*, 281 F.3d at 681 (affirming district judge's refusal to compel deposition of high-ranking executive, in part, because a deposition, as opposed to interrogatories, "would have been a quite costly and burdensome means for determining whether [the executive] had information bearing on [the plaintiff's] termination").

Nevertheless, in light of Express Scripts' assertion that Mr. Wentworth's time is significantly constrained by his current duties as President of Express Scripts Holding Co., the Court agrees with Express Scripts that Plaintiffs should first proceed with the already-noticed depositions of individuals that were directly tied to the decisions underlying Rockford's claims. Again, this Court's determination that other witnesses with more knowledge should be deposed before proceeding to depose Mr. Wentworth is an attempt to lessen any resulting hardship by narrowing the questions posed, and as a result, the length of his deposition. The Court clarifies that Express Scripts has not shown any undue burden that would justify precluding Mr. Wentworth's deposition.

Express Scripts generally identifies 25 current and former executives and employees of Express Scripts, individuals identified in their initial disclosures, and signatories of the relevant contracts as witnesses with the same or more knowledge regarding the alleged facts underlying Rockford's claims. Express Scripts also specifically identifies David Norton, Everett Neville, Steve Miller, and the current and former Presidents of CuraScript. Plaintiffs shall first proceed with already-noticed depositions of witnesses with the most relevant knowledge of the alleged events to streamline their approach before proceeding with Mr. Wentworth's deposition. Because Express Scripts has not identified any hardship in proceeding with Mr. Paz's deposition, the Court will not require Plaintiffs to depose any other witnesses before proceeding.

Therefore, Defendants' motions for protective order are denied, except to the extent this Court orders other depositions to proceed before the depositions of Mr. Trudeau and Mr. Wentworth. *Rockford* Dkts. 326, 328; *MSP* Dkts. 281, 283.

Date: April 6, 2020                              By: /s/ Lisa A. Jensen
                                                 Lisa A. Jensen
                                                 United States Magistrate Judge