IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CITY OF ROCKFORD,<br>　　　　　　　　　Plaintiff,<br>　　v.<br>MALLINCKRODT ARD INC., *et al.*,<br>　　　　　　　　　Defendants. | Case No. 3:17-cv-50107<br>District Judge John Z. Lee<br>Magistrate Judge Lisa A. Jensen |

## THE EXPRESS SCRIPTS ENTITIES' OPPOSITION TO
## ROCKFORD'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS

Plaintiff City of Rockford ("**Rockford**") requests an order compelling Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc. d/b/a CuraScript, SD, Accredo Health Group, Inc., and United BioSource Corp. n/k/a United BioSource LLC (collectively, the "**Express Scripts Entities**") to produce "[a]ll Documents relating to [the Express Scripts Entities'] policies, procedures, and practice for document retention, preservation, and/or destruction" pursuant to Rockford's Request for Production No. 37. *See* ECF No. 483 ("**Mot.**"), 483-2 ("**Mem.**"). For the reasons stated herein, Rockford's Motion should be denied.

## Introduction

Rockford's Motion is a classic fishing expedition that seeks discovery about discovery rather than substantive discovery that is relevant to any claims or defenses in this case. This case is about an alleged conspiracy to increase the price of Acthar. *See* ECF No. 430 at 9:22-10:4 ("So our theory of liability, Judge, is that Express Scripts, the company, has contracted with a manufacturer to create exclusive distribution, to limit distribution, the output of Acthar through one channel, and by doing that was able to raise the price exorbitantly and maintain those inflated prices because they contracted with the largest PBM in America . . . ."). And yet notably absent from Rockford's Motion is any attempt to demonstrate how or why the Express Scripts Entities'

1

"policies, procedures, and practice for document retention, preservation, and/or destruction" is actually relevant to Rockford's case. Nor has Rockford put forth any evidence of specific documents missing from the Express Scripts Entities' productions, spoliation, or any other bad-faith conduct by the Express Scripts Entities with respect to document preservation in this case. Rockford does not present any such evidence because there isn't any. Instead, Rockford continues to rehash the same tired tale: that the mere fact that the Express Scripts Entities no longer maintain custodial files for fourteen custodians—all former employees, many of whom left the companies over a decade ago—is enough to justify the discovery sought by RFP No. 37. But this fact alone is not enough, and the case law on this is clear. Absent evidence of spoliation—of which Rockford has none and cites to none—documents relating to the Express Scripts Entities' document retention policies and procedures over **almost twenty years** for **multiple corporate entities** are simply not discoverable under Rule 26.

What is more, Rockford has known from the very outset of this case what the Express Scripts Entities' policies and procedures on document retention are: that "[e]mails that do not constitute business records may [only] be retained for up to two years" and that, "because the allegations in this case concern actions purportedly taken in 2007 or earlier and the Rockford Plaintiffs did not file a complaint until 2017, there may be ESI that plaintiffs request that has been destroyed pursuant to the Policy." *See* Mot. Ex. B (The Express Scripts Entities' October 15, 2018 ESI Disclosures) at 2-3; *see also* Sept. 9, 2019 Status Report (ECF No. 257) at 4 ("[T]hose additional 'contract' custodians are no longer employed by Express Scripts. Many left Express Scripts over a decade ago, well before the instant litigation. As a result, and due to Express Scripts' normal business practices, Express Scripts does not have their custodial files."); ECF No. 257-7 at 8-11 (identifying specific proposed custodians who left the Express Scripts Entities long ago and

