IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| CITY OF ROCKFORD,<br><br>          Plaintiff,<br><br>V.<br><br>MALLINCKRODT ARD INC., MALLINCKRODT PLC, UNITED BIOSOURCE CORP., EXPRESS SCRIPTS HOLDING CO., EXPRESS SCRIPTS, INC., CURASCRIPT, INC., and ACCREDO HEALTH GROUP, INC.,<br><br>          Defendants | Case No. 3:17-cv-50107 (IDJ)(LAJ) |
| MSP RECOVERY CLAIMS, SERIES LLC, MAO-MSO RECOVERY II, LLC, SERIES PMPI, MSP RECOVERY LLC, MSP A CLAIMS 1, LLC,<br><br>          Plaintiffs,<br><br>V.<br><br>MALLINCKRODT ARD INC., MALLINCKRODT PLC, UNITED BIOSOURCE CORP., EXPRESS SCRIPTS HOLDING CO., EXPRESS SCRIPTS, INC., and CURASCRIPT, INC.,<br><br>          Defendants. | Case No. 3 :20-cv-50056 (IDJ){LAJ) |

**PLAINTIFF CITY OF ROCKFORD'S MEMORANDUM
IN OPPOSITION TO DEFENDANT MALLINCKRODT'S MOTION TO TRANSFER
THIS STAYED AND ENJOINED CASE,
AND IN SUPPORT OF ROCKFORD'S CROSS-MOTION TO STRIKE
<u>DEFENDANT'S MOTION FOR VIOLATION OF COURT-ORDERED STAY</u>**

## I.     INTRODUCTION

On October 12, 2020, the Mallinckrodt Defendants in this case filed for bankruptcy.  As a result, the case was automatically stayed by operation of 11 U.S.C. § 362. On November 2, 2020, Defendant Express Scripts filed a motion to stay in this Court. Subsequent to that the Bankruptcy Court for the District of Delaware issued a preliminary injunction on Debtors' Motion, staying <u>all action</u> in this case.  Thereafter, on December 8, 2020, this Court, through Judge Jensen, granted the Express Scripts Defendants' Motion to Stay, issuing the following minute order:

> MINUTE entry before the Honorable Lisa A. Jensen: In light of the 12/4/2020 bankruptcy court order filed in Mallinckrodt plc v. Connecticut, No. 1:20-ap-50850 (Bankr. D. Del.) enjoining this case for 270 days [531], **this case is stayed** and **all pending motions** [518] **are stricken without prejudice to refiling when the stay is lifted**. Plaintiff and the Express Scripts Defendants shall file a joint status report every 90 days on the status of the bankruptcy proceedings with the first report due by 3/8/2021. Mailed notice (jp, ) (Dkt No. 532).

As a result of the above court orders, all actions in this Court are currently subject to *two* stays and *one* injunction.  The actions against the Mallinckrodt Defendants are stayed by all three orders: the automatic bankruptcy stay, the stay created by the preliminary injunction Mallinckrodt sought and obtained in the Bankruptcy Court, over Rockford's objections, and the stay of this Court.  The actions against the Express Scripts Defendants are stayed by the Bankruptcy Court's preliminary injunction and by the stay sought by Express Scripts sought and obtained from this Court.  Thus, neither Defendant has any basis to file any Motion in this Court without first seeking relief from the stay and injunction.

For this threshold reason, this Court has no reason to act on the Motion to Transfer.  Neither the Mallinckrodt Defendants (seeking transfer) nor the Express Scripts Defendants (joining in the request to transfer), sought an order for relief from either *this Court's stay* or the injunction put in place by the Bankruptcy Court before filing the instant Motion.  As such, Plaintiff hereby cross-

moves for an order striking the instant motion and for whatever additional relief the Court deems appropriate for the willful violation of its Stay Order.[1] No order of the Bankruptcy Court impedes this Court's enforcement of its own Orders. Bankruptcy Code does not impede the power of this Court to continue to govern the conduct of the parties and their lawyers in this Court. *Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969 60 USLW 2781, 23 U.S.P.Q.2d 1903 (1992). Should this Court excuse the Defendants failure to seek relief from the stay, or to offer any good cause for their willful violations of this Court's stay Order, Plaintiff offers the following provisional response to the Motion to Transfer.

## II.   BACKGROUND

### A.   PRIOR TRANSFER PROCEEDINGS IN THIS COURT AND OTHER COURTS

It is both noteworthy and vexing that Mallinckrodt's motion fails to mention the important procedural posture here respecting the prior proceedings to transfer cases to this Court.

As the Court well knows from its own docket, Mallinckrodt, headquartered in St. Louis, Missouri, initially sought and received an order from a California Federal District Court transferring the Medicare Secondary Payor ("*MSP*") case[2] to the Northern District of Illinois, arguing that this Court was the "most convenient forum". *See MSP Recovery Claims Series, LLC v. Mallinckrodt Ard Inc*. 2018 U.S. Dist. LEXIS 153375 *8 (C.D.Cal. Jan. 17, 2018) (granting

---

[1] By failing to seek Court approval here or in the Bankruptcy Court, Mallinckrodt creates a catch-22 for the City of Rockford. Without Mallinckrodt seeking relief from the stay under 11 USC § 362 or from the injunction issued under 11 USC § 105, Plaintiff City of Rockford must either stand mute and see its case transferred, or risk sanction in the Bankruptcy Court for being compelled to oppose the motion filed by Mallinckrodt. Neither the injunction nor the stay sought by Mallinckrodt's co-conspirator should be used as both a sword and a shield. Plaintiff respectfully seeks relief from this Court's stay to allow this response.

[2] *MSP Recovery Claims, Series, LLC, et al. v. Mallinckrodt ARD Inc., et al.* 2:17-cv-7928 Dkt. No. 23 ("*MSP*" case).

Mallinckrodt's Motion to Transfer because the *Rockford* case was the "first-to file" and because "transfer of this action would serve the interests of efficiency, consistency and comity"). Mallinckrodt then sought to have the *MSP* case was further reassigned to this Court. *See City of Rockford v. Mallinckrodt, ARD*, 2018 U.S. Dist. LEXIS 41085 (N.D. Ill. Feb. 2, 2018). The Court then amended its Report and Recommendation to add the following:

> In support of its recommendation that 18 CV 379 be reassigned based on relatedness, the Court agrees with the determination by Judge Consuelo Marshall of the Central District of California that both cases share a similarity of issues of fact or law, see Dkt. 109, Ex. C at 3-4. See Local Rule 40.4(a)(2). In addition, the Court finds that both cases are pending in this Court, **reassignment is likely to result in a substantial saving of judicial time and effort** because of the similarity of issues and defendants, the parties to this case are not yet at issue and discovery is limited to initial disclosures and so it has not progressed to the point where reassignment would likely cause delay, and because of the similarity of issues and defendants the cases are susceptible of disposition in a single proceeding. See Local Rule 40.4(b). Any objection must be filed by 3/12/2018. Failure to object may constitute a waiver of objections on appeal. See Provident Bank v. Manor Steel Corp., 882 F.2d 258, 260 (7th Cir. 1989).

