## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| CITY OF ROCKFORD<br>*on behalf of themselves and*<br>*all others similarly situated,*<br><br>        Plaintiff,<br><br>    v.<br><br>MALLINCKRODT ARD, INC.,<br>*formerly known as* QUESTCOR<br>PHARMACEUTICALS, INC.;<br>MALLINCKRODT PLC; EXPRESS<br>SCRIPTS HOLDING COMPANY;<br>EXPRESS SCRIPTS, INC.; CURASCRIPT,<br>INC., *doing business as* CURASCRIPT, SD;<br>ACCREDO HEALTH GROUP, INC., *and*<br>UNITED BIOSOURCE CORPORATION,<br><br>        Defendants. | Civil Action No: 3:17-cv-50107 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION FOR CONTEMPT AS TO ARNOLD & PORTER

Plaintiff, the City of Rockford (***"Rockford"*** or ***"Plaintiff"***), by and through its undersigned counsel, hereby submits this Memorandum of Law in support of its Motion for Contempt. Plaintiff moves the Court to enter an Order for contempt and/or for sanctions for the conduct of Arnold & Porter (***"A&P"***) in withholding relevant discovery from Plaintiff, as requested by Rockford and as ordered by this Court.

Rockford has not sought to invoke the "full arsenal of sanctions weapons, including civil contempt, inherent authority, 28 U.S.C. § 1927, and Federal Rules of Civil Procedure 11, 26(g), 37, and 56(h)." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 2021 U.S.Dist. LEXIS 9513 at * 9 (N.D.Ill. Jan. 19, 2021). This is not because such arsenal is not warranted. It likely is. It is because Rockford is at a severe disadvantage in seeking appropriate relief from this

Court due to the fact that Rockford has been unable to fully access or use the documents A&P only chose to reveal in bankruptcy court even though they were long overdue and should have been provided in this case as ordered by this Court.  Rockford cannot even share these discovery documents with this Court at this time because A&P stamped them all "Confidential" under the terms of the Bankruptcy Court's Confidentiality Order.

Rockford only became aware of A&P's withholding of relevant discovery in the context of Debtors' objections to Rockford's proofs of claims filed in Non-Defendant Debtors' cases. As Debtors argued to the Bankruptcy Court in their April 30, 2021 filing:

> The relevant underlying lawsuits name only Debtor Mallinckrodt ARD LLC ("**ARD**") and, in some cases, Mallinckrodt plc ("**plc**"). There are no claims asserted against any other Debtor in the underlying litigations, and there are no allegations in respect of any other Debtor in the relevant complaints.

Debtors' First Omnibus Objection to Unsubstantiated Claims (Substantive), Dkt. 2165 at ¶ 12, Declaration of Donald E. Haviland, Jr., Esquire in Support of Plaintiff's Motion for Contempt as to Arnold & Porter ("Haviland Decl.") at **Exhibit "A".**  The self-described "Defendant-Debtors" are the "Mallinckrodt Defendants" in this case, Mallinckrodt plc ("Mallinckrodt") and its wholly-owned subsidiary, Mallinckrodt ARD Inc. (collectively, the "Mallinckrodt Defendants").  Rockford did not sue Mallinckrodt ARD LLC, as charged.

Nevertheless, Debtors sought to bar Rockford from recovering on its $1.3 million bankruptcy claim against any Debtor estate ***other than*** the Defendant-Debtors.  They prevailed.[1]

---

[1] Rockford is unable to share with this Court the Debtors' Omnibus Reply in Support of First Omnibus Objection to Unsubstantiated Claims (Substantive), Dkt. No. 3177, as it was filed under seal.  That pleading sets forth Debtors' arguments against Rockford's request for leave to amend its proofs of claim to account for the newly-produced evidence.  Debtors argued that "there is no legitimate basis for [Rockford] having failed to include in the Unsubstantiated Claims the substance of what is now included in the Oppositions, and there is certainly no basis for amending now after discovery and briefing on the Objection is complete without any amendment of the Unsubstantiated Claims."  *Id*. at ¶ 56.

They prevailed despite Rockford's detailed response, setting out the reasons why Rockford did not have the evidence to show the Bankruptcy Court prior to the October 12, 2020 bankruptcy filing.[2]

The Bankruptcy Court struck all of Rockford's claims against other Mallinckrodt entities directly involved in the distribution, pricing, marketing and sale of Acthar. The Bankruptcy Court did so because Rockford's complaint failed to expressly name any subsidiary Mallinckrodt entity other than Mallinckrodt ARD Inc.

But Rockford had no way of knowing any entity other Mallinckrodt ARD Inc. and its Irish parent were involved with Acthar. In the three and one-half years Rockford litigated in this Court, neither Mallinckrodt nor its counsel ever alerted Rockford or this Court that Mallinckrodt ARD Inc. had become insolvent in 2018, that it had been converted to a limited liability company one day after this Court ruled on the dismissal motions, and that all of its corporate functions relating to Acthar transferred to other Mallinckrodt subsidiaries. Despite producing

---

[2] Rockford's June 21, 2021 Response to the Debtors' Objections has to be filed under seal, due to A&P's designation of the underlying evidence as "Confidential" under the Bankruptcy Court's Order. In that pleading, Rockford argued:

"The Debtors failed to timely disclose the fact of Mallinckrodt ARD Inc.'s admitted insolvency to the Acthar Plaintiffs, despite (1) their ongoing corporate disclosure obligations in federal court, especially in the Northern District of Illinois where the original disclosure filed by Mallinckrodt ARD Inc. was (and remains) materially misleading due to its admitted insolvency, (2) self-disclosure obligations under Fed. R. Civ. Proc. 26, (3) pending written discovery requests by the Acthar Plaintiffs, (4) multiple depositions of corporate officers and employees, and (5) periodic hearings before federal and state judges during which Mallinckrodt ARD was represented by counsel. As a result, the Acthar Plaintiffs did not know, and could not have known, that the responsibility for the development, manufacture, distribution, marketing and sales of Acthar at issue in their lawsuits had been transferred to Debtor entities ***other than*** Mallinckrodt plc and Mallinckrodt ARD Inc./Mallinckrodt ARD LLC during the pendency of their lawsuits (thereby depriving them of the opportunity to seek leave to amend their Complaints to name additional Debtor entities as defendants)."
*Id*. at 3 (on appropriate Court Order, this pleading should be released from the Court's seal).

over one million pages of documents in discovery, and producing nine (9) witnesses for deposition, these critical facts were never revealed. This is not because Rockford didn't ask the right questions; the right answers were withheld, wrongfully.

