**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| **CITY OF ROCKFORD** *on behalf of themselves and all others similarly situated*, | |
| Plaintiff, | Civil Action No.: 3:17-cv-50107 |
| v. | Judge Iain D. Johnston |
| | Magistrate Judge Lisa A. Jensen |
| **MALLINCKRODT ARD, INC.,** *formally known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** *doing business as* **CURASCRIPT, SD; ACCREDO HEALTH GROUP, INC.,** *and* **UNITED BIOSOURCE CORPORATION** | |
| Defendants. | |

**PLAINTIFF CITY OF ROCKFORD'S MOTION TO COMPEL DISCOVERY AND FOR
SANCTIONS PURSUANT TO FEDERAL RULE 37**

## I.     INTRODUCTION

        "Even a dog distinguishes between being stumbled over and being kicked."

O. Holmes, The Common Law 3 (1881). *Voisine v. United States*, 579 U.S. 686, 702, 136 S. Ct.

2272, 2284, 195 L. Ed. 2d 736 (2016).

        The City of Rockford has been kicked, hard, in this case in its efforts to obtain the

relevant discovery needed to prove its antitrust case against the Express Scripts Entities. For

years, Express Scripts has told Rockford and this Court that it has responded fully to Rockford's

multiple Requests for Production of Documents (RFPs) by providing all relevant documents for

Rockford's multiple motions to compel, directing the remaining document discovery effort to

Express Scripts' production documents for the **post-April 2019 period**.

With the filing of an unsolicited[1] "Notice Regarding Status of Document Production" (ECF No. 687) ("**Notice**"), all that has changed. On the evening of September 19, 2022, Express Scripts admitted for the first time in the more than five (5) years, five (5) months, this case has been pending, that its production of documents for period **prior to April 2019** was deficient.

<u>Now, we know the truth</u>: Rockford's concerns about the material deficiencies in Express Scripts' document production were well-placed.  Documents from 2007 through 2013 do exist in Express Scripts' files. However, these documents have *never* been produced in this litigation by any Express Scripts Entity. While the real reasons for this glaring lack of production have yet to be revealed fully, what is now known – what is now a "known known"[2] – is that the Express Scripts Entities' failure to produce a whole tranche of discovery from 2007-2013 has upended the discovery schedule, causing Rockford to adjourn all affected depositions in the future and to seek relief from this Court evaluate the prejudicial impact on the depositions already taken.[3]

As explained in its Notice, Express Scripts has used the ruse of responding two letters issued by Rockford's counsel the prior week, on September 12, 2022,[4] to reveal for the first time

---

[1] This Court never asked for an "update … regarding the status of [Express Scripts'] production of documents from the period *prior to* April 2019." *Id*. at 1 (emphasis supplied). Quite to the contrary, at the August 3, 2022 hearing, Express Scripts argued vehemently that it had produced all pre-April 2019 documents. *See, generally,* Aug. 3. 2022 Hrg. Tr. at 66-69 at **Exhibit "A"** hereto.

[2] *City of Rockford v. Mallinckrodt ARD, Inc*., 326 F.R.D. 489, 490 (N.D. Ill. 2018) (Johnston, J.) ("[A]s we know there are known knowns; there are things we know we know. We also know there are known unknowns; that is to say we know there are some things we do not know. . .")

[3] Express Scripts has agreed to adjourn all depositions scheduled up to October 10, 2022, the date when it anticipates completing its production of pre-April 2019 documents.

[4] Two things are important about Express Scripts tactic: (1) it has not produced Rockford's letters to this Court; and (2) Express Scripts has yet to respond to either letter, choosing instead to file the unsolicited Notice to try to head off Rockford's sure-to-follow motion to compel. Because they are material to this Court's disposition of the instant motion, Rockford hereby attaches the letters as **Exhibits "B" and "C",** respectively. The letters simply echo what was

that it has wrongfully withheld "emails from 2007 to 2013" that "reside" on a "legacy Express Scripts historical email archive" held by the "Express Scripts e-discovery vendor." *Id*. at 2. In a meet and confer conference, counsel for Express Scripts has tried to lay the blame for the discovery failing at the feet of their client, claiming Express Scripts in-house counsel failed to follow an established discovery procedure in this case by failing to direct its e-discovery vendor, Epiq Global, to search an existing archive of emails for the period 2007-2013. But, in doing so, counsel ignores the fact that she attested last month, as an officer of the Court, that Express Scripts had produced all such documents. Aug. 3. 2022 Hrg. Tr. at 69:2-12 at **Exhibit "A"** hereto. Express Scripts' counsel also ignores the fact that this Court denied Rockford's motion to compel such documents last month, and many times before, in reliance on such representations. *Id*. at 69:2-6 ("THE COURT: I'm not accusing [Express Scripts] of anything. I believe you when you tell me that, when you tell me you have produced everything through 2019, and that is why I am questioning Mr. Haviland on why he wants all the additional things he is saying.").

Express Scripts' counsel also ignores the fact that she doubled-down on such prior misrepresentations to the Court by initially **refusing** to provide an affidavit similar to the one she commanded of Rockford:

> **Mr. Haviland**: Your Honor, I would ask for two things: One, an affidavit, as you have required of Rockford, that says what counsel says at the podium, that they have done what they say they have done as to all the custodians and search terms, so we are not debating this anymore…."
> **Ms. McCaffrey**: Mr. Haviland has not ever demonstrated that we have failed to meet our discovery obligations. …**An affidavit is not appropriate.**
> **Mr. Haviland: Your Honor, when I go into the data set, we see huge gaps. Mr. Osborne, a deponent, we no documents before 2012, Judge**.
> **Ms. McCaffrey**: He has used those in depositions.[5]

---

stated by Mr. Haviland six (6) weeks before at the August 3, 2022 hearing, and make clear that action will be taken by Rockford as to Express Scripts' apparent spoliation of evidence.

[5] As Express Scripts counsel well knew, but failed to advise the Court, the documents used by Rockford at depositions were the documents produced by Mallinckrodt, <u>not</u> Express Scripts.

**Mr**. **Haviland**: From Mallinckrodt.

**The Court**: So I want to hear the proposal.

**Mr**. **Haviland**: … What I want is an affidavit, similar to Rockford ---

**The Court**: Saying that they have run all the search terms against all the custodians through April of 2019.

**Mr**. Haviland: Against all the custodians, and they have produced as responsive to those terms, or put them on a privilege log.

**The Court**: Or what?

**Mr**. **Haviland**: Or put them on a privilege log if they are privileged and they claim privilege. But to know that the production is complete as counsel has…

**The Court**: Through Aprils of 2019.

**Mr**. Haviland: Right, as to all of them, and then the issue is coming forward.

**The Court**: Okay. That's what we have been talking about.

**Mr**. **Haviland**: As to that, we have been talking past each other because we don't even know that we have what they say up until April of 2019.

**The Court**: **I believe you have that, and I'm going to have her provide an affidavit**.

**Mr**. **Haviland**: Perfect.

**Ms**. **McCaffrey**: Your Honor, I have to say I'm happy to provide that affidavit, but plaintiff has not demonstrated that we have in any way, shape or form not met our discovery obligations in this case through April of 2019. Even what he just said right now was wrong, He has used countless documents dated between 2007 and 2019 in depositions in this case.

**Mr**. **Haviland**: From Mallinckrodt, Judge, from Mallinckrodt.

**Ms**. **McCaffrey:** So Mr. Haviland needs to know what's in their own production, and his failure to do that should not fall back on my client.

**So we will make this declaration, Judge**. This is the first time this has ever been raised. It was raised in a reply that was not even authorized and was the only time counsel ever raised anything substantive in terms of a response on this motion to compel.

**The Court**: **I agree. I'm frustrated with Mr. Haviland.**

Aug. 3. 2022 Hrg. Tr. at 66:12-68:19 at **Exhibit "A"** hereto (emphasis supplied). Counsel went

so far as to argue, "I have got to tell I'm sick of getting accused of something that is completely

untrue." *Id*. at 68:24-69:1.

After the Court ordered that the affidavit be produced, Ms. McCaffrey served the same on

August 29, 2022, "under penalty of perjury", attesting as "true and correct" the following

materially misleading statements about Express Scripts' pre-April 2019 document production:

> The Express Scripts Entities have run the 117 search terms ordered by the Court or agreed to by the parties. *See* Exhibit A.

> **All 117 search terms were run across all documents collected** from the 60 Express **Scripts Entities custodians** agreed to by the parties or otherwise ordered by the Court, *see* Exhibit B, **dated January 1, 2007 to April 30, 2019** (collectively, the "Review Set").
>
> The Review Set was then reviewed for responsiveness to Plaintiff's requests for production and privilege.
>
> **All documents** from the **Review Set** that were determined to be responsive to Plaintiff's requests for production and non-privileged **were produced to Plaintiff in rolling productions from May 25, 2019 to April 8, 2022**. Certain additional privilege log roll off productions were made to Plaintiff between May 27, 2022 and July 14, 2022, in accordance with the Express Scripts Entities' finalization of their privilege log, discussed in paragraph 8 below.

Declaration of Meghan McCaffrey dated August 29, 2022 ("**McCaffrey Declaration**") at

**Exhibit "D"** hereto. These statements were materially false and misleading when made because

the Notice (filed just weeks later) reveals that (1) both the "Supplemental Archive" and

"Historical Archive" contained "documents <u>collected</u> from the 60 custodians", (2) both

collections contained documents <u>responsive</u> to Rockford's RPDs and (3) they were <u>not</u> <u>searched</u>.

Notice at 2.

Ms. McCaffrey has refused to amend her Declaration, despite the admitted fact that it is

factually wrong.[6] Counsel for Express Scripts have also refused to supplement their unsolicited

Notice to advise this Court of **all the material facts** pertaining to their late "discovered"

Historical Archive containing thousands of relevant emails from 2007 – 2013. Instead, they have

only revealed such facts to Plaintiffs' counsel in meet and confer conferences. These facts are

set forth in MSP counsel's email summary of the conference between the parties. *See* email

thread dated September 27, 2022 at **Exhibit "E"** hereto.

---

[6] This Court will readily recall that Express Scripts has doggedly pursued four (4) affidavits of completeness from Rockford as to Express Scripts' motion to compel – one from counsel, two from Rockford and one from Rockford's vendor. All of these affidavits were true when filed, and remain true today. Rockford simply seeks the same relief as to Express Scripts.

In an effort to avoid this motion, and following a series of meet and confer conferences held last week, counsel for Rockford and MSP jointly requested that counsel for Express Scripts take a number of steps to ameliorate the negative effects of its late document production including (1) filing a corrected Notice, (2) serving an amended McCaffrey Declaration, and (3) adjourning all depositions affected by the late-produced documents until after production was complete. While Express Scripts agreed to the deposition adjournment,[7] it otherwise has refused to take any corrective steps set forth in Plaintiff counsel's email request following up the meet and confer. *See* email thread dated September 26, 2022 at **Exhibit "F"** hereto. As a result, the deposition schedule in this case has ground to a halt while Plaintiffs' counsel await production of thousands of relevant emails from the critical period 2007-2013 Express Scripts falsely claimed was already produced.

This Court has observed:

> Although ultimately it is the party, not the attorneys, that is responsible for ensuring compliance with its discovery obligations, Defendants correctly point out that [Plaintiff's] attorneys had a duty to ensure that their client completed a thorough search of its records in responding to Defendants' document requests and to monitor its production efforts. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 436, 439 (S.D.N.Y. 2004). This duty does not require an attorney "to monitor her client like a parent watching a child," but it does oblige the attorney to communicate effectively with the client to implement a litigation hold and ensure that non-privileged relevant information is discovered, retained, and produced. *Id.* at 432-433. Counsel must be organized and effectively manage resources to "ensure compliance with discovery obligations and prevent misrepresentation to the opposing party." *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.,* No. 3:09-CV-493-JD-CAN, 2012 U.S. Dist. LEXIS 189164, 2012 WL 8977920, at *2 (N.D. Ind. Dec. 4, 2012). These obligations include the need to make sure that the client takes "reasonable steps to ensure that [its] responses to requests to produce are complete and accurate." *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145 (N.D. Ill. 1982).

---

[7] Rockford did not reach agreement with Express Scripts as to the deposition of its former CEO Timothy Wentworth. Instead, Express Scripts ploughed ahead with the deposition as noticed by the MSP plaintiffs, and now seek to deny Rockford the right to depose Wentworth once all the new discovery is completed. A separate motion to compel is being filed by Rockford as to the Wentworth deposition.

*LiiON, LLC v. Vertiv Group Corp.*, 2020 U.S.Dist. LEXIS 82604 (N.D.Ill. Feb. 28, 2020). These obligations were not carried out by Express Scripts or its lawyers in this case.

Express Scripts further argues that "productions have commenced and rolling productions will continue until complete, which the Express Scripts Entities anticipate to be well in advance of the November 18, 2022 close of discovery in this case." Notice at 3. This is not good enough.

In light of Express Scripts' late revelation that it has made material misrepresentations to this Court since 2020 about the status of its document discovery prior to April 2019, relief is required to prevent *further* prejudice to Rockford's discovery rights. Rockford has already been substantially prejudiced by having to take more than a dozen depositions on a materially incomplete record, deprived of critical email communications that have existed all along in Express Scripts' email archives for the years 2007 through 2013.[8] Rockford should not be further prejudiced by Express Scripts' belated document dump on the eve of depositions that were noticed *duces tecum* way back in December 2019 and now are being conducted on an extremely compressed timetable. To avoid such prejudice, Rockford has suspended all depositions of witnesses affected by Express Scripts' late discovery production pending a ruling by this Court on the interim relief requested by this Motion. As admonished by this Court, Rockford has chosen to <u>not</u> proceed "at its peril"; instead, it has come to Court for expedited relief and appropriate sanctions, having exhausted efforts to meet and confer. *See* Exhibits "E' and "F hereto (summarizing negotiations).

---

[8] Express Scripts impliedly concedes such prejudice by agreeing to the re-depositions of affected witnesses. See Exhibit "D" hereto.

For these reasons and those that follow, Rockford respectfully requests the following

relief be ordered by the Court pursuant to Federal Rules 26, 34 and 37, and the inherent power of

this Court to issue sanctions for discovery violations[9]:

1. **Issuance of an order to show cause why Express Scripts should not be sanctioned for (a) its failure to timely produce documents for the period 2007 – 2013, (b) its failure to file a complete and accurate Notice (detailing all the facts pertaining to its discovery failures) and (c) its failure to serve a complete and accurate McCaffrey Declaration, all in the face of repeated statements to this Court that Express Scripts' pre-2019 document production was complete.**

2. **Appointment of a forensic electronic document discovery expert,[10]** at the defendants' expense, to examine the document collection presently held by Epic Global to test the veracity of the following Express Scripts Entities' claims and provide a report on such investigation for further use by Rockford and this Court in crafting an appropriate sanctions Order:
   a. they "reasonably believed all sources of potentially relevant pre-2019 documents had been identified, collected and searched";
   b. Epiq failed to "follow" the Express Scripts Entities' "processes for collecting custodial email files … in connection with its collection efforts in the earlier years of the litigation";
   c. "[C]ertain of its collection efforts had been inadvertently overlooked";
   d. The newly-located "Supplemental Archive" is "largely duplicative of the original collection;
   e. The "Supplemental Archive" "may contain some pre-2019 documents for a limited set of custodians, as reflected at Exhibit 1";
   f. "one legacy Express Scripts historical email archive (the "Historical Archive") that resides within [Epiq] was not searched for collection in this case";
   g. Why was neither the Supplemental Archive nor the Historical Archive searched in this case, after both data sets were collected and transferred to Eqiq and "reside[d]" there during the period of discovery?;
   h. Verify which custodians and which deponents are impacted;
   i. Determine the extent to which the affected custodians and deponents are impacted;

---

[9] While Plaintiff has not requested the "full arsenal of sanctions weapons, including civil contempt, inherent authority, 28 U.S.C. § 1927, and Federal Rules of Civil Procedure 11, 26(g), 37, and 56(h)," it reserves the right seek additional sanctions once the requested forensic investigation and corporate designee depositions are completed. *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F.Supp. 3d 839, 862 (N.D.Ill 2021) (Johnston, J.).

[10] Such relief has been ordered by this Court in situations where a party's compliance with discovery can reasonably be questioned. *See, e.g.*, *Kucala Enters. V. Auto Wax Co.*, 2003 U.S. Dist. LEXIS 8833 (N.D.Ill. May 27, 2003).

j. Determine how it is that Eqiq is seemingly able to "immediately search[] the archives and process[] documents for upload and review" documents on two archives only discovered "over the weekend", when Express Scripts counsel argued to this Court it would take four (4) weeks to begin producing documents after the August 3, 2022 hearing for the psot-2019 period.

k. Determine the basis for the claim that "they will be able to complete review and production from the archives for all remaining custodians in advance of their upcoming depositions"; and

l. Determine a final, date certain for completion for the production of all relevant pre-April 2019 documents, in accordance with prior representations to this Court.

**3. Corporate designees of the following:**

a. In-house counsel for the Express Scripts Entities identified as being in charge of the Express Scripts discovery policy that was not followed in this case.[11]

b. Express Scripts' document vendor, Epic Global, in charge of the collection, storage and reproduction of Express Scripts' electronic discovery;

**4. A court-ordered, date certain (ie. October 10, 2022)[12] for the production of all relevant documents for the pre-April 2019 period and post-April 2019 period**, after which depositions of affected individuals at Express Scripts and Mallinckrodt may re-commence.[13]

**5. Leave of Court to conduct the depositions** of any witness either employed by the Express Scripts Entities or Mallinckrodt during the period 2007-2013 (the period for which discovery has not been produced) or for whom belated documents have been produced.

---

[11] The MSP Plaintiffs have issued a Notice of Deposition, in which Rockford has joined. A Court Order is needed to expedite these depositions to avoid putting off Express Scripts and Mallinckrodt witness depositions scheduled in October.

[12] While Express Scripts has agreed to this deadline, a Court order is required to ensure the deadline is met, and enforced. *See* Exhibit "F" hereto.

[13] While the parties have agreed to adjourn all depositions from last week and this week, pending completion of the Express Scripts document production, the parties presently disagree about (1) whether depositions of affected deponents schedule for next week and beyond should be adjourned, and (2) whether re-scheduled depositions can proceed after December 18, 2022, the date of the present MSP fact discovery cutoff. Rockford suggests that it should be permitted to depose any affected witness on a date mutually agreeable to Rockford and the witness, even is that takes until January 2023 to conclude in order to avoid any further compression of the discovery schedule.

6. **Leave of Court to re-depose** any witness for whom documents for the period prior to April 2019 are produced, at Express Scripts' expense.

7. **An Order barring the Express Scripts Entities from using any late-produced documents in this case** (including in depositions, expert reports or testimony, motions or trial). This includes the use of any document produced after the date of the Court-ordered McCaffrey Declaration, August 29, 2022.[14]

Rockford respectfully submits that the above requested relief is the bare minimum that should be ordered by the Court at this juncture, pending the outcome of the corporate designee depositions and forensic examination. What Express Scripts has done is a serious matter. Its material misrepresentations to both Rockford and this Court over the course of several years warrant sanctions, the final form of which should await a complete record as to what has transpired. Neither Rockford nor this Court can trust what Express Scripts has reported in either its Notice or the McCaffrey Declaration, both of which remain uncorrected.

## II.    RELEVANT BACKGROUND OF DISPUTE

### A. This Court's Orders Regarding Production of Electronic Discovery, Including Contract Documents and Negotiations of the 2007 Agreements.

One of the first orders of business in this Court was for the Defendants to produce such contracts, all drafts thereof, and all negotiation documents. *See* Excerpt of Transcript of May 23, 2018 Hearing at **Exhibit "G"** hereto. That directive was reinforced by subsequent Orders of the Court. *See, e.g.*, Order dated July 22, 2019 at ECF 224-1. In that Order, the Court ruled:

Plaintiff City of Rockford's motion to compel [218] is granted in part and denied in part as stated in open court. By 8/12, defendants are to complete the non-custodial search for the contract documents requested in request to produce #11 and second request to produce #1 and produce those documents to plaintiffs. To the extent no documents are discovered, a written representation is to be given to Plaintiff City of Rockford.

---

[14] As discussed below, such sanction is appropriate at this juncture to address the prejudice already caused to Rockford over the course of the more than 4 years discovery has been proceeding in this case, in light of Attorney McCaffrey's repeated representations to this Court about the status of Express Scripts' pre-April 2019 document discovery. *See* discussion below.

With respect to ESI responsive to request to produce #11 and second request to produce #1, by 8/12, defendants shall propose specific search terms and a list of custodians to discover contract documents. The parties are directed to meet and confer on running the proposed search terms and list of custodians. By 8/22, a joint letter is to be submitted to the Court per the ESI Protocol if the parties cannot reach an agreement.

***

With respect to Plaintiff City of Rockford's request as to all remaining general ESI disputes for search terms or custodians, the parties are directed to follow the ESI Protocol. If after exhausting all meet and confer options, an issue may be presented to the Court after filing a joint letter as required under the ESI Protocol.

*Id*. at 1-2; *see also*, ECF No. 289 ("By 1/30/2020 all contract documents are to be produced.")

On August 6, 2018, the Court entered its [Partially] Agreed Order Establishing

Production Protocol for Electronically Stored Information (ECF No. 153). That Order directed

the parties to "exchange in writing the information listed in items (a) through (e) below." *Id*. at 2.

These subsections called upon Express Scripts to provide all of the following to Rockford:

(a) "A preliminary list of custodians" and "**a general description of the devices and/or storage systems on which the custodian's ESI is located**."

(b) "A general description of **any other systems for electronic communications and ESI storage** (non-custodial sources) **that may contain discoverable information**."

(c) "A general description or, at the party's option, **a copy of the party's operative document retention policies, throughout the relevant time period**, pertaining to any electronic communications and or/ESI storage system(s) that may contain discoverable information;

(d) A description of **any potentially discoverable ESI that the party is aware of having been lost or destroyed**;

(e) A description of any potentially discoverable ESI that the party contends is **inaccessible** or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

i. the reasons for the party's contention regarding accessibility; and

ii. the proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

*Id*. (emphasis supplied). Express Scripts failed to abide by the terms of this Order for entire,

four-year period between August 2018 and August 2022.

**B. Rockford's Multiple Attempts to Obtain a Court Order Compelling Electronic Discovery for the Period 2006-2007 and Beyond.**

For years in this case, Rockford has complained that the Express Scripts Entities have failed to produce relevant documents from 2006-2007, when the alleged antitrust arrangement with Mallinckrodt/Questcor was being negotiated and codified in five (5) separate contracts.[15] Rockford repeatedly pointed out that the Express Scripts Entities' electronic discovery production has been woefully deficient in its production of emails, drafts of agreements, and other reasonably expected exchanges about Acthar, both internally and externally, between the years 2007 – 2012. Each time, however, whether in response to motions to compel, in relation to meet and confer conferences, or during oral argument at hearings, Rockford's complaints have been met with derision, rebuke and pomposity from the Express Scripts Entities and their representatives as they repeatedly told this Court their document discovery was complete. *See, e.g.*, ECF No. 222 at 1 ("Plaintiff's Motion to Compel is frivolous."); ECF No. 487 at 2 ("Consistent with its Responses, the Express Scripts Entities substantially completed their production of documents to Plaintiff on January 30, 2020. See McCaffrey Decl. at ¶ 8.); ECF No. 488 at 1 ("Rockford's Motion is a classic fishing expedition …").

Indeed, in one of the first pleadings filed by Quinn Emanuel in this Court, Express Scripts' new counsel argued that Rockford had not "put forth any evidence of specific documents missing from the Express Scripts Entities' productions, spoliation, or any other bad faith

---

[15] Rockford only knows about the existence of these 2006-2007 documents because of *Mallinckrodt's* production of documents from that timeframe. The documents were identified specifically to Express Scripts in the two letters Rockford sent prior to the depositions of Express Scripts Vice President of Communications, Brian Henry, and Chief Medical Officer, Dr. Steve Miller. *See* **Exhibits "B" and "C"** hereto. As noted above, although these letters were apparently the impetus for Express Scripts' "discovery" of its existing, historical archive email database, they remain unanswered to this day.

conduct by the Express Scripts Entities with respect to document preservation in this case." *Id*. at

2. The lawyers pressed their case in the strongest of terms:

> Rockford does not present any such evidence because there isn't any. Instead, Rockford continues to rehash the same tired tale: that the mere fact that the Express Scripts Entities no longer maintain custodial files for fourteen custodians—all former employees, many of whom left the companies over a decade ago—is enough to justify the discovery sought by RFP No. 37….
>
> What is more, Rockford has known from the very outset of this case what the Express Scripts Entities' policies and procedures on document retention are: that "[e]mails that do not constitute business records may [only] be retained for up to two years" and that, "because the allegations in this case concern actions purportedly taken in 2007 or earlier and the Rockford Plaintiffs did not file a complaint until 2017, there may be ESI that plaintiffs request that has been destroyed pursuant to the Policy." See Mot. Ex. B (The Express Scripts Entities' October 15, 2018 ESI Disclosures) at 2-3; see also Sept. 9, 2019 Status Report (ECF No. 257) at 4 ("[T]hose additional 'contract' custodians are no longer employed by Express Scripts. Many left Express Scripts over a decade ago, well before the instant litigation. As a result, and due to Express Scripts' normal business practices, Express Scripts does not have their custodial files."); ECF No. 257-7 at 8-11 (identifying specific proposed custodians who left the Express Scripts Entities long ago and for whom the Express Scripts Entities therefore do not have custodial files). Yet Rockford has waited until now—mere months from the close of discovery, several months into depositions in this case, and nearly 10 months since receiving the Express Scripts Entities' responses and objections to RFP No. 37—to bring this issue to the Court.

*Id*. at 2-3. The statement that emails are not retained for custodians for more than two years was

false, as were the statements that such "ESI … has been destroyed" pursuant to some as-yet-

undisclosed "Policy". We now know the Policy at Express Scripts was to **retain** such emails.

The Express Scripts Entities and their legal representatives have attested to this Court –

both under oath in pleadings[16] and as officers of the court in hearings -- that **all** relevant and

---

[16] The signature of an attorney on a pleading represents his or her certification under Rule 11. *See also*, *City of Rockford v. Mallinckrodt ARD, Inc*., 326 F.R.D. 489, 492 (N.D. Ill. 2018) (Johnston, J.) ("Federal Rule of Civil Procedure 26(g) requires all discovery requests to be signed by at least one attorney (or party, if proceeding *pro se*). By signing the response, the attorney is certifying that to the best of counsel's knowledge, information and belief formed after a reasonable inquiry, the disclosure is complete and correct at the time it was made.") (citations omitted).

available documents have been produced for the period prior to April 2019. Each time, this Court has accepted such representations as true. Indeed, on the strength of these prior representations, this Court has dismissed and/or denied Rockford's motions to compel on multiple occasions, which motions sought discovery of these same documents from 2007 through 2013.

In fact, in the most recent in-person hearing, held August 3, 2022, the following colloquy took place between counsel for Express Scripts and the Court:

> THE COURT: I'm not accusing [Express Scripts] of anything. I believe you when you tell me that, when you tell me you have produced everything through 2019, and that is why I am questioning Mr. Haviland on why he wants all the additional things he is saying.
>
> So if the affidavit satisfies Mr. Haviland that you produced everything through 2019, and we are going to limit anything in the future to something very discrete, it would seem to me it's a win for you, right.
>
> MS. MCCAFFREY: I would be happy to get this closed out, Judge. I agree 100 percent.

Aug. 3. 2022 Hrg. Tr. at 69:2-12 (**Ex "A"**). Thus, the Court has accepted as true the repeated representations of counsel as to their compliance with the discovery rules and Orders of this Court pertaining to Express Scripts' responses Rockford's written RPDs. And Rockford's discovery of the truth has suffered as a result of these multiple, blatant misrepresentations.

## III. ARGUMENT IN SUPPORT OF ROCKFORD'S MOTION TO COMPEL AND FOR SANCTIONS

The prejudice visited upon Rockford is concrete, undue and unfair, and warrants the imposition of sanctions. The request made by the instant motion is the bare minimum to get to the truth about Express Scripts' discovery failings, and to prevent Express Scripts from profiting from such failings. Once further information is gathered as to the nature and extent of Express Scripts' wrongful withholding of documents from 2007-2013 in the face of repeated misrepresentations to Rockford's counsel and this Court, further sanctions may be warranted.

More than a dozen depositions have taken place of witnesses with knowledge of the events that preceded the 2012 merger between Express Scripts and Medco and the 2007 alleged antitrust arrangement. These depositions took days of lawyer time to prepare for and conduct, and thousands of dollars in expenses to travel to and record. Rockford was forced to conduct these depositions with one hand tied behind its back, armed with only limited discovery produced by Mallinckrodt and deprived of discovery from that time period from Express Scripts.

Express Scripts knew it had an advantage, and it sought to capitalize on such advantage.

In the words of then-Magistrate Judge Johnston, through no fault on the part of Rockford, a wholly-avoidable "an e-discovery snag … [has] throw[n] the entire schedule out the window." *DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F.Supp. 3d 839, 861 (N.D.Ill 2021) (Johnston, J.). Express Scripts should bear the brunt of their "snag" whether through its negligence, recklessness or willfulness.

### A. Standards for the Imposition of Discovery Sanctions

The Court is authorized to sanction a party for discovery violations, including the failure to preserve and produce evidence material to the litigation. FED. R. CIV. P. 37 (2003). Further, Federal Rule of Civil Procedure 26 requires the production of all non-privileged documents that are "relevant to the subject matter involved in the pending action." Although such documents may not always be admissible at trial, they are still discoverable if they are "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26.

Courts have broad discretion in deciding the appropriate sanction for a party's discovery violation, and the type of sanction administered generally depends on the unique factual circumstances of the case. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). The court should ensure that the sanction be proportionate to the offending conduct. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303

(7th Cir. 1994) (upholding decision to dismiss case with prejudice as a result of plaintiff's repeated failure to comply with court orders).

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). These sanctions are appropriate where a party or their counsel has practiced fraud upon the Court, acts in "bad faith by delaying or disrupting the litigation," hampers enforcement of a court order, or when a party is responsible for defiling "the very temple of justice." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotations omitted). "This power is 'permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 906-07 (N.D. Ill. 2017) (quoting *Salmeron*, 579 F.3d at 797).

### B. Request to Prevent Express Scripts' Use of Late-Produced Documents.

To ensure compliance with discovery requirements, Rule 37 provides that a party that fails to provide information or identify a witness as required by Rule 26(a) or 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This Court has extended such bar to the offending party's experts. While the Seventh Circuit has stated that the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless, *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998), the determination of whether the violation is in fact justified or harmless is entrusted to the broad discretion of the district court. *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003).

In this case, there is no substantial justification in the present record for Express Scripts' failure to produce documents from the period between 2007 and 2013 contained in either the "Historical Archive" or the "Supplemental Archive", in the face of counsel's statements to this Court and the McCaffrey Declaration. While Express Scripts' counsel claim they were responding to Rockford's two letters from last week, they have yet to so respond. More importantly, Express Scripts has yet to actually produce the requested documents between 2007 and 2013 that it claims prompted its recent inquiry – especially the Osborne emails from 2006 - 2007. Instead, Express Scripts ran to court to file a preemptory Notice, to stave off the certain motion that Rockford promised if it did not get reasonable answers to its direct questions. As a result, the sanction of a bar on future use of late produced evidence is appropriate. *DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F.Supp. 3d 839, 863 (N.D.Ill 2021) (Johnston, J.). Neither Express Scripts nor its counsel have demonstrated the mandatory "reasonable investigation and good faith compliance with the Federal Rules of Civil Procedure and the corresponding duties." *Id*. at 868. As Judge Johnston's 94-page treatise on electronic discovery obligations, and the appropriate sanctions for failing to fulfill such obligations, explains:

> The Rules of Professional Conduct require counsel to be candid with the court and act fairly to opposing counsel and parties. Rules of Professional Conduct 3.3 and 3.4. Rule 3.3(a)(1) bars attorneys from knowingly making a false statement of fact or failing to correct a false statement of material fact previously made by the attorney. Rule 3.3(a)(1). Rule 3.3(a)(3) prohibits attorneys from offering evidence that attorneys know to be false. Rule 3.3(a)(3). "There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." Rule 3.3, cmt. 3. The duty of candor toward the court is premised on the attorney's obligation as an officer of the court to prevent the fact finder from being misled by false evidence. Rule 3.3, cmt. 5. Rule 3.4 prohibits attorneys from obstructing another party's access to evidence or unlawfully destroying or concealing a document, and likewise prohibits attorneys from counseling or assisting another person to engage in these actions. Rule 3.4(a). The Rule 3.4 recognizes that the right of an opposing party to obtain evidence through discovery is an important procedural right. Rule 3.4, cmt. 2. Fairness in our adversarial system is achieved by preventing the destruction or concealment of evidence. Rule 3.4, cmt. 1. Moreover, Rule 3.4 also requires attorneys in pretrial procedures to make reasonably diligent efforts to

comply with a legally proper discovery request by an opposing party. Rule 3.4(d). Rule 8.4 contains a catch-all provision that states that it is misconduct for attorneys to violate or attempt to violate the rules or to knowingly assist another to do so. Rule 8.4(a). Further, Rule 8.4(c) makes conduct involving dishonesty, fraud, deceit or misrepresentation professional misconduct. Rule 8.4(c). Finally, Rule 8.4(d) states that it is professional misconduct to engage in conduct that is prejudicial to the administration of justice. Rule 8.4(d).

The failure to timely disclose the destruction of evidence violates the rules requiring candor to the court and fairness to the opposing party and counsel. Indeed, counsel must immediately inform the court and opposing counsel when they learn that ESI has been destroyed.

*Id*. at 906.

The fact that we are more than five (5) years into this litigation and Express Scripts has yet to produce its copies of the Mallinckrodt Acthar price increase notifications (which are mandated to be sent by contract)[17] from the custodial files of either Gayle Johnston and Rob Osborne – both of whom were listed as facsimile recipients of such notifications between 2007 and 2013, and both of whom were current employees of Express Scripts' Curascript at the time Rockford sued -- indicates a flagrant "failure to timely disclose the destruction of evidence [in] violat[ion of] the rules requiring candor to the court and fairness to the opposing party and counsel." Worse, Express Scripts seeks to gain advantage from its spoliation by creating a false narrative with its witnesses in the absence of the actual evidence.  As will be shown to the Court at any evidentiary hearing held on Plaintiff's Motion for Sanctions, or any subsequent briefing allowed by this Court. Express Scripts has used the advantage of its non-disclosure of relevant documents to have its fact witnesses testify about the purported meaning of the *lack of* any such evidence in an effort to create a skewed factual record of the 2006 -2007 time period.

---

[17] Paragraph 5(c) of the June 29, 2007 Exclusive Wholesale Product Purchase Agreement between Curascript and Questcor mandates the written agreement of the parties to any price increase. *See* MK00000001-11 at **Exhibit "H"** hereto.

## IV.    CONCLUSION

WHEREFORE, for these reasons, and those that will be presented at an anticipated future evidentiary hearing on Rockford's request for sanctions against Express Scripts, once Rockford's corporate designee depositions and forensic examination are completed, the City of Rockford respectfully requests that this Honorable Court enter the form of Order included herewith, granting Rockford interim relief for Express Scripts' discovery violations.

Dated:  September 27, 2022

Respectfully submitted,

*s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr., Esq.,
*pro hac vice*
haviland@havilandhughes.com
William H. Platt II, Esq.
*pro hac vice*
platt@havilandhughes.com
**HAVILAND HUGHES**
201 South Maple Avenue
Suite 110
Ambler, PA 19002
T: 215-609-4661
F: 215-392-4400

Ifeanyi C. Mogbana, Esq.
*Ifeanyi.mogbana@rockfordil.gov*
City Attorney, Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154
F: 815-967-9649

*Attorneys for Plaintiff,*
*City of Rockford and the Class*