IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| City Of Rockford, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 3:17-cv-50107 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Express Scripts Holding Company, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff's motion to compel Acthar contract drafts and negotiation documents [790] is granted in part and denied in part. By June 20, 2023, Defendants shall produce Exhibit F-11, Bates-numbered document ExpressSripts6106541-6106571, to Plaintiff.

**STATEMENT**

The parties in this longstanding, antitrust litigation are before the Court on Plaintiff City of Rockford's motion to compel Acthar contract drafts and negotiation documents. Dkt. 790. Plaintiff seeks to compel the disclosure of drafts of the exclusive distribution contract for Acthar between Defendants and Mallinckrodt. The motion originates from Defendants production of 13 documents in discovery, which include draft pleadings in the bankruptcy case, drafts of the Acthar distribution contract, and an email from counsel concerning the instant litigation. These documents were subsequently introduced as exhibits at a deposition of Defendants' corporate designee in March 2023. After Plaintiff's counsel questioned the deponent about the negotiations between Defendants and Mallinckrodt relating to the drafts of the Acthar distribution contract, Defendants'

counsel sought to claw back these documents, both at the deposition and in a letter following the deposition, based on claims of attorney-client privilege.

Plaintiff objects to Defendants' "belated privilege claims" and asks this Court to deny Defendants request to claw back the 13 documents and to also produce all drafts of the Acthar distribution contract that were created between April 2017 and April 2022. Pl.'s Mt. at 5, Dkt. 790. Plaintiff argues that these documents are not protected by the attorney-client privilege, their disclosure was not inadvertent and therefore any claim of privilege is waived, and using one of these documents at a previous deposition without objection by Defendants waives any claim of privilege. The parties have filed written responses, Dkts. 801, 809, 815, and the Court heard oral argument on May 19, 2023. At the Court's request, Defendants subsequently produced the cover emails for each of the 13 documents for *in-camera* review. Defendants also represented to the Court that following a review of their privilege log, they have not withheld as privileged any drafts of the Acthar distribution contract that were provided to or received from Mallinckrodt.

**I. Inadvertence**

Plaintiff argues that Defendants should not be allowed to claw back the 13 documents because Defendants have not shown that they made an inadvertent production. In support, Plaintiff cites to the parties' amended confidentiality order entered in this case, which states: "A party that inadvertently produces a document it believes should be protected from discovery shall promptly after learning of the inadvertent production notify the other party or parties of the claim of privilege or other protection or immunity." Dkt. 308 at 9; Pl.'s Mt. at 2, Dkt. 790.

However, as Defendants point out the order also states: "The production of privileged or work-product protected documents, *whether inadvertent or otherwise*, is not a waiver of the privilege or protection from discovery in this case or in any other proceeding, including a litigation

in federal or state court. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d)." Dkt. 308 at 8 (emphasis added). The parties' agreed ESI protocol includes the same language and also states: "Nothing herein shall limit the receiving party from arguing that the document is not in fact privileged, in accordance with the Protective Order. Rather, this paragraph is intended only to prohibit arguing that the document has lost its privilege due to production." Dkt. 158 at 13. Based on the parties' agreed language in these orders, Defendants cite to two cases to support the argument that inadvertence is not required where the parties chose to override the inadvertent disclosure requirement of Rule 502(b). Defs.' Resp. at 5, Dkt. 801 (citing *Scott v. State Farm Fire & Cas. Co.*, 414CV00075RLYDML, 2016 WL 10459790, at *2 (S.D. Ind. Sept. 12, 2016) (finding that "Rule 502 permits the parties, and the court, to override the inadvertent disclosure rule of subparagraph (b) and pick a different standard"); *Love v. Med. Coll. of Wisconsin*, 15-C-0650, 2018 WL 2862823, at *5 (E.D. Wis. June 11, 2018) (finding that because the parties' Rule 502(d) order did "not mention inadvertence," the court would "not limit its scope by reading into it language that it clearly does not contain")).

Plaintiff makes no attempt to distinguish these cases or otherwise provide any authority for an inadvertence requirement in light of the language in the parties' amended confidentiality order. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in waiver). Instead, Plaintiff relies on this Court's brief discussion of inadvertence in an October 2022 hearing. Pl.'s Mt. at 10, Dkt. 790. However, that discussion occurred well before Plaintiff filed the instant motion and without the benefit of reviewing the parties' agreed to language in the amended confidentiality order and ESI protocol. Accordingly, Plaintiff's argument that inadvertence is required is unsupported and without merit.

*See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding perfunctory and undeveloped arguments forfeited).

Plaintiff admits that these 13 documents were produced "after a review of scores of documents—literally millions of pages of documents." Pl.'s Reply at 14, Dkt. 809. The significant amount of discovery to review in this case underscores the parties' intention for including the non-waiver provisions in the amended confidentiality order and ESI protocol. Yet, despite the parties' clear intention to avoid waiver of privilege due to production, this is precisely what Plaintiff is attempting to argue here. Because the parties' amended confidentiality order governs the consequences of the disclosure of privileged documents, Plaintiff's argument based on inadvertence fails.

## II. Attorney-Client Privilege

Plaintiff also argues that drafts of the Acthar distribution contract and related communications between Defendants and Mallinckrodt, who is now a third-party to the case, are not privileged. Plaintiff states that Defendants cannot "shield its business communications and contract negotiations completely from discovery, simply because it employed its outside litigation counsel in conducting the negotiations." Pl.'s Mt. at 5, Dkt. 790. As Plaintiff argues, not all communications involving an attorney are privileged. The following test is used to determine the applicability of the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 15-CV-09323, 2022 WL 279277, at *7 (N.D. Ill. Jan. 31, 2022) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). "The

4

Seventh Circuit has emphasized that the scope of the privilege is narrow, because it is in derogation of the search for truth." *Id.* (internal quotation marks and citations omitted). "The party asserting the privilege bears the burden of showing that the privilege applies and that it has not been waived." *Square D Co. v. E.I. Elecs., Inc.*, 264 F.R.D. 385, 390 (N.D. Ill. 2009).

Defendants maintain that the 13 documents it seeks to claw back are protected by the attorney-client privilege because they reflect confidential communications with counsel for legal advice. In examining the 13 documents along with the cover letters associated with the drafts of the pleadings and Acthar distribution contract, this Court agrees. "[A]lmost all courts have concluded that the process of drafting and editing, reflecting as it often does both requests for and provision of, legal advice, is protected by the attorney-client privilege." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 183 (N.D. Ill. 2018). These documents involve confidential communications between Defendants and their counsel which contain legal advice regarding the various drafts of the Acthar distribution contract and pleadings that were maintained as confidential and are protected by the attorney-client privilege. Additionally, the email from Defendants' counsel relating to the instant litigation similarly contains a confidential communication containing legal advice.

As to Plaintiff's request for documents beyond the 13 that Defendants clawed back, Plaintiff clarifies in its reply that it is "only seeking production of drafts of contracts the Defendants were ordered to produce." Pl.'s Reply at 7, Dkt. 809. At the motion hearing, Plaintiff explained that it believed that drafts of the Acthar distribution contract that were exchanged between Defendants and Mallinckrodt had been withheld based on privilege. The Court notes that these drafts are different than the drafts Defendants seek to claw back, which were exchanged between counsel and Defendants before a final version was provided to Mallinckrodt. *See Acosta v. Target*

5

*Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("Counsel's comments on, and revisions to, drafts of documents that are intended for ultimate disclosure to third parties can be privileged to the extent that the comments and revisions communicate legal advice and have been maintained confidential."). As to drafts of the contract exchanged between Defendants and Mallinckrodt, this Court agrees that such drafts are unlikely to be privileged communications. *See Am. Nat. Bank & Tr. Co. of Chicago v. AXA Client Sols., LLC.*, 00 C 6786, 2002 WL 1058776, at *2 (N.D. Ill. Mar. 22, 2002) ("Courts have held that parts of draft letters ultimately disclosed to third parties via the final version of the letter must be disclosed due to waiver."). However, following the motion hearing, Defendants represented to the Court that they have not withheld as privileged any drafts of the Acthar distribution contract that were provided to or received from Mallinckrodt. Defendants have also represented that they have produced all responsive, non-privileged communications relating to these drafts, and Plaintiff has not challenged any specific privilege claims. Accordingly, Plaintiff's request for these additional documents is denied as moot.

Therefore, the Court finds that Defendants have satisfied their burden to show that the documents at issue are protected by the attorney-client privilege.[1]

**III. Waiver**

Lastly, Plaintiff argues that even if the attorney-client privilege applies to the documents at issue, any privilege is waived because one of these documents was used at a previous deposition

---

[1] In light of this Court's finding that the documents at issue, namely drafts of the contract that were exchanged between Defendants and their counsel, are protected by the attorney-client privilege, Plaintiff's clarification that it only seeks the documents at issue and drafts of contracts, and Defendants' representation that they have not withheld as privileged any drafts of the Acthar distribution contract that were provided to or received from Mallinckrodt, it is unnecessary for this Court to address Defendants' argument under the common interest doctrine.

6

without any objection or request to claw the document back by Defendants.[2] As such, Plaintiff argues that Defendants failed to "promptly" notify Plaintiff of its privilege claim as required under the amended confidentiality order. *See* Dkt. 308 at 9 ("A party that inadvertently produces a document it believes should be protected from discovery shall promptly after learning of the inadvertent production notify the other party or parties of the claim of privilege or other protection or immunity.").

In response, Defendants admit that one of the documents at issue was introduced as an exhibit at a deposition in November 2022, which was well before Defendants raised the issue of clawing back these documents in March 2023. Nevertheless, Defendants argue that they did not waive any privilege because at the deposition Plaintiff removed the privileged cover email from the document. Yet, this is the same thing that occurred in the March 2023 deposition which prompted Defendants to claw back the 13 documents. As Plaintiff points out, "[a]ny voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client privilege and thus waives the privilege." *United States v. Nat'l Ass'n of Realtors*, 242 F.R.D. 491, 494 (N.D. Ill. 2007) (citing *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir.1989)). It is Defendants burden to show that the privilege was not waived. *Id.*

Here, Defendants have not met their burden where they argue only that Plaintiff's separation of the cover email, which identified it as withheld for privilege, prevented Defendants from identifying the privileged document sooner. Defendants provide no explanation as to why this prevented them from identifying the document as privileged or otherwise cite to any authority to support their argument. Despite filing a sur-reply, Defendants provide no explanation as to why

---

[2] Defendants argue that this Court should not consider Plaintiff's waiver argument because it was raised for the first time in reply. However, because Defendants were given leave to file a sur-reply to respond to this argument, the Court will consider it.

they waited four months after this document was introduced at a deposition to request a claw back. As such, this Court agrees that Defendants have waived any privilege as it relates to the document introduced at the deposition of Hugh O'Neill, namely Exhibit F-11 Bates-numbered document ExpressSripts6106541-6106571. However, Plaintiff makes no argument that such waiver extends to the remaining 12 documents at issue. Accordingly, this Court agrees with Defendants that any waiver should be applied only as to this one document.

Accordingly, Plaintiff's motion to compel [790] is granted in part and denied in part. By June 20, 2023, Defendants shall produce Exhibit F-11, Bates-numbered document ExpressSripts6106541-6106571, to Plaintiff.

Date: June 13, 2023     By:    Lisa A. Jensen
United States Magistrate Judge