## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

CITY OF ROCKFORD,

                   Plaintiff,

    v.

MALLINCKRODT ARD INC., *et al.*,

                   Defendants.

Case No. 3:17-cv-50107

District Judge Iain D. Johnston

Magistrate Judge Lisa A. Jensen

### Plaintiff, the City of Rockford's, Motion for Reconsideration of Order Dated June 13, 2023 (ECF No. 829), or in the Alternative, To Compel Contract Communications and Drafts

Plaintiff, the City of Rockford, hereby moves, pursuant to Fed. R. Civ. Proc. 54(b), for reconsideration of this Court's Order dated June 13, 2023 (ECF No. 829, granting in part and denying in part Plaintiff's Motion to Compel (ECF No. 790) ("Motion to Compel"). Alternatively, should the Court decide the relief requested herein was <u>not</u> included in the original Motion to Compel, Rockford seeks an Order of this Court compelling the requested contract communications and drafts of contracts, as called for by the many prior rulings of this Court.

The basis for reconsideration lies in the Court's presumed misunderstanding of the nature and scope of relief sought by Rockford, and its acceptance of the qualified comments of counsel at the May 19, 2023 hearing and the subsequent, unsolicited and unverified May 26, 2023 letter submission of Express Scripts' counsel, misrepresenting the status of the discovery record as to Express Scripts' contract negotiations with Mallinckrodt, which representations are both factually implausible and belied by the record. *See ExactLogix, Inc. v. Jobprogress LLC*, 2019 U.S. Dist. LEXIS 244635 at * 8 (N.D. Ill. May 1, 2019) (Jensen, USMJ).[1] As a matter of judicial

---

[1] "Motions to reconsider interlocutory orders are governed by Federal Rule of Civil Procedure 54(b). Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a

economy and efficiency,[2] Rockford respectfully asks the Court to determine whether reconsideration will be considered prior to Rockford's forthcoming objections being considered and ruled upon by the District Judge.[3]

### Reconsideration versus Renewed Motion to Compel Contract Documents

Because this Court raised concern about whether reconsideration would be warranted during the scheduled, June 20 status conference, Rockford respectfully directs this Court to the explicit language included in the Original Motion as follows:

> Additionally, because it is now abundantly clear that ESI chose to employ its outside litigation counsel in direct negotiations of the proposed new contract, **all such communications between ESI's lawyers and Debtors' counsel in the bankruptcy about such contract should be produced**. Such routine business communications are not privileged. The end result of these negotiations was filed as an exhibit to a Motion to Assume filed in bankruptcy, in which ESI joined. **The decision of ESI and the Debtors to involve their outside counsel in such business negotiations was plainly with**

---

judgment adjudicating all the claims and all the parties' rights and liabilities." *See also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (stating that a judge has discretionary authority to reconsider an interlocutory order). Motions to reconsider are reserved for when:

> the court has **patently misunderstood a party**; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made **an error not of reasoning but of apprehension**; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court.

*Id.* (citations omitted) (emphasis added).

[2] "Motions to reconsider empower the court to change course when a mistake has been made…" or order to streamline a case, not "indefinitely prolong" it. *Id.* at *9 (*quoting Solis v. Current Dev'mt Corp.*, 557 F.3d 772, 780 (7th Cir. 2009)). The Motion to Compel sought enforcement of the relief previously ordered by "the multiple, prior rulings of this Court" as to "the drafts of contracts and negotiation documents pertaining to such contracts concerning the exclusive distribution of Acthar." ECF No. 790 at 1. Accordingly, reconsideration is warranted, as opposed to another round of briefing on discovery of the contract documents at issue.

[3] *Id.* at * 3, n. 1 ("Any objection would need to be presented to the district judge. However, the Court notes that Federal Rule of Civil Procedure 72(a) requires objections to be filed within 14 days of a magistrate judge's nondispositive ruling.") As a result, Rockford intends to file its objections with Judge Johnston on or before June 27, 2023. Perhaps the Magistrate Judge and the District Judge can coordinate the order of consideration to avoid unnecessary overlap and duplication of effort necessarily called for by the limited window for filing objections.

> **knowledge that such communications were relevant to Rockford's claims and would be the subject of discovery in this matter.**

ECF No. 790 at 3 (emphasis supplied)

ESI was fully aware of the nature and scope of the relief requested by Rockford, because it argued in its opposition as follows:

> The Express Scripts Entities have [] **fully complied with this Court's prior orders on these issues**. ..Even more troubling, Rockford's Motion … seeks to turn the clawback [issue] into an expansive request to compel the production of privileged drafts of the Acthar distribution agreement and related communications. … **[T]o the extent that the Motion seeks the production of new categories of documents, the Motion is untimely.**[4] More specifically, **Rockford now appears to request that the Court order the production of all documents and communications between counsel for the Express Scripts Entities and Mallinckrodt** in the bankruptcy proceeding relating to the contract. Rockford first raised this issue in *summer 2022*, both in the context of the 30(b)(6) deposition topics () and in document discovery disputes. … **Rockford now seeks** to use the clawback of a discrete set of thirteen privileged documents **to secure discovery into communications from and/or between counsel** ….

ESI Opp., ECF No. 801, at 1, 2, 3 (brackets added) (boldface added, italics in original). ESI further argued that "Rockford is wrong on the merits of its privilege challenge with respect to both the discrete group of thirteen documents as well as the **broader category of documents** concerning the distribution agreement drafts and related negotiations. *Id*. at 3.

While this Court acknowledged in its Order that "Rockford's motion to compel [sought] contract drafts and negotiation documents", Order at 1, the resultant ruling was limited to the 13 documents ESI sought to claw back.  While the Court agreed that "drafts of the contract exchanged between [the ESI] Defendants and Mallinckrodt … are unlikely to be privileged", its ruling went no further than the 13 clawback documents. Order at 6. This was error due to the

---

[4] Since ESI raised the issue of the "timeliness" of Rockford's arguments in its opposition and sur-reply, such issue should be deemed overruled by the Court's Memorandum and Order. *See* ECF No. 829 at 7 n. 2. There is no doubt Rockford has "timely" pursued the production of contract documents since inception, and ESI cannot be allowed to "run out the clock" on its discovery failings, which are in direct violation of multiple orders of this Court. *E.g.*,

clear relief requested by Rockford's Motion, which sought to enforce "the multiple, prior rulings of this Court" as to "the drafts of contracts and negotiation documents pertaining to such contracts concerning the exclusive distribution of Acthar." Motion to Compel at 1.

**This Court's misapprehension of the scope of relief requested appears to stem from two related misunderstandings, both described in footnote 1 to the Court's Order.**

First, the Court appears to have mistakenly believed that Rockford "clarified" "that it only seeks" the 13 clawback documents, and nothing else. Nowhere does Rockford make such "clarification" – not in the original Motion to Compel (ECF No. 790) nor in its Reply (ECF No. 809), which only *replied* to ESI's arguments in opposition. Specifically, the Reply addressed ***ESI's argument*** that, by seeking the production of documents exchanged between lawyers for ESI and Mallinckrodt, Rockford was somehow seeking the production of a "new category of documents" which request was somehow "untimely". *See* Reply at 7. But Rockford made clear that, whether or not contract documents were exchanged between the parties (ESI and Mallinckrodt) or their lawyers (Quinn Emanuel and Latham & Watkins), such communications "were ordered [to] be produced by the Defendants years ago.[5] Plaintiff is only seeking production of drafts of contracts the Defendants were ordered to produce." *Id*. Rather than restrict the scope of its request, Rockford merely expressed its "frustrati[on] … that Plaintiff may not have been provided with the previously-ordered production of all drafts and negotiation documents when it deposed a Rule 30(b)(6) designee, who was deposed on the very topic of the

---

[5] The Court may have mis-read this statement as "clarifying" that Rockford's Motion to Compel was somehow limited to the 13 clawback documents. At the same time, however, the Court acknowledged that, "[a]t the motion hearing, Plaintiff explained that it believed that drafts of the Acthar distribution contract that were exchanged between Defendants and Mallinckrodt had been withheld based on privilege. The Court notes that **these drafts are different than the drafts Defendants seek to claw back**…." Order at 5. This is precisely Rockford's point; but the Court misapprehended Rockford's response to ESI's arguments as some concession. It was not.

negotiations of the exclusive wholesale purchase agreements that are one of the centralized issues in Plaintiff's antitrust conspiracy case. This is apparent from ESI's current position that all drafts of the Distribution Agreement are 'plainly privileged.'" *Id*.[6]

If anything, the Reply "clarified" the newly-revealed fact that it was Defendants' position that all communications between counsel about the distribution contract were "plainly privileged", and that they had no duty to log such communications in a privilege log. The Reply directed this Court to Exhibit F-11 (at Tab 12 to Plaintiffs' Motion to Compel) wherein the metadata revealed that the "final draft" was authored by Quinn Emanuel for submission to Latham & Watkins. Reply at 9. This fact had never been revealed before – not in any argument of counsel in response to a motion to compel or in any timely produced privilege log. But, in light of such undeniable (and unrefuted fact), Rockford argued "the clients did not directly negotiate with one another; they deferred to their lawyers. In such a scenario, the lawyer-created 'facts' of the drafts of contracts in the negotiation are not attorney-client privileged. Further, the clear expectation of the client (ESI) was that the drafts of the Distribution Agreement created by its lawyers (by ESI's Urmila Baumann, Esquire and Quinn Emanuel's Meghan McCaffrey, Esq.) would be shared with Debtor's counsel at Latham & Watkins." *Id*.

Such purported "clarification" would have been contrary to Rockford's discovery in this case, which has doggedly pursued the contracts negotiations and drafts of the distribution

---

[6] Rockford's Reply pointed out that ESI's counsel wrongfully instructed its Rule 30(b)(6) corporate designee witness to not answer questions about the contract negotiations on grounds of privilege. Reply at 11-13. As a result, Rockford was deprived the benefit of this Court's Order compelling the deposition of such corporate designee. Once the Court orders the production of all drafts of contracts exchanged between the lawyers, and the cover emails reflecting the communications and negotiations as to such drafts, ESI should be ordered to reproduce its designee for deposition, as the prior testimony is now undermined by the Court's Order concerning the 13 clawback documents, most of which were used during the deposition.

agreement since Judge Johnston first asked Rockford's counsel what they needed in discovery. Such "clarification" would have eviscerated the purpose of Rockford's Motion to Compel, confining it to ESI's separate request to clawback just 13 documents claimed to be privileged.

During the hearing held May 19, 2023, this Court asked Rockford's counsel:

> **My question, Mr. Haviland is:** Where, after the client and the attorneys concluded their internal communications about what drafts should go to Mallinckrodt, **where is the draft that went to Mallinckrodt?** Because that document, unless I rule that there is some allegiance between the two, which I haven't even got to yet, that document is not privileged, and that's what I'm trying to figure out. … **Where is that document?**

May 19, 2023 Hrg. Tr. at 21:22-22:5 at **Exhibit "A"** hereto. Rockford's counsel responded, "I don't know, but I would ask you to look at what we have attached as Exhibit F-11 to our filing. It gives you a window into that issue." Id. at 22: 6-8.

As the Court well knows, Exhibit F-11 is a draft contract titled, "FINAL_QE to Latham CSD QE 9 8 21 (002).DOCX." The Court found the claim of privilege waived by ESI as to this one clawback document. Order at 6-8. But, despite Rockford counsel's attempt to "unpack that" for the Court, the Court ignored the reality "somehow this final [Quinn Emanuel] draft got to Latham", Mallinckrodt's bankruptcy counsel, to be attached as an exhibit to the Motion to Assume filed with the bankruptcy judge. *See* Exhibit "G" to Rockford's Motion to Compel.

Respectfully, the Court never pressed ESI's counsel for a definitive answer to its "question, which is the very first question [the Court] asked [defense counsel] 10 minutes ago, 15 minutes ago, **where is the final document**? And by 'final', I mean the final draft, I just went through it. You understand perfectly what I'm saying, the first draft as discussed between you and your client, and then there was a draft agreed upon, and it was sent to Mallinckrodt. **Where is that document?** May 19, 2023 Hrg. Tr. at 23: 3-10 (emphasis supplied). Counsel then gave the following, qualified response: "**My understanding** is that drafts that were shared with

Mallinckrodt **that were not privileged** were produced." *Id*. at 15-16 (emphasis supplied). In other words, drafts claimed to be privileged were not produced. But, when the Court pressed further for counsel to show the Court "where on the privilege log you withheld the final draft … where you put it on a privilege log that you were withholding that based on some relationship in litigation you had with Mallinckrodt", *id*. at 23:22–24:1, ESI's counsel evaded the question:

> So, Your Honor, I just want to say, at the outset, our understanding is this motion concerns 13 specific documents.

*Id*. at 24:2-3. Such statement is patently false, and ESI knew it at the time.

The Court was not persuaded:

> Well, no it doesn't, and you know it doesn't Mr. Soyfer, because you addressed the issue that Mr. Haviland raised, which is based on what you're are arguing now. They were asking for drafts of wholesale product purchase agreements created between April 2017 and April 2022. So it is disingenuous for you to argue to me now that this motion did not deal with anything beyond those 13 documents because you have a specific section in your brief where you argue that they shouldn't be able to ask for more. So please backtrack. Backtrack from that one and start again.

*Id*. at 24:5-14. Plaintiff seeks reconsideration of the Court's "narrow" ruling as Rockford never sought such narrow relief.

Second, footnote 1 of the Court's Order reveals an apparent misunderstanding that narrowing the ruling to only the 13 clawback documents was appropriate based on "**Defendants' representation that they have not withheld as privileged any drafts of the Acthar distribution contract that were provided to or received from Mallinckrodt**…". Order at 6, n.1 Rockford contends ESI's representation is untrue or constitutes a half-truth, at best. More should have been required than the unverified statements of counsel, as advocates for their client

and authors of the contract drafts sought, given the record of prior statements in this litigation about the status of discovery that later proved to be untrue.[7]

In accepting as true both the representations of Mr. Soyfer at the May 19, 2023 Hearing, and the later representations of Ms. McCaffrey in her May 26 letter, the Court deprived Rockford of the opportunity to address such misstatements *after* the briefing was closed and *after* the hearing was concluded. Such misstatements are addressed below.

### Mr. Soyfer's Statements at the May 19, 2023 Hearing

At the May 19, 2023, Mr. Soyfer conceded that the privilege log presented to the Court was only a "privilege log extract … that only relates to the 13 specific documents." Mr. Soyfer then argued:

> **To the extent that drafts were exchanged with Mallinckrodt that do reflect legal** as opposed to business revisions and comments and strategy, **the privilege there would be preserved by the common interest doctrine[8]** because, first of all, Mallinckrodt and Express Scripts were obviously co-defendants in this action which centers around the distribution agreement from 2007, and more recently Rockford has focused on the negotiations around the distribution agreement and sought discovery into that.

May 19, 2023 Hrg. Tr. at 24:25-25:8 (emphasis added). Here, Mr. Soyfer expands upon his "understanding" that drafts exchanged between counsel were deemed "privilege" under the

---

[7] *Compare* Aug. 29, 2022 Declaration of Meghan McCaffrey (ECF No. 690-5) (attesting that all documents responsive to Plaintiff's RPDs "were produced … from May 25, 2019 to April 8, 2019) *with* Sept. 19, 2022 Notice Regarding Status of Document Production (ECF No. 687) (admitting "certain of [ESI's] collection processes had been inadvertently overlooked"). As Rockford advised this Court during the June 20 status conference, it intends to renew its Motions for Sanctions for ESI's late production of documents (ECF Nos. 690 and 719) filed last fall, after discovery ends on July 19, 2023.

[8] Rockford argued against ESI's claim of "common interest" in its Reply, given that Express Scripts and Mallinckrodt were adversaries (creditor and debtor, respectively) in the bankruptcy when the drafts of the distribution agreement were exchanged and negotiated. Reply at 15. Despite asking for and receiving leave of Court to file a Sur-Reply (ECF No. 815), ESI failed to address Rockford's arguments that the common interest doctrine does not apply. See also, Order at 7 n. 2 (considering arguments on reply because ESI was granted leave to file a sur-reply).

"common interest doctrine." But, ESI has never logged any of these "drafts exchanged with Mallinckrodt that [] reflect legal". ESI has never timely claimed that any such communications between counsel were being withheld on grounds of "the common interest doctrine"; they were just withheld from production in discovery without ESI ever saying a word.

The Court ordered defense counsel to produce to it and Rockford's counsel "your privilege log that **you would have had to have already produced and presented to Mr. Haviland** where you identify these drafts and identify that you are withholding them based on that privilege". May 19, 2023 Hrg. Tr. at 25:13-16 (emphasis added). But, the Court erroneously assumed ESI *had produced* such a log. It never has done so. ESI has never produced any privilege log "identifying these drafts" sent to Mallinckrodt's counsel by ESI's counsel. It has never "identif[ied] that [it was] withholding them on that privilege", the common interest doctrine, as this Court required. The "common interest doctrine" appears nowhere in any ESI privilege log containing over 12,000 entries. *See* Letter dated May 26, 2023 From M. McCaffrey to Judge Jensen at **Exhibit "B"** hereto, at p. 1. Indeed, no Mallinckrodt lawyer's name appears on any ESI privilege log – not any lawyer from Latham [Mallinckrodt's bankruptcy counsel to whom Quinn Emanuel sent the "final" draft contract] or any lawyers from Arnold & Porter.

### Ms. McCaffrey's Statements in her May 26, 2023 Letter

The Court only ordered ESI's counsel to produce its cover emails and privilege log during the May 19, 2023. The Amended Minute Entry Order ordered the same:

> [O]n Plaintiff's motion to compel Acthar contract drafts and negotiation documents [790], Defendants shall submit the cover emails attached to each of the 13 documents Express Scripts is attempting to claw back to the Court for in-camera review on or before 5/26/2023. By that same date Defendants shall provide the Court, with copies to Plaintiffs' counsel, all portions of Defendants' privilege log that reference any drafts of the Wholesale Product Purchase Agreement created between April 2017 and April 2022 that were provided to or received from Mallinckrodt as further detailed in open court.

ECF No. 823. The "further detail[] in open court" is the above colloquy with Mr. Soyfer.

On May 26, 2023, Ms. McCaffrey responded for ESI. *See* Letter at Exhibit "A" hereto ("**ESI Letter**"). While she apparently provided the "cover emails" in camera, she did not provide any privilege log, as ordered. Instead, she provided a letter, which the Court did not invite. The letter contained an evasive, argumentative response to the Court's directive as follows:

> Following the May 19, 2023 motions hearing, the Express Scripts Entities reviewed the approximately 12,000 entries on their privilege log **to determine which, if any, reflected communications to Mallinckrodt employees between April 2017 and April 2022 that attached drafts of the Wholesale Product Purchase Agreement.** As a result of that review, the Express Scripts Entities determined that their **privilege log does not include any such communications**. In other words, the Express Scripts Entities have not withheld as privileged any drafts of the Wholesale Product Purchase Agreement provided to and/or received from Mallinckrodt.

*Id*. at 1 (emphasis supplied). The response did not address the Court's Order. The court ordered production of privilege logs that "**reference any drafts** of the Wholesale Product Purchase Agreement created between April 2017 and April 2022 that were provided to or received from Mallinckrodt **as further detailed in open court**." In open court, the Court admonished Mr. Soyfer, as stated above. The Court did not limit the scope of its Order, as Ms. McCaffrey did, to "communications to Mallinckrodt **employees**". It did not excise from its directive communications **between the lawyers**, including communications between Ms. McCaffrey and her law firm and lawyers for Mallinckrodt (as evidenced by document F-11). Quite to the contrary, at the hearing, the Court admonished Mr. Soyfer as follows:

> Mr. Soyfer, let me stop you, okay? You know, you can't see me, but there is kind of smoke coming out of my ears here because I know this issue of draft documents has been a big deal in this case, and things are sort of starting to come into focus for me now, and it is unfortunate that it has taken this long.
>
> But I get why, when you are having --- **"you" being the attorneys** – are having conversations with your clients about what our next draft that we are going to send to Mallinckrodt should look like, I get that why you are arguing those communications are

privileged, and it may or may not be depending on who is on the e-mail chain and whether or not it was disclosed in a deposition and otherwise waived. But I get that point.

What I don't get is we know that **once you and your client have decided** what the next draft is going to look like that you are going to send to Mallinckrodt, **then somebody from your firm says**, **"Mallinckrodt, this is what we want, and here is our next draft,"** and then they go through their internal communications with their client, all ostensibly privileged, and then they send back to you their draft.

**Where are those documents?**

May 19, 2023 Hrg. Tr. at 17:23-18:19 (emphasis supplied). Mr. Soyfer's response to the Court, like Ms. McCaffrey's letter response, that "drafts that were sent to Mallinckrodt were produced", *id*. at 18:20-21, avoided the Court's query and directive. No documents shared between Ms. McCaffrey's law firm and any lawyers for Mallinckrodt (especially lawyers at Latham to whom "QE" directed its "final draft" on September 8, 2021, as shown in Exhibit F-11) have ever been produced. ESI does not suggest otherwise.

**Evidence of Communications between Counsel about the Contracts**

ESI's counsel knew what the Court was asking about,[9] and yet they failed to respond to the Court's directive. The Court relied on "Defendants' "representation that they have not withheld as privileged any drafts of the Acthar distribution contract that were provided to or received from Mallinckrodt." Order at 6 n. 1. While the Court admonished Rockford's counsel, "[f]or the life of me, I mean, I don't know how you don't know if you got those [documents], and I don't know how Express Scripts doesn't know if they sent them." May 19, 2023 Hrg. Tr. at 21:1-3. Rockford's counsel responded, "I have a privilege log". *Id*. at 21:4. But Rockford only

---

[9] The Court further explained, "[t]here may have been some back and forth between Express Scripts' lawyers and their client, but ultimately they came up with a document that **they sent to Mallinckrodt, and that document is not privileged**, and then that documents was discussed with the lawyers for Mallinckrodt. They went back and forth in e-mails, so forth, and they ultimately came up with a **version that they sent back to Express Scripts. That is not privileged.**" May 19, 2023 Hrg. Tr. at 20:16-23.

learned from Ms. McCaffrey's letter response that ESI privilege log <u>does not</u> include communications between counsel for ESI and counsel for Mallinckrodt about the contracts. (Rockford has independently confirmed that the log does not even list any Mallinckrodt lawyer at Latham or Arnold & Porter in its legend of counsel, let alone in any one of the 12,000 privilege log entries.) So, when Rockford responded "no" to the Court's query, "have the actual draft documents that were ultimately exchanged between Express Scripts and Mallinckrodt, have those been turned over?", Rockford answered truthfully. *See also*, *id*. at 19:17-20 ("Mr. Haviland: **I don't know what I don't know**, Judge. We have no transmittals, okay? That's my point. There is no transmittal from someone at Express Scripts or **representing Express Scripts** to Mallinckrodt **or its representatives**.") Rockford still does not have such drafts exchanged between counsel for the period April 2017 and April 2022, especially during the critical period prior to the submission to the Bankruptcy Court of the Motion to Assume the distribution agreement between the parties.

These documents exist. But they have not been produced, as represented by ESI.

Ms. McCaffrey's letter states that ESI "previously identified in their October 18, 2022 letter numerous documents between 2017 and 2022." ESI Letter at 2. The cited pleading, ECF No. 709-2 at 12-13, is a prior letter from Ms. McCaffrey that echoes the misstatement that, "to the extent such [contract] documents exist, they have been produced to Plaintiff in this case." That is why Rockford never learned of the involvement of ESI's lawyers before March 1, 2023.

On that date, the Court-ordered deposition of ESI took place. See Transcript at Exhibit "D" to ECF No. 790. The witness testified that the contract put before the Bankruptcy Court on September 27, 2021 had been agreed to by the parties. *Id*. at 129:5-25. She agreed there was a "redline process" by which the parties shared drafts. *Id*. at 135:16-20; 137:1–138:15. The last

document identified by ESI was dated July 30, 2021, following the prior email of June 29, 2021, asking if the "attest redlines to the CSD agreement" were agreeable. Letter at 2 (citing ExpressScripts5877028-29 and ExpressScripts6105579-80).[10] Thus, the last draft of the agreement produced by ESI was dated June 29, 2021. At that point, ESI claimed the parties were "down to one issue." Tr. at 215:17-218:9. But indemnification of the ESI lawyers and litigation cooperation were not issues at that point. *Id.* at 219:2-23. That came later in the summer of 2021.

ESI's in-house attorney, Urmila Baumann, and outside counsel at Quinn Emanuel both were involved in creating redlines reflecting indemnity and litigation cooperation. *Id.* at 232:2- . Ms. Vivod – ESI's designee – testified, "I was not involved in that discussion. I do not know. I did not do that." *Id.* at 237:17-18. She didn't know "what negotiation took place wit Mallinckrodt" about these issues, despite the fact she was ESI's corporate designee on the contract negotiations. *Id.* at 240:20-22. When asked, "At this point, the lawyers were doing it?, she responded, "I assume so." *Id.* at 241:2-3; *see also, id.* at 252:12-17 (same).

When asked about Exhibit F-11 to the Motion to Compel, the "final draft" from "QE to Latham", ESI's witness agreed that Ms. McCaffrey was the author of the reline draft that added section 6.1(f) and made revisions to subsections 6.1(a) and (b) relating to indemnity and litigation cooperation. *Id.* at 244:3-20. She stated "I know the attorneys worked on this language." *Id.* at 245:18. But ESI has not produced any version of these redlines that were sent from Quinn Emanuel to Mallinckrodt's attorneys at Latham. When asked, "[S]o how did this document get to Mallinckrodt?" – which it this Court's direct question of Mr. Soyfer at the May

---

[10] To avoid another under seal filing, Rockford proposes to send the Court for its *in camera* review these 2 documents, so it can see for itself the June and July transmittals relate only to a June 2021 draft agreement which does not contain any of the new provisions concerning indemnity in the final draft filed with the Bankruptcy Court.

19 hearing – ESI's corporate designee testified, "I can't answer that." *Id*. at 245:24-246:2; *see also*, 246:13-16 ("I can tell you I know that there were discussions on indemnification and it was at a level beyond me that I wasn't involved in all those details.")[11] But, as the corporate designee, sitting for a Court-ordered deposition on the contract negotiations, it was the witness' job to either know or find out. She failed to do so.

### Relief Requested On Reconsideration or Renewed Motion to Compel

Because there is no privilege log entry as to any negotiation, communication or contract draft shared by ESI's counsel and Mallinckrodt's counsel, any claim of privilege has been waived. Any claim of privilege was waived long ago. Discovery ended March 31, 2023. The time to amend any privilege log ended long before the end of discovery, but certainly by March 31 at the latest date. ESI has never logged any communication with Mallinckrodt between the lawyers relating to the communications, negotiations and drafts of the wholesale produce purchase agreement, even after this Court ordered the production of a revised log last year. ECF No. 597. These communications certainly took place. ESI's corporate designee so testified. So, what has happened here is ESI (1) did not produce in discovery any of these communications, negotiations and drafts between counsel, and (2) ESI has never logged any of these documents as privileged, under the "common interest doctrine" or otherwise.

---

[11] The ESI witness could not state "why Mallinckrodt agreed" to indemnification and litigation cooperation going forward, even though Rockford's and ESI's unsecured claims were both being extinguished in bankruptcy. *Id*. at 251:3-15. The "why" is material to Rockford's claims that it was by its pursuit of antitrust claims against Mallinckrodt and ESI that Mallinckrodt decided to end its exclusive distribution arrangement with ESI. Rockford intends to argue at the summary judgment stage that it has succeeded in part on its claim for declaratory and injunctive relief. ESI has confirmed, under oath, that "the holdup was the indemnity" in terms of getting a new agreement signed. *Id*. at 253:13-20. Rockford successfully fought such indemnity between the parties throughout the bankruptcy, and succeeded in ending their exclusive distribution scheme.

Perhaps ESI knows that the common interest doctrine does not protect, as privileged, communications between its attorneys and the adverse-debtor Mallinckrodt and its attorneys. The Court certainly expressed its initial views on the subject at the May 19 hearing. That may explain why the documents were never logged as privileged. However, the crux of this Motion to Reconsider, and the original Motion to Compel, is simple: where are the contract negotiation documents exchanged between ESI's counsel and Mallinckrodt's counsel? The record shows such communications took place and that documents reflecting such communications exist. They were never produced to Plaintiff or logged as privileged.

On these facts, respectfully, the Court should reconsider its Order, and enter a new order, compelling both ESI and Mallinckrodt to produce forthwith[12] all documents comprising communications, negotiations, and/or drafts of contracts between their lawyers taking place between April 2017 and April 2022. These documents are plainly relevant. No privilege exists. Even if a common interest privilege could be claimed – which Rockford contested in its Motion to Compel and Reply[13] – the failure to timely log such documents constitutes a waiver.

Dated: June 21, 2023

> Respectfully submitted,
> s/ Donald E. Haviland, Jr.
> Donald E. Haviland, Jr., Esq., *pro hac vice*

---

[12] Because Mallinckrodt never produced any of these documents, and never logged any of these documents on its privilege log, Mallinckrodt should be ordered to produce its copies of all such documents to ensure that Rockford receives everything it is entitled to. By ordering the documents produced in a short window of time, the Court may be able to circumvent efforts by these companies to continue to align their avoidance of their discovery obligations.

[13] The Court evaded the issue of the common interest doctrine based on its two misapprehensions set forth in footnote 1 of its Order ("it is unnecessary for this Court to address Defendants' argument under the common interest doctrine") On reconsideration, it remains "unnecessary" for the Court to address Defendants' arguments because they were never timely raised and preserved in a privilege log in the six (6) years and two (2) months this case has been pending.

William H. Platt II, Esq., *pro hac vice*
**HAVILAND HUGHES**
124 South Maple Avenue
Suite 220
Ambler, PA 19002
T: 215-609-4661

Ifeanyi C. Mogbana, Esq., City Attorney,
Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154

*Attorneys for Plaintiff, City of Rockford and the Class*