**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| CITY OF ROCKFORD, <br><br> Plaintiff, <br><br> v. <br><br> MALLINCKRODT ARD, INC., *et al.*, <br><br> Defendants. | Case No. 3:17-cv-50107 <br><br> District Judge Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |

**EXPRESS SCRIPTS ENTITIES' OPPOSITION TO PLAINTIFF, THE CITY OF ROCKFORD'S MOTION FOR RECONSIDERATION OF ORDER DATED JUNE 13, 2023 (ECF NO. 829), OR IN THE ALTERNATIVE, <u>TO COMPEL CONTRACT COMMUNICATIONS AND DRAFTS</u>**

TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................. 1

BACKGROUND .................................................................................................................................. 2

 A. Negotiations over the Wholesale Product Purchase Agreement ............................. 2

 B. Rockford's attempts to seek attorney communications and drafts. ......................... 4

 C. The current discovery dispute. ................................................................................. 6

ARGUMENT ....................................................................................................................................... 8

I. The Express Scripts Entities complied with their discovery obligations. ............................. 8

II. The Express Scripts Entities were not required to search for, produce, or log documents in QE's files in response to Rockford's document requests. ............................. 9

 A. Rule 34 cannot be used to obtain documents from opposing counsel. ..................... 9

 B. Rockford never requested that QE be added as a custodian. ................................. 10

 C. Rockford declined to pursue the Bankruptcy Requests. ........................................ 10

III. Drafts and communications exchanged with Latham are privileged. ................................ 11

 A. Rockford has not carried its burden of establishing relevance. ............................. 11

 B. The drafts and related communications are attorney-client privileged. ................. 12

 C. The common interest doctrine precludes waiver through disclosure to Latham. .................................................................................................................. 12

 D. Alternatively, Rockford has not shown waiver of work product protection. .......... 14

 E. Rockford's request for wholesale waiver is inappropriate. ................................... 15

CONCLUSION ................................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Appleton Papers, Inc. v. EPA*,
   702 F.3d 1018 (7th Cir. 2012) ................................................................................... 15

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
   326 F.R.D. 176 (N.D. Ill. 2018) .................................................................................. 12

*Baxter Travenol Labs., Inc. v. Abbott Labs.*,
   1987 WL 12919 (N.D. Ill. June 19, 1987) ................................................................. 14

*Breuder v. Bd. of Trs.*,
   2019 WL 3386966 (N.D. Ill. July 26, 2019) .............................................................. 10

*Cadillac Ins. Co. v. Am. Nat. Bank of Schiller Park*,
   1992 WL 58786 (N.D. Ill. Mar. 12, 1992) ................................................................. 13

*Cnty. of Cook v. Bank of Am. Corp.*,
   2019 WL 5393997 (N.D. Ill. Oct. 22, 2019) .............................................................. 10

*Dexia Credit Local v. Rogan*,
   231 F.R.D. 268 (N.D. Ill. 2004) ........................................................................... 13, 14

*Dexia Credit Local v. Rogan*,
   231 F.R.D. 287 (N.D. Ill. 2005) .................................................................................. 13

*Forth v. Walgreen Co.*,
   2019 WL 10255628 (N.D. Ill. July 10, 2019) ............................................................ 11

*Hickman v. Taylor*,
   329 U.S. 495 (1947) ..................................................................................................... 9

*Hobley v. Burge*,
   433 F.3d 946 (7th Cir. 2006) ........................................................................................ 9

*In re Broiler Chicken Antitrust Litig.*,
   2022 WL 621807 (N.D. Ill. Mar. 3, 2022) ................................................................ 10

*In re Mallinckrodt PLC*,
   2021 WL 2460227, (Bankr. D. Del. June 16, 2021) ............................................. 2, 13

*In re Sulfuric Acid Antitrust Litig.*,
   231 F.R.D. 331 (N.D. Ill. 2005) .................................................................................. 11

*In re Sulfuric Acid Antitrust Litig.*,
   235 F.R.D. 407 (N.D. Ill. 2006) .................................................................................. 13

*LG Elecs. v. Whirlpool Corp.*,
   2009 WL 3294802 (N.D. Ill. June 22, 2009) ............................................................. 11

*Lislewood Corp. v. AT&T Corp.*,
    2015 WL 1539051 (N.D. Ill. Mar. 31, 2015) ............................................................... 13, 14

*Logan v. Com. Union Ins. Co.*,
    96 F.3d 971 (7th Cir. 1996) ............................................................................................... 14

*Miller UK Ltd. v. Caterpillar, Inc.*,
    17 F. Supp. 3d 711 (N.D. Ill. 2014) ............................................................................ 14, 15

*Novelty, Inc. v. Mountain View Mktg., Inc.*,
    2010 WL 11561280 (S.D. Ind. Jan. 29, 2010) ................................................................. 10

*Pampered Chef v. Alexanian*,
    737 F. Supp. 2d 958 (N.D. Ill. 2010) ............................................................................... 12

*Profit Point Tax Techs., Inc. v. DPAD Grp.*,
    336 F.R.D. 177 (W.D. Wisc. 2020) .................................................................................. 15

*Sirazi v. Panda Express, Inc.*,
    2009 WL 4232693 (N.D. Ill. Nov. 24, 2009) .................................................................... 11

*Tenneco Packaging Specialty & Consumer Prod., Inc. v. S.C. Johnson & Son, Inc.*,
    1999 WL 754748 (N.D. Ill. Sept. 14, 1999) ..................................................................... 13

*Trs. of Chi. Reg'l Council v. Drive Constr., Inc.*,
    2022 WL 2237621 (N.D. Ill. June 22, 2022) ................................................................ 9, 10

*United States v. BDO Seidman, LLP*,
    492 F.3d 806 (7th Cir. 2007) ............................................................................................ 12

*United States v. McPartlin*,
    595 F.2d 1321 (7th Cir. 1979) .......................................................................................... 13

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
    2003 WL 21911066 (N.D. Ill. Aug. 7, 2003) .................................................................... 12

**Rules**

Fed. R. Civ. P. 30(b)(6) ................................................................................................................ 1

Fed. R. Civ. P. 34 .......................................................................................................... 2, 8, 9, 10

INTRODUCTION

The Express Scripts Entities have complied with their discovery obligations. Throughout this litigation and months of motion practice, the Express Scripts Entities have endeavored to be transparent and clear. Rockford's Motion for Reconsideration, or, in the Alternative, to Compel Contract Communications and Drafts (the "**Motion**" or "**Mot.**"), distorts the record and omits key facts: Namely, when discovery resumed, Rockford served 193 new document requests and a Rule 30(b)(6) deposition notice that *explicitly targeted* drafts and communications exchanged between the Express Scripts Entities' counsel and Mallinckrodt's counsel. The Express Scripts Entities objected, including on grounds of privilege and common interest, and stated they *would not be producing documents*. The Court itself noted in August 2022 that the Express Scripts Entities had not "turned over any documents" and had "voiced objections" to such discovery. Yet, notwithstanding multiple invitations from the Court to file a motion, *Rockford never did*. Instead, and in parallel, it sought a total refresh of the Express Scripts Entities' custodial production, but ultimately settled for a narrower refresh based on search terms and custodians that *Rockford chose* (and the Court ordered), *which did not include outside counsel*. These facts set the stage for the present discovery dispute, the Express Scripts Entities' May 26, 2023 letter, ECF No. 831-2, and the Court's order, ECF No. 829.

This supplemental production secured by Rockford included numerous draft contracts and communications between the businesspeople involved in the negotiations. *Rockford chose* those custodians from the existing list of 60 custodians. Rockford did not request that outside litigation counsel be added as custodians or that outside litigation counsel's custodial documents be collected, logged, or produced. That supplemental custodial production—the only Court-ordered production—was completed in October 2022. The Express Scripts Entities have therefore complied with the Court's orders, which never required them to collect, produce, or log outside

1

litigation counsel's files, and such documents have not been produced or withheld here. Nor could they, as long-standing precedent holds that outside counsel's files are neither a party's "custodial" files nor discoverable under Rule 34. **The Express Scripts Entities** therefore had no obligation to produce or log documents from **outside counsel**, but that is precisely what Rockford seeks.

Moreover, the documents sought in the Motion are irrelevant. Outside litigation counsel had no involvement in negotiating the revised (but never executed) Wholesale Product Purchase Agreement until Mallinckrodt's bankruptcy; such discussions only occurred at times during the bankruptcy and primarily concerned the parties' joint defense. The business terms were negotiated between business persons beginning in 2018 and continuing during Mallinckrodt's bankruptcy. Those business-level documents and communications—including dozens of drafts—were produced well before the close of discovery. Any other drafts and/or communications in the files of outside litigation counsel are not subject to any discovery orders in this case and are protected by the common interest doctrine, as the Express Scripts Entities and Mallinckrodt share a common interest in defeating Rockford's claims, both as co-defendants and as indemnitor–indemnitee. They are also protected work product, because, as Rockford itself touts, Mot. 14, counsels' discussions took place **because of** Rockford's litigation.

For these reasons and those that follow, Rockford's Motion should be denied.

## BACKGROUND

### A. Negotiations over the Wholesale Product Purchase Agreement.

On October 12, 2020, Mallinckrodt declared bankruptcy, and the automatic stay took effect. ECF No. 506. On November 23, the stay was extended to the Express Scripts Entities based on "an identity of interest between the[m]…and debtors." ECF No. 531-3 at 49:13–16. Rockford filed "82 proofs of claim" in the bankruptcy, each "alleg[ing] a claim for at least $1.3 million." *In re Mallinckrodt PLC*, 2021 WL 2460227, at *1 (Bankr. D. Del. June 16, 2021). It

unsuccessfully sought to consolidate other Acthar-related actions in this Court, *see* ECF No. 554, and participated in bankruptcy discovery, seeking rulings on "Debtors' liability on [the claimants'] Acthar-related claims." ECF No. 557 at 7 & n.6; *see* ECF No. 562 at 8–9; ECF No. 566 at 4–6.

"Plaintiff has long known of Mallinckrodt and CuraScript's negotiations regarding a revised distribution agreement" because "draft agreements and documents related to the parties' negotiations were produced to City of Rockford in November 2019." ECF No. 562 at 7. Those years-long negotiations began in June 2018, and were led by and took place between businesspeople. McCaffrey Decl. ¶ 4. The parties discussed numerous issues, including prompt-pay discounts, chargebacks, late fees, emergency orders, returns of expired produces, replacement products, and other administrative provisions. *Id.* Subsequently, at times during the Mallinckrodt bankruptcy case, Quinn Emanuel Urquhart & Sullivan LLP ("**QE**"), as outside litigation counsel for the Express Scripts Entities, and Mallinckrodt's counsel at Latham & Watkins, LLP ("**Latham**"), exchanged a small number of drafts. *Id.* ¶ 6. These drafts primarily addressed the indemnity[1] and litigation cooperation provisions, and QE and Latham expressly contemplated that their discussions would be ***separate*** from ongoing commercial negotiations among non-lawyers. *Id.* ¶¶ 7–8.

QE and Latham's discussions took place in the shadow of litigation, including: this case and the coordinated MSP action; Rockford's pursuit of its Acthar claims in the bankruptcy; the other related Acthar cases; and a new Acthar case brought by Rockford's counsel in May 2021. *Id.* ¶ 9; *see also* ECF No. 560-7 at 62 (Ex. G, "Schedule of Acthar Actions" in unexecuted draft contract). QE and Latham discussed assessments of and strategies related to this litigation and

---

[1] The Express Scripts Entities filed proofs of claim in the bankruptcy for their indemnification claims against Mallinckrodt, pursuant to the terms and conditions of certain contracts between the Express Scripts Entities and Mallinckrodt. McCaffrey Decl. ¶ 11.

3

other Acthar-related litigation, and the drafts exchanged reflect those conclusions, opinions, and strategies of outside litigation counsel. *Id.* ¶ 10. Further, the drafts exchanged between outside litigation counsel ultimately were never executed, did not go into effect, and **no Acthar** ever has or will be sold pursuant to those drafts. *Id.* ¶ 12.

      **B.**    **Rockford's attempts to seek attorney communications and drafts.**

Shortly after this case resumed, Rockford sought discovery relating to communications by and between QE and Latham, including negotiations during the bankruptcy. On April 27, 2022, Rockford claimed in a letter that, "after this case was stayed, all communications between the Express Scripts Entities, and their lawyers, and the Debtors, and their lawyers, are discoverable." ECF No. 591-2 at 21. Rockford "intend[ed] to propound specific discovery requests for all such communications" and wanted "to see if there is a legal issue worth pursuing with the court at this juncture." *Id.* Just two days later, Rockford filed a motion to compel, arguing that the Express Scripts Entities had waived privilege as to communications with Mallinckrodt and its counsel, attaching its April 27 letter in support. *See* ECF No. 591 at 4, 6, 8, 17; ECF No. 591-2. The Court struck Rockford's motion and ordered the parties to meet and confer. ECF No. 597. Rockford did not do so. Instead, Rockford pursued three separate tracks for discovery relating to the bankruptcy:

*First*, on May 2, Rockford moved to supplement discovery through April 2022 from all 60 Court-ordered custodians (the "**Post-2019 Custodial Supplement**"). ECF No. 593; *see* ECF No. 605-1 ¶ 4. The Court denied that motion because Rockford had "filed a motion generically" without "tying that significant of a request to anything that's proportional to the case," and ordered the parties to meet and confer. June 9, 2022 Hr'g Tr. 22:25–23:3, 23:20–24:3. Rockford refused. On June 28, the Express Scripts Entities proposed to produce documents "relating to the negotiations regarding: (i) the restated Wholesale Product Purchase Agreement between CuraScript and Mallinckrodt…; and (ii) the rejection and termination of the Wholesale Product

4

Purchase Agreement," subject to specific search terms and custodians. ECF No. 653-17 at 2–3. The proposed search terms included *"Wholesale Product Purchase" AND (Agree\* or contract\*)* for the ***seven*** line of business custodians most involved in the negotiations. *Id.* Rockford rejected the proposal because it "d[id] not include all deponents" and immediately refiled its motion to compel. ECF No. 653-18 at 2–3.

*Second***,** in parallel with the supplemental custodial discovery, Rockford served 193 new document requests relating to the bankruptcy (the "**Bankruptcy Requests**"). ECF No. 605-6. The Bankruptcy Requests sought communications between "attorneys" for the Express Scripts Entities and "the Debtors-in-possession in the Mallinckrodt bankruptcy" regarding the Wholesale Product Purchase Agreement, including drafts. *See id.* at Requests Nos. 1–13, 18–19, 24–28, 67–69, 71. The Express Scripts Entities responded on June 6, 2022, ECF No. 653-8, repeatedly invoking common interest and work product, *id.* at 6, 9–22, 26–28, 82–85, and objecting that many requests sought "obvious attorney work product." *See, e.g.*, *id.* at 10, 12–15, 17, 21–22, 27–28. On July 22, Rockford asked the Court to overrule those objections. *See* ECF No. 653; *see also* ECF No. 673 at 9–10.

*Third*, Rockford served a Rule 30(b)(6) notice seeking testimony on numerous bankruptcy-related topics, including communications ***among "counsel"*** about the Wholesale Product Purchase Agreement, ECF No. 629-3 at 7–8 (emphasis added). The Express Scripts Entities objected that "these topics call for privileged information—often explicitly"—and asserted "work product" and "common interest." ECF No. 629-4 at 3. Rockford moved to compel, ECF No. 629. In opposition, the Express Scripts Entities argued that the topics "necessarily seek privileged information because they concern filings…, litigation decisions…, and negotiations…that took place during the bankruptcy proceedings." ECF No. 658 at 14. They explained that "the common

5

interest doctrine would preserve that privilege as between Mallinckrodt and the Express Scripts Entities, which share an interest in defeating Plaintiffs' claims." *Id.* at 14–15.

On August 3, the Court held a hearing to address these discovery issues. For the Post-2019 Custodial Supplement, the Court ordered the Express Scripts Entities to update their productions through May 2022 using the "search terms that [Rockford's counsel] read into the record for…12 custodians." Aug. 3, 2022 Hr'g Tr. 74:6–9, 77:5–6; ECF No. 677. Those terms included "Wholesale Product Purchase," but the custodians did ***not*** include attorneys. *See* ECF Nos. 677, 677-1. The Court also ordered 30(b)(6) testimony on (i) "CuraScript's negotiations regarding the restated Wholesale Product Purchase Agreement"; and (ii) "[t]he termination of the Wholesale Product Purchase Agreement." Aug. 3, 2022 Hr'g Tr. 42:5–17, 43:18–24; ECF No. 629-5 at 4.

As for the Bankruptcy Requests, the Court explained that it "cannot…rule that the defendants answer" because, though they "may not have turned over any documents," they "have said what their objections are and why." Aug. 3, 2022 Hr'g Tr. 77:23–78:13. The Court admonished Rockford to "tell me which objections you want me to rule on, and…why the objections need to be overruled." *Id.* The Court clarified that it "knew [these requests] had to do with bankruptcy documents" but "ha[d]n't decided one way or the other" whether "any of them are proper." *Id.* at 79:3–14. Rockford stated that these requests concerned "the contract, drafts of contract, the new proposed contract," and promised to file a motion to compel within one week. *Id.* at 78:14–15, 79:23–80:5. ***Rockford never filed that motion***. Thus, the only documents subject to production or logging were those collected as part of the Post-2019 Custodial Supplement.

C. **The current discovery dispute.**

On March 31, 2023, the last day of fact discovery, Rockford filed its Motion to Compel Acthar Contract Drafts and Negotiation Documents, reiterating the argument it first made in April 2022: "[B]ecause it is now abundantly clear that ESI chose to employ its ***outside litigation counsel***

6

in the direct negotiations of the proposed new contract, *all* such communications between ESI's lawyers and Debtors' counsel in the bankruptcy about such contract should be produced." ECF No. 790 at 3; *see* Background, § A. Rockford asserted that even if the Express Scripts Entities "produc[ed] a log and specifically list[ed] the subject documents and the Quinn Emanuel lawyers involved—which [they] did not do—[they] could not satisfy the requisite standards." *Id.* at 9. The Express Scripts Entities objected to this sweeping request as untimely and argued, in line with their objections, that the common interest doctrine precluded waiver. *See* ECF No. 801 at 6–7, 11.

Following a hearing, the Court ordered the Express Scripts Entities to "provide the Court, with copies to Plaintiffs' counsel, all portions of Defendants' privilege log that reference any drafts of the Wholesale Product Purchase Agreement created between April 2017 and April 2022 that were provided to or received from Mallinckrodt." ECF No. 823. The Express Scripts Entities conducted that review, and, as a result, "determined that their privilege log does not include any such communications." ECF No. 831-2 at 1. The Express Scripts Entities also identified *eight* examples of "non-privileged drafts that were collected from document custodians and produced to Rockford." *Id.* at 1–2.

On June 13, 2023, the Court upheld the Express Scripts Entities' privilege claims as to twelve clawed-back documents and held that the Express Scripts Entities had waived privilege as to one document. ECF No. 829. The Express Scripts Entities produced that document. On June 21, 2023, Rockford filed the Motion. ECF No. 831. At the subsequent hearing, the Court ordered the Express Scripts Entities to address these issues in their opposition: (i) why drafts and communications exchanged between QE and Latham "did not need to be logged on the privilege log to the extent they were being withheld"; (ii) whether "all the actual drafts of the product purchase agreement [have] been produced"; and (iii) whether "the correspondence between

7

counsel about those drafts [has] been produced." June 22, 2023 Hr'g Tr. 18:19–19:5, 22:7–12.

**ARGUMENT**

Below, the Express Scripts Entities address each of this Court's questions and evidence that Rockford's Motion is meritless and should be denied. In sum:

> (i) Drafts and communications exchanged between QE and Latham "did not need to be logged on the privilege log to the extent they were being withheld" because Seventh Circuit precedent precludes using Rule 34 document requests to seek opposing counsel's files, and because the Express Scripts Entities have consistently objected to—and this Court has never ordered—the collection of QE's files.
>
> (ii) "[A]ll the actual drafts of the product purchase agreement [have] been produced" as contained in the files of agreed-upon business line custodians pursuant to prior orders of this Court, except to the extent they were withheld and logged as privileged.
>
> (iii) "[T]he correspondence between counsel about those drafts [has not] been produced" because outside litigation counsel are not proper custodians in this litigation, this Court has never ordered that their files be produced or logged, and the correspondence is privileged, in any event.

**I.       The Express Scripts Entities complied with their discovery obligations.**

The Express Scripts Entities produced or logged all drafts collected pursuant to Court-ordered and agreed-upon custodians and search terms, which included terms and custodians designed to capture drafts of the Wholesale Product Purchase Agreement. *See* Background, § B. The Express Scripts Entities did ***not*** collect, as part of the Post-2019 Custodial Supplement, additional draft contracts contained in the files of QE or other non-custodians. Importantly, and as the Express Scripts Entities previously have detailed for the Court and Rockford, the Express Script Entities do not have a single electronic "contract file." *See* ECF No. 246 at 7–8 (non-custodial "contract file" production constitutes "five centrally-held, hard copy contract files"). Rather, the draft agreement and related documents are in custodial files, subject to the Post-2019 Custodial Supplement order.

To the extent drafts contained in QE's or another non-custodian's files were forwarded to a designated custodian, hit on a search term, and were responsive to Rockford's requests, they *were* produced or logged. For example, Rockford challenged the clawback of certain drafts dating between August and September 2021, which included counsel comments and revisions (Exs. F-2 through F-4, F-7 through F-11, and F-13). As evidenced by the cover emails submitted for *in camera* review on May 26, 2023, those drafts were collected because they were **attached to emails to one or more custodians**. *See* ECF No. 677 at 1–2 (*e.g.*, R. Osborne and C. Vivod are post-2019 custodians). Although the drafts this Court reviewed may not capture every incremental revision, they are **substantially similar** to drafts in QE's files. *See* ECF No. 829. Put differently, this Court has seen similar documents and determined they are **privileged**. *Id.* at 4–6.

Neither drafts nor communications exchanged **solely** between outside litigation counsel were produced, except as described above, since the Express Scripts Entities were not required to collect, produce, or log such documents[2] and they are privileged in any event.

## II. The Express Scripts Entities were not required to search for, produce, or log documents in QE's files in response to Rockford's document requests.

### A. Rule 34 cannot be used to obtain documents from opposing counsel.

"[B]y its terms, Rule 34 applies only to **parties**." *Hobley v. Burge*, 433 F.3d 946, 950 (7th Cir. 2006) (emphasis added). Thus, "Rule 34 would not be the correct discovery tool for gaining access to work product held by an attorney," even "current counsel." *Id.*; *see Hickman v. Taylor*, 329 U.S. 495, 504 (1947) ("Rule 34…is limited to parties to the proceeding, thereby excluding their counsel or agents."); *Trs. of Chi. Reg'l Council v. Drive Constr., Inc.*, 2022 WL 2237621, at *2 (N.D. Ill. June 22, 2022) (collecting cases). "Nor can" counsel "be deemed 'custodians' of the

---

[2] The ESI Protocol states "[p]rivileged Attorney Client communications with in-house or outside counsel after the date the action was commenced do not need to be logged." ECF No. 158 at 12.

[party's] documents in that *they* are compelled by Rule 34 to run searches through their files to find additional documents responsive to plaintiff's document requests." *Breuder v. Bd. of Trs.*, 2019 WL 3386966, at *4 (N.D. Ill. July 26, 2019). Instead, a party may seek opposing counsel's documents only "via a subpoena." *Hobley*, 433 F.3d at 949; *accord Chi. Reg'l Council*, 2022 WL 2237621, at *2; *Breuder*, 2019 WL 3386966, at *4. Absent a subpoena, counsel is not required to produce documents or provide a privilege log. *Hobley*, 433 F.3d at 950–52.

Rockford has long been aware that there are communications between outside litigation counsel on many issues, including (but by no means limited to) the Wholesale Product Purchase Agreement. *See* Background, §§ B–C. But until the Motion, Rockford neither moved to compel the **Express Scripts Entities** to produce such documents nor subpoenaed **QE**. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg., Inc.*, 2010 WL 11561280, at *6 (S.D. Ind. Jan. 29, 2010) (distinguishing documents originating with a party from those originating with counsel). Absent a motion to compel or a subpoena, neither the Express Scripts Entities nor QE were obligated to review, produce, or log documents contained in QE's files. *See Hobley*, 433 F.3d at 950.

### B. Rockford never requested that QE be added as a custodian.

Likewise, Rockford never sought to add opposing counsel as custodians, and it should not be permitted to do so now, **months** after the close of discovery and over **one year** after it first sought the discovery at issue. *Cf., e.g.*, *In re Broiler Chicken Antitrust Litig.*, 2022 WL 621807, at *1–2 (N.D. Ill. Mar. 3, 2022) (refusing to "revisit the parties' long-ago negotiations on the document custodian issue" where moving parties "waited too long to bring this issue to the Court"); *Cnty. of Cook v. Bank of Am. Corp.*, 2019 WL 5393997, at *3 (N.D. Ill. Oct. 22, 2019) (denying motion seeking reconsideration of custodians).

### C. Rockford declined to pursue the Bankruptcy Requests.

To the extent Rockford seeks **QE's** files pursuant to the Bankruptcy Requests, *see* Mot. 4,

10

13–15, that request likewise should be denied as untimely, *see* ECF No. 801 at 6–8. This Court has discretion "not [to] consider discovery issues long known to the parties but not brought to the Court's attention until…the close of discovery." Judge Iain D. Johnston, *General Status & Motion Practice*, U.S. Dist. Ct. for the N.D. of Ill., https://www.ilnd.uscourts.gov/PrintContent.aspx?cmpid=783. Rockford sought attorney communications and drafts, including ***explicitly*** in the Bankruptcy Requests. *See* Background, § B. This Court repeatedly invited Rockford to move to compel, but ***it chose not to do so***. *See id.* Instead, Rockford agreed to Court-ordered custodians and search terms. *See id.* Because Rockford "knew from the outset what [the Express Scripts Entities'] position was," yet failed "to do something about it," the Motion is untimely. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 337 (N.D. Ill. 2005); *see LG Elecs. v. Whirlpool Corp.*, 2009 WL 3294802, at *2 (N.D. Ill. June 22, 2009) (defendant objected and believed "the parties had resolved their issues" "[b]ased on approximately ten months of silence").

### III. Drafts and communications exchanged with Latham are privileged.[3]

#### A. Rockford has not carried its burden of establishing relevance.

As the movant, Rockford "bear[s] the initial burden of establishing…relevance." *Forth v. Walgreen Co.*, 2019 WL 10255628, at *4 (N.D. Ill. July 10, 2019); *see Sirazi v. Panda Express, Inc.*, 2009 WL 4232693, at *2 (N.D. Ill. Nov. 24, 2009) (court must determine relevance before privilege issues). Rockford offers only a bare assertion of relevance, without further elaboration as to how the documents are relevant to its antitrust claims. *See* Mot. 14–15 & n.11. "[E]ven th[e] minimal standard" for relevance "cannot be satisfied by *ipse dixit*." *Sirazi*, 2009 WL 4232693, at *2. Regardless, litigation counsels' limited discussions are only relevant insofar as they divulge

---

[3] If this Court concludes that the Express Scripts Entities produced or logged all Court-ordered and agreed-upon drafts, then it need not reach the privilege issues.

*litigation strategy*—underscoring the privileged nature of the documents.

### B. The drafts and related communications are attorney-client privileged.

"[A]lmost all courts have concluded that the process of drafting and editing, reflecting as it often does both requests for and provision of, legal advice, is protected by the attorney-client privilege." ECF No. 829 at 5 (quoting *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 183 (N.D. Ill. 2018)). That is because "[d]rafts of agreements prepared by or commented upon by an attorney necessarily contain legal advice from the attorney as to the wording of the contracts for the benefit of the client, and thus are privileged." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 2003 WL 21911066, at *3 (N.D. Ill. Aug. 7, 2003) (cleaned up) (citation omitted). That holds true **even if** the documents are intended to be shared with a third party. *See, e.g.*, *BankDirect*, 326 F.R.D. at 183–84 ("drafts and revisions of the agreements" were privileged); *Zenith*, 2003 WL 21911066, at *3 ("drafts of agreements prepared by, or commented upon by an attorney" were privileged). Thus, the Court correctly held that attorney drafts of the Wholesale Product Purchase Agreement are attorney-client privileged. ECF No. 829 at 5–6.[4]

### C. The common interest doctrine precludes waiver through disclosure to Latham.

The common interest doctrine "extends the attorney client privilege to otherwise non-confidential communications" "where the parties undertake a joint effort with respect to a common legal interest." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815–16 (7th Cir. 2007). "[T]he Seventh Circuit permits both potential parties and parties who are not otherwise joined in litigation to assert the 'common legal interest' privilege, even where it is not anticipated that the party will be sued in the future." *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 (N.D. Ill. 2010). As such, parties facing a common opponent in "separate courts of law" can claim common interest.

---

[4] The Court did not address common interest. ECF No. 829 at 6 n.1.

*See, e.g.*, *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 274–75 (N.D. Ill. 2004) (bankrupt debtor and creditor suing same party in different courts); *Cadillac Ins. Co. v. Am. Nat. Bank of Schiller Park*, 1992 WL 58786, at *5 (N.D. Ill. Mar. 12, 1992) (defendants in different federal courts).

Although the interest must be identical, the doctrine "is not limited to situations in which the positions of the parties are compatible in all respects." *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). Parties may "ha[ve] an identical interest in the privileged communications, albeit from different perspectives." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 294 (N.D. Ill. 2005). Thus, contractual counterparties with divergent **business** interests may nevertheless share a common **legal** interest in coordinating against a common opponent. *See, e.g.*, *Lislewood Corp. v. AT&T Corp.*, 2015 WL 1539051, at *4 (N.D. Ill. Mar. 31, 2015) (indemnitor "share[d] a common legal interest…that the [indemnitee] is found not liable"); *Tenneco Packaging Specialty & Consumer Prod., Inc. v. S.C. Johnson & Son, Inc.*, 1999 WL 754748, at *2 (N.D. Ill. Sept. 14, 1999) (seller and purchaser). Contrary to Rockford, Mot. 15, a bankrupt debtor and creditor can share a common interest, *see Dexia*, 231 F.R.D. at 274–75.[5]

When QE negotiated with Latham, Mallinckrodt was still a defendant in this action and actively opposing Rockford's claims (premised on this case) in the bankruptcy. *See In re Mallinckrodt*, 2021 WL 2460227, at *1–2. Rockford now argues (for the first time) that the indemnification provision is "material" to its claims. Mot. 14 n.11. Rockford thus concedes that counsel's communications about the indemnification provision and revisions thereto relate to **common interests** with Mallinckrodt—*i.e.*, their joint defense and desire to "avoid litigation." *See, e.g.*, *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 416 (N.D. Ill. 2006). The indemnification

---

[5] The adverse interest exception to the common interest doctrine only applies in litigation **between** parties to the common interest. *See, e.g.*, *Lislewood*, 2015 WL 1539051, at *5.

13

provision itself underscores this common interest, *see Lislewood*, 2015 WL 1539051, at *4 (indemnification agreement), *Dexia*, 231 F.R.D. at 274 (litigation funding agreement), thus preserving privilege over documents exchanged between QE and Latham.

### D. Alternatively, Rockford has not shown waiver of work product protection.

The work product doctrine shields "mental impressions, conclusions, opinions or legal theories of an attorney concerning litigation, and all documents prepared by or for an attorney in anticipation of litigation." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *10 (N.D. Ill. June 19, 1987). The elements are (i) "whether the documents…contain an attorney's thought processes and mental impressions," *Lislewood*, 2015 WL 1539051, at *2, and (ii) "whether in light of the factual context 'the document can fairly be said to have been prepared or obtained ***because of*** the prospect of litigation,'" *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (citation omitted) (emphasis added). The privilege is not limited to one case, "especially if the old and new matters are related." *Hobley*, 433 F.3d at 949. Each element is present here.

*First*, drafts and communications between QE and Latham are work product. The parties were not communicating about the indemnification provision in the ***abstract***. Indeed, Rockford touts that its claims ***prompted*** those discussions, *see* Mot. 14—*i.e.*, communications and drafts were created "***because of***" Rockford's litigation, *Logan*, 96 F.3d at 977 (emphasis added). They therefore reflect QE's and Latham's evaluations of Rockford's claims, the likely outcome of the litigation, and strategies, all of which impacted the scope and form of the provisions. *See* Background, § A; *see also* ECF No. 560-7 at 62 (Ex. G, "Schedule of Acthar Actions"). Because the documents reflect counsels' "mental impressions, theories and strategies" and "were only prepared 'because of' the litigation," they are work product. *Cf. Lislewood*, 2015 WL 1539051, at *2 (joint-defense agreement and communications were "clearly prepared in anticipation of litigation"); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 735 (N.D. Ill. 2014)

14

(documents to obtain third-party litigation funding were work product); *Profit Point Tax Techs., Inc. v. DPAD Grp.*, 336 F.R.D. 177, 182–83 (W.D. Wisc. 2020) ("drafts of various fee-splitting agreements" were work product because they "were prepared ***because of*** the prospect of this litigation") (emphasis added)).

*Second,* not every disclosure waives work product, only those that "substantially increase[] the opportunities for potential adversaries to obtain the information." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) (citation omitted). "In contrast to the attorney-client privilege, the party asserting work product immunity is not required to prove ***non-waiver***. The party asserting waiver has the burden to show that a waiver occurred." *Miller*, 17 F. Supp. 3d at 737 (emphasis added). That requires ***concrete evidence***: "Unsupported statements in briefs don't count." *Id.* Here, Rockford does not even ***argue*** waiver, and the Motion precludes any waiver argument because Rockford argues Mallinckrodt is "align[ed]" with the Express Scripts Entities and also has refused to produce the documents. Mot. 15 n.12. As such, the Express Scripts Entities "had a reasonable basis for believing that" Mallinckrodt "would keep the disclosed material confidential." *Miller*, 17 F. Supp. 3d at 738. Rockford cannot show that disclosure to Mallinckrodt ***substantially increased*** the likelihood that Rockford would obtain the documents.

E. **Rockford's request for wholesale waiver is inappropriate.**

The Seventh Circuit has explained that the mere desire not "to litigate document-by-document" does not mean a party can "go after the whole cache in one swoop by arguing that [counsel] slept on its rights." *Hobley*, 433 F.3d at 949–50. As such, if the Court now adds QE as a custodian, it should afford QE the opportunity to serve a privilege log and set a deadline for any "document-by-document" challenges. *Contra* Mot. 15.

CONCLUSION

For these reasons, the Court should deny the Motion.

15

Dated: July 6, 2023  Respectfully Submitted,

*/s/ Eric C. Lyttle*
Michael J. Lyle, Esq. (ARDC #6199227)
Eric C. Lyttle, Esq. (*pro hac vice*)
Meghan A. McCaffrey, Esq. (*pro hac vice*)
Michael D. Bonanno, Esq. (*pro hac vice*)
J. Matthew Hamann, Esq. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
mikelyle@quinnemanuel.com
ericlyttle@quinnemanuel.com
meghanmccaffrey@quinnemanuel.com
mikebonanno@quinnemanuel.com
matthewhamann@quinnemanuel.com

Jan H. Ohlander, Esq. (ARDC #3124934)
RENO & ZAHM, LLP
2902 McFarland Rd., Suite 400
Rockford, IL 61107
Tel: (815) 987-4050
Fax: (815) 987-4092
jho@renozahm.com

**Attorneys for Defendants Express Scripts Holding Co., Express Scripts, Inc., CuraScript, Inc. d/b/a CuraScript, SD, Accredo Health Group, Inc., and United BioSource Corp. n/k/a United BioSource LLC**

16