2

for whom the Express Scripts Entities therefore do not have custodial files). Yet Rockford has waited until now—mere months from the close of discovery, several months into depositions in this case, and nearly 10 months since receiving the Express Scripts Entities' responses and objections to RFP No. 37—to bring this issue to the Court. Rockford's tardiness should not be excused, not only because it has put forth no evidence supporting discovery into the Express Scripts Entities' document retention policies and procedures, but also because Rockford's tardy motion is nothing more than a transparent attempt to gin up disputes in response to the Express Scripts Entities' concerns about the many deficiencies in Rockford's production of documents.[1] *See* Ex. 1 (Sept. 2, 2020 Email from D. Haviland) (demanding immediate response to newly raised discovery questions "[i]n light of the press Express Scripts has placed on Rockford, and the third party Rockford Consulting"); *see also Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir. 2000) ("[A] party needing additional discovery is under an obligation to bring the issue before the court in an expeditious manner."). Indeed, Rockford's threats to "take additional written and deposition discovery into the practice—not policy—of Express Scripts' document destruction," *see* Mem. at 2, will only lead to additional satellite litigation at a time when discovery should be coming to a close, not further expanding to explore irrelevant issues based on groundless accusations.

---

[1] Rockford's retaliatory motive is evident in its demand that, "[a]s Express Scripts insisted with Rockford and its document production, so too must Express Scripts certify via affidavit that it does not have such documents in its possession, as is sought in Request 37." Mem. at 2. An affidavit is not appropriate here. The Court ordered Rockford to provide an affidavit in response to specific deficiencies identified by the Express Scripts Entities relating to requests in response to which Rockford *agreed* to produce documents and claimed to have done so. *See, e.g.*, ECF No. 480 at 19:5-8, 23:3-5. Here, Rockford is seeking production of a specific request in response to which the Express Scripts Entities have refused to produce documents.

When considered in conjunction with Rockford's simultaneous motion to compel, ECF No. 481, Rockford's Motion presents a troubling pattern of delay, harassment, and lack of diligence. *See* The Express Scripts Entities' Opposition to Rockford's Motion to Compel Defendants to Produce Documents Responsive to Plaintiff's Fourth Request for Production of Documents (ECF No. 487) at 5. Rockford is simply wrong to suggest that the Express Scripts Entities were not willing to meet and confer on this request having offered to do so on August 20, *see* Ex. 2 (Aug. 20, 2020 Ltr. from M. McCaffrey), just as Rockford is wrong to suggest that the Express Scripts Entities have not produced any documents relating to policies, procedures, and practice for document retention, preservation, and/or destruction, *see* Mem. at 2-3, as the specific "Records Retention: Medicare and Medicaid" policy referenced in the Express Scripts Entities' ESI disclosures and cited in Rockford's Motion was produced to Rockford **nearly two years ago**, *see* Mot. Ex. B at 2. Rockford could have confirmed as much with a simple key word search in the Express Scripts Entities' substantial productions of documents. Similar searches would also have confirmed that the Express Scripts Entities have produced all contracts at issue in this case, the entire UBC database for the Acthar Support and Access Program from 2007 on, 174 documents from 2007 to 2008 (the first year of the exclusive distribution agreement), and almost a thousand documents sent to or received by the fourteen custodians for whom the Express Scripts Entities no longer maintain custodial files. In sum, Rockford has the relevant discovery to which it is entitled under Rule 26, and its request to compel discovery regarding the Express Scripts Entities' document retention policies and procedures should be denied.

## Legal Standard

Fed. R. Civ. P. 26(b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party" or that is reasonably calculated to lead to the discovery of admissible evidence. "However, discovery under Rule 26 is not an invitation to the proverbial

fishing expedition." *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 11579392, at *1 (N.D. Ind. Mar. 22, 2010). "Discovery about discovery" is not appropriate unless a "party's discovery compliance has reasonably been drawn into question, [or] that there is 'an adequate factual basis' for an inquiry." *Gross v. Chapman*, 2020 WL 4336062, at *2 (N.D. Ill. July 28, 2020). Ultimately, this Court has "broad discretion in discovery matters, [including a] motion to compel discovery." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001).

## Argument

### I. Express Scripts' Document Retention Policies and Procedures Are Irrelevant

The requested "policies, procedures, and practice for document retention, preservation, and/or destruction" are irrelevant and are not reasonably calculated to lead to the discovery of admissible evidence. Document retention practices, policies and procedure only become relevant to a case—and therefore discoverable under Rule 26—where a party can show evidence of spoliation. *See India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 192 (E.D. Wis. 2006) (denying motion to compel production of document retention policy where plaintiff "has failed to persuade the court that the document retention policy . . . is relevant to any claim or defense alleged in the pleadings"); *Cableview Commc'ns of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, 2015 WL 12838175, at *6 (M.D. Fla. May 4, 2015) ("The discoverability of document retention policies hinges upon whether spoliation is actually at issue."); *see also Oleksy v. Gen. Elec. Co.*, 2011 WL 3471016, at *6 (N.D. Ill. Aug. 8, 2011), *objections overruled*, 2013 WL 3944174 (N.D. Ill. July 31, 2013) (ordering production of document retention policies and litigation holds, among other documents only after post-litigation date purge); *Tate & Lyle Americas, LLC v. Glatt Air Techniques, Inc.*, 2014 WL 10209161, at *3 (C.D. Ill. Aug. 4, 2014) (granting motion to compel

5

litigation hold letters where "the Court finds it reasonable to infer that relevant evidence has been destroyed"). Tellingly, Rockford cites no cases to the contrary (or, indeed, any cases at all).

The standard required to show spoliation—and thus discovery of document retention policies and procedures—is significant. Destruction of custodial files pursuant to a governing document retention procedure prior to the start of any obligation to preserve evidence is not enough. For example, the *Olesky* Court only ordered discovery of document retention policies and litigation hold letters where a data purge three years ***after*** litigation commenced eliminated substantial portions of a relevant database. *See Oleksy*, 2011 WL 3471016, at *1. Similarly, discovery was only ordered in *Tate & Lyle Americas* where Plaintiff did not impose a litigation hold on its employees until over three years ***after*** it anticipated litigation.

Rockford has presented no such evidence here. Rockford merely complains about the lack of custodial files for fourteen custodians who left the Express Scripts Entities' employ years ago; well before any duty to preserve evidence relating to this litigation arose. *YCB Int'l, Inc. v. UCF Trading Co.*, 2012 WL 3069683, at *6 (N.D. Ill. June 12, 2012) ("A party's duty to preserve extends to evidence over which it had control and 'reasonably knew or could reasonably foresee was material to a potential legal action.'" (quoting *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999))), *report and recommendation adopted sub nom. YCB Int'l, Inc. v. UCF Trading Co, Ltd.*, 2012 WL 3069526 (N.D. Ill. July 25, 2012). It is not surprising that the records of persons who left the Express Scripts Entities long ago were not maintained before the Express Scripts Entities reasonably anticipated litigation relating to Rockford's claims; in fact, Rockford itself has not maintained the files of its own departed employees—even one who left as recently as 2015. *See* ECF No. 478 at 12; ECF No. 480 at 22:4-15 ("Ms. Johnson and Ms. Jones are no longer employed and have not been employed

since 2010 and 2015 respectively; therefore, we do not have custodial documents for them, just like ESI does not have custodial documents for those individuals that left its employ, like Mr. Black and some others."). The fact that the Express Scripts Entities did not maintain the custodial files of Nick Black (who left the Express Scripts Entities in 2011, **over five years** before Rockford filed this case) or thirteen other long-departed custodians[2] is not evidence of improper destruction of documents, but merely the operation of normal business practices, consistent with the Express Scripts Entities' document retention practices disclosed to Rockford in 2018. *See* Mot. Ex. B (The Express Scripts Entities' October 15, 2018 ESI Disclosures) at 2-3; *see also Doss v. Peachy*, 2015 WL 3952915, at *4 (E.D. Wis. June 29, 2015) ("[P]arties also must be reasonable in their expectations . . . of what documentary evidence remains over time. People's memories fade, and well-established retention policies often result in documents being destroyed in the normal course of business.").

## II. RFP No. 37 Is Overly Broad, Unduly Burdensome, and Disproportionate to the Needs of the Case

Even if the requested documents were relevant, Rockford's RFP No. 37 is overly broad, unduly burdensome, and not reasonably proportionate to the needs of the case. RFP No. 37 requests "[a]ll Documents relating to Your policies, procedures, and practice for document retention, preservation, and/or destruction." Mot. Ex. A (ECF No. 483-3) at 17. Request No. 37 therefore seeks all documents—not just the procedures and policies themselves—relating to

---

[2] Although Rockford does not name the fourteen missing custodians referenced in its Motion and, confusingly, refers to "more than 14 relevant custodians," Mem. at 2, the Express Scripts Entities assume Rockford refers to the same custodians who have been the subject of numerous discussions between the parties and with the Court, *see, e.g.*, Joint Exhibit D to Sept. 9, 2019 Status Report (ECF No. 257-4): Tom Andrade, Nick Black, Glenn Bogner, Gerard Carino, Paul Elson, James Hill, Gregg Isaak, Debbie Jennings, Stephen Jensen, Stephanie Lee, John Rivers, Brian Tatirosian, Tracey Walsh, and Melissa Beatty.

7

document retention policies, procedures and practices of multiple corporate entities (purportedly including not just the five named Express Scripts Entity defendants, but also "any and all predecessors, successors, subsidiaries, parents, branches, departments, divisions or affiliates, Including without limitation, any organization or entity in which You have management or controlling interests"), *id.* at 6-7, for nearly two decades (January 1, 2001 through the present), *id.* at 9-10. Without any evidence of document retention or destruction issues, the balance of proportionality weighs decidedly against forcing the Express Scripts Entities to take up the undue burden of collecting, reviewing, and producing "all documents" relating to their document retention policies and procedures since 2001. *See Oleksy*, 2011 WL 3471016, at *6 (granting motion to compel production of document retention policies only "extending from the time this suit was initiated" because request for older policies was "excessively broad"). Thus, Rockford's request seeking "all documents" back to 2001—sixteen years before Rockford's filing of its first Complaint against the Express Scripts Entities (2017), fourteen years before Rockford's alleged overpayments for Acthar (2015), and, incomprehensibly, six years before the alleged conspiracy even began (2007)—is overly broad and represents an undue burden on the Express Scripts Entities that is not proportionate to the needs to the case.

Additionally, to the extent that RFP No. 37 seeks the Express Scripts Entities' document retention or preservation notices in this case, Rockford's Motion should be denied because it seeks the disclosure of documents that are protected from disclosure by the attorney-client privilege, *see, e.g.*, *Ingersoll v. Farmland Foods, Inc.*, 2011 WL 1131129, at *17 (W.D. Mo. Mar. 28, 2011); *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (collecting cases), and the attorney work product doctrine, *see e.g.*, *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D.

Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (overruling objection to magistrate judge's ruling that litigation hold notices are subject to attorney-client privilege and work product protection).

## Conclusion

For the foregoing reasons, the Express Scripts Entities respectfully request that the Court deny Rockford's Motion.

| Dated: September 10, 2020 | */s/ Eric C. Lyttle* |
|---|---|

Michael J. Lyle, Esq. (ARDC #6199227)
Eric C. Lyttle, Esq. (*pro hac vice*)
Ethan C. Glass, Esq. (*pro hac vice*)
Keith H. Forst, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
J. Matthew Hamann, Esq. (*pro hac vice*)
J. Kirk Goza, Esq. (*pro hac vice*)
Brendan Carroll, Esq. (*pro hac vice*)
Kathleen A. Lanigan, Esq. (*pro hac vice*)
Matthew K. Wasserman, Esq. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
ethanglass@quinnemanuel.com
keithforst@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com
matthewhamann@quinnemanuel.com
kirkgoza@quinnemanuel.com
brendancarroll@quinnemanuel.com
katlanigan@quinnemanuel.com
matthewwasserman@quinnemanuel.com

Jan H. Ohlander, Esq. (ARDC #3124934)
RENO & ZAHM, LLP
2902 McFarland Rd., Suite 400
Rockford, IL 61107
Tel: (815) 987-4050
Fax: (815) 987-4092
jho@renozahm.com

***Attorneys for Defendants Express Scripts, Inc., Express Scripts Holding Co., Accredo Health Group, Inc., CuraScript, Inc. d/b/a CuraScript SP Specialty Pharmacy, and United BioSource LLC (f/k/a United BioSource Corp.)***

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Eric C. Lyttle*
Eric C. Lyttle