*City of Rockford v. Mallinckrodt, ARD,* 2018 U.S. Dist. LEXIS 41022 *2-3 (N.D. Ill Feb. 26, 2018) (Johnston, U.S.M.J.). Judge Kapala then accepted then-Magistrate Judge Johnston's findings of "relatedness", making an independent finding of the same. *See City of Rockford v. Mallinckrodt, ARD*, 2018 U.S. Dist. LEXIS 40714 (N.D. Ill. March 3, 2018) (Kapala, J.).

Most important for purposes of the instant Motion to Transfer, Mallinckrodt sought and received transfer of the *MSP* case to this district, arguing that this forum – not California – was the most convenient forum for the litigation of the *Rockford* and *MSP* class cases. Having so argued, Mallinckrodt should be judicially estopped from seeking a subsequent transfer to a new forum in Delaware, especially after three and one-half years of litigation in this Court and other courts. *See Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir.1990)("The offense is not taking inconsistent positions so much as it is winning, twice, on the basis of incompatible positions.").

4

Mallinckrodt's deliberate forum shopping was not limited to this Court. Instead, in Pennsylvania, Mallinckrodt sought another transfer order from the Eastern District Court of Pennsylvania, seeking to have that Court transfer the case of *Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC* et al, 2:19-cv-03047-BMS (*Steamfitters*) to this Court. In that Motion to Transfer, Mallinckrodt represented that "[g]iven the degree of overlap between the two cases, *Steamfitters'* case should be transferred to the Northern District of Illinois, both to preserve judicial resources and to avoid the risk of inconsistent rulings." Declaration of Jonathan P. Mincieli in Support of Rockford's Opposition to Motion to Transfer ("**Mincieli Decl.**"), at **Exhibit "A"**[3], 2:19-cv-03047-BMS Dkt No. 17 Mallinckrodt's Memorandum of Points and Authorities in Support of Their Motion to Transfer at p. 2. Mallinckrodt also suggested that the burden on the parties weighed in favor of transfer, presumably because the City of Rockford was closer to its headquarters in St. Louis than was Philadelphia.[4] *Id*. at 10.

Suddenly, and without explanation, Mallinckrodt sought to withdraw the Motion to Transfer. Mincieli Decl. **Exhibit "B"**, *Steamfitters* Dkt. No. 50 (Mallinckrodt Motion to Transfer). Plaintiff had opposed Mallinckrodt's request, arguing that the "first-filed" cases involving the subject RICO violations was the case brought by three (3) whistleblowers against Mallinckrodt in 2012, in which case the Department of Justice (DOJ) intervened. Mincieli Decl. **Exhibit "C"**, *Steamfitters* Dkt. No. 30 (Steamfitters' Opposition to Transfer) (citing *U.S. ex. rel. Charles Strunk,*

---

[3] All references to Exhibits A-Z are those attached to the Declaration of Jonathan P. Mincieli.

[4] It is noteworthy that the Bankruptcy Court in Wilmington, Delaware lies almost 30 miles to the south of the Court in Philadelphia, which itself is more than 840 miles from Rockford, Illinois. Distance matters in ruling on requests to transfer under Section 1404. *See, e.g., In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) (granting mandamus review of District Court transfer order, and holding "when the distance between and existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.").

*et. al. v. Mallinckrodt* ARD LLC, 2-12-cv-00175-BMS (E.D.Pa.) ("*DOJ case*")). Rather than allow the Philadelphia Court to rule, Mallinckrodt abruptly asked the Court to allow them to withdraw the transfer request without further explanation. The Court agreed. Mincieli Decl., **Exhibit "D",** *Steamfitters* Dkt No. 52 (Order granting withdrawal).

Having decided that the Philadelphia Federal District Court was the most appropriate forum for the litigation of cases related to the unlawful conduct at issue in the *DOJ case* (which was unsealed in 2019), Mallinckrodt was asked to consent to the transfer of a case filed in New Jersey state court which they removed to federal court under the Class Action Fairness Act (CAFA). *See United Ass'n of Plumbers & Pipefitter Local 322 v. Mallinckrodt ARD, LLC*, *et. al.* 1:20-cv-00188-RBK-KMW ("*Local 322*"), Dkt. No. 12 (Local 322 Motion to Transfer), at Mincieli Decl. **Exhibit "E".** Local 322 moved to have its case transferred to the Philadelphia Court to be coordinated with the *Steamfitters* case and the first-filed *DOJ case*. Mallinckrodt opposed the Motion, arguing that the Philadelphia Court was not the most convenient forum for the litigation of issues involving claims under New Jersey state law. *Local 322* Dkt. No. 30 (Mallinckrodt's Opposition to Transfer) at Mincieli Decl. **Exhibit "F".** The New Jersey Federal District Court agreed, denying Local 322's Motion to Transfer. *Local 322* Dkt. No. 76 (August 18, 2020 Order Denying Transfer) at Mincieli Decl. **Exhibit "G."**

Thereafter, Mallinckrodt decided that litigating in the local Federal District courts was the most appropriate approach to the litigation of Acthar cases brought against it. It decided <u>not</u> to

move to transfer any of the follow-on litigations filed in the Northern District of Georgia,[5] the Central District of California[6], or the Northern District of California.[7]

Now, after having moved the *MSP* case to this Court but not the *Humana* case (from the Central District of California), having withdrawn a request to transfer the *Steamfitters* case to this Court, having opposed requests to move the *Local 322* and *WCPS* cases to the *Steamfitters* Court for coordinated pretrial proceedings, and having allowed the *Marietta*, *Humana* and *HCSC* cases to proceed in their respective courts, Mallinckrodt seeks to transfer all of these cases to a wholly new court, the District of Delaware. The Delaware Bankruptcy Court has absolutely no familiarity with the Acthar cases. It is not the most convenient forum.

Remarkably, this Court, which had been previously deemed by Mallinckrodt to be the most convenient forum for resolution of the antitrust cases brought against it, now has become somehow "inconvenient." That assertion rests, not on convenience, but rather on Mallinckrodt's attempt to forum-shop all cases to a more favorable forum. It rests on Mallinckrodt's desire to continue its unlawful conduct with Express Scripts in violation of the federal and state antitrust laws this Court has been adjudicating since April 2017.

Mallinckrodt's forum shopping is perhaps best demonstrated by the fact that is has not moved to transfer the *Marietta* case from the Northern District of Georgia to the District of Delaware. *See* Marietta Docket Report at Mincieli Decl. **Exhibit "H"**. Why not? If all Acthar cases are related, and the District of Delaware is the most convenient forum for all Acthar cases,

---

[5] *See City of Marietta v. Mallinckrodt ARD LLC*, 1:20-cv-00552 (N.D.Ga.) ("*Marietta*").
[6] *See Humana Inc. v. Mallinckrodt ARD LLC et al.,* Case Number 2:19-cv-06926 (C.D.Cal.) ("*Humana*").
[7] *See Health Care Services Corp. v. Mallinckrodt ARD LLC et al*., Case Number 3:21-cv-00165 (N.D. Cal.) ("*HCSC*").

Mallinckrodt has no justification for leaving the *Marietta* case in a court outside the Delaware Bankruptcy Court.

Perhaps the clearest evidence of Mallinckrodt's improper motive in seeking transfer is revealed by the fact that Mallinckrodt's lawyer from Arnold & Porter, Laura Shores, asked Judge Lee to force coordination of the cases outside this Court with the *Rockford* case. The following colloquy took place:

> MS. SHORES: There's a lot to respond to, but I don't
> want to respond to every point.
>
> First of all with respect to discovery, I can represent to this Court and to plaintiffs' attorneys that he will find us very cooperative. So I'm not sure what goodwill would be lost in the process, but I think he will -- I think he will be able to negotiate in good faith with us, and we're eager to move things along as well.
>
> With respect to his filing of cases in different courts, I'm sure Your Honor has experience in these kinds of cases, but it's common for members of a class to file both state law claims and federal law claims in a federal court complaint. And as to his point about needing other representative class members, I don't know why they couldn't be added to his complaint in this court which is, you know, the same claims and facts.
>
> **But I guess we'll wait to see what else he intends to file down the road. It seems to us, again, incredibly inefficient to have different courts all over the place deal with the same parties and claims and allegations.**
>
> THE COURT: I tend to agree with that. But on the other
> hand, **forced cooperation can only go so far**. And so I
> understand that the parties want to try to go about discovery
> efficiently by trying to coordinate discovery, but **my main
> concern is -- are these cases and making sure that the parties
> are on track to satisfy the deadlines that have been set in this case**.
>
> **And so to put it bluntly, I am not going to wait around to see how those other cases go, kind of progress in their lives to make sure the parties are complying with their obligations for discovery in this case.**

Mincieli Decl. **Exhibit "I"** (Transcript of Proceedings, September 20, 2019 pp. 8-10, 12-15) (emphasis supplied). When this Court denied Mallinckrodt's request for forced coordination, Mallinckrodt and its lawyers decided to move in a different direction to gain a litigation advantage:

they starting to ploy with Express Scripts to devise a phony claim of "indemnity" in order to ask the Bankruptcy Court to determine "relate to" jurisdiction. But, in doing so, Mallinckrodt's lawyers made material misrepresentations to the Bankruptcy Court about their purported lack of knowledge about the Express Scripts' indemnity claim, when in fact, Mallinckrodt's lawyers were the ones coordinating the phony claim.[8]

**B. Discovery proceedings in this Court.**

The parties then spent the next two years litigating in this Court. This Court decided Defendants' Motions to Dismiss, denying the same and allowing Rockford's antitrust claims to proceed. *City of Rockford v. Mallinckrodt ARD LLC, et. al*., 360 F.Supp.3d 730 (N.D.Ill. 2019). This Court then decided the Express Scripts Defendants' Motion to Reconsider the Court's dismissal ruling, rejecting arguments that it "misapprehended" Defendants' position. *City of Rockford v. Mallinckrodt ARD LLC, et. al*., 2019 U.S. Dist. LEXIS 103885 (N.D.Ill. May 3, 2019). This Court then entered multiple orders governing the production of electronic discovery and the confidentiality of documents produced in discovery. *E.g.*, Dkt. Nos. 145, 156 and 308. Importantly for purposes of evaluating Defendants' motives for seeking transfer at this late juncture, in resolving a lingering issue over the use of "technology assisted review" ("TAR"), this

---

[8] As discussed below, time records produced in bankruptcy reveal that Laura Shores had a telephone conference with Mallinckrodt's in-house counsel, Lauren Mistal, and lawyers from Latham & Watkins the day before Express Scripts served its letter claiming indemnity. *See* Mincieli Decl. **Exhibit "N"** (Latham time records). In his closing argument, Latham lawyer Chris Harris told Judge Dorsey that Mallinckrodt was surprised by the letter when it was received on October 14, 2020, without advising the Court that he had had a conference with Laura Shores the day before to discuss the ESI indemnity claim which had not yet been made.

At a minimum, before deciding Mallinckrodt's transfer request, this Court should direct Attorney Shores to produce her time records reflecting her conversations with Latham and Express Scripts counsel prior to October 14, 2020, in order to determine whether counsel's duty of candor to the tribunal has been satisfied. This Court always maintains jurisdiction over the lawyers admitted to practice before it, especially those admitted *pro hac vice*, as in the case of Attorney Shores.

Court described the *Rockford* case as a "bet the company" case for the Defendants. *City of Rockford v. Mallinckrodt ARD LLC, et. al*., 326 F.R.D. 489, 495 (N.D.Ill. 2018). Those Orders led to the production of over 5 million pages of documents in these cases, as Defendants have repeatedly argued, but not without controversy. Instead, this Court needed to rule upon dozens discovery motions, and held monthly status conferences to rule on such motions, in order to force these Defendants to produce discovery.

The same is true about depositions. In December 2020, Rockford noticed the depositions of nearly the 100 deponents this Court allowed. By March, only 3 had been conducted. It took a Court Order in May to establish a Court-ordered, complete schedule for all depositions in this case. *See* Dkt. No. 401 (ordering "By 6/1/2020 the parties are to file a joint statement indicating that the deposition schedule discussed in [390] has been completed.") Despite that, by October 2020, only 17 depositions of the 100 depositions allowed by this Court were conducted – 11 current and former employees of Mallinckrodt and 6 current and former employees of Express Scripts. In a telltale sign of the Defendants' coordination in relation to the Mallinckrodt bankruptcy, the Defendants had failed to take even one deposition of either the City of Rockford or the MSP Plaintiffs, despite the impending December 16, 2020 discovery cutoff.

Defendants' conduct worsened as the deadlines drew near, and the bankruptcy had yet to be filed. For instance, as this Court is well aware, the depositions of the highest level employees of the Defendant companies – the present and former CEOs and their highest ranking corporate officers[9] – all were scheduled to be completed by October. But, they were abruptly continued,

---

[9] As this Court is well-aware, the Defendants filed Motions for Protective Orders as to these executives, arguing that they were "apex" witnesses whom should not be deposed. Dkt. Nos. 326 and 328. After lengthy briefing and arguments, this Court denied the Motions and ordered the depositions to proceed. Dkt. No. 386.

with various excuses of non-descript personal "emergencies". *See, e.g.*, Emails at Mincieli Decl. **Exhibits "J" and "K"** (cancelling Court-ordered depositions of the President of Mallinckrodt ARD, Hugh O'Neill, and the former President of Questcor, James Feres, respectively).

### C. Defendants' concealment of the bankruptcy from the courts, and strategy to take away this Court's jurisdiction on grounds of phony claims of indemnity with Express Scripts.

While certainly Mallinckrodt knew it was going to file for bankruptcy at the time it replaced Bryan Cave with Arnold & Porter, the lawyers also knew. A cursory perusal of the Arnold & Porter engagement from 2019 reveals the firm agreed to blended rates for all its lawyers and a monthly capped fee of $700,000. *See* Mincieli Decl. **Exhibit "L"** (collection of Arnold & Porter retainers, as marked at a recent hearing in the Bankruptcy court on the Debtors' retention of Arnold & Porter as "special counsel", as Exhibits A&P 1, A&P 2, A&P 3, A&P 4 and A&P 16). In early 2020, Mallinckrodt then transferred the Arnold & Porter retention to separate entities – other than the Defendant companies – as part of a company "reorganization". *See* Ex. L. A&P 1. The Mallinckrodt defense lawyers thus knew at the time that Mallinckrodt was going to file for bankruptcy. They just refused to notify this Court – or any court – despite the clear admonition of the Court in the *Steamfitters* and *DOJ* cases to notify the Court in advance to avoid wasting judicial resources with scheduling.

Despite having told Judge Schiller they were not "bankruptcy counsel" and did not know about the impending bankruptcy,[10] Arnold & Porter secretly re-negotiated its fee retainer in July 2020, which retainer expressly referenced the impending bankruptcy.[11] Ex. L. Specifically, on

---

[10] *See* Mincieli Decl. **Exhibit "Z"** (Debtors' Reply in Support of Application to Authorize Retention and Employment of APKS at 9, suggesting to Judge Schiller, wrongly, that "A&P stated that it was not *bankruptcy* counsel").

[11] *See* Ex. L, A&P 3 at Section 2.5: "Termination: … In the event Mallinckrodt plc or any of its affiliated entities enters into Chapter 11 bankruptcy prior to December 1, 2020 as a result of which

July 1, 2020, Arnold & Porter and Mallinckrodt signed "Statement of Work #3" which provided as follows:



Ex. L, A&P 3 (emphasis supplied).

The lawyers for Mallinckrodt, knowing about the impending October bankruptcy filing, started to run interference to buy more time for their client. As this Court is well aware, Arnold & Porter reached out to former Questcor employees to "represent" them, knowing their only mission was to delay the depositions to avoid their ever taking place. *See, e.g.*, Ex. K (email correspondence adjourning Feres deposition "due to a medical related conflict").[13]

---

any or all of the Rockford and related antitrust/marketing litigation matters for which APKS has been engaged to represent Mallinckrodt are stayed, this SOW shall automatically terminate on the last day of the month during which the Chapter 11 filing occurs and the stay is entered by the bankruptcy court.")

[12] The referenced "Success Fee" refers to a bounty placed on Arnold & Porter's success in defeating Rockford's Motion for Class Certification. Arnold & Porter was apparently so confident it could defeat Rockford's Motion, due to be filed on October 16, 2020 under this Court's Case

[13] As with the circumstances underlying Attorney Shores' secret coordination of the "ESI indemnity" issue in conjunction with the Bankruptcy Court's issuance of the preliminary injunction, this Court should compel defense counsel in this case to attest under oath that their statements about the purported "medical" and "personal" issues raised by the Mallinckrodt witnesses and Express Scripts witnesses as reason for putting off the Court-ordered depositions were true and correct, and had nothing to do with the impending Mallinckrodt bankruptcy.

These comments are not idle speculation.  In the Bankruptcy Court, Rockford obtained the complete set of retainer agreements signed by Mallinckrodt and its new counsel from Arnold & Porter in 2019.  *See* Ex. L.  This Court will recall that Mallinckrodt had been represented by the firm of Bryan Cave since 2017.  It was Bryan Cave who committed to discuss settlement with Rockford if the Plaintiff overcame the Defendants' Motions to Dismiss.  But, after this Court's January 25, 2019 Order issued, there was silence from Mallinckrodt.  *See* Mincieli Decl. **Exhibit "M"** (excerpt of Aug. 8, 2017 Transcript of Proceedings).  Unbeknownst to Rockford, Mallinckrodt was contemplating a bankruptcy reorganization whereby it would overcompensate the plaintiffs in the opioid litigation and the government, and leave Rockford and the Class of Acthar purchasers with virtually nothing.[14]  This is despite the fact that Acthar drives more than 40% of the revenue of Mallinckrodt.

### D. Express Scripts' late asserted indemnity claim does not justify the transfer of this case.

What was previously unknown to Rockford, its counsel or the courts is that defense counsel engineered a false claim of indemnity to tear this case from this Court, depriving the City of Rockford of its day in court and justice against the PBM with whom it contracted to protect it from the likes of Mallinckrodt.  The time records produced by Mallinckrodt's bankruptcy counsel demonstrate that a conference was held on October 13, 2020 – the day after Mallinckrodt filed for bankruptcy -- between the lead lawyer for Arnold & Porter in this Court, Laura Shores, and Mallinckrodt's bankruptcy counsel at Latham & Watkins ("Latham"), Attorneys Chris Harris,

---

[14] Under the Restructuring Support Agreement ("RSA") the Debtors negotiated with the opioid plaintiffs and the federal government, they each would receive $1.6 billion and $260 million, respectively, in settlement payments, while the Acthar Plaintiffs are left with some indeterminate share of a nebulous fund of $100 million to be share amongst thousands of unsecured claimants.

Elizabeth Marks and Anu Yerramalli.[15]   During that conference, counsel for Mallinckrodt discussed the "ESI indemnity" issue which Latham's lawyer told the Bankruptcy judge came as a complete surprise the next day, October 14.   There was no surprise – the entire indemnity claim was created by Mallinckrodt and Express Scripts as a means to take the *Rockford* case away from this Court, beginning with the preliminary injunction.   The issue of indemnity eventually formed the basis for the Bankruptcy Court's decision to grant the preliminary injunction.

The Bankruptcy court was completely unaware of what the lawyers had done at the time it ruled, as the following colloquy shows:

> MR. HARRIS: …So we don't even need to go into the details of indemnification, but I will just briefly respond to a few points.
>
> There were sweeping claims about what allowing indemnification here means. Does it mean every single case in which there's indemnification across the country will have to be stayed for all debtors? No. We've been focused on these claims and what impact they have on us.
>
> That's -- **why haven't we counterclaimed for indemnity? Well, the assertion was just brought two days after our bankruptcy, and we have been busy**. The testimony from Mr. Welch, there's no deadline for us to respond. We're trying to resolve things consensually. There's no need for us to engender a further fight now when we are trying our best to reach consensus in this case.
>
> **Asked why ESI didn't assert this indemnity claim earlier. <u>I don't know</u>, possibly because they were focused on working collaboratively to defend these cases, and possibly because they didn't need to assert them yet.** And as Your Honor knows, often, a bankruptcy filing is what triggers parties to come forward with their claim. That's sort of the nature of things like bar dates. **So there's nothing surprising that has surfaced now, and there's nothing nefarious about it**.
>
> THE COURT: Well, could it also have been –
>
> MR. HARRIS: In terms of --

---

[15] *See* Mincieli Decl. Exhibit "N" (contemporaneous time records produced by Latham reflecting similar entries of Chris Harris (CH), Elizabeth Marks (EM) and Anu Yarimalli (AY) on October 13, 2020 of conference with Laura Shores about Express Scripts).

> THE COURT: **Could it also have been filed two days after the bankruptcy because Express Scripts knew this motion would be coming, and it would give them an advantage in getting the stay if they had alleged claims for indemnification?**
>
> MR. HARRIS: **That may be, Your Honor. <u>I can't speak for them</u>**. I -- all I can talk about is what the impact is on us. The impact is very, very harmful, there's not real dispute about that in the record.

Mincieli Decl. **Exhibit "O"** (November 18, 2020 Hearing Transcript pp. 85-86) (emphasis supplied). Counsel's statements that he did not know that Express Scripts was planning to claim indemnity is directly belied by his time records reflecting a conference with Attorney Shores and in-house counsel about the "ESI indemnity" claim that had not yet been written or sent. Such lack of candor to the tribunal cannot be countenanced by the courts. The Bankruptcy Court was deceived. But, now Mallinckrodt seeks to capitalize on that deception as a means to take the *Rockford* case away from this Court.

To be clear, Mallinckrodt does not need to transfer this case to the Bankruptcy Court in the District of Delaware for its own purposes: it is already there. That's how bankruptcy works, and Mallinckrodt is well aware of this. Every claim that every entity has (including Express Scripts' alleged claim of indemnity) is going to be heard and adjudicated as to Mallinckrodt in the Bankruptcy Court for the District of Delaware. Thus, for Mallinckrodt to beseech this Court to transfer a case that (a) it argued to the California Court was the first-filed, (b) that is already subject to the automatic stay and the stay of this Court, and (c) that is subject to a preliminary injunction that it obtained on nearly frivolous claims, strains credulity.

The purpose of the instant Motion to Transfer is not to vindicate Mallinckrodt's right to a bankruptcy forum. Rather, the purpose is to bring within the debtor-protective shield of a chapter 11 reorganization Mallinckrodt's co-conspirators at Express Scripts. The ongoing cooperation of these entities in the antitrust conspiracy at issue in this case – the exclusive distribution and sale

of Acthar – is necessary because more than forty percent (40%) of Mallinckrodt's post-petition revenue depends on it. *See* Mincieli Decl. **Exhibit "P"** (Declaration of Stephen A. Welch ¶¶ 37, 38) (describing Acthar as "Debtor's most valuable product")  In obtaining transfer, Defendants can deprive the City of Rockford of its constitutional right to a jury trial by shuttling the case from an Article III court, to an Article I court where a judge completely unfamiliar with the facts, prior arguments, and the law of the case as articulated by this Court, and that has been unwilling to even examine the claimed indemnity[16], will be both the fact finder and the judge that applies both Illinois state antitrust law and federal antitrust law.

This Court should examine the docket in this case.  Express Scripts' purported right of indemnity, is predicated on agreements not with corporate parent Express Scripts itself, but rather, with its subsidiaries – one of which was sold in 2017.  The Court's docket reveals a complete lack of any cross-claim against Mallinckrodt by any Express Scripts entity.  Were the Court to examine the depositions of Mallinckrodt employees it would find that Express Scripts did not one question of any Mallinckrodt witness relevant to any purported claim of indemnity during those depositions. *See*, e.g., Mincieli Decl. **Exhibit "Q"** (Redacted Deposition Transcript of William Hillmer at 413). Similarly, if this Court were to examine the depositions of Express Scripts employees it would find that Mallinckrodt did not any similar questions of Express Scripts witnesses.  *See* Mincieli Decl. **Exhibit "R"** (Redacted Deposition Transcript of Robert Osborne)[17].  Evidence presented before the Bankruptcy Court established that, although there are requirements of timely

---

[16] *See infra*, page 8, for transcript demonstrating a lack of judicial inquiry.

[17] Although Mallinckrodt has much stronger claims to indemnity as to Express Scripts, and even though it is the fiduciary duty of the debtor-in-possession to disclose all such assets in its schedules, Mallinckrodt not only did not disclose its superior indemnity agreements, it has abandoned this property in breach of its fiduciary duty, which as led to the City of Rockford filing a motion for appointment of an independent trustee.  *See* Mincieli Decl. at **Exhibit "S"** (Acthar Plaintiffs Motion for Appointment of Trustee).

notification of indemnity claims, neither party ever made notification to the other after the City filed this action in April 2017, and the first such notification was made on the third day of Mallinckrodt's bankruptcy, when Mallinckrodt sought to expand its requested injunction to include Express Scripts. *See* Ex. T p. 155: 7-22.

### E. The Language of the Indemnity Does Not Support Express Scripts' Belated Claim

The conspiracy between Mallinckrodt and the Express Scripts entities was represented, in part, by a series of agreements. The first, and arguably most important of those, was the 2007 Exclusive Wholesale Product Purchase Agreement between Mallinckrodt and Curascript SD. It stated in relevant part:

**22. MUTUAL INDEMNIFICATION:**

(a) Distributor [CSD] will indemnify and hold Company [MNK] harmless from and against any loss, cost, damage, expense, or other liability, including, without limitation, reasonable costs and attorney fees ("Costs") incurred in connection with any and all third-Party claims, suits, investigations or enforcement actions ("Claims") as a result of Distributor's negligent acts, negligent or willful omissions, or willful misconduct, or Distributor's breach of this Agreement.

(b) Company [MNK] will indemnify and hold Distributor [CSD] harmless from and against any Costs for Claims incurred by Distributor as a result of Company's manufacturing of the Products, negligent acts, negligent omissions, willful misconduct, or Company's breach of this Agreement, except as such Claims arise as a result of Distributor's negligent acts, negligent or willful omissions, or willful misconduct, or Distributor's breach of this Agreement.

(c) As a condition of indemnification, the Party seeking indemnification shall notify, to the extent possible under applicable law, the indemnifying Party in writing promptly upon learning of any Claim for which indemnification may be sought hereunder. The indemnifying Party shall have a right to participate in the defense of such Claim, and the Parties will cooperate in such defense. No Party shall have an obligation to indemnify the other Party as described herein with respect to any claim settled without the mutual written consent of both Parties, which consent shall not be unreasonably withheld.

"2007 Agreement" at Mincieli Decl. **Exhibit "U"**. The indemnity in the 2007 Agreement is mutual, but does not favor ESI – ESI is not even mentioned. The agreement only inures, if at all, to the benefit of Curascript SD (CSD). Where Mallinckrodt's indemnity of CSD is constrained

by the "Company's manufacturing of the Products", CSD's indemnification of Mallinckrodt is not so limited. Further, Mallinckrodt's indemnity of CSD has an exception for instances that "arise as a result of Distributor's negligent acts, negligent or willful omissions, or willful misconduct." The mutual exchange of promises in the 2007 Agreement were willful acts. Finally, the mutual indemnity provision has a requirement for prompt notification. Certainly, both Mallinckrodt and Curascript "learned" of the claims of the Plaintiffs each time they were sued, beginning in April 2017 with this case. However, at no point did Curascript ever "promptly" notify Mallinckrodt of any such claim of indemnity. *See* Exhibit T, Deposition of Welch at 58:25–59:7 (Q: …at no point prior to October 14, to your knowledge, did Express Scripts invoke indemnification and alert Mallinckrodt that it was exercising its rights under those provisions, right? A: I'm not aware of any previous invocation of claim of those rights.").

The other indemnity claims are equally specious. The April 1, 2018 agreement cited by ESI counsel in her October 14, 2020 letter purportedly between Mallinckrodt ARD and Accredo Health Group post-dates the Rockford litigation by one full year, and thus it is irrelevant. Mincieli Decl. **Exhibit "V"** (April 1, 2018 Agreement between Mallinckrodt ARD, Inc. and Accredo Health Group, Inc.). At the time that the parties entered into April 2018 agreement, one year later, claims of the Acthar Plaintiffs had already been made in this Court. Mallinckrodt had no explanation for how Rockford could have sued in 2017 on claims arising out of a 2018 agreement, for which Accredo apparently provided ARD indemnity. Equally significant is that ESI makes no cross-claim in its Answer to the Rockford Complaint. (Dkt No. 205) In fact, ESI's affirmative defenses do not include any claim for indemnity or contribution by anyone. *Id.*

18

The third indemnity provision, an October 1, 2014 "Work Order"[18] for "Patient Assistance Program" (PAP) was signed by Questcor with a company known as Express Scripts Specialty Distribution Services, Inc. ("**ESSDS**").[19] Mincieli Decl. **Exhibit "W"** (October 1, 2014 Work Order for Patient Assistance Program). ESSDS has not been sued by the City of Rockford or any other Acthar Plaintiff. (Ex. T, Welch Dep Tr. at 165: 5-8) ("Q: Has [ESSDS] been sued by any Acthar plaintiff? A: I am not aware of that."). Mallinckrodt cannot show otherwise.

Mallinckrodt has not placed before the Court any evidence that Express Scripts, Inc., as a PBM that contracted with TPPs like Rockford and IUOE Local 542, has any right to contractual indemnity against them. Further, since ESSDS has not been sued, ESI has no claim on its behalf. Finally, United BioSource and the former corporate parent of UBC, retained any rights to execute on its own behalf any contractual indemnity rights acquired by Avista in the sale by Express Scripts. UBC has not asserted an indemnity provision independently against Debtors, and ESI lacks standing to assert one on UBC's behalf.

This was the status of the case when the Bankruptcy Court undertook its injunction order. In reading its order from the bench the Court admitted it had wholly failed to execute even the most cursory evaluation of the indemnity agreements. First, the Court said:

> It is not for this Court to make an ultimate ruling on the question of whether ESI indemnity claims will be successful. The question is only whether potential indemnity claims exist.

November 23, 2020 , Transcript of Telephonic Hearing at 46:12-15 at Mincieli Decl. **Exhibit "X"**. The Court then announced:

---

[18] Mallinckrodt acquired Questcor in August 2014 and fails to explain how Questcor had even the legal authority to enter into such an agreement post-acquisition. (Ex. T, Welch Dep. Tr. 164) ("October 1 followed August of 2014 when we acquired" Questcor).

[19] ESI's counsel Ms. Bauman erroneously claimed that UBC is the "Provider" under the document by which Questcor allegedly owed Mallinckrodt ARD indemnification. However, in both the Master Services Agreement and the Work Order, only ESSDS is listed as "Provider".

> Therefore, based solely on the existence of potential contractual indemnification claims, the Court has subject matter jurisdiction. See W.R. Grace & Company, 384 B.R. 17, at 28 (Bank. D. Del. 2008)[20].

Exhibit X, at 46: 21-24.

The failure of the Court to make findings of fact and conclusions of law in support of its preliminary injunction, combined with the errant ruling on "related-to" jurisdiction, are the reasons why the preliminary injunction was erroneously entered, and why Rockford intends to seek to have the injunction lifted next month.  It is also the reason why Mallinckrodt seeks to protect its co-conspirator ESI by depriving the City of Rockford of a jury trial through its serpentine machinations of transfer to Delaware and removal of state court cases.

Mallinckrodt claims the bankruptcy court has determined that it has "related to" jurisdiction over Plaintiffs claims.  This vague characterization is misleading.  While the Court did claim it had related to jurisdiction sufficient to issue an injunction and stop other litigation against Express Scripts (on the bare characterization of indemnity), it did not and has not said that it has jurisdiction over Plaintiffs claims against Express Scripts.  Nor could it.  Express Scripts is not before the Court as a party, only as an unsecured creditor.  While the bankruptcy court may have had jurisdiction sufficient to issue an injunction – a legal issue that has not been tested by an article III judge on appeal – it has never claimed jurisdiction over claims made against Express Scripts.

Also of import, even though provided with this Court's order on Express Scripts' motion for reconsideration of the motion to dismiss, that Express Scripts could be independently liable for its conduct in concert with Mallinckrodt, the article I judge erroneously concluded that the claims against Mallinckrodt and Express Scripts were inextricably intertwined[21]. (Exhibit X, at 47: 10-

---

[20] Above as cited in the transcript.  Citation should be 386 B.R. 17 (2008).
[21] The bankruptcy judge appears to believe that the claims could not be tried separately, which fails to defer this Court's superior knowledge of the facts and its prior judicial determination.

13) Yet, that issue is law of the case in this Court, and this Court need not defer to the bankruptcy court's legal conclusions in that regard. *In re Kempff,* 847 F.3d 444 (7th Cir. 2017)(legal conclusions of bankruptcy court reviewed *de novo*); *In the Matter of Newman,* 903 F.2d 1150, 1152 (7th Cir.1990).

## A. ARGUMENT

### A. NO STATUTORY AUTHORITY FOR TRANSFER OF ACTIONS

Mallinckrodt has moved for change of venue or transfer on the basis of 28 USC §§ 1404 and 1412. Neither of these statutes mandates transfer in this case. Instead, they are discretionary. More importantly, neither statute provides support for such a transfer.

28 USC § 1404 provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

First, this Court will note from this memorandum the City of Rockford does not consent. Neither does the City of Rockford have any connection with the State of Delaware. Neither Mallinckrodt plc or Mallinckrodt ARD are incorporated in Delaware. Neither company calls Delaware its principal place of business. Instead, these companies are found only in New Jersey, Ireland, and Missouri[22]. Thus, the *Rockford* action could not have been brought in Delaware as required for the change of venue requested by Mallinckrodt.

As noted, both statutes grant *discretionary* authority to the Court. Absent a compelling reason and a showing that the transfer venue is clearly more convenient, transfer should not occur.

---

[22] Clayton Act *§* 12, 15 U.S.C. § 22 (1976) (originally enacted ch. 323, § 12, 38 Stat. 736 (1914)). This statute provides as follows: Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986). This Court has spent three years managing the parties and issues, and this seconds-before-midnight transfer to Delaware, as noted throughout, does not benefit the party asking for it, because it is already venued there. Rather, this change of venue is sought solely to protect a co-conspirator. This Court, in the wise exercise of its judicial discretion, should deny the motion to transfer under § 1404.

28 USC §1412 provides:

> A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

The instant action was not filed under title 11. It was filed under title 12. While Mallinckrodt has indeed taken its portion of the case into title 11 by its voluntary bankruptcy, Express Scripts has not joined it by seeking bankruptcy protection, and the only parties capable of litigating in this Court now or in the future are the Express Scripts entities and the City of Rockford. Because the City of Rockford's claims against Mallinckrodt will be adjudicated in Bankruptcy Court, Mallinckrodt simply has no standing to assert a right to transfer this case on Express Scripts behalf[23]. Transferring the entire case, involving multiple entities on the basis of one party (Mallinckrodt) having sought and received bankruptcy protection, and another (Curascript SD) having some captious indemnity claim, makes precious little sense.

**B.     THESE ACTIONS DO NOT "ARISE UNDER" THE BANKRUPTCY CODE**

Mallinckrodt claims this action arises under the Bankruptcy Code. That is wrong.

A proceeding "arises under" the Bankruptcy Code if it "invokes a substantive right provided by Title 11." *Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th

---

[23] Arguably, Express Scripts is prevented from moving to transfer by the terms of the injunction issued by the Bankruptcy Court. Express Scripts offer no reason to the contrary in its joinder of Mallinckrodt's Motion to Transfer.

Cir.1990); *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987). This means that the Bankruptcy Code, in a strong sense, is the source of the right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law. *In re U.S. Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997). *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). In *Zerand* the Seventh Circuit cautioned against exactly what Mallinckrodt and Express Scripts have planned here. In that case the entity that purchased the debtor's assets in a bankruptcy sale went back to bankruptcy court to adjudicate the issue of whether it could be sued as a successor. It argued that the bankruptcy court there should protect the purchaser of assets (a third party to the bankruptcy) from a product liability suit. The Seventh Circuit said:

> It implies, what no one believes, *In re American Hardwoods, Inc*., 885 F.2d 621, 624 (9th Cir.1989), by virtue of the arising-under jurisdiction a bankruptcy court enjoys a blanket power to enjoin all future lawsuits against a buyer at a bankruptcy sale in order to maximize the sale price: more, that the court could in effect immunize such buyers from all state and federal laws that might reduce the value of the assets bought from the bankrupt; in effect, that it could discharge the debts of nondebtors (like Zerand) as well as of debtors even if the creditors did not consent; that it could allow the parties to bankruptcy sales to extinguish the rights of third parties, here future tort claimants, without notice to them or (as notice might well be infeasible) any consideration of their interests. If the court could do all these nice things the result would indeed be to make the property of bankrupts more valuable than other property—more valuable to the creditors, of course, but also to the debtor's shareholders and managers to the extent that the strategic position of the debtor in possession in a reorganization enables the debtor's owners and managers to benefit from bankruptcy. But the result would not only be harm to third parties, such as the Coxes, but also a further incentive to enter bankruptcy for reasons that have nothing to do with the purposes of bankruptcy law.

*Id*. at 163. That is similar to what the Express Scripts entities and Mallinckrodt attempt here: to wash away Express Scripts liability for being a co-conspirator through the facile manipulation of the bankruptcy courts and the inability of a party plaintiff to obtain a jury trial therein.

The suggestion that Express Scripts case can be transferred to Delaware on some nebulous claim that it arises under bankruptcy – a claim tethered to the bankruptcy court by a judicially

unverified indemnity claim – so that it may enjoy more favorable adjudicative treatment *sans* jury, elevates form over substance. Mallinckrodt's action must be seen for what it is: a litigation courtesy extended to its co-conspirator, on the basis of newly-minted-for-bankruptcy indemnity claims, in an attempt to obviate the Seventh Amendment's right to a jury trial. Because the indemnity agreements were entered into outside bankruptcy, and no court has passed on their validity, they do not "arise under" bankruptcy because they have no tether to any provision of the bankruptcy code. *In re Mid-States Express, Inc.,* 433 B.R. 688 (N.D. Il. 2010).

## C. THIS ACTION IS NOT "RELATED TO" THE BANKRUPTCY CASE

The bankruptcy court predicated its "related to" jurisdiction for purposes of an injunction "solely" on the "potential indemnity," without any critical analysis of whether such indemnity existed at all or whether the claim was manufactured for purposes of jurisdiction. To date no court, be it in bankruptcy or under Article III, has passed on the legal sufficiency of the Express Scripts indemnity claim. As mentioned, the failure of Mallinckrodt to reveal the existence of its own indemnity asset is itself a breach of fiduciary duty. It is simply inexplicable that Mallinckrodt would not move to defeat Express Scripts' claim of indemnity by asserting its own. Yet, at every turn, when it is asked why it has not, it cannot muster a credible answer. (Ex. T, p. 170: 17-20) At a hearing in November Mallinckrodt asserted it had been too busy to file a counterclaim as to Express Scripts. (Ex. M, p. 85: 21-25 ) As of today, it has still not filed one.

As of today's date, Express Scripts has not filed a proof of claim for its claimed indemnity, and unless and until it does, the claim does not arise under bankruptcy nor does it relate to it, because if Express Scripts does not file a proof of claim, it has no connection whatsoever to the

bankruptcy.[24]  More importantly, only one entity – Curascript SD – has even a potential indemnity claim.  No indemnity agreement exists between the corporate parent and any Mallinckrodt entity.  No indemnity agreement exists that covers antitrust actions.  Simply put Mallinckrodt is asking this Court to transfer the entire case (of which it is no longer a part) on the basis of one entity having a potential indemnity claim for which it has not filed a proof of claim in Bankruptcy Court.  This would truly be the tail (Curascript) wagging the dog (ESI and the other ESI entities).

### D.  THE REQUESTED TRANSFER IS NOT SOUGHT FOR CONVENIENCE OF THE PARTIES

A federal district court, in which a suit is filed with proper venue, may "[f]or the convenience of parties and witnesses, in the interest of justice ... transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The movant (here, the defendant) has the burden of establishing, "by reference to particular circumstances, that the transferee forum is *clearly* more convenient." *Coffey*, 796 F.2d at 220 (emphasis added).  With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. *See*, e.g., *Schumacher v. Principal Life Insurance Co.,* 665 F.Supp.2d 970, 977 (N.D.Ind.2009); *Jaramillo v. DineEquity, Inc.*, 664 F.Supp.2d 908, 913–15 (N.D.Ill.2009). Other related factors include the location of material events and the relative ease of access to sources of proof. See, e.g., *Sassy, Inc. v. Berry*, 406 F.Supp.2d 874, 876–77 (N.D.Ill.2005); *Brandon Apparel Group, Inc. v. Quitman Manufacturing Co*., 42 F.Supp.2d 821, 833–34 (N.D.Ill.1999).

The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge. *See*,

---

[24] By the time of the hearing on the Defendants' Motion to Transfer, the February 16, 2020 claims bar date will have passed for Express Scripts to assert its unsecured claim.

e.g., *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980); *Federal Deposit Insurance Corp. v. Citizen Bank & Trust Co*., 592 F.2d 364, 368 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); *General Foods Corp. v. Carnation Co*., 411 F.2d 528, 532–33 (7th Cir.), cert. denied, 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969) (abuse-of-discretion standard); Although in considering a motion for transfer, the trial judge is limited to the three factors specifically mentioned in § 1404(a), specifically, the convenience of the parties, the convenience of the witnesses, and the interest of justice, *Chicago R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955); *Dairy Industrial Supply Ass'n v. LaBuy*, 207 F.2d 554, 558 (7th Cir.1953), these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case. *Coffey*, 796 F.2d at 219, fn 3.

Here the factors weigh heavily in favor of an Illinois venue. First, the distance from St. Louis to Rockford is only 292 miles[25]. The distance from St. Louis, where both Express Scripts and Mallinckrodt are headquartered, to Wilmington, Delaware is 879 miles[26]. Thus it can hardly be argued that a contiguous state is less convenient than a state almost 900 miles distant. The evidence, documents, and materials are located for the most part in St. Louis. Mallinckrodt has not shown otherwise. The majority of witnesses from the corporate parent of ESI are based in St. Louis. The convenience factor weighs heavily in favor of Rockford, just as it did when Mallinckrodt moved to transfer venue here three years ago.

On the other hand, the distance the witnesses for the City of Rockford would have to travel to participate in hearings in Wilmington Delaware, and access to their evidence which is found

---

[25]    Distance supplied by Apple's Maps function.

[26]    *Id*.

primarily in Rockford, would be greatly increased and thus greatly inconvenient. The Seventh Circuit has said frequently that merely shifting inconvenience from one party to another is not a sufficient basis for transfer. *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc*., 626 F.3d 973, 978 (7th Cir. 2010).

Repeating for clarity, the transfer sought here is not for the convenience of the parties. That transfer was already sought and was granted by the District Court of California and denied by the District Court of Pennsylvania. At one time the Mallinckrodt and Express Scripts parties agreed that Rockford was the most convenient venue for all concerned. The convenience of the parties has not changed; the legal positions of the parties has changed. Having once sought to move cases here, and having succeeded as to the MSP cases, Mallinckrodt should be estopped from a second transfer now. The City of Rockford hasn't moved, and neither have Express Scripts or Mallinckrodt.

Mallinckrodt has been ruled "hopelessly insolvent" by the Bankruptcy Court, and has yet to put forward its Restructuring Settlement Agreement (RSA). Additionally, it told the Bankruptcy Court that it had to come seek relief because legal costs were burning up its cash, and sought an injunction to put a stop to other litigation (like that against ESI) where it claimed legal costs would cause further monetary hemorrhage. Yet since coming into bankruptcy it has seen its legal costs go from roughly $8 million per month to $18 million per month[27], in part because it filed an injunction to stop collateral litigation and then immediately resumed churning that same file in that same litigation (the motion at issue here filed over a judicial stay and without seeking relief).

**B. CONCLUSION**

---

[27] *See* Mincieli Decl. **Exhibit "Y"** (Declaration of Randall Eisenberg at ¶ 19).

For all the reasons expressed above, Plaintiff City of Rockford requests this Court deny the motion to transfer venue.

Dated: February 25, 2021                                    Respectfully submitted,

                                    *s/ Donald E. Haviland, Jr.*
                                    Donald E. Haviland, Jr., Esq.
                                    (Pro Hac Vice)
                                    *haviland@havilandhughes.com*
                                    William H. Platt II, Esq.
                                    (Pro Hac Vice)
                                    *platt@havilandhughes.com*
                                    **HAVILAND HUGHES**
                                    201 South Maple Avenue
                                    Suite 110
                                    Ambler, PA 19002
                                    T: 215-609-4661
                                    F: 215-392-4400

                                    Peter J. Flowers, Esq.
                                    (IL Attorney ID No. 06210847)
                                    *pjf@meyers-flowers.com*
                                    Jonathan P. Mincieli, Esq.
                                    (IL Attorney ID No. 06274091)
                                    *jpm@meyers-flowers.com*
                                    **MEYERS & FLOWERS, LLC**
                                    3 North Second Street, Suite 300
                                    St. Charles, IL 60174
                                    T: 630-232-6333
                                    F: 630-845-8982

                                    Kerry F. Partridge, Esq.
                                    *kerry.partridge@rockfordil.gov*
                                    Ifeanyi C. Mogbana, Esq.
                                    *Ifeanyi.mogbana@rockfordil.gov*
                                    City Attorney, Legal Department
                                    425 East State Street
                                    Rockford, IL 61104-1068
                                    T: 779-348-7154
                                    F: 815-967-9649

                                    James R. Bartimus (pro hac vice)
                                    *jb@bflawfirm.com*
                                    Anthony L. DeWitt (pro hac vice)

*aldewitt@bflawfirm.com*
11150 Overbrook Road
Leawood, KS 66211
(913) 266-2300
(913) 266-2366 (fax)
*Attorneys for Plaintiff,*
*City of Rockford*