The harm to Rockford is clear: it has lost the ability to recover in bankruptcy. Its litigation in this Court against Mallinckrodt has been stayed, awaiting final confirmation of the Debtors' Plan of reorganization. Its litigation against the Express Scripts Entities has been needlessly delayed. This Court's timeline for resolution has been set back by nearly a year.

The only issue for this Court at present is what repercussion should befall the lawyers for the Mallinckrodt Defendants who withheld the information from Rockford that caused its harm. The facts below reveal that A&P acted willfully. Sanctions are thus appropriate.

Rockford does not levy accusations of discovery malfeasance against A&P lightly. Rockford is keenly aware that "[c]ourts, including this Court, are reluctant to sanction counsel and parties." *Id*. at *10-11. But, "when [lawyers] abuse the system, which happened here, it is unfair to complying parties not to sanction the violators." *Id*. at *11 (brackets added).

In recent weeks, A&P has been sanctioned by other courts in the opioid litigation for similar discovery malfeasance as Rockford contends occurred here. Default judgment was entered by a Tennessee court, and a courts in New York and Illinois (another judge of this Court) are considering similar sanctions for A&P's discovery misconduct in representing Endo Pharmaceuticals in the opioid cases, to the substantial detriment of the plaintiffs in those cases. As discussed more fully below, a similar pattern and practice of abusing the discovery process by withholding relevant discovery by some of the same A&P lawyers as represent the Mallinckrodt Defendants here has emerged. Such conduct is disturbing, to say the least.

On July 27, 2021, the Tennessee state court issued an "Order on Sanctions" specific to A&P. *See* Haviland Decl. **Exhibit "B"** ("Tennessee Order on Sanctions"). This Order tells this Court all it needs to know about the severity of the situation presented by A&P's conduct, as the Tennessee Court required A&P to do all of the following:

1. Apologize to the Plaintiffs, without equivocation, for their conduct.

2. Apologize to the Court, without equivocation, for their conduct.

3. Agree to not commit the same or similar conduct in the future.

4. Pay the Plaintiffs' attorney fees for dealing with their conduct.

5. Utilize their best efforts to assist both sides in reaching a resolution of this case.

6. Create an ethics program, of not less than 4 hours, discussing the conduct set out in the Default Judgment and require each attorney who participated in the case to complete it.

7. Provide an outline of the course to the Court, and

8. Provide a list of its attorneys who have completed the course to the Court within 30 days.

*Id*.

Only a full vetting of the matter will enable this Court and Rockford's counsel to understand what has happened, why it happened, and determine what should be done about it. The sanctions imposed should be "designed to make [Rockford] whole for the injury ... defense counsel caused", "proportionally tailored to [] defense counsel's actions and inactions", and "designed to deter the type of misconduct found". *Id*. at * 13-14 (citation omitted, brackets added). At a minimum, those A&P lawyers who represent both Endo and Mallinckrodt should

be scrutinized to the same degree as the Tennessee Court imposed, including providing this Court with proof of their compliance with the Tennessee Court's Order on Sanctions.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.   The Relevant Pleadings and Issues

#### 1.   Rockford's Second Amended Complaint and Mallinckrodt's Answer

On April 6, 2017, the City of Rockford filed suit against the "Mallinckrodt Defendants") and United BioSource Corporation ("UBC"). **ECF No. 1**. On October 9, 2017, Rockford amended its Complaint to add as Defendants Express Scripts Holding Company, Express Scripts, Inc. ("ESI"), Curascript, Inc. d/b/a Curascript SD ("CSD"), and Accredo Health Group ("AHG"), along with UBC (collectively, "the Express Scripts Defendants"). **ECF No. 84**. On December 8, 2017, Rockford filed its Second Amended Complaint ("SAC"). **ECF No. 98**.

On January 25, 2019, the Court granted in part, denied in part, the Defendants' Motions to Dismiss. **ECF No. 178**; *see also, City of Rockford v. Mallinckrodt ARD, Inc. et. al.*, 360 F.Supp. 3d 730 (N.D.Ill. 2019). In rejecting the Defendants' arguments as to Rockford's antitrust claims, the Court found plausible Plaintiff's allegations, summarized as follows:

> As alleged in the SAC, on August 27, 2007, Mallinckrodt embarked on a "new strategy" that sought to limit Acthar's distribution by designating Express Scripts[2] as Mallinckrodt's sole distributor of Acthar. *Id*. at ¶¶ 48-49, 221. Plaintiffs allege that the "new strategy" is in fact a vertical price-fixing conspiracy, in which Mallinckrodt used Express Scripts as its exclusive distributor of Acthar through a program called the "Acthar Support & Access Program" (the "ASAP") to raise prices, restrict distribution, and stifle competition. According to plaintiffs, the structure of the ASAP allows defendants to restrict the distribution of Acthar to just one distributor, Express Scripts, thereby eliminating other distributors from negotiating for lower prices for Acthar.

*Id*. at 743 (citing SAC ¶¶ 48, 90, 231)(footnotes omitted).

The very next day, on January 26, 2019, Mallinckrodt filed Articles of Incorporation with the State of California, converting Mallinckrodt ARD Inc. into a limited liability company titled, "Mallinckrodt ARD LLC." *See* Articles of Incorporation at Haviland Decl. **Exhibit "B"**. Despite this significant change of corporate form in the principal defendant named in Rockford's lawsuit, Mallinckrodt's counsel took no steps to amend their "Corporate Disclosure Statement and Notification as to Affiliates", as required by Federal Rule of Civil Procedure 7.1 and Northern District of Illinois Rule 3.2. **Dkt. No. 76.** Instead, after the conversion of Mallinckrodt ARD to an LLC on January 26, 2019 – and to this day – the company's Corporate Disclosure Statement contains the following false and misleading statement:

> Mallinckrodt ARD Inc. **is a corporation organized** under the laws of California and headquartered in Bedminster, New Jersey. Mallinckrodt ARD Inc. **is an indirectly wholly-owned subsidiary** of Mallinckrodt plc.

*Id* (emphasis supplied).

On March 29, 2019, the Mallinckrodt Defendants filed a pleading entitled "**Mallinckrodt ARD Inc.'s** and Mallinckrodt plc's Answer and Affirmative Defense to Plaintiffs' Second Amended Complaint." **Dkt. No. 204** ("Mallinckrodt's Answer")(emphasis supplied). Nowhere in the 108-page, 409 paragraph (excluding Affirmative Defenses) did Mallinckrodt or its counsel notify Rockford or this Court that Mallinckrodt ARD Inc. was insolvent, or that it had been converted to a limited liability company as of January 2019. In fact, in direct response to Rockford's averment that "Questcor became a wholly-owned subsidiary of Mallinckrodt [plc] and its name was changed to Mallinckrodt ARD Inc. [which] **is a biopharmaceutical company** incorporated in California with offices located at 657 McDonnell Blvd., Hazelwood, Missouri [and ] **now has locations** in Hampton, New Jersey and Bedminster, New Jersey," SAC ¶ 22, Mallinckrodt answered as follows:

Paragraph 22 states legal conclusions to which no response is required. **To the extent a response is required,** Mallinckrodt admits that Questcor purchased Acthar from Aventis for $100,000 and that Mallinckrodt acquired Questcor on August 14, 2014. Mallinckrodt admits that Questcor is a wholly-owned subsidiary of Mallinckrodt and that its name was change to Mallinckrodt ARD Inc. Further answering, **Mallinckrodt admits that Mallinckrodt ARD is incorporated in California** and that Mallinckrodt has offices at 675 McDonnell Blvd., St. Louis, MO 63042 and in Bedminster Township, NJ. Mallinckrodt denies the remaining allegations in Paragraph 22.

Mallinckrodt Answer, ¶ 22 (emphasis supplied).  This was false and misleading, due to the fact that Mallinckrodt ARD Inc. was insolvent and had been converted to an LLC.

Mallinckrodt denied most of Rockford's affirmative factual averments relied upon by the Court in its dismissal decision.  Instead, Mallinckrodt purported to "admit" the following material statements of fact concerning Mallinckrodt ARD Inc.:

- "Mallinckrodt admits that **it manufacturers Acthar**." *Id*. at ¶¶ 2, 23 (emphasis supplied);

- "Mallinckrodt admits that Questcor purchased Acthar from Aventis for $100,000 and that **Mallinckrodt acquired Questcor in 2014**." *Id*. at ¶¶ 3, 22, 44 (emphasis supplied).

- "Mallinckrodt admits that in 2007 Mallinckrodt changes **its distribution method for Acthar**." *Id*. at ¶¶ 7, 131, 221, 223, 243 (emphasis supplied).

At no point in this litigation has A&P sought to amend Mallinckrodt's Answer to correct these material misstatements of fact.

### 2. A&P's Entries of Appearance and Misrepresentations About Continuing Representation of Mallinckrodt ARD Inc.

On September 11, 2019, several lawyers from A&P entered their appearance in this case for the Mallinckrodt Defendants.  Specifically, the following lawyers entered their appearances: Laura Shores (partner) who listed herself as "lead counsel in this case" [**Dkt. No. 263**], Matthew M. Wolf (partner), who listed himself as "the trial attorney ..[if] the case reaches trial" [**Dkt. No. 265**],  Michael B. Bernstein (partner) [**Dkt. No. 264**], Ryan Z. Watts (counsel) [**Dkt. No. 266**],

Sonia Kuester Pfaffenroth [**Dkt. No. 262**], and Adam Pergament (senior associate) [**Dkt. No. 261**].

Critically, each one of these lawyers entered their appearances on behalf of "**Mallinckrodt ARD Inc**." a non-existent, defunct legal entity. The Notice of Motion filed in this Court on September 7, 2019 read as follows:

> PLEASE TAKE NOTICE that on **September 23, 2019** or as soon as counsel may be heard, the undersigned shall appear before the Honorable Lisa A. Jenson, in Courtroom 3200 of the Stanley J. Roszkowski U.S. Courthouse, 327 South Church Street, Rockford, Illinois 61101, and then and there present **Motions for Leave to Enter Appear Pro Hac Vice (Attorneys Matthew Wolf, Laura Shores, Sonia Pfaffenroth, Michael B. Bernstein, Ryan Z. Watts, and Adam Pergament) for Mallinckrodt ARD, Inc. and Mallinckrodt PLC**, copies of which were previously filed and served upon you via the CM/ECF system.

Dkt. No. 256 (emphasis in original).[3] Filed contemporaneously with the Notice of Motion were Motions for Leave to Appear *Pro Hac Vice* by Attorneys Shores, Watts. Each attorney signed and attested that they were seeking admission pro hac vice under Local Rule 83.14 "to appear and participate in the above-entitled action **on behalf of Mallinckrodt ARD, Inc.** and Mallinckrodt PLC." **Dkt. Nos.** 251 (Pergament), 252 (Pfaffenroth), 252 (Shores), 253 (Bernstein), 254 (Wolf), and 255 (Watts) (emphasis supplied).

These lawyers all knew (or at least should have known) that their client company had converted to a limited liability company eight (8) months earlier. This fact is easily demonstrated by some of the same lawyers filing Entries of Appearance and Motions to Appear *Pro Hac Vice* in a California Federal District Court just fourteen (14) days later on behalf of the LLC. *See Humana v. Mallinckrodt ARD LLC (f/k/a ARD Inc., f/k/a Questcor Pharmaceuticals*

---

[3] Curiously, the Notice of Motion was signed, filed and served by Attorney Adam Pergament om September 7, 2019 **prior to** his admission *pro hac vice* by this Court on September 10, 2019. *See* **Dkt. No. 258** (Minute Entry).

*Inc.) et. al.*, 2:19-cv-06926-DSF-MRW (C.D.Cal.) ("Humana Litigation*"*). Dkt. Nos. 39 (Shores

Application for Admission Pro Hac Vice), 40 (Wolf Application for Admission Pro Hac Vice),

38 (Bernstein Application for Admission Pro Hac Vice), 37 (Pfaffenroth Entry of Appearance),

and 36 (Pergament Entry of Appearance).

These misstatements about representing "Mallinckrodt ARD **Inc.**" were repeated between

throughout 2019 and well into 2020 in dozens of pleadings[4], letters[5] and electronic

communications.[6]  At times, however, A&P was careful to remove the reference to "Inc." from

its signature lines, without explanation as to why such change was taking place.  *See, e.g.*,

Defendants' Motion to Compel Production of Rockford's Retainer and Fee Arrangements with

its Counsel, Dkt. No 294 at p.7; Mallinckrodt's Motion for Protective Order to Preclude the

Deposition of Mallinckrodt plc's President & CEO Mark Trudeau, Dkt. No. 328 at p.12.

### B.    Rockford's Discovery of Defendants and this Court's Orders

#### 1.    Plaintiff's Document Requests, A&P's Responses and Disclosures.

Rockford served four (4) sets of requests for production in this case.  The First Request

for Production of Documents on was served on July 7, 2017 ("**First RPDs**"). These First RPDs

were patterned after the Mandatory Initial Discovery Pilot Program in the Northern District of

Illinois, which requires parties to disclose, *inter alia*, (1) the names and addresses of "all persons

… likely to have discoverable information relevant to any party's claims or defenses", (2)

---

[4] *See, e.g.*, Dkt. Nos. 267 (Sept. 16, 2019, Motion for Leave to Withdraw and Substitution of Counsel for Mallinckrodt), 292 (Feb 3, 2020 Mallinckrodt ARD Inc.'s and Mallinckrodt plc's Motion to Amend Confidentiality Order"); Dkt. No. 317 (Feb. 21, 2020 The Mallinckrodt and Express Scripts Entities' Joint Motion to Compel Production of Electronic Documents").

[5] *See, e.g.*, Dkt. Nos. 257 (Sept. 9, 2019 joint letter re Plaintiff's discovery of contract files); 287 (Nov. 15, 2019 Joint Discovery Report); *see also*, exemplar Mallinckrodt discovery transmittal letters collectively attached as **Exhibit "C"** to the Haviland Decl..

[6] *See* A&P discovery emails collectively at Haviland Decl. **Exhibit "C"**.

"documents [including ESI] relevant to any party's claims or defenses", and (2) the "facts relevant [to] claims and defenses". *See* Mallinckrodt's Response to First RPDs at Haviland Decl. **Exhibit "D".** In response, "Mallinckrodt refer[red] Plaintiff to the individuals previously identified in Mallinckrodt's Initial Disclosures served on September 29, 2017 as well as Mallinckrodt's ESI Disclosures and Preliminary Custodian List served on October 15, 2018." *Id.* at 3, 5.

Rockford specifically requested the following documents:

Please produce Documents, including **directories and organizational charts**, **sufficient to show the organization or inter-relation of each division, department, unit or subdivision of Your Company and all management personnel in Your Company who had any responsibility with respect to the distribution, marketing, promotion, training, pricing or sale of Acthar,** including, without limitation, officers, directors, manager, supervisors, team leaders, sales representatives or detail persons and committee chairs.

*Id.* at 6-7. Mallinckrodt responded that "it has already produced documents responsive to this Request on December 31, 2018 pursuant to the Court's December 6, 2018 Order on minimal discovery. *See* ECF No. 171 (discussed below). This statement was false when made.

The First RPDs also sought production of all contracts relating to Acthar as follows:

Please produce all Documents referring, relating to, or comprising **any agreement, contract,** joint venture, co-promotion, affiliation **between or among You and any other Defendant or third party relating to the distribution, pricing, marketing, training, promotion or sale of Acthar during the Relevant Period**. In response to this Request, include the following:
a. Date of any agreement, contract, joint venture, co-promotion, affiliation between or among You and any third party was entered into;
b. The terms of any agreement, contract, joint venture, co-promotion, affiliation between or among You and any third party;
c. Services covered by any agreement, contract, joint venture, copromotion, affiliation between or among You and any third party; and
d. Date of any agreement, contract, joint venture, co-promotion, affiliation between or among You and any third party was terminated and reasons for said termination.

First RPD No. 11.

Mallinckrodt responded that it "previously served a response to Request No. 11 on March 5, 2018. …Mallinckrodt [further] respond[ed] that it has already produced documents responsive to this Request on June 1, 2018."

Rockford served a second set of RPDs on January 29, 2019 ("**Second RPDs**"). Mallinckrodt responded on May 22, 2019. *See* Mallinckrodt's Response to Second RPDs at Haviland Decl. **Exhibit "E".** This second set also sought production of contracts involving Acthar.

## 2. Court Orders Regarding Discovery.

This Court has tightly managed this case, through case management orders, frequent conferences – including monthly, in-person status/discovery conferences and periodic telephonic conferences – and the requirement of routine status reports. It has issued prophylactic orders governing the confidentiality of documents (Dkt. Nos. 145, 308), electronic discovery (Dkt. Nos. 156, 158), and the conduct of depositions, both in person and remote. Dkt. Nos. 386, 390 401, 434. It has worked tirelessly to keep the parties on track to meet the deadlines set forth in its orders. Up to now, Rockford believed that, prior to bankruptcy, all parties were working in good faith toward the common goal of completing discovery and providing the other side the discovery to which it was entitled.

Throughout the course of this litigation, the Court has had to put the hammer down on the Defendants to ensure their compliance with their discovery obligations. While only former Magistrate Judge Johnston and present Magistrate Judge Jensen know the tremendous amount of time and effort they and their court staff put into this case, the product of such efforts is plainly revealed by the dozens of orders entered on the docket which now contains hundreds of pleading references.

Salient examples are cited below.

On December 6, 2018, this Court entered an Order on minimal discovery. *See* ECF No. 171. It specifically ordered Mallinckrodt and its counsel to "produce organization charts and directories" requested by Rockford "by December 31, 2018.". *Id*. Accordingly, there is no question that Mallinckrodt organization charts were requested by Rockford and ordered by this Court.

On July 22, 2019, this Court granted in part Rockford's Motion to Compel, requiring Mallinckrodt and its counsel "to complete the non-custodial search for the contract documents in [Rockford's] request to produce #11 and second request to produce #1 and produce these documents to plaintiffs. To the extent no documents are discovered, a written representation is to be given to Plaintiff City of Rockford." Dkt. No. 224-1. No such representation was ever made by Mallinckrodt, or A&P, who assumed Mallinckrodt's representation shortly after the Order was entered.

On March 6, 2020, this Court "overrule[d] Defendant Mallinckrodt's objections to all interrogatories except No. 4" and ordered Mallinckrodt to "provide answers or supplement answers to Plaintiff City of Rockford by 3/23/2020." Dkt. No. 354. Further, A&P notified this Court of certain purported "technical difficulties" accounting for its "failure to complete production of contract custodian documents by 3/06/2020 as ordered by this Court." *Id*. The Court then further ordered, [b]y 3/13/2020, Defendant Mallinckrodt shall file a status report that includes an affidavit from the document management system vendor describing the nature of the technical difficulty, how many documents are affected, what custodians are affected, when the issue will be resolved, and if there are alternative ways to access the documents." *Id*.

Rockford now knows that A&P failed to comply with this Court's explicit directive by concealing the contract documents between the Defendant, Mallinckrodt ARD Inc. (surreptitiously converted to an LLC without timely disclosure) and other Mallinckrodt subsidiaries, and then between and among such subsidiaries. More than a dozen such contracts involving Acthar warehousing, distribution, pricing, marketing and sales have been produced by A&P in bankruptcy without explanation as to why they were withheld from Rockford and this Court, in the face of Court Orders compelling the same.

C.      **A&P's Production of Organization Charts, Contracts and Other Acthar-Related Documents in Bankruptcy.**

Rockford is unable to share with this Court any of the documents wrongfully withheld from it in this case, due to the fact that all of the documents have been stamped "Confidential" by A&P under the terms of the Bankruptcy Court's Confidentiality Order, and not this Court's Order. An Order of this Court compelling such documents for its *in camera* review might resolve the matter. At some point these documents must be revealed to this Court so it can determine the full nature and extent of A&P's discovery misconduct.

D.      **A&P's Sanctionable Conduct in Other Courts in the Opioid Litigation.**

A&P has been sanctioned by a Tennessee court for discovery misconduct and abuse of the system in the opioid litigation where it represents Defendant Endo. A&P is facing similar sanctions in New York and Illinois.

A summary of the pleadings and orders in the cases is attached hereto as **Exhibit "F"**. All such pleadings and orders will be made available to this Court so it can see that Rockford's charges of discovery malfeasance are not tactical; they are warranted because the same law firm (A&P) represents Mallinckrodt and Endo, with some of the same attorneys. That the Tennessee Court ordered A&P to "create an ethics program, of not less than 4 hours, discussing the conduct

set out in the Default Judgment and require each attorney who participated in the case to complete it", and further to "provide an outline of the course to the Court, and a list of its attorneys who have completed the course to the Court within 30 days" demonstrates the conduct was not isolated at the firm. Haviland Declr. Ex. "A". It was engrained in the culture.

## II. ARGUMENT

### A. Legal Standards for Civil Contempt, Discovery Sanctions and the Court's Inherent Powers to Sanction.

#### 1. Legal Standards for Civil Contempt.

Civil contempt is "a unique civil sanction because its aim is both coercive and compensatory." *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008).[7] Federal courts have both inherent and statutory authority to punish for contempt and to coerce compliance with their orders. *International Union, UMW v. Bagwell*, 512 U.S. 821, 831-833, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). "A district court has considerable latitude in how it goes about enforcing its own decrees in a contempt proceeding." *Rockwell Graphic Systems, Inc. v. Dev Industries, Inc.,* 91 F.3d 914, 920 (7th Cir. 1996) (citing *Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)).

To prevail on a request for a contempt finding, the moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged

---

[7] If the Court finds civil contempt, the Court may compensate the plaintiff for losses incurred as a result. *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351 (7th Cir. 2018). Similarly, "Federal Rule of Civil Procedure 37(b)(2)(C) gives a federal judge authority to "order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure [to obey a discovery order], unless the failure was substantially justified or other circumstances make an award of expenses unjust.'"). *Lightspeed Media Corp. v. Smith,* 2015 U.S. Dist. LEIS 73127 ((S.D.Ill. June 2021).

contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make reasonable and diligent effort to comply. *United States SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2009) (citing *Prima Tek II*).

Civil contempt has been held to be appropriate where, as here, "Defendant knew what Plaintiff was seeking, but was deliberatively evasive and caused unnecessary delay prior to disclosing the requested information [and] Defendant's actions were not in line with the letter or spirit of the Federal Rules of Civil Procedure, the Proposed Standing Order from the Seventh Circuit, or the Sedona Principles describing best practices for electronic discovery."[8]

While a hearing is not necessary, based on the above-described, unambiguous record of the Rockford discovery requests, this Court's Orders, and A&P's responses, if A&P chooses to contest the factual predicate for Rockford's Motion, Rockford is entitled to a hearing to resolve A&P's claims. *See Advent Elecs. v. Buckman*, 1997 U.S.Dist. LEXIS 765 at *9 (N.D.Ill. Jan. 27, 1997) ("A party who seeks … civil contempt is likewise entitled to the resolution of genuine issues of material fact that bear upon the allegations by which it seeks to support a finding of contempt.") (quoting *Rockwell Graphic Systems,* 91 F.3d at 914); *Tranzact v. Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) ("due process rights belong to both the alleged contemnor and the complainant").

Further, Rockford requires discovery as to the full nature and extent of the wrongfully withheld discovery, A&P's knowledge of the same, and A&P's role in withholding such discovery.

---

[8] *Osborne v. C.H. Robinson Co*., 2001 U.S. Dist. LEXIS at *22 (N.D.Ill. Oct. 25, 2011).

## 2. **Legal Standards for Discovery Sanctions Under Rule 37**.

The Federal Rules of Civil Procedure allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[T]he court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The scope of discovery is limited to matters "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1); *See In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1188 (10th Cir. 2009); *Sallis v. University of Minn.*, 408 F.3d 470, 477-78 (8th Cir. 2005). Courts have broadly defined the term "relevant" to include "any matter that bears on, or that reasonably could lead to other matters that could bear on any issue that is or may be in the case." *Oil, Chemical & Atomic Workers Local Union No. 6-418, AFL-CIO v. N.L.R.B.*, 711 F.2d 348, 360, 229 U.S. App. D.C. 70 (D.C. Cir. 1983).

Here, Rockford has simply asked the Mallinckrodt Defendants to comply with Rule 26 by producing all relevant documents responsive to the Requests cited herein. These requests include (1) all Mallinckrodt organization charts, (2) all contracts between and among the Mallinckrodt Defendants and third parties (including non-defendant Mallinckrodt entities) relating to Acthar, and (3) all documents relating to the distribution, pricing and sales of Acthar during the relevant time period.

Since the inception of this case, this Court has agreed that such documents are relevant. In its first discovery directive, the Court ordered the production of organization charts. Shortly after the Court denied the Defendants' Motions to Dismiss the Plaintiff's antitrust claims, the

17

Court ordered the production of contracts. Discovery of contracts has dominated the proceedings between 2019 and 2020. Repeatedly, Rockford has been forced to press Mallinckrodt for contracts relating to Acthar. Repeatedly, Judge Jensen has had to rule. Repeatedly, A&P withheld the critical contracts showing that Acthar-related functions were transferred to other Mallinckrodt subsidiaries.

Importantly, A&P never argued to this Court that such documents were not relevant. It never argued that producing such documents would be unduly burdensome. It never argued to this Court that company organization charts or intra-company contracts were privileged.

Instead, A&P stated, routinely, represented that it was complying with Rockford's requests, and this Court's Orders.

Seventh Circuit law holds Rule 37 discovery sanctions "may only be imposed where a party displays willfulness, bad faith, or fault." *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir.1997) (*citing Philips Medical Systems Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir.1992)). District courts have broad discretion in deciding whether violation of rules of discovery warrants imposition of sanctions. *Matei v. Cessna Aircraft Co.*, 35 F.3d 1142 (7th Cir. 1994). However, Rule 37 essentially mandates sanctions for substantial unjustified discovery abuses. *See Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994). ("The great operative principle of Rule 37(a)(4) is that the loser pays. Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims.") (internal quotation and citation omitted).

Although the language of Rule 37(b) requires violation of a judicial order in order to impose sanctions, a formal, written order to comply with discovery is not required, where a

18

litigant engages in abusive litigation practices. *See Halas v. Consumer Services, Inc.*, 16 F.3d 161, 164 (7th Cir. 1994) ("a formal written order to comply with discovery requests is not required under Rule 37(b)").

Rule 37 requires no evidentiary hearing, and none is warranted where the briefs and affidavits fully recount the circumstances surrounding the noncompliance. *See Margoles v. Johns, 587 F.2d 885, 889 (7th Cir. 1978); see also Godlove v. Bamberger*, 903 F.2d 1145, 1149 (7th Cir. 1990); *Loctite Corporation v. Fel—Pro, Inc.*, 667 F.2d 577, 583 n. 6 (7th Cir. 1981).

Rule 37(a)(4) treats an evasive and incomplete answer in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 775-76 (7th Cir. 2016). The Seventh Circuit has held, "[w]e have construed the sanctioning power conveyed by Rule 37 to extend to instances of a party hiding evidence and lying in his deposition." *Id*. at 776 (citing *Negrete v. AMTRAK*, 547 F.3d 721, 723-24 (7th Cir. 2008).

In *Societe Internationale pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 212, 78 S. Ct. 1087, 1096, 2 L. Ed. 2d 1255 (1958), the Supreme Court concluded that Rule 37 should not be construed to authorize dismissal of an action when a plaintiff's failure to comply with his discovery obligations was due to his inability to comply rather than his "willfulness, bad faith, or any fault." *See also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 2779, 49 L. Ed. 2d 747 (1976) (per curiam) (reaffirming that holding). However, the Seventh Circuit has held that "[f]ault, in contrast to willfulness or bad faith, does not require a showing of intent, but presumes that the sanctioned party was guilty of "extraordinarily poor judgment" or "gross negligence" rather than mere "mistake or carelessness." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir.

19

1992); *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) ("[f]ault in this context suggests objectively unreasonable behavior"); *see also E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642-43 (7th Cir. 2011) (distinguishing degree of fault necessary to support dismissal or default from that necessary to support lesser sanctions).

Rockford contends that A&P certainly is guilty of "extraordinarily poor judgment" or "gross negligence". It remains to be seen, as only further inquiry by this Court and discovery by Rockford, whether A&P's conduct was willful or in bad faith.

### 3. Inherent Power to Sanction Attorneys Before the Court.

"Apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez*, 845 F.3d at 777 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-50, 111 S.Ct. 2123, 2134-36, 115 L.Ed. 2d 27 (1991)); *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) ("A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'"). "District courts have the inherent power to sanction litigants before them for bad-faith litigation tactics and to ensure the orderly disposition of cases." *Carter v. J.P.Morgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 187772 * 5 (N.D. Ill. Nov. 14, 2017) (citing *Chambers v. NASCO*). "Courts must do so in a way that is tailored to the abuse." *Id.* (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 89. 2 (7th Cir. 2006)).

"[T]he inherent authority to impose sanctions for litigation misconduct is judicially derived and specifies no particular standard of proof." *Ramirez.* 845 F.3d at 778.

"These powers, which are essential to a court's ability to preserve the integrity of its proceedings, are symmetrical. They apply to default judgments against defendants as well as to dismissals against plaintiffs." *Secrease*, 800 F.3d at 401 (citing *Philips Medical Systems Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992) (affirming default judgment as sanction for defendant's bad faith failure to comply with discovery order and deception of court); *Profile Gear Corp. v. Foundry Allied Industries, Inc.*, 937 F.2d 351, 353-54 (7th Cir. 1991) (same); *Hal Commodity Cycles Mgmt. Co. v. Kirsh*, 825 F.2d 1136, 1138-39 (7th Cir. 1987) (affirming default judgment against defendant for willful delays and dishonesty); *Quela v. Payco-General American Credits, Inc.*, 2000 U.S. Dist. LEXIS 6932, 2000 WL 656681, at *8 (N.D. Ill. May 18, 2000) (relying on inherent power of court, entering default judgment against defendant who coerced employee to lie in deposition on central issue in case)).

**B. The Conduct of A&P Warrants a Finding of Civil Contempt, Sanctions under Federal Rule 37 or this Court's Inherent Authority.**

    **1. A finding of civil contempt is warranted under the facts and circumstances of this case.**

The conduct of A&P warrants a finding of civil contempt. Through its willful concealment of the identity and status of its true clients (in pleadings, correspondence and other communications), and its inexplicable (and inexcusable), repeated failures to respond to Rockford's discovery and this Court's orders compelling organization charts, contracts and other Acthar-related documents, Rockford contends A&P violated at least its duty of candor to the tribunal, if not the Rules and Orders of this Court.

From its first appearance in this case, A&P hid the nature and scope of its engagement. As discussed below, it was not until A&P Partner and member of the Illinois bar, Michael Bernstein, testified in Bankruptcy Court in January 2021 in support of Debtors' retention of A&P

in bankruptcy that the truth was revealed. When A&P entered its appearance as counsel for Mallinckrodt in the early Fall of 2019, the firm was fully aware of the company's impending bankruptcy. At that time, A&P entered its appearance on behalf of a non-existent entity, Mallinckrodt ARD Inc. The A&P lawyers who entered their appearance in this case, and sought this Court's leave to appear *pro hac vice*, cannot claim they were unaware of their new client's change of corporate form, because at the same time they entered their appearance in California Federal District Court on behalf of the proper legal entity, Mallinckrodt ARD LLC.

As new counsel in the case, A&P was duty bound to fully investigate and understand its new clients, and to properly inform this Court and opposing counsel of any change in their status as part their duty to update existing pleadings for accuracy and completeness. They did not. They allowed the Mallinckrodt Defendants' Corporate Disclosure Statement to remain unchanged, and inaccurate. They allowed Mallinckrodt ARD Inc.'s Answer to remain unchanged, and inaccurate.

"Counsel have a continuing duty to inform the Court of any development which may conceivably affect the outcome of the litigation." *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067-68 (7th Cir. 2000) (citing *Tiverton Bd. of License Comm'rs v. Pastore,* 469 U.S. 238, 240, 83 L. Ed. 2d 618, 105 S. Ct. 685 (1985)). A&P cannot be heard to argue that its duty of candor to this tribunal had to yield to its duty to protect client confidentiality: this issue was directly decided, and rejected, by the Seventh Circuit in the *Puig* case. *Id*. at 1067 ("The comment to Rule 3.3, Rules of Professional Conduct, Northern District of Illinois, states that a lawyer's task of maintaining client confidence 'is qualified by the advocate's duty of candor to the tribunal.'") (citation omitted).

When Mr. Bernstein testified earlier this year, he explained to the Bankruptcy Court that A&P had been retained to represent "Mallinckrodt and all its affiliates." Accordingly, by its 2019 retention, the firm represented all of Mallinckrodt. Thus, it could not claim a lack of access to the sources of Rockford's discovery. Having access to Mallinckrodt's entire books and records as its clients' files, A&P had direct access to the same organization charts, inter-company contracts, and other Acthar-related documents it failed to produce in this case, but later produced in bankruptcy.

A&P's deception as to its continuing representation of Mallinckrodt ARD Inc., and its withholding of the discovery Rockford requested, led to material inaccuracies in the factual record of this litigation. Such inaccuracies caused Rockford to sleep on its rights against other, non-debtor entities within Mallinckrodt during the pendency of discovery. These other, non-defendant entities had assumed control over the critical decision-making about Acthar – its manufacture, distribution, pricing, marketing and sale. These entities could have been, and should have been, sued. But their existence was concealed. Their direct role with Acthar was concealed throughout the entirety of the discovery in this case, until all discovery was stayed by the bankruptcy filing.

It was not until A&P decided to produce documents in bankruptcy that the existence of these entities, and their direct role in the unlawful conduct at issue in Rockford's case, was revealed. These documents were created between 2015 – 2020. As a result, they were fully available to A&P. However, such documents were never produced by A&P in response to Rockford's document requests, or this Court's Orders.

Why does this matter? The Bankruptcy Court struck all of Rockford's Proofs of Claim against all non-defendant Debtor entities, depriving Rockford of valuable claims against Debtors

23

with substantial available assets to pay such claims. The Bankruptcy Court struck such claims despite the fact their existence and involvement with Acthar had been concealed. When Rockford's counsel argued that these documents were covered by Rockford's document requests and this Court's discovery Orders, A&P sat by, allowing the Bankruptcy Court to rule in a vacuum. As a result, Rockford suffered unfair prejudice, and actual loss of its claims, as a direct and proximate result of A&P's discovery malfeasance.

A&P's discovery malfeasance is demonstrated by the fact that, at the time it was hired and moved to substitute as counsel for the Mallinckrodt Defendants in this litigation, Mallinckrodt had hired a restructuring support professional, AlixPartners. It was AlixPartners' job to prepare the company for bankruptcy. It is reasonable to presume that Mallinckrodt's decision to change counsel – from Bryan Cave to A&P – was informed by AlixPartners as part its restructuring effort. As a result, A&P's actions and failures to act from its entry of appearance must be viewed through the lens of counsel knowledgeable of its client-company's goals of ***avoiding*** litigation in anticipation of filing bankruptcy.

Furthermore, A&P agreed to amend its retainer agreement in July 2020 – just 2 months before Mallinckrodt's bankruptcy filing – expressly providing for its withdrawal as counsel in the event of Mallinckrodt's bankruptcy filing. *See generally*, Dkt No. 536 at 11 (filed under seal) (describing A&P retainer agreements). The amended A&P retainer also included an additional provision which informs this Court's consideration: a success bounty.[9] A&P was promised a $1.5 million success bonus if it succeeded in defeating Rockford's motion for class certification. While such a fee provision for defense counsel is certainly questionable, in this context, it raises concerns about A&P's motivations in discovery.

---

[9] Dkt. No. 536 at 12, n. 12.

24

As set forth above, to prevail on its request for contempt, Rockford must establish by clear and convincing evidence the following:

(1) a court order sets forth an unambiguous command;

(2) the alleged contemnor violated that command;

(3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and

(4) the alleged contemnor failed to make reasonable and diligent effort to comply.

*United States SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2009) (citing *Prima Tek II*).

As discussed above, each of these elements is easily satisfied.

### a. Several Court Orders set forth unambiguous commands for A&P to produce specific discovery to Rockford.

As set forth above, the Magistrate Judges in this case tightly managed the conduct of discovery in this case. Requests for extensions of discovery deadlines were not routinely granted; instead, other than the one extension granted due to impact the Covid-19 pandemic, only one extension of the fact discovery cutoff was granted. That request was made by A&P on the eve of Mallinckrodt's bankruptcy filing, and without the firm advising this Court about such anticipated filing.

Rockford was forced to seek Orders of this Court compelling Mallinckrodt to produce organization charts, contracts and other Acthar-related distribution and pricing documents. Despite these explicit Orders, A&P failed to comply.

### b. A&P violated such commands.

There is no doubt A&P violated this Court's discovery commands for organization charts, contracts and Acthar-related distribution and pricing documents. The documents produced in bankruptcy demonstrate this irrefutable fact.

### c. A&P's violations were significant.

The significance of A&P's violations is likely immeasurable, but certainly catastrophic, not only for the City of Rockford and its citizens, but for the thousands of other third party payors and their beneficiaries Rockford has sought to represent and protect throughout this litigation. Rockford had its Proofs of Claim against Non-Defendant Debtors stricken with prejudice. Rockford has had its case against Express Scripts stayed, while Express Scripts has been able to proceed with merits-related discovery in bankruptcy. The prejudice to Rockford's rights will only be fully realized when this case returns to this Court the complete proceedings against Express Scripts. That is why this Motion should be decided now, before the parties return to this Court.

### d. A&P failed to make a reasonable and diligent effort to comply.

The record in this case, and the bankruptcy case, amply demonstrates that A&P failed to make a reasonable and diligent effort to comply with this Court's discovery and case management orders.

As set forth above, the efforts of A&P to comply with this Court's discovery and case management orders must be viewed through the lens of lawyers representing a client fully intent on filing for bankruptcy to *avoid* this Court's Orders and jurisdiction. A&P was fully aware when it entered its appearance for the Mallinckrodt Defendants – including and especially the defunct **Mallinckrodt ARD Inc**. entity – that its clients were filing for bankruptcy due in large part to their litigation exposure. With such primary motivation, and the fact that A&P's revised retainer explicitly referenced bankruptcy and provided A&P with a litigation bonus if it succeeded, A&P's "efforts" were far from diligent.

Only fulsome discovery into A&P's efforts in bankruptcy will demonstrate their deficiencies in this Court.

> **2. Appropriate sanctions pursuant to rule 37 and the Court's inherent powers.**

This Court knows well the power it holds to sanction lawyers for discovery malfeasance. *See generally*, *DR Distribs., LLC v. 21 Century Smoking, Inc*., 2021 U.S.Dist. LEXIS 9513 (N.D.Ill. Jan. 19, 2021). The facts and circumstances of this case are far worse than those presented in the *21 Century Smoking* case. Consequently, whether this Court resorts to its Rule-based powers, inherent powers, or even a "howitzer", the "arsenal" is fully available to it to mete out appropriate justice to ensure that what seems to be engrained discovery practice at A&P is eradicated fully and finally. *Id*. at * 6 ("defense counsel find themselves looking down the barrel of a sanctions motion Howitzer.")

## III. CONCLUSION

For these reasons, Plaintiff City of Rockford respectfully requests this Honorable Court to enter an Order to Show Cause why Arnold & Porter should not be held in contempt, or otherwise sanction under Federal Rule 37 and/or this Court's inherent powers, for its willful misconduct in the conduct of discovery in this case.

Dated: March 25, 2022

Respectfully submitted,

*s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr., Esq.
(Pro Hac Vice)
*haviland@havilandhughes.com*
William H. Platt II, Esq.
(Pro Hac Vice)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
T: 215-609-4661
F: 215-392-4400

Nicholas Meyer, Esq.
Ifeanyi C. Mogbana, Esq.
*Ifeanyi.mogbana@rockfordil.gov*
City Attorney, Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154
F: 815-967-9649

James Bartimus, Esq.
(Pro Hac Vice)
*jb@blawfirm.com*
Anthony DeWitt, Esq.
(Pro Hac Vice)
*aldewitt@bflawfirm.com*
**BARTIMUS FRCKELTON
ROBERTSON RADER**
11150 Overbrook Rd., Suite 200
Leawood, KS 55211
T: 913-266-2300
F: 913-266-2366

*Attorneys for Plaintiff,
City of Rockford and the Class*