Page 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

- - - - - - - - - - - - - - - - - - -X

CITY OF ROCKFORD,                        :

                    Plaintiff,           :

vs.                                      : Case No.

MALLINCKRODT ARD INC.,                   : 3:17-cv-50107

                    Defendant.           :

- - - - - - - - - - - - - - - - - - -X

SERIES 17-03-615, a designated           :

series of MSP RECOVERY CLAIMS,           :

SERIES LLC, et al.,                      :

                    Plaintiffs,          :

vs.                                      : Case No.

EXPRESS SCRIPTS INC., et al.,            : 3:20-cv-50056

                    Defendants.          :

- - - - - - - - - - - - - - - - - - -X


VIDEO DEPOSITION OF STEVE MILLER

Clayton, Missouri

March 29, 2023

9:13 AM



Reporter:  Jude Arndt, CSR, CCR, RPR


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1                    DEPOSITION OF STEVE MILLER, produced,

2     sworn, and examined on March 29, 2023, at Spencer Fane,

3     1 North Brentwood Boulevard, Suite 1200, in the City of

4     Clayton, State of Missouri, before Jude Arndt, a

5     Certified Shorthand Reporter and Certified Court

6     Reporter.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

```
                                                       Page 3
 1                    APPEARANCES OF COUNSEL

 2

 3    On Behalf of Plaintiffs, the City of Rockford and

 4    Class:

 5             Haviland Hughes

 6             124 South Maple Street, Suite 220

 7             Ambler, PA  19002

 8             215-609-4661

 9             By:   William H. Platt, II

10                   platt@havilandhughes.com

11    On Behalf of MSP Recovery Claims, Series, LLC:

12             Milberg Coleman Bryson Phillips Grossman

13             2701 South Le Jeune Road

14             Coral Gables, FL  33134

15             866-252-0878

16             By:   Khristian Rasmussen

17                   krasmussen@milberg.com

18             Milberg Coleman Bryson Phillips Grossman

19             100 Garden City Plaza

20             Garden City, NY  11530

21             212-594-5300

               By:   Robert Wallner

22                   rwallner@milberg.com
```

Page 4

```
1                    APPEARANCES, CON'T

2    For Express Scripts and Witness:

3           Quinn Emanuel Urquhart & Sullivan, LLP

4           1300 I Street NW, Suite 900

5           Washington, DC  20005

6           202-538-8000

7           By:  Keith Forst

8                Matthew Hamann

9                keithforst@quinnemanuel.com

10               matthewwhamann@quinnemanuel.com

11   In-house counsel for Express Scripts:

12          Express Scripts

13          1 Express Way

14          St. Louis, MO  63121

15          By:  Urmila Baumann

16               ubaumann@express-scripts.com

17

18   Also present:  Luke Arndt, videographer

19

20

21

22
```

```
                                                       Page 5
  1                   INDEX OF INTERROGATION

  2   Examination by Mr. Platt                     Page 7

  3   Examination by Ms. Rasmussen                  Page 43

  4   Examination by Mr. Forst                      Page 71

  5

  6                     INDEX OF EXHIBITS

  7   Exhibit 1             E-mail               Page 13

  8   Exhibit 2             E-mail               Page 22

  9   Exhibit 3             E-mail               Page 26

 10   Exhibit 4        Deposition transcript     Page 58

 11   Exhibit 5             E-mail               Page 62

 12   Exhibit 6             E-mail               Page 67

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22
```

Page 6

1              THE VIDEOGRAPHER:  This is File Number 1

2    of the videotaped deposition of Steven Miller in the

3    matter of the city of Rockford versus Mallinckrodt ARD

4    Inc., et al, in the United States District Court,

5    Northern District of Illinois, Western Illinois, Case

6    Number 3:17-cv-50107.

7         This deposition is being held at Spencer Fane, 1

8    North Brentwood Boulevard, Suite 1200, Clayton,

9    Missouri on March 29, 2023.

10        The time on the video screen is 9:13 AM.  My

11   name is Luke Arndt.  I am the legal videographer from

12   Digital Evidence Group.  The court reporter is Jude

13   Arndt in association with Digital Evidence Group.

14        Will counsel please introduce themselves for the

15   record?

16             MR. PLATT:  Good morning.  This is William

17   Platt II.  I'm with the law firm of Haviland Hughes,

18   and I'm here on behalf of the City of Rockford and the

19   a class.

20             MR. RASMUSSEN:  Khristian Rasmussen,

21   counsel for plaintiffs, the MSP plaintiffs.

22             MR. FORST:  Good morning.  This is Keith

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 7

1    Forst with Quinn Emanuel Urquhart & Sullivan on behalf

2    of the Express Scripts entities and the witness.

3            MR. HAMANN:  This is Matthew Hamann from

4    Quinn Emanuel on behalf of the Express Scripts entities

5    and the witness.

6            MS. BAUMANN:  Urmila Paranjpe Baumann,

7    chief counsel of litigation, Express Scripts.

8            THE VIDEOGRAPHER:  Will the court reporter

9    please swear in the witness?

10

11        The witness, STEVEN MILLER, first having been

12    duly sworn, testified as follows:

13                        EXAMINATION

14   BY MR. PLATT:

15        Q.   Good morning, Dr. Miller.  We met before

16    the deposition.  Thank you for taking the time to come

17    out today for this next round.

18        Sir, do you know why you are here for a second

19    deposition?

20        A.   My understanding is you have more

21    questions for me.

22        Q.   And also we have some more documents that

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 8

1    we didn't have when we had your deposition the first

2    time.

3            Mr. Haviland deposed you the first time.  He is

4    my law partner.  We are on the same side and we

5    represent the same clients.

6            Do you understand that?

7        A.    Yes, sir.

8        Q.    Okay.  Dr. Miller, you have stated both

9    publicly and I think on the record in this case that

10   you were unhappy with the prices of Acthar; is that

11   correct?

12       A.    Correct.

13       Q.    And could you give me -- let me just go

14   back.

15           How many -- what years did you work for Express

16   Scripts?

17       A.    I joined the company in 2005, and stayed

18   with the company until its acquisition by Cigna.

19       Q.    By Cigna?

20       A.    Yes.

21       Q.    When was that?

22       A.    The Cigna acquisition was 2019.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 9

1         Q.    All right.  And is it safe to say, sir,

2    that you were unhappy with the prices of Acthar during

3    that entire period of employment with Express Scripts?

4         A.    Yes.

5         Q.    And you stated previously that you made it

6    clear that you were unhappy, and you stated so

7    publicly; correct?

8         A.    That's correct.

9         Q.    Could you give me some examples of when

10   you stated your unhappiness with the prices of Acthar

11   publicly?

12        A.    So we have a client forum.  I have, you

13   know, used Acthar as an example of a drug that's taken

14   egregious price hikes in those forums.

15        But I can't give you any specific examples, but

16   I know that both, you know, in the press and in

17   investor conferences and others, I was very clear that

18   I was unhappy with the price.

19        Q.    When you say the press, what are you

20   referring to?

21        A.    Oh, just, you know, general publications,

22   Fierce Pharma, things like that, that cover our

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

1    industry.

2         Q.    So -- what was that last one?  You said

3    Fierce Pharma?

4         A.    Fierce Pharma is just a trade journal

5    that, you know, covers the biopharmaceutical industry.

6         Q.    All right.  Do you recall when you made

7    any statements to Fierce Pharma regarding your

8    unhappiness with --

9         A.    I'm not sure if it was specific to Acthar,

10   but the high price of drugs has been something I've

11   campaigned against for a long time, and Acthar was a,

12   you know, example of what we thought were

13   inappropriately-priced drugs.

14        Q.    And do you recall -- and I have a document

15   here I can distribute.

16        Do you recall in 2015 Brian Henry prepared a

17   statement for you to post on the Express Scripts blog

18   regarding high prices of drugs?

19        A.    Brian Henry prepared statements -- yeah, I

20   mean, he prepared statements many times on my behalf.

21        Q.    I'm going to mark as Exhibit 1 an e-mail

22   from Brian Henry to you dated September 22nd, 2015.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

1          Before we look at that and while we are

2     distributing this document, do you recall a Citibank

3     conference that you attended where you made a statement

4     to investors about your unhappiness with the price of

5     Acthar?

6          A.    Yes.

7          Q.    And do you recall when that conference

8     took place?

9          A.    Can't tell you the specific date.

10         Q.    Would you agree with me it was in 2017?

11         A.    I -- you know, if you say so, I believe

12    it's 2017.

13         Q.    All right.  Now, at that Citibank

14    conference, who was in attendance at that particular

15    conference?

16         A.    Oh, I can't tell you who was --

17         Q.    Not by name.  Just generally.  It was

18    investors; correct?

19         A.    These were investors.

20         Q.    Okay.  So it wasn't a conference that

21    included the general public; correct?

22         A.    It did not include the general public.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

                                                              Page 12

1          Q.    So you had to be a investor to attend that

2    meeting; right?

3          A.    I assume that's the rules.  I did not -- I

4    had nothing to do with the invitations.

5          Q.    All right.  So that's one example of what

6    you would describe as a public criticism --

7          A.    Yeah.

8          Q.     -- of the increase in drug prices?

9                MR. FORST:  Wait for him to finish the

10   question.

11   BY MR. PLATT:

12         Q.    And I'm sorry about that.  I don't mind

13   having that that back-and-forth that way, but for the

14   court reporter it's miserable, and witnesses have a

15   tendency to understand where I'm going with a question,

16   so you're going to be quick to give me answer,

17   especially if you agree with where I'm going with a

18   question.

19               So it's difficult for you and me and it's going

20   to be difficult for you, but let's just try to let me

21   finish, and then you can answer the question.

22               So that was -- you said that was one of the

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 13

1    examples of where you publicly --

2           A.    I viewed any public statement was any

3    statement that could be -- you know, may make its way

4    into general circulation.

5           Q.    Okay.

6           A.    And so that was not a confidential

7    discussion with the investors, and so it could very

8    likely become a public statement; correct.

9           Q.    And at that Citibank conference you

10   explicitly criticized the prices of Acthar; right?

11          A.    I believe so.

12          Q.    I gave you Exhibit 1.  I think you have

13   it.

14          A.    I do not.

15                [Exhibit 1 marked for identification.]

16   BY MR. PLATT:

17          Q.    And sir, I'll represent to you that I had

18   the opportunity to depose Brian Henry last week.  He

19   came in for a second deposition like you are, and I

20   asked him about this particular document.

21                You know who Brian Henry is; right?

22          A.    Yes.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 14

1        Q.    And what was his job at Express Scripts?

2        A.    He was in communications.

3        Q.    What else that --

4        A.    Vice president of communications for

5   Express Scripts.  So he would interact with our

6   publication relations effort.

7        Q.    Okay.  So he would be sort of the -- well,

8   let me strike that.

9        Exhibit 1 is an e-mail from Brian Henry to you

10  and it carbon copies David Whitrap.

11       Do you see that?

12       A.    Correct.

13       Q.    Who is David Whitrap?

14       A.    He worked for Brian Henry.  He was his

15  lieutenant.

16       Q.    And when you say lieutenant, what does

17  that mean?

18       A.    He was his subordinate.  He was -- they

19  worked together as a team.  Brian was his direct -- his

20  boss.

21       Q.    Okay.  And you'll see that obviously Brian

22  Henry in that first paragraph describes what he is

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 15

1    sending to you; right?

2            A.    Yes.

3            Q.    And he says he wants to put this -- he

4    says want to put this out under your name.  Can do so

5    as soon as we here from you.  Thanks in advance.

6            Do you see that?

7            A.    Yes.

8            Q.    And then below that there is sort of it

9    looks like what I'm just going to generally call a

10   press release; is that fair?

11           A.    I don't think -- I thought -- I don't know

12   what -- if he was releasing this to the press.  I don't

13   know the -- or if he said he was putting thing on a

14   blog.

15           Q.    All right.  So Brian Henry told me he was

16   putting it on a blog, and he said there was a Express

17   Scripts blog that was operated by Express Scripts.  Are

18   you familiar with that blog?

19           A.    Yes.

20           Q.    What's that called?

21           A.    I believe it's the Express Scripts Blog.

22           Q.    Okay.  It's not Fierce Pharma?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 16

1        A.    No, no.

2        Q.    Okay.  And do you know who has access to

3   that blog?

4        A.    I believe the blog is open to the public.

5        Q.    And it goes on the website, the Express

6   Scripts website?

7        A.    I believe it goes on the Express Scripts

8   website.

9        Q.    All right.  So Brian Henry told me that he

10  drafted this particular blog post, and his e-mail seems

11  to indicate that he did it for you; correct?

12       A.    Correct.

13             MR. FORST:  Objection.  Objection.

14  Foundation.

15  BY MR. PLATT:

16       Q.    Do you recall seeing this e-mail before?

17       A.    I don't recall this specific -- I don't

18  recall this e-mail specifically, no.

19       Q.    And when typically -- was it typical for

20  Brian Henry to draft blog posts for you, or under your

21  name as he says?

22       A.    Yes.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 17

1       Q.    And then they were posted on the blog?

2       A.    Yes.

3       Q.    On the Express Scripts website; correct?

4       A.    Correct.

5       Q.    All right.  Do you remember whether or not

6    this particular draft blog post was posted on the

7    Express Scripts internet blog?

8       A.    I don't know because I have never accessed

9    the blog.

10      Q.    Okay.  Was it your practice to review

11   Brian Henry's drafts of blog posts before they were

12   submitted for public consumption?

13      A.    Yes.

14      Q.    And you do or you don't recall reviewing

15   this particular blog post?

16      A.    There were multiple blog posts.  I don't

17   recall this one specifically.

18      Q.    Do you remember telling Brian Henry that

19   you don't want this blog post posted as drafted?

20            MR. FORST:  Objection.  Foundation.

21      A.    Like I said, I don't remember particular

22   blog post.  I don't remember.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 18

1    BY MR. PLATT:

2         Q.    All right.  Well, let's read it.  Maybe it

3    will refresh your recollection a little bit.

4         There is a statement that Mr. Henry writes under

5    your name, it says -- in the second paragraph -- well,

6    let's read the whole thing.

7         It was revealed earlier this week that Daraprim,

8    a 62-year-old drug that treats toxoplasmosis, recently

9    had an overnight price increase of 5,000 percent.

10        Do you see that?

11        A.    Yes.

12        Q.    So he is clearly talking about the

13   Daraprim controversy, which he bold and underlined, and

14   he is referencing a $5,000 (sic) increase in the price

15   of Daraprim; right?

16             MR. FORST:  Objection to the form.

17        A.    It appears that way, yes.

18   BY MR. PLATT:

19        Q.    And he says that that Daraprim was a

20   62-year-old drug in 2015; right?

21        A.    Yes.

22        Q.    Do you know whether or not that's

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 19

1    accurate?

2          A.    I do not know if that's the exact age of

3    the drug.

4          Q.    Okay.  Do you know if Daraprim in 2015

5    increased the price of the drug -- if the price of

6    Daraprim was increased 5,000 percent?

7          A.    These numbers are correct.

8          Q.    Okay.

9          So in the next paragraph, he says unfortunately

10   this isn't a new phenomenon.

11         Do you see that?

12         A.    Yes.

13         Q.    And the blog post says Daraprim is one of

14   several older generic medications.

15         Do you see that?

16         A.    Yes.

17         Q.    Is that accurate?

18         A.    Yes.

19         Q.    Okay.  Was Acthar gel one of those -- one

20   of those several drugs that he is referencing there?

21                MR. FORST:  Objection to the form.  Calls

22   for speculation.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 20

1          A.      So Acthar gel was not a generic

2     medication.

3     BY MR. PLATT:

4          Q.      Right.

5          A.      And so -- but -- and so he obviously --

6     there is obviously examples given subsequently.  But so

7     Acthar gel may not be specifically what he has in mind

8     here.

9          Q.      Okay.

10         A.      Or what --

11         Q.      Now, he wrote this for your signature;

12    right?

13         A.      Uh-huh.

14         Q.      I'm going to say signature generally.  I

15    don't know how you sign off on a blog post, but he

16    wrote this for you to post under your name; right?

17         A.      Yes.

18         Q.      He also talks about -- the blog post also

19    talks about a drug called Vimovo.

20                 What is Vimovo, do you remember?

21         A.      Vimovo is a combination of two generic

22    drugs that was put together as a combo tablet.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 21

 1        Q.    And then there's another drug called

 2   Duexis?

 3        A.    Yes.

 4        Q.    What is Duexis, do you know?

 5        A.    Same.  Two generic drugs put together as a

 6   new drug.

 7        Q.    Okay.  So in 2015 -- you testified already

 8   you were unhappy with the prices of Acthar throughout

 9   your entire employment with Express Scripts; right?

10        A.    Yeah, you know, let me modify that.  I'm

11   not sure I was even aware of the price of Acthar when I

12   first joined the company, but when I became aware of

13   the price I was unhappy with it.

14        Q.    Were you aware of the price of Acthar in

15   2015?

16        A.    Yes.

17        Q.    When you reviewed this and gave Mr. Henry

18   permission to post this on the blog, why didn't you ask

19   him to include Acthar as one of the examples?

20              MR. FORST:  Objection.  Lack of

21   foundation.

22        A.    So this statement is accurate, gives

Page 22

1   examples, and so we did not include every example of

2   drugs that had increase in drug price.

3        And he was specifically making a point about

4   generic drugs having their prices increased.

5   BY MR. PLATT:

6        Q.   But in 2015 you did believe that Acthar

7   was overpriced; right?

8             MR. FORST:  Asked and answered.

9        A.   Yes.

10  BY MR. PLATT:

11       Q.   And you're telling me that you never went

12  back to Mr. Henry and said I want you to include Acthar

13  in this blog post?

14       A.   Correct.

15            MR. FORST:  Objection.

16  BY MR. PLATT:

17       Q.   All right.  I'm going to ask you some

18  questions just kind of generally to familiarize myself

19  and the jury with these documents that we received.

20            [Exhibit 2 marked for identification.]

21  BY MR. PLATT:

22       Q.   Dr. Miller, you'll see this is an e-mail

Page 23

1    from Brian Henry dated August 31st, 2016, and it's

2    addressed to you; correct?

3         A.    Yes --

4              MR. FORST:  I'm going to object that the

5    first exhibit is outside the scope of the order.  They

6    were older produced documents, not new ones.

7              MR. PLATT:  I don't think this is an older

8    produced document.  I would disagree with that.

9              MR. FORST:  We can tell from the Bates

10   number, but we lodge our objection.

11             MR. PLATT:  Okay.

12   BY MR. PLATT:

13        Q.    Sir, you see at the top of that e-mail,

14   Brian Henry says to you, you were right, parentheses,

15   again, end parentheses.

16        Do you see that?

17        A.    Yes.

18        Q.    Do you recall receiving this particular

19   e-mail from Mr. Henry in August of 2016?

20        A.    No.

21        Q.    If you review the e-mail and you read the

22   article he's referring to -- could you explain to me,

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 24

1    if you know, what he meant when he said you were right

2    again?

3              MR. FORST:   Objection to the form.

4    Foundation.

5         A.    I do not.

6    BY MR. PLATT:

7         Q.    Okay.  And, sir, that's -- I just gave you

8    two documents that were examples of discussions about

9    high drug prices.

10        Do you understand that?

11             MR. FORST:  Objection to the form.

12        A.    Yes.

13   BY MR. PLATT:

14        Q.    We have received million dollars of pages

15   of documents in this case, and we have had several

16   attorneys and staff review these documents, and I can't

17   find anything else that mentions your name and attaches

18   your name to any discussion about price increases or

19   any complaints about the increase in the price of

20   Acthar.

21        Can you give me any other specific examples of

22   where you made any kind of public statement?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 25

1           MR. FORST:  Objection to the testimony.

2    Mischaracterizes the record.  Lack of foundation.

3           A.    Yeah, so I have campaigned tirelessly

4    for -- against the high prices of drugs.  I cannot give

5    you specific examples of when I have talked about

6    Acthar or any other specific product.

7    BY MR. PLATT:

8           Q.    Okay.  So you are stating generally that

9    you are talking about high drug prices, and you

10   protested high drug prices; right?

11          MR. FORST:  Objection.

12   BY MR. PLATT:

13          Q.    I want to focus specifically on Acthar,

14   not Daraprim or the generics that we talked about

15   earlier.  I'm just asking the question as it pertains

16   to Acthar only.

17          Can you give me any specific examples sitting

18   here today where you publicly criticized Mallinckrodt

19   for the price increases of Acthar?

20          MR. FORST:  Asked and answered.

21          A.    I cannot -- I cannot give you specific

22   examples.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.    Steve Miller

Page 26

1    BY MR. PLATT:

2           Q.    Dr. Miller, do you know what prior

3    authorization is?

4           A.    Yes, sir.

5           Q.    Could you explain to the jury what a prior

6    authorization is?

7           A.    So it's a utilization management technique

8    in which a drug has to be approved before the patient

9    will know that their planned sponsor will subsidize the

10   cost of that product.

11          Q.    And when you say approved, who has -- who

12   makes -- who does the approval?

13          A.    So the approval could be done -- depends

14   on who the planned sponsor chooses to do the prior

15   authorizations.  Sometimes they utilize our services,

16   sometimes they utilize outside services.

17          Q.    And sir, I'm going to give you an e-mail

18   just to give you a point of reference, Exhibit 3.

19               [Exhibit 3 marked for identification.]

20   BY MR. PLATT:

21          Q.    Sir, you're not on this e-mail, I'll state

22   for the record, but do you see in the first e-mail it's

Page 27

```
 1   an e-mail from Everett Neville?

 2          Do you know who Everett Neville is?

 3          A.    Yes.

 4          Q.    And who is he?

 5          A.    He was one of our executives who was over

 6   supply chain.

 7          Q.    And this was the same Everett Neville that

 8   was at the Citibank conference with you in 2017; right?

 9          A.    Correct.

10          Q.    And Gary Kline is addressed in the to

11   line.

12          Who is Gary Kline?

13          A.    Gary Kline works for government affairs

14   for Express Scripts.

15          Q.    Okay.  And who is --

16          MR. FORST:  And objection.  I'm going to

17   lodge another objection to the whole document.

18   BY MR. PLATT:

19          Q.    And who is Megan Hauck?

20          A.    I don't know.

21          Q.    Do you see where Mr. Neville writes, I

22   understand it.  Our cost containment here is the PA.
```

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 28

1          Do you know what he means when he says that?

2          A.    Whatever example he is citing, the -- the

3     tool we are using to contain costs is a prior

4     authorization.

5          Q.    And do you see the article that's

6     referenced and looks like it's cut and pasted in the

7     e-mail from May 7, 2018 at 6:25 PM from Megan Hauck to

8     Gary Kline?

9          A.    Yes.

10         Q.    Did you ever see that particular news

11    article before today?

12         A.    Not that I remember.

13         Q.    Dr. Miller, do you recall if Express

14    Scripts had prior authorization -- and tell me if I'm

15    saying this the wrong way.

16         Did Express Scripts have a prior authorization

17    policy in place in 2005 for Acthar when you started at

18    the company?

19              MR. FORST:  Just objection.  Outside the

20    scope of the order.

21         A.    We did not.

22    BY MR. PLATT:

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 29

1        Q.    How about in 2006?

2        A.    We did not.

3        Q.    What about 2007?

4        A.    We did not.

5        Q.    What about 2008?

6        A.    We did not.

7        Q.    What about 2009?

8        A.    We did not.

9        Q.    What about 2010?

10       A.    No.

11       Q.    2011?

12       A.    No.

13       Q.    2012.

14       A.    I believe that's when we had a prior

15   authorization policy.

16       Q.    You did for Acthar?

17       A.    I believe that's the date.

18       Q.    And what's your basis for that?

19       A.    Discussions from this case.

20       Q.    So you have no independent knowledge

21   outside of this case whether or not there was a prior

22   authorization in place in 2012 for Acthar?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

```
                                                  Page 30

 1                 MR. FORST:  Objection.  Objection to the

 2      form.  Foundation.

 3          A.    I do not know the date that the prior

 4      authorization was in place, correct.

 5      BY MR. PLATT:

 6          Q.    Okay.  Do you know if they had a prior

 7      authorization in place in 2013 for Acthar?

 8                 MR. FORST:  Objection to the form.

 9          A.    You -- I do not have the data when the

10      prior authorization policy went into place.

11      BY MR. PLATT:

12          Q.    Well, I'm just going to keep going.

13          Do you know if it was place in 2017?

14          A.    I believe there was a prior authorization

15      in place in 2017.

16          Q.    And what's your basis for that conclusion?

17          A.    In the prior deposition, we actually went

18      over the Acthar gel prior auth, and the date was I

19      believe somewhere around -- somewhere between 2012 and

20      2015.

21          Q.    So somewhere between -- why do you -- why

22      do you believe it was between 2012 abstract and 2015?
```

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 31

1          A.    Because my memory of it is sketchy.

2          Q.    But you are certain --

3          A.    That's correct.

4          Q.     -- it was sometime between 2012 and 2015?

5          A.    Yes, sir.

6          Q.    Did something occur at Express Scripts

7    that triggered the implementation of a prior

8    authorization policy for Acthar?

9          A.    Yes.

10         Q.    What was that?

11         A.    So early on, we followed -- we followed

12   what are called drug trends, what our clients are

13   spending on drugs.

14         Early in my career, Acthar gel never hit

15   anyone's radar screen for a couple of reasons.  One is

16   Acthar gel was a very small-volume product, mostly used

17   for kids, and most of those kids were covered by

18   Medicaid, and we had very little Medicaid business.

19         Over time, you know, obviously the price went up

20   with Acthar gel, but also the number of patients that

21   were -- that it was being utilized on went up.  And so

22   when it became an issue for our clients, then our team

3/29/2023   MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 32

1    that does prior authorizations put a prior

2    authorization in place.

3        Q.    Was price the only issue that you were

4    concerned about with regard to Acthar?

5        A.    More important than price is appropriate

6    utilization.

7        Q.    What do you mean when you say appropriate

8    utilization?

9        A.    So you know, we are very committed to

10   getting the best health care for our patients.  And

11   when we see that drugs are not being -- that the best

12   drugs aren't being utilized for our patients, often

13   we'll put in place utilization management policies to

14   both improve the care that patients receive but also

15   control their costs, because, you know, choosing poorly

16   represents unnecessary spending.

17       Q.    Okay.  So what indications, if you recall,

18   did Acthar treat?

19       A.    So Acthar gel -- and this is actually

20   something that I read when I reviewed my testimony that

21   I said incorrectly -- Acthar gel's label is it has two

22   indications, and that is for infantile spasm and

3/29/2023   MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 33

1    exacerbations of multiple sclerosis.

2          It has approval for a whole list of other

3    things, but it's truly indicated for two specific

4    diseases.

5          And in our review, Acthar gel was the drug of

6    choice for infantile spasms, and for most all other

7    diseases there was better products in the marketplace.

8          Q.    And when you say all other diseases, do

9    you include multiple sclerosis in that category?

10         A.    I think it's indicated for exacerbations

11   of multiple sclerosis so it's not first-line therapy

12   for multiple sclerosis, and so this is when making sure

13   that people are using it appropriately -- is why it's

14   also covered in the prior authorization.

15         Q.    Dr. Miller, what I did see in a lot of

16   your documents that were recently produced is the name

17   Martin Shkreli.

18         Do you know who Martin Shkreli is?

19         A.    Yes, I do.

20         Q.    And who is Martin Shkreli?

21         A.    Martin Shkreli was with Turing

22   Pharmaceuticals, and he was the one who bought the

Page 34

1    rights to Daraprim and increased the price.

2          Q.    Okay.  Have you ever met Mr. Shkreli?

3          A.    Yes.

4          Q.    In person?

5          A.    Yes.

6          Q.    When?

7          A.    At a Forbes conference.

8          Q.    You said a Forbes conference.  Do you

9    remember when that was?

10         A.    It was in New York.  It was widely covered

11   in the press.  Forbes actually had me address Mr.

12   Shkreli.

13         Q.    I'm sorry.  The last part you said there

14   was what?

15         A.    Forbes actually had me address Mr.

16   Shkreli.

17         Q.    Had you address Mr. Shkreli?

18         A.    So Mr. Shkreli was giving a presentation

19   at the Forbes conference.  They specifically asked me

20   to ask a question of Mr. Shkreli.  You can go on

21   YouTube and find the video if you would like.

22         Q.    What was the question you asked -- that

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

1    Forbes asked you to ask Mr. Shkreli?

2          A.    They didn't ask me to ask a specific

3    question.  They gave me the opportunity to ask a

4    question.

5          And I believe -- and, you know, my memory is I

6    believe I asked him a question about his motivation

7    behind the price increase for Daraprim.

8          Q.    All right.  And what was his answer?

9          A.    He said that it was his fiduciary

10   responsibility to raise the price, that he worked for

11   the shareholders, and that maximizing return was what

12   he was responsible to do for his shareholders.

13         Q.    Did Mr. Shkreli at that Forbes conference

14   ever make a statement that Express Scripts was trying

15   to get Daraprim's business from him?

16               MR. FORST:  Objection as to the form.

17         A.    Yeah, he said something along those lines,

18   that Express Scripts was trying to get his business.

19   BY MR. PLATT:

20         Q.    Was that in response to your question?

21         A.    I believe it came out in response to my

22   question; correct.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 36

1          Q.    And were you aware, sir, that Express

2    Scripts was in fact trying to get Daraprim on its list

3    of drugs?

4                MR. FORST:  Objection.  Foundation.

5          A.    Yeah, I'm unclear -- I don't remember if I

6    was aware, because that was a separate side of the

7    business.

8    BY MR. PLATT:

9          Q.    Did you have any reaction, positive or

10   negative, to his statement that Express Scripts was

11   trying to get Daraprim business from Mr. Shkreli?

12         A.    It would not surprise me if the company

13   was trying to have access to the drug.  It's what we do

14   for our patients, is we get access for drugs, and this

15   was an important drug for patients who had a specific

16   type of infection associated with either pregnancy or

17   HIV.

18         Q.    So when Mr. Shkreli said at the Forbes

19   conference that Express Scripts was trying to get

20   Daraprim business from him, he was correct; right?

21               MR. FORST:  Objection.  Form.  Also scope.

22         A.    He was correct.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 37

1              MR. PLATT:  Okay.  I'm just going to take

2      a couple minutes here.  Off the record, just because I

3      might be done soon.

4              THE VIDEOGRAPHER:  Off the record at 9:43

5      AM.

6              [A recess was taken.]

7              THE VIDEOGRAPHER:  Back on the record at

8      9:50 AM.

9      BY MR. PLATT:

10             Q.    Dr. Miller, you were testifying earlier

11     about the price of Daraprim and how you were unhappy

12     the increase, 5,000 percent increase in the price of

13     Daraprim; correct?

14             A.    Correct.

15             Q.    Do you know if there was any change to the

16     price of Daraprim while you were employed at Express

17     Scripts?

18         Let me just clarify.  After the 5,000 percent

19     increase.

20             A.    So we came up with a compounded solution

21     for Daraprim that was less expensive.

22             Q.    And what does that mean when you say

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 38

1    compound solution?

2        A.    So a compounding pharmacy is a pharmacy

3    that can -- has the ability to produce on a doctor's

4    order a prescription.  And so there are compounded

5    products where the pharmaceutical manufacturer can get

6    the ingredients and utilize it to make a appropriate

7    substitute product.

8        Q.    Okay.  So when you say compounding, you

9    mean a substitute product?

10       A.    It's not the same as the manufactured

11   product --

12       Q.    Oh, okay.

13       A.     -- but it is substitutable for clinical

14   products.

15       Q.    Okay.  And did Express Scripts have any

16   role in that what I'm going to call the compounding

17   process of Daraprim?

18            MR. FORST:  Object -- sorry.  Object to

19   the form.

20       A.    So Express Scripts has its own compounding

21   pharmacy for certain products, but in this particular

22   case we were not involved in compounding.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 39

 1    BY MR. PLATT:

 2         Q.    All right.  Did you have any conversations

 3    with the Food and Drug Administration regarding the

 4    compounding of Daraprim?

 5         A.    I had no direct conversations with the

 6    Food and Drug Administration.

 7         Q.    Sir, we deposed Mr. Everett Neville

 8    recently, and Mr. Everett Neville said that you did.

 9              MR. FORST:  Objection to the form.

10    BY MR. PLATT:

11         Q.    Would you disagree with Mr. Neville?

12              MR. FORST:  Objection.  Let me just

13    interpose the objection.  Mischaracterizes the

14    testimony.  You can answer.

15         A.    Yeah, so our company interacts with the

16    FDA, but I had no specific conversations with the FDA

17    on Daraprim.

18    BY MR. PLATT:

19         Q.    Do you know if anybody from Express

20    Scripts had a conversation with the FDA on that

21    subject?

22         A.    I know that our government affairs people

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

                                                        Page 40

1    who are -- who usually are the ones who interact with

2    the FDA made it clear to me that the FDA had expressed

3    their displeasure with our Daraprim solution.

4         Q.    Okay.  And when you say they expressed

5    displeasure with your Daraprim solution, you mean

6    Express Scripts' Daraprim solution?

7         A.    So we utilized -- we were contacted by a

8    compounding pharmacy that said that they could create a

9    substitution product that was not the same as the

10   Daraprim product that was in the marketplace, which was

11   important to us because we did not want to violate any

12   FDA regulation.

13        And so when a physician prescribes Daraprim,

14   they also drew leucovorin, and so the compounding

15   pharmacy was able to create a substitute product that

16   had both the Daraprim and the leucovorin.

17        Q.    Oh, okay.  Now, how did you -- you didn't

18   have any conversations with the FDA, but you have

19   knowledge of communications with the FDA.

20        How do you have that knowledge?

21        A.    Yeah.  So I have obviously at times met

22   with the FDA, met with the -- the commissioner of the

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 41

1    FDA.

2        But when it came to Daraprim specifically, it

3    was our government affairs people that were receiving

4    communications from the FDA and passing it onto me.

5        Q.    Okay.  Was there ever any kind of I'm

6    going to say conceptual -- if you don't understand

7    that, let me know -- conceptual compound alternative to

8    Acthar while you were at Express Scripts?

9            MR. FORST:  Objection to the form.

10       A.    So the same compounding pharmacy that had

11   talked to us about Daraprim said that they had a

12   solution for Acthar.

13       We did not believe it was -- it would meet the

14   FDA requirements, and so we had never -- we were never

15   able to utilize that solution.

16   BY MR. PLATT:

17       Q.    Did you personally ever have

18   communications with the FDA regarding that Acthar

19   alternative?

20       A.    No.

21       Q.    Do you know if anyone from Express Scripts

22   ever had a conversation with the FDA about that

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 42

1    particular Acthar alternative?

2              MR. FORST:  Objection to the form.

3        A.    I do not know.

4        Q.    Are you able to cite me any document or

5    e-mail between Express Scripts and the FDA regarding

6    this Acthar alternative?

7              MR. FORST:  Objection to the form.

8        A.    I can't help you there.

9    BY MR. PLATT:

10       Q.    So the answer is no?

11       A.    No.

12       Q.    Can you give me a name of anybody from the

13   FDA that you spoke to about compounding alternatives?

14       A.    No.

15       Q.    Dr. Miller, when you -- I'm just going to

16   go back to the beginning of the deposition where you

17   talked about your objections to the high prices of

18   Acthar.

19             MR. FORST:  Objection.  Scope.

20   BY MR. PLATT:

21       Q.    Do you remember that testimony today?  Do

22   you recall the testimony?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 43

1          A.    Yes.

2          Q.    You are aware, sir, that clients like

3    mine, the City of Rockford, were paying high prices for

4    Acthar while you were employed at Express Scripts;

5    right?

6          A.    Correct.

7          Q.    I have nothing further.  Thank you for

8    your time.

9                          EXAMINATION

10   BY MR. RASMUSSEN:

11         Q.    Good morning, Dr. Miller.

12         A.    Good morning.

13         Q.    I have to imagine you are sick and tired

14   of talking about Acthar after all of these years, so

15   I'll try to keep it short for you.

16         Earlier this morning you mentioned that I think

17   more important than price is appropriate utilization.

18   Those are your words.

19         A.    (Nodding "yes.")

20         Q.    Can you explain what you meant by that?

21         A.    Yeah, so you know, the care of patients is

22   crucial to us.  And even if a drug is expensive, if you

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 44

1    don't have to take the drug at all, it's even less

2    expensive than getting a discount on drugs.

3         So making sure that drugs are being used

4    appropriately is a really important function for our

5    organization.

6         Q.    Do you mean -- so when you say if you

7    don't have to take the drug at all, would that be

8    because some medications are used off-label to treat

9    things that they may not really be efficacious for?

10        A.    I'll give you the best example.

11        Q.    Please do.

12        A.    Is inappropriate use of antibiotics.  So a

13   lot of times doctors will prescribe antibiotics when

14   people have, for instance, a viral infection --

15   antibiotics have no impacts on virus -- and so that

16   would be inappropriate use.

17        So we put into place programs to work with

18   doctors to make sure antibiotics are being used

19   appropriately.

20        Q.    Are you aware of any situations involving

21   the appropriate use of Acthar to treat conditions that

22   it's really not efficacious for?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 45

1        A.    So Acthar, as we talked about earlier, has

2    on its label that it is approved for a variety of

3    indications, almost.  Almost every one of those

4    indications -- studies have been done that show other

5    products being more effective, and so wanting our

6    patients to get the most effective products we would

7    steer people to those other products.  So that's what

8    the prior authorization does.

9        Q.    Okay.  And you also said something earlier

10   today.  You said choosing poorly represents unnecessary

11   spending.

12         Does that mean -- or explain what you meant by

13   that.

14        A.    So the antibiotic example would be

15   pertinent there.

16         So if a doctor makes a poor decision and decides

17   to put patient on antibiotic when they don't have an

18   infection, not only can it -- does it have no benefit

19   to the patient, it can actually have a deleterious

20   effect because every drug has side effects.

21        Q.    And you would agree that for 17 or 19 of

22   the potential indications for Acthar, it's a poor

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 46

1    choice for patients?

2          A.    The -- for the vast majority -- I can't

3    give you the specific number, but for the vast majority

4    of indications, or for the vast majority of the

5    approvals that it's available for, it's a poor choice.

6          Q.    And you previously testified in this

7    litigation that Acthar has some 17 or 19 potential

8    indications.  For almost all of those, it's a poor

9    choice?

10         A.    Again, I correct myself.  Those are

11   approvals, not -- its indications for two -- for two

12   specific diseases.  For those things it's a poor

13   choice.

14         Q.    Okay.  And choosing poorly would be --

15   represents unnecessary spending?

16         A.    Choosing poorly can represent unnecessary

17   spending.

18         Q.    And in the context of Acthar, that would

19   be if it's -- well, strike that.

20         You said patient -- you said the care of

21   patients is crucial.

22         A.    Correct.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 47

1          Q.     Would you agree that patient safety should

2     be the top priority of Express Scripts?

3               MR. FORST:  Objection to the form.

4          A.     So our primary role in health care is to

5     make drugs safer and more affordable, and so both of

6     those are important tenets to our company.

7     BY MR. RASMUSSEN:

8          Q.     And specifically with respect to Acthar,

9     what was Express Scripts' role?

10              MR. FORST:  Objection to the form.

11         A.     So Express Scripts, as a pharmacy benefits

12    manager, we work with clients to create drug lists that

13    represent the most cost-effective products for their

14    employee base to utilize.

15    BY MR. RASMUSSEN:

16         Q.     Okay.  And is it reasonable for a pharmacy

17    benefits manager, PBM, to knowingly profit by selling

18    drugs like Acthar that were egregiously priced?

19         A.     So we have several arms to our company.

20    We have pharmacy benefits manager, we have a specialty

21    pharmacy, we have distribution, and each of them have

22    their own business model.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

                                                        Page 48

1           And, you know, and each of them have their own

2      client base.

3           Q.   That's a perfectly acceptable answer to a

4      different question.  So I just want you to answer my

5      question, if possible.

6                MR. RASMUSSEN:  Can you read my -- can you

7      read the question back?

8                [The pending question was read by the

9                reporter.]

10               MR. FORST:  Objection.

11          A.   So --

12               MR. FORST:  Form.  Asked and answered.

13          A.   Yeah.  So PBMs don't sell drugs.

14     BY MR. RASMUSSEN:

15          Q.   Okay.  So what did the PBM, being Express

16     Scripts in this case, what did -- what was its role

17     with respect to Acthar?

18          A.   So the PBM's role was to make the -- was

19     to choose the formulary and to make sure that the

20     utilization management programs that went with that

21     formulary were adhered to.

22          Q.   And that's it?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 49

1          A.     That's the role of the PBM.

2          Q.     Okay.  And then under the -- under Express

3     Scripts, you also had some subsidiaries that were

4     responsible for exclusively distributing the

5     medication; right?

6          A.     Under Express Scripts we have multiple

7     subsidiaries, including specialty pharmacies and

8     distribution.

9          Q.     Okay.  And so do you believe that it's --

10    strike that.

11         Would you agree that a drug distributor should

12    not needlessly profit by selling drugs that are

13    egregiously priced?

14         A.     I believe the distributor should not --

15    you know, I think that companies are in business to

16    make profits, and remember the pharmaceutical

17    manufacturer sets the price of the drug, not the

18    distributor.

19         And so I do believe that even though a drug can

20    be egregiously priced, it's probably still important to

21    have it available in the marketplace.

22         So in that particular case if the distributor is

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 50

1    profiting from a egregiously-priced drug, it's probably

2    appropriate for their business.

3         Q.    Okay.  And do you think that it's

4    reasonable for Express Scripts to knowingly profit from

5    a drug that it believes is egregiously priced?

6              MR. FORST:  Objection to the form.

7    Foundation.

8         A.    So there is a lot of drugs that are

9    overpriced in the marketplace.  They still need to be

10   made available for patients.  Patient care is really

11   important.

12             And so I think that in those particular cases,

13   while you may not like the price of the drug, you still

14   have to make the product available, so yes.

15   BY MR. RASMUSSEN:

16        Q.    And so is it your opinion that it is --

17   it's responsible for Express Scripts to knowingly

18   participate in selling a drug for indications where

19   there are other better options to treat their disease?

20             MR. FORST:  Objection.  Form, foundation.

21   Assumes facts not in evidence.

22        A.    So the -- these are separate businesses.

Page 51

1   So when a distributor is selling a drug, they don't

2   know what the use of the drug is for.  That's not

3   provided to the distributor.

4         So that's beyond their knowledge of what it

5   would be used for.

6   BY MR. RASMUSSEN:

7         Q.    So you are telling me that in the case of

8   Acthar, the distributor had no idea what indications it

9   was being approved -- or being distributed for?

10        A.    Well, the distributor knows what the drug

11  is available in society for.  They know what -- you

12  know, what doctors are prescribing it for.

13        But their role, the distributor's role, is not

14  to manage the use of the product.

15        Q.    You would agree that placing patients in

16  danger is never appropriate?

17              MR. FORST:  Objection to the form.

18        A.    Yeah, I think that most people believe

19  that placing patients in danger is not appropriate.

20  BY MR. RASMUSSEN:

21        Q.    Right.  You would also agree that you want

22  to keep patients safe?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 52

1        A.    I have already stated that -- yeah.

2        Q.    Yes?

3        A.    Keeping patients safe is one of our goals.

4        Q.    Okay.  And you would also agree that when

5    patients don't receive medications that they need, that

6    exposes them to risk?

7        A.    Yes.

8        Q.    Okay.  And when patients don't receive

9    medications that they need -- strike that.

10        Are you aware of any delays that prevented, in

11    the shipping or distribution or handling of Acthar,

12    that caused patients to not receive the medication on

13    time

14             MR. FORST:  Object -- sorry.  Objection.

15    Form.  Foundation.  Again, scope.

16        A.    I'm not aware of -- of the supply chain

17    issues with Acthar.

18    BY MR. RASMUSSEN:

19        Q.    So you are telling me that in all of these

20    years of talking about Acthar, ad nauseam -- agreed --

21    you have never become aware of any delays in getting

22    the product in to the patients?

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 53

1                    MR. FORST:  Objection to the colloquy

2    testimony.  Form.  Foundation.

3         A.    So back early on, when Acthar was still I

4    believe either owned by Questcor or even owners before

5    Questcor, there was a shortage of Acthar in the

6    marketplace that resulted in rationing of Acthar, but

7    that was, you know, many, many, many years ago.

8    BY MR. RASMUSSEN:

9         Q.    Do you agree that Express Scripts should

10   never prevent or delay medically-necessary treatment

11   due to making a business agreement designed to put

12   profits over patient safety?

13                   MR. FORST:  Objection to the form.

14   Foundation.

15        A.    Can you repeat the question?

16                   MR. RASMUSSEN:  Sure.  Can you read it

17   back, please?

18                   [The pending question was read by the

19                   reporter.]

20        A.    Yes, I would hope that the company

21   prevents harm occurring to patients over a business

22   agreement.

3/29/2023     MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 54

1    BY MR. PLATT:

2         Q.    Do you also agree that Express Scripts

3    should never exaggerate or misrepresent the efficacy of

4    a medication like Acthar?

5         A.    I do not believe the company should

6    exaggerate the benefits of a medication.

7         Q.    And is it your opinion that -- or strike

8    that.

9         Are you aware of anyone at Express Scripts or

10   any of its subsidiaries ever exaggerating the efficacy

11   of Acthar?

12        A.    Personally, no.  You know, I have talked

13   about its -- its relative non-benefit for most of the

14   approved indication -- or approved reasons that it's

15   available, and we were very specific that -- especially

16   for infantile spasm, for instance, to this day it

17   continues to be the drug of choice.

18        Q.    So is that a yes or a no?

19             MR. FORST:  Objection.  Asked and

20   answered.

21        A.    That's a yes.

22   BY MR. RASMUSSEN:

Page 55

1          Q.    Do you agree that a company should never

2     profit by selling or distributing a medication that has

3     been subjected to egregious price increases?

4          A.    No.

5          Q.    And what are the circumstances under which

6     you believe that it's appropriate for a company,

7     particularly a company -- well, strike that.

8          Your -- the role of Express Scripts is to

9     reduce -- drive costs down; right?

10         A.    The role of the pharmacy benefit manager

11    is to control spend and prove -- and hopefully make

12    better health care.

13         Q.    And by pharmacy benefits manager, you mean

14    Express Scripts?

15         A.    I mean, the PBM component of Express

16    Scripts, Incorporated.

17         Q.    Okay.  And if that's the job of a PBM, to

18    drive -- to help reduce costs of medications, and

19    increase access -- agreed?

20         A.    To make appropriate access.

21         Q.    Right, appropriate access.

22         Then explain to me how you believe it is

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 56

1   appropriate to profit from drugs that have been

2   subjected to egregious price increases.

3           A.    Yeah.  So there are many drugs that are

4   vital for the care of patients that have been

5   egregiously priced.  I'll give you a great example.

6   The EpiPen used to cost $94 for a two-pack.  It went up

7   to $300, and then went up to $600.

8           That's an egregiously-priced drug, but it's

9   vital to save lives when someone has an anaphylactic

10  reaction.  And so we make it available to patients to

11  save their life.

12          And so I believe that there are times when

13  egregiously-priced drugs are dispensed from our

14  specialty pharmacy and that that's appropriate.

15          Q.    And you would agree then that if the

16  medication is not medically necessary, like most of the

17  indications are for Acthar, that you should not -- that

18  PBM should not profit by selling the medication that

19  has been subjected to egregious price increases?

20          A.    Again --

21              MR. FORST:  Objection to the form.  Go

22  ahead.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 57

1          A.    Again, the PBM doesn't dispense the drug.

2    And so the role of the PBM is to make sure the drug is

3    being used appropriately, and that's why the PBM puts

4    in place utilization management programs.

5    BY MR. RASMUSSEN:

6          Q.    Yeah, but in this particular instance

7    isn't the distributor of Acthar a subsidiary of Express

8    Scripts; correct?

9          MR. FORST:  Objection.  Hypothetical.

10   Foundation.

11         A.    And so these different subsidiaries

12   function within their own business models and sets of

13   rules.  And there are, you know -- and so they are

14   independent businesses.

15         And so how the PBM runs, and my ability to

16   actively campaign against high drug prices, is

17   independent of what the distributor is doing or the

18   specialty pharmacy may be doing.

19   BY MR. RASMUSSEN:

20         Q.    You agree that for most patients that were

21   prescribed Acthar, it was -- that the drug was not

22   worth what they were paying for it?

Page 58

1            MR. FORST:  Objection to the form.  Lack

2    of foundation.

3        A.    So I don't know what time frame you are

4    talking about.  I don't know the market share for

5    utilization was.  You have got to be more specific.

6            So if for instance the majority of patients are

7    getting it for infantile spasm, that's appropriate use.

8    BY MR. RASMUSSEN:

9        Q.    Sure.  Sure.  Sure.  Well, maybe you could

10   help explain to me, because I'm just referring to --

11   I'm going to refer you to testimony your testimony.

12            [Exhibit 4 marked for identification.]

13   BY MR. RASMUSSEN:

14       Q.    And if you go ahead and turn with me now

15   to Page 45.

16       A.    Yes.

17       Q.    Now, Dr. Miller, this is your testimony

18   under oath that you previously provided; correct?

19       A.    Yes.

20       Q.    All right.  So do you see about

21   three-fourths of the way down the page, Line 18, where

22   it says the deponent -- that's going to be you;

3/29/2023   MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 59

1   correct?

2         A.    Okay.

3         Q.    And you say so Acthar for many indications

4   is not worth what they're charging for it.

5         A.    Correct.

6         Q.    Okay.  And so in this particular -- so you

7   would agree that companies like AvMed that have paid

8   for the medication, that their beneficiaries receive,

9   it wasn't worth it?

10              MR. FORST:  Objection.  Foundation.

11        A.    So I don't know what AvMed's patients were

12  receiving the drug for.  If you could provide me that

13  specific, I would be happy to -- but if they -- I'll

14  make it simple for you.

15        If they weren't receiving it for infantile spasm

16  or if they weren't receiving it for exacerbation of MS,

17  and especially if they have tried other products, then

18  it probably was not beneficial for them to be receiving

19  it.

20  BY MR. RASMUSSEN:

21        Q.    And you would agree that Acthar has

22  limited utilization and for most indications that their

Page 60

1    listed for it's not of much value?

2          A.    For most approvals --

3                MR. FORST:  Just wait a few --

4          A.    Sorry.

5                MR. FORST:  I'm going to object to the

6    scope and now just reading from the prior testimony.

7          A.    So for most things Acthar is approved for,

8    it is not beneficial.

9    BY MR. RASMUSSEN:

10         Q.    And so --

11         A.    There are better products available.

12         Q.    Right.  And there are better products that

13   are far less expensive?

14         A.    Less -- correct.

15         Q.    And therefore when companies like AvMed

16   pay for these medications so their patients can receive

17   them, the drug, they're not getting the value?

18                MR. FORST:  Objection.

19         A.    Again, I would have to know the specifics

20   of what their patients were being prescribed the drug

21   for, but if it was not one of those two that I

22   mentioned, then your statement would be correct.

Page 61

1    BY MR. RASMUSSEN:

2         Q.    Have you ever heard the term captive

3    pharmacy?

4         A.    Yes.

5         Q.    What is a captive pharmacy?

6         A.    So a captive pharmacy is, I believe, one

7    that's owned by its -- by another company and that that

8    company utilizes that pharmacy.

9         Q.    Was Acthar -- was it distributed by a

10   captive pharmacy?

11        A.    So Acthar had I believe limited

12   distribution.  That is it was available through

13   multiple specialty pharmacies.

14        Q.    But in this -- in the context, you would

15   still consider Acthar to be subject to a captive

16   pharmacy?

17             MR. FORST:  Objection to the form.

18        A.    So Acthar was available through multiple

19   pharmacies, and so those pharmacies were not owned by

20   the same entities, and so there may have been a captive

21   pharmacy in the -- but Acthar had a limited

22   distribution model, specialty pharmacies.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 62

1    BY MR. RASMUSSEN:

2         Q.    And I think you interrupted yourself, but

3    there may have been an active or a captive pharmacy in

4    the -- and fill in that blank for me?

5              MR. FORST:  Objection to the form.

6    Hypothetical.  Calls for speculation.  Foundation.

7         A.    So you know, Express Scripts is a PBM,

8    Express Scripts has a specialty pharmacy.

9         If it's -- if it's dispensed out of the Express

10   Scripts pharmacy, which it was, then you could consider

11   that a captive pharmacy to Express Scripts.

12   BY MR. RASMUSSEN:

13        Q.    Okay.  And you would agree that removing

14   captive pharmacies helps make drug prices more fair?

15        A.    I don't know the basis for that

16   assumption.

17        Q.    Sure.  I'm going to show you what we are

18   going to mark as Exhibit 5.

19              [Exhibit 5 marked for identification.]

20   BY MR. RASMUSSEN:

21        Q.    And if you would, go ahead and turn over

22   to the second page.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 63

1         Exhibit 5 is -- for the record, it's an e-mail

2    exchange, but at the top of the first page is dated

3    December 15th, 2015.  It's an e-mail from Jennifer

4    Holian to Nicole Hebbert.

5              MR. FORST:  Does this have a Bates number,

6    Khristian?

7              MR. RASMUSSEN:  You know, I don't

8    understand why these things are not printing the Bates

9    numbers, but it's probably something that -- with our

10   system that we loaded them into.

11             MR. FORST:  Okay.

12             MR. RASMUSSEN:  That's my guess.

13             MR. FORST:  All right.  So we'll swap

14   these out?  Is that the plan?

15             MR. RASMUSSEN:  Yeah.

16             MR. FORST:  I'm going to object because

17   there's no way for me to tell if these are outside the

18   scope, but go ahead.

19   BY MR. RASMUSSEN:

20        Q.    Okay.  So Doctor, I want to invite your

21   attention to the second page of this document.  And if

22   you'll come down -- if you see the bullet points on the

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 64

1    left-hand side, come down to the second-to-last bullet

2    point.

3          And you see where it says Dr. Steve Miller was

4    interviewed by reporters?

5          A.    Uh-huh.

6          Q.    Okay.  And it says the interview addressed

7    how Express Scripts is making U.S. drug pricing more

8    fair, including -- what?  And go ahead and read the

9    rest of that sentence out loud, please.

10         A.    Including our approach to the

11   indication-based pricing, our removal of captive

12   pharmacies from our retail network, and our solution

13   that provides a dollar Daraprim alternative to our

14   clients and patients.

15         Q.    And so my question is, do you still agree

16   with that statement, that by removing captive

17   pharmacies that helps drive down the cost of

18   medication?

19         A.    So in some cases, a pharmaceutical company

20   would have its own pharmacy.  That would be their

21   captive pharmacy.  And this was mainly around

22   dermatologic products.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 65

1      Q.    Right.

2      A.    And so we removed those pharmacies so that

3   they could not overcharge.

4      Q.    Now, did anyone ever try to remove this

5   captive pharmacy, as you explained it, with respect to

6   Acthar?

7            MR. FORST:  Objection to the form.

8   Mischaracterizes testimony.

9      A.    I do not know what was attempted for the

10  retail networks for Daraprim.

11  BY MR. RASMUSSEN:

12     Q.    So that's a no, you're not aware?

13     A.    No --

14           MR. FORST:  Objection.  That's not what he

15  said.  You asked about Acthar.  The answer was about

16  Daraprim.  So saying the answer is no doesn't make any

17  sense, Khristian.  But you have the opportunity to

18  reask, if you would like.

19  BY MR. RASMUSSEN:

20     Q.    And so at this time, in 2014, 2015,

21  Express Scripts was eliminating the -- this captive

22  pharmacy as it relates to dispensing Valeant or

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 66

1    Valeant -- or as it relates to Valeant's dermatologic

2    products?

3              MR. FORST:  Objection to the form.

4         A.    Correct.  It was -- we were going --

5    Valeant had dermatologic products, they had pharmacies

6    that they had a relationship with, and we were

7    eliminating those pharmacies from the network.

8    BY MR. RASMUSSEN:

9         Q.    And that's because Valeant had these

10   dermatology products that were really expensive, and

11   there was -- there were a lot more safety -- a lot more

12   alternatives that were just as effective that were less

13   expensive?

14        A.    That is correct.

15             MR. FORST:  Objection to the form.

16   BY MR. RASMUSSEN:

17        Q.    And just like the case with Acthar, for

18   almost all the indications, there are far less

19   expensive drugs that are just as efficacious?

20             MR. FORST:  Objection to the form.

21        A.    For most of the things it is approved for.

22   Outside of, you know, infantile spasm and exacerbations

Page 67

1    of MS, there are better drugs that are less expensive.

2    BY MR. RASMUSSEN:

3         Q.    That's right.  And you're not aware of

4    anyone trying to address this captive pharmacy as it

5    relates to Acthar?

6         A.    The egregious price of Acthar was set by

7    the manufacturer, and so that was not a solution that I

8    was aware of.

9              MR. FORST:  Objection to the form.

10   Mischaracterizes prior testimony.

11   BY MR. RASMUSSEN:

12        Q.    All right.  I'm now going to show you what

13   we are going to mark as Exhibit 6.

14             MR. RASMUSSEN:  And just let me know if

15   these are documents that are outside the scope.  I

16   don't think that they are, but if they are --

17             MR. FORST:  Well if there's no Bates

18   number there's no way for us to easily tell that.  That

19   was the whole point.

20             MR. RASMUSSEN:  Oh, okay.  Got you.

21             [Exhibit 6 marked for identification.]

22   BY MR. RASMUSSEN:

Page 68

1          Q.    So I would invite your attention now

2    to -- this is an e-mail dated November 23rd, 2015.

3          You know David -- is it Whitrap?

4          A.    Correct.

5          Q.    What -- and who is that?

6          A.    As we talked about before, he works for

7    Brian Henry.  He is in public relations.

8          Q.    You know Ed -- is it Adamcik?

9          A.    Adamcik.

10         Q.    Adamcik.  You know him as well; right?

11         A.    Yes, he was a vice president at Pharma

12   Contracting.

13         Q.    Okay.  Well, come down -- they were

14   talking about this Barron's developing story.

15         Do you remember when this happened back in 2015?

16         A.    Not specifically.

17         Q.    Do you see the sentence where it says we

18   expect the story?

19         A.    Yeah.

20         Q.    Okay.  And then I want you to go ahead and

21   read those -- read that sentence and the one following

22   it out loud, please.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 69

1          A.    We expect the story will be very negative

2    about Mallinckrodt, which has significantly raised the

3    price of Acthar gel since acquiring the rights to the

4    drug.  We also expect the story will question our role

5    in providing the drug given our stance against high

6    cost drugs.

7          Q.    So do you think that it's reasonable for a

8    company to knowingly profit by selling and/or

9    distributing a drug that has been subject to egregious

10   price increases?

11              MR. FORST:  Objection to the form.  Asked

12   and answered four times.

13         A.    So we have previously answered this.  That

14   is, we used the example of EpiPens.  EpiPens are

15   egregiously-priced.  We made them available because

16   they are life-saving products.  There are many cancer

17   drugs that are egregiously-priced.  We make those

18   available because they change the lives of patients

19   that receive them.

20         Acthar gel changes -- is the best drug for

21   infantile spasm, so making it available is appropriate

22   for a specialty pharmacy.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 70

1          Q.    And then do you see the third bullet on

2    the page?

3          A.    Yes.

4          Q.    And here it says Dr. Steve Miller spoke

5    with Reuters and reinforced our commitment to taking

6    action against pharmacies that are not adhering to our

7    network agreements.

8                You agreed with that; correct?

9          A.    Correct.

10         Q.    And you're not aware of any action being

11   taken against any pharmacy as it relates to Acthar

12   sales?

13         A.    I am not aware of any pharmacy taking

14   actions against Acthar.

15         Q.    And you're not aware of any action that

16   was taken by you or anyone at Express Scripts against

17   any pharmacy distributing Acthar, or selling Acthar?

18         A.    I am not aware.

19         Q.    Okay.  So would that -- so is it safe then

20   to assume that the policy -- the policies were all

21   being adhered to?

22                   MR. FORST:  Objection --

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 71

1   BY MR. RASMUSSEN:

2        Q.    By the pharmacies?

3              MR. FORST:  Objection to the form.

4   Foundation.  Incomplete hypothetical.

5        A.    I can't really address what was happening

6   at pharmacies that dispense Acthar gel.

7              MR. RASMUSSEN:  All right.  Let's take a

8   quick break.  We may be done.

9              MR. FORST:  Okay.

10             THE VIDEOGRAPHER:  Off the record at 10:28

11   AM.

12             [A recess was taken.]

13             THE VIDEOGRAPHER:  Back on the record at

14   10:33 AM.

15             MR. RASMUSSEN:  Thanks, Doctor.  I don't

16   have any further questions for you.

17             MR. FORST:  Pass the witness, I assume?

18             MR. PLATT:  Yes.

19             MR. FORST:  Nothing -- okay.

20                        EXAMINATION

21   BY MR. FORST:

22        Q.    I just have one, Dr. Miller, and I think

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.    Steve Miller

                                                    Page 72

1    it's to clean up a question that counsel for MSP asked,

2    and I'm going to just go back and read the transcript,

3    because I think that's easiest.  And it's specifically

4    line, for everybody's benefit -- question that starts

5    at 43:22.

6            And it says, and it is your opinion -- or strike

7    that.  Are you aware of anyone at Express Scripts or

8    any of its subsidiaries ever exaggerating the efficacy

9    of Acthar?

10           You answered, personally no.  You know, I have

11   talked about -- it goes on -- and then there was a

12   follow-up question, so is that a yes or a no?

13           And you said, that's a yes.

14           So I think -- I'm going to go back to the

15   original question just to get your answer again.

16           Are you aware of anyone at Express Scripts or

17   any of its subsidiaries ever exaggerating the efficacy

18   of Acthar?

19               MR. RASMUSSEN:  Objection to counsel's

20   testifying.

21   BY MR. FORST:

22           Q.   You can answer.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 73

1          A.    No.

2               MR. FORST:  Okay.  That's it.

3               THE VIDEOGRAPHER:  Off the record at 10:34

4    AM.

5               [Discussion off the record.]

6               THE REPORTER:  So Khristian and William,

7    same orders as yesterday, E-Tran for both?

8               MR. PLATT:  Yeah.

9               MR. RASMUSSEN:  Yeah.

10

11                    [SIGNATURE RESERVED.]

12

13

14

15

16

17

18

19

20

21

22

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 74

1                    C E R T I F I C A T E

2

3              I, Jude Arndt, a Certified Shorthand

4      Reporter and Certified Court Reporter, do hereby

5      certify that STEVE MILLER, prior to the commencement of

6      the examination, was sworn by me to testify the truth,

7      the whole truth and nothing but the truth.

8              I DO FURTHER CERTIFY that the foregoing is a

9      true and accurate transcript of the proceedings as

10     taken stenographically by and before me at the time,

11     place and on the date hereinbefore set forth.

12             I DO FURTHER CERTIFY that I am neither a

13     relative nor employee nor attorney nor counsel of any

14     of the parties to this action, and that I am neither a

15     relative nor employee of such attorney or counsel, and

16     that I am not financially interested in this action.

17

18

19     _____

20     JUDE ARNDT, CSR, CCR, RPR

21     CSR NO. 084-004847

22     CCR NO. 1450

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 75

1       Steve Miller, c/o

        QUINN EMANUEL URQUHART & SULLIVAN, LLP

2       1300 I Street NW, Suite 900

        Washington, DC  20005

3

        Case: MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.

4       Date of deposition: March 29, 2023

        Deponent: Steve Miller

5

6       Please be advised that the transcript in the above

        referenced matter is now complete and ready for signature.

7       The deponent may come to this office to sign the transcript,

8       a copy may be purchased for the witness to review and sign,

9       or the deponent and/or counsel may waive the option of

10      signing. Please advise us of the option selected.

11      Please forward the errata sheet and the original signed

12      signature page to counsel noticing the deposition, noting the

13      applicable time period allowed for such by the governing

14      Rules of Procedure. If you have any questions, please do

15      not hesitate to call our office at (202)-232-0646.

16

17

18      Sincerely,

19      Digital Evidence Group

20      Copyright 2023 Digital Evidence Group

21      Copying is forbidden, including electronically, absent

22      express written consent.

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

Page 76

1      Digital Evidence Group, L.L.C.

       1730 M Street, NW, Suite 812

2      Washington, D.C. 20036

       (202) 232-0646

3

4      SIGNATURE PAGE

       Case: MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.

5      Witness Name: Steve Miller

       Deposition Date: March 29, 2023

6

       I do hereby acknowledge that I have read

7      and examined the foregoing pages

       of the transcript of my deposition and that:

8

9      (Check appropriate box):

       (  ) The same is a true, correct and

10     complete transcription of the answers given by

       me to the questions therein recorded.

11     (  ) Except for the changes noted in the

       attached Errata Sheet, the same is a true,

12     correct and complete transcription of the

13     answers given by me to the questions therein

14     recorded.

15

16     _____          _____

17       DATE                    WITNESS SIGNATURE

18

19

20

21     _____          _____

22       DATE                        NOTARY

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.   Steve Miller

```
                                                              Page  77

 1       Digital Evidence Group, LLC

 2       1730 M Street, NW, Suite 812

 3       Washington, D.C.  20036

 4       (202)232-0646

 5

 6                      ERRATA SHEET

 7

 8       Case: MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.

 9       Witness Name: Steve Miller

10       Deposition Date: March 29, 2023

11       Page No.    Line No.      Change

12

13

14

15

16

17

18

19

20

21       _____      _____

22       Signature                          Date
```

3/29/2023     MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.     Steve Miller

Page 1

**A**

ability 38:3 57:15
able 40:15 41:15
  42:4
absent 75:21
abstract 30:22
acceptable 48:3
access 16:2 36:13
  36:14 55:19,20
  55:21
accessed 17:8
accurate 19:1,17
  21:22 74:9
acknowledge
  76:6
acquiring 69:3
acquisition 8:18
  8:22
Acthar 8:10 9:2
  9:10,13 10:9,11
  11:5 13:10
  19:19 20:1,7
  21:8,11,14,19
  22:6,12 24:20
  25:6,13,16,19
  28:17 29:16,22
  30:7,18 31:8,14
  31:16,20 32:4
  32:18,19,21
  33:5 41:8,12,18
  42:1,6,18 43:4
  43:14 44:21
  45:1,22 46:7,18
  47:8,18 48:17
  51:8 52:11,17
  52:20 53:3,5,6
  54:4,11 56:17
  57:7,21 59:3,21
  60:7 61:9,11,15
  61:18,21 65:6
  65:15 66:17
  67:5,6 69:3,20
  70:11,14,17,17
  71:6 72:9,18
action 70:6,10,15
  74:14,16
actions 70:14

active 62:3
actively 57:16
ad 52:20
Adamcik 68:8,9
  68:10
address 34:11,15
  34:17 67:4 71:5
addressed 23:2
  27:10 64:6
adhered 48:21
  70:21
adhering 70:6
Administration
  39:3,6
advance 15:5
advise 75:10
advised 75:6
affairs 27:13
  39:22 41:3
affordable 47:5
age 19:2
ago 53:7
agree 11:10
  12:17 45:21
  47:1 49:11
  51:15,21 52:4
  53:9 54:2 55:1
  56:15 57:20
  59:7,21 62:13
  64:15
agreed 52:20
  55:19 70:8
agreement 53:11
  53:22
agreements 70:7
ahead 56:22
  58:14 62:21
  63:18 64:8
  68:20
al 1:7,8 6:4 75:3
  75:3 76:4,4
  77:8,8
allowed 75:13
alternative 41:7
  41:19 42:1,6
  64:13
alternatives

42:13 66:12
Ambler 3:7
anaphylactic
  56:9
and/or 69:8 75:9
answer 12:16,21
  35:8 39:14
  42:10 48:3,4
  65:15,16 72:15
  72:22
answered 22:8
  25:20 48:12
  54:20 69:12,13
  72:10
answers 76:10,13
antibiotic 45:14
  45:17
antibiotics 44:12
  44:13,15,18
anybody 39:19
  42:12
anyone's 31:15
APPEARANC...
  3:1 4:1
appears 18:17
applicable 75:13
approach 64:10
appropriate 32:5
  32:7 38:6 43:17
  44:21 50:2
  51:16,19 55:6
  55:20,21 56:1
  56:14 58:7
  69:21 76:9
appropriately
  33:13 44:4,19
  57:3
approval 26:12
  26:13 33:2
approvals 46:5
  46:11 60:2
approved 26:8,11
  45:2 51:9 54:14
  54:14 60:7
  66:21
Ard 1:4 6:3 75:3
  76:4 77:8

arms 47:19
Arndt 1:18 2:4
  4:18 6:11,13
  74:3,20
article 23:22 28:5
  28:11
asked 13:20 22:8
  25:20 34:19,22
  35:1,6 48:12
  54:19 65:15
  69:11 72:1
asking 25:15
associated 36:16
association 6:13
assume 12:3
  70:20 71:17
Assumes 50:21
assumption
  62:16
attached 76:11
attaches 24:17
attempted 65:9
attend 12:1
attendance 11:14
attended 11:3
attention 63:21
  68:1
attorney 74:13
  74:15
attorneys 24:16
August 23:1,19
auth 30:18
authorization
  26:3,6 28:4,14
  28:16 29:15,22
  30:4,7,10,14
  31:8 32:2 33:14
  45:8
authorizations
  26:15 32:1
available 46:5
  49:21 50:10,14
  51:11 54:15
  56:10 60:11
  61:12,18 69:15
  69:18,21
AvMed 59:7

60:15
AvMed's 59:11
aware 21:11,12
  21:14 36:1,6
  43:2 44:20
  52:10,16,21
  54:9 65:12 67:3
  67:8 70:10,13
  70:15,18 72:7
  72:16

**B**

back 8:14 22:12
  37:7 42:16 48:7
  53:3,17 68:15
  71:13 72:2,14
back-and-forth
  12:13
Barron's 68:14
base 47:14 48:2
basis 29:18 30:16
  62:15
Bates 23:9 63:5,8
  67:17
Baumann 4:15
  7:6,6
beginning 42:16
behalf 3:3,11
  6:18 7:1,4
  10:20
believe 11:11
  13:11 15:21
  16:4,7 22:6
  29:14,17 30:14
  30:19,22 35:5,6
  35:21 41:13
  49:9,14,19
  51:18 53:4 54:5
  55:6,22 56:12
  61:6,11
believes 50:5
beneficial 59:18
  60:8
beneficiaries
  59:8
benefit 45:18
  55:10 72:4

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.    Steve Miller

**benefits** 47:11,17
47:20 54:6
55:13
**best** 32:10,11
44:10 69:20
**better** 33:7 50:19
55:12 60:11,12
67:1
**beyond** 51:4
**biopharmaceut...**
10:5
**bit** 18:3
**blank** 62:4
**blog** 10:17 15:14
15:16,17,18,21
16:3,4,10,20
17:1,6,7,9,11
17:15,16,19,22
19:13 20:15,18
21:18 22:13
**bold** 18:13
**boss** 14:20
**bought** 33:22
**Boulevard** 2:3
6:8
**box** 76:9
**break** 71:8
**Brentwood** 2:3
6:8
**Brian** 10:16,19
10:22 13:18,21
14:9,14,19,21
15:15 16:9,20
17:11,18 23:1
23:14 68:7
**Bryson** 3:12,18
**bullet** 63:22 64:1
70:1
**business** 31:18
35:15,18 36:7
36:11,20 47:22
49:15 50:2
53:11,21 57:12
**businesses** 50:22
57:14

― **C** ―

**C** 74:1,1
**c/o** 75:1
**call** 15:9 38:16
75:15
**called** 15:20
20:19 21:1
31:12
**Calls** 19:21 62:6
**campaign** 57:16
**campaigned**
10:11 25:3
**cancer** 69:16
**captive** 61:2,5,6
61:10,15,20
62:3,11,14
64:11,16,21
65:5,21 67:4
**carbon** 14:10
**care** 32:10,14
43:21 46:20
47:4 50:10
55:12 56:4
**career** 31:14
**case** 1:4,8 6:5 8:9
24:15 29:19,21
38:22 48:16
49:22 51:7
66:17 75:3 76:4
77:8
**cases** 50:12 64:19
**category** 33:9
**caused** 52:12
**CCR** 1:18 74:20
74:22
**certain** 31:2
38:21
**Certified** 2:5,5
74:3,4
**certify** 74:5,8,12
**chain** 27:6 52:16
**change** 37:15
69:18 77:11
**changes** 69:20
76:11
**charging** 59:4
**Check** 76:9
**chief** 7:7

**choice** 33:6 46:1
46:5,9,13 54:17
**choose** 48:19
**chooses** 26:14
**choosing** 32:15
45:10 46:14,16
**Cigna** 8:18,19,22
**circulation** 13:4
**circumstances**
55:5
**cite** 42:4
**Citibank** 11:2,13
13:9 27:8
**citing** 28:2
**city** 1:3 2:3 3:3
3:19,20 6:3,18
43:3
**Claims** 1:6 3:11
75:3 76:4 77:8
**clarify** 37:18
**class** 3:4 6:19
**Clayton** 1:13 2:4
6:8
**clean** 72:1
**clear** 9:6,17 40:2
**clearly** 18:12
**client** 9:12 48:2
**clients** 8:5 31:12
31:22 43:2
47:12 64:14
**clinical** 38:13
**Coleman** 3:12,18
**colloquy** 53:1
**combination**
20:21
**combo** 20:22
**come** 7:16 63:22
64:1 68:13 75:7
**commencement**
74:5
**commissioner**
40:22
**commitment**
70:5
**committed** 32:9
**communications**
14:2,4 40:19

41:4,18
**companies** 49:15
59:7 60:15
**company** 8:17,18
21:12 28:18
36:12 39:15
47:6,19 53:20
54:5 55:1,6,7
61:7,8 64:19
69:8
**complaints** 24:19
**complete** 75:6
76:10,12
**component** 55:15
**compound** 38:1
41:7
**compounded**
37:20 38:4
**compounding**
38:2,8,16,20,22
39:4 40:8,14
41:10 42:13
**CON'T** 4:1
**conceptual** 41:6
41:7
**concerned** 32:4
**conclusion** 30:16
**conditions** 44:21
**conference** 11:3
11:7,14,15,20
13:9 27:8 34:7
34:8,19 35:13
36:19
**conferences** 9:17
**confidential** 13:6
**consent** 75:22
**consider** 61:15
62:10
**consumption**
17:12
**contacted** 40:7
**contain** 28:3
**containment**
27:22
**context** 46:18
61:14
**continues** 54:17

**Contracting**
68:12
**control** 32:15
55:11
**controversy**
18:13
**conversation**
39:20 41:22
**conversations**
39:2,5,16 40:18
**copies** 14:10
**copy** 75:8
**Copying** 75:21
**Copyright** 75:20
**Coral** 3:14
**correct** 8:11,12
9:7,8 11:18,21
13:8 14:12
16:11,12 17:3,4
19:7 22:14 23:2
27:9 30:4 31:3
35:22 36:20,22
37:13,14 43:6
46:10,22 57:8
58:18 59:1,5
60:14,22 66:4
66:14 68:4 70:8
70:9 76:9,12
**cost** 26:10 27:22
56:6 64:17 69:6
**cost-effective**
47:13
**costs** 28:3 32:15
55:9,18
**counsel** 3:1 4:11
6:14,21 7:7
72:1 74:13,15
75:9,12
**counsel's** 72:19
**couple** 31:15
37:2
**court** 1:1 2:5 6:4
6:12 7:8 12:14
74:4
**cover** 9:22
**covered** 31:17
33:14 34:10

3/29/2023     MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.     Steve Miller

Page 3

covers 10:5
create 40:8,15
  47:12
criticism 12:6
criticized 13:10
  25:18
crucial 43:22
  46:21
CSR 1:18 74:20
  74:21
cut 28:6

_____ D _____
D.C 1:21 76:2
  77:3
danger 51:16,19
Daraprim 18:7
  18:13,15,19
  19:4,6,13 25:14
  34:1 35:7 36:2
  36:11,20 37:11
  37:13,16,21
  38:17 39:4,17
  40:3,5,6,10,13
  40:16 41:2,11
  64:13 65:10,16
Daraprim's
  35:15
data 30:9
date 11:9 29:17
  30:3,18 74:11
  75:4 76:5,17,22
  77:10,22
dated 10:22 23:1
  63:2 68:2
David 14:10,13
  68:3
day 54:16
DC 4:5 75:2
December 63:3
decides 45:16
decision 45:16
Defendant 1:5
Defendants 1:9
delay 53:10
delays 52:10,21
deleterious 45:19

depends 26:13
deponent 58:22
  75:4,7,9
depose 13:18
deposed 8:3 39:7
deposition 1:12
  2:1 5:10 6:2,7
  7:16,19 8:1
  13:19 30:17
  42:16 75:4,12
  76:5,7 77:10
dermatologic
  64:22 66:1,5
dermatology
  66:10
describe 12:6
describes 14:22
designated 1:6
designed 53:11
developing 68:14
different 48:4
  57:11
difficult 12:19,20
Digital 1:20 6:12
  6:13 75:19,20
  76:1 77:1
direct 14:19 39:5
disagree 23:8
  39:11
discount 44:2
discussion 13:7
  24:18 73:5
discussions 24:8
  29:19
disease 50:19
diseases 33:4,7,8
  46:12
dispense 57:1
  71:6
dispensed 56:13
  62:9
dispensing 65:22
displeasure 40:3
  40:5
distribute 10:15
distributed 51:9
  61:9

distributing 11:2
  49:4 55:2 69:9
  70:17
distribution
  47:21 49:8
  52:11 61:12,22
distributor 49:11
  49:14,18,22
  51:1,3,8,10
  57:7,17
distributor's
  51:13
District 1:1,1 6:4
  6:5
DIVISION 1:2
doctor 45:16
  63:20 71:15
doctor's 38:3
doctors 44:13,18
  51:12
document 10:14
  11:2 13:20 23:8
  27:17 42:4
  63:21
documents 7:22
  22:19 23:6 24:8
  24:15,16 33:16
  67:15
doing 57:17,18
dollar 64:13
dollars 24:14
Dr 7:15 8:8 22:22
  26:2 28:13
  33:15 37:10
  42:15 43:11
  58:17 64:3 70:4
  71:22
draft 16:20 17:6
drafted 16:10
  17:19
drafts 17:11
drew 40:14
drive 55:9,18
  64:17
drug 9:13 12:8
  18:8,20 19:3,5
  20:19 21:1,6

  22:2 24:9 25:9
  25:10 26:8
  31:12 33:5
  36:13,15 39:3,6
  43:22 44:1,7
  45:20 47:12
  49:11,17,19
  50:1,5,13,18
  51:1,2,10 54:17
  56:8 57:1,2,16
  57:21 59:12
  60:17,20 62:14
  64:7 69:4,5,9
  69:20
drugs 10:10,13
  10:18 19:20
  20:22 21:5 22:2
  22:4 25:4 31:13
  32:11,12 36:3
  36:14 44:2,3
  47:5,18 48:13
  49:12 50:8 56:1
  56:3,13 66:19
  67:1 69:6,17
due 53:11
Duexis 21:2,4
duly 7:12

_____ E _____
E 74:1,1
e-mail 5:7,8,9,11
  5:12 10:21 14:9
  16:10,16,18
  22:22 23:13,19
  23:21 26:17,21
  26:22 27:1 28:7
  42:5 63:1,3
  68:2
E-Tran 73:7
earlier 18:7
  25:15 37:10
  43:16 45:1,9
early 31:11,14
  53:3
easiest 72:3
easily 67:18
Ed 68:8

effect 45:20
effective 45:5,6
  66:12
effects 45:20
efficacious 44:9
  44:22 66:19
efficacy 54:3,10
  72:8,17
effort 14:6
egregious 9:14
  55:3 56:2,19
  67:6 69:9
egregiously
  47:18 49:13,20
  50:5 56:5
egregiously-pri...
  50:1 56:8,13
  69:15,17
either 36:16 53:4
electronically
  75:21
eliminating
  65:21 66:7
Emanuel 4:3 7:1
  7:4 75:1
employed 37:16
  43:4
employee 47:14
  74:13,15
employment 9:3
  21:9
entire 9:3 21:9
entities 7:2,4
  61:20
EpiPen 56:6
EpiPens 69:14,14
errata 75:11
  76:11 77:6
especially 12:17
  54:15 59:17
et 1:7,8 6:4 75:3
  75:3 76:4,4
  77:8,8
Everett 27:1,2,7
  39:7,8
everybody's 72:4
evidence 1:20

3/29/2023      MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.      Steve Miller

Page  4

6:12,13 50:21
75:19,20 76:1
77:1
exacerbation
59:16
exacerbations
33:1,10 66:22
exact 19:2
exaggerate 54:3
54:6
exaggerating
54:10 72:8,17
examination 5:2
5:3,4 7:13 43:9
71:20 74:6
examined 2:2
76:7
example 9:13
10:12 12:5 22:1
28:2 44:10
45:14 56:5
69:14
examples 9:9,15
13:1 20:6 21:19
22:1 24:8,21
25:5,17,22
exchange 63:2
exclusively 49:4
executives 27:5
exhibit 5:7,8,9,10
5:11,12 10:21
13:12,15 14:9
22:20 23:5
26:18,19 58:12
62:18,19 63:1
67:13,21
EXHIBITS 5:6
expect 68:18 69:1
69:4
expensive 37:21
43:22 44:2
60:13 66:10,13
66:19 67:1
explain 23:22
26:5 43:20
45:12 55:22
58:10

explained 65:5
explicitly 13:10
exposes 52:6
express 1:8 4:2
4:11,12,13 7:2
7:4,7 8:15 9:3
10:17 14:1,5
15:16,17,21
16:5,7 17:3,7
21:9 27:14
28:13,16 31:6
35:14,18 36:1
36:10,19 37:16
38:15,20 39:19
40:6 41:8,21
42:5 43:4 47:2
47:9,11 48:15
49:2,6 50:4,17
53:9 54:2,9
55:8,14,15 57:7
62:7,8,9,11
64:7 65:21
70:16 72:7,16
75:22
expressed 40:2,4
——————
F
F 74:1
fact 36:2
facts 50:21
fair 15:10 62:14
64:8
familiar 15:18
familiarize 22:18
Fane 2:2 6:7
far 60:13 66:18
FDA 39:16,16,20
40:2,2,12,18,19
40:22 41:1,4,14
41:18,22 42:5
42:13
fiduciary 35:9
Fierce 9:22 10:3
10:4,7 15:22
File 6:1
fill 62:4
financially 74:16

find 24:17 34:21
finish 12:9,21
firm 6:17
first 7:11 8:1,3
14:22 21:12
23:5 26:22 63:2
first-line 33:11
FL 3:14
focus 25:13
follow-up 72:12
followed 31:11
31:11
following 68:21
follows 7:12
Food 39:3,6
Forbes 34:7,8,11
34:15,19 35:1
35:13 36:18
forbidden 75:21
foregoing 74:8
76:7
form 18:16 19:21
24:3,11 30:2,8
35:16 36:21
38:19 39:9 41:9
42:2,7 47:3,10
48:12 50:6,20
51:17 52:15
53:2,13 56:21
58:1 61:17 62:5
65:7 66:3,15,20
67:9 69:11 71:3
formulary 48:19
48:21
Forst 4:7 5:4
6:22 7:1 12:9
16:13 17:20
18:16 19:21
21:20 22:8,15
23:4,9 24:3,11
25:1,11,20
27:16 28:19
30:1,8 35:16
36:4,21 38:18
39:9,12 41:9
42:2,7,19 47:3
47:10 48:10,12

50:6,20 51:17
52:14 53:1,13
54:19 56:21
57:9 58:1 59:10
60:3,5,18 61:17
62:5 63:5,11,13
63:16 65:7,14
66:3,15,20 67:9
67:17 69:11
70:22 71:3,9,17
71:19,21 72:21
73:2
forth 74:11
forum 9:12
forums 9:14
forward 75:11
foundation 16:14
17:20 21:21
24:4 25:2 30:2
36:4 50:7,20
52:15 53:2,14
57:10 58:2
59:10 62:6 71:4
four 69:12
frame 58:3
function 44:4
57:12
further 43:7
71:16 74:8,12
——————
G
Gables 3:14
Garden 3:19,20
Gary 27:10,12,13
28:8
gel 19:19 20:1,7
30:18 31:14,16
31:20 32:19
33:5 69:3,20
71:6
gel's 32:21
general 9:21
11:21,22 13:4
generally 11:17
15:9 20:14
22:18 25:8
generic 19:14

20:1,21 21:5
22:4
generics 25:14
getting 32:10
44:2 52:21 58:7
60:17
give 8:13 9:9,15
12:16 24:21
25:4,17,21
26:17,18 42:12
44:10 46:3 56:5
given 20:6 69:5
76:10,13
gives 21:22
giving 34:18
go 8:13 34:20
42:16 56:21
58:14 62:21
63:18 64:8
68:20 72:2,14
goals 52:3
goes 16:5,7 72:11
going 10:21
12:15,16,17,19
15:9 20:14
22:17 23:4
26:17 27:16
30:12,12 37:1
38:16 41:6
42:15 58:11,22
60:5 62:17,18
63:16 66:4
67:12,13 72:2
72:14
Good 6:16,22
7:15 43:11,12
governing 75:13
government
27:13 39:22
41:3
great 56:5
Grossman 3:12
3:18
Group 1:20 6:12
6:13 75:19,20
76:1 77:1
guess 63:12

Case: 3:17-cv-50107 Document #: 853-2 Filed: 07/19/23 Page 82 of 88 PageID #:39640

3/29/2023        MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.        Steve Miller

Page 5

**H**

**H** 3:9
**Hamann** 4:8 7:3
    7:3
**handling** 52:11
**happened** 68:15
**happening** 71:5
**happy** 59:13
**harm** 53:21
**Hauck** 27:19
    28:7
**Haviland** 3:5
    6:17 8:3
**health** 32:10 47:4
    55:12
**heard** 61:2
**Hebbert** 63:4
**held** 6:7
**help** 42:8 55:18
    58:10
**helps** 62:14 64:17
**Henry** 10:16,19
    10:22 13:18,21
    14:9,14,22
    15:15 16:9,20
    17:18 18:4
    21:17 22:12
    23:1,14,19 68:7
**Henry's** 17:11
**hereinbefore**
    74:11
**hesitate** 75:15
**high** 10:10,18
    24:9 25:4,9,10
    42:17 43:3
    57:16 69:5
**hikes** 9:14
**hit** 31:14
**HIV** 36:17
**Holian** 63:4
**hope** 53:20
**hopefully** 55:11
**Hughes** 3:5 6:17
**hypothetical** 57:9
    62:6 71:4

**I**

**idea** 51:8
**identification**
    13:15 22:20
    26:19 58:12
    62:19 67:21
**II** 3:9 6:17
**Illinois** 1:1 6:5,5
**imagine** 43:13
**impacts** 44:15
**implementation**
    31:7
**important** 32:5
    36:15 40:11
    43:17 44:4 47:6
    49:20 50:11
**improve** 32:14
**In-house** 4:11
**inappropriate**
    44:12,16
**inappropriatel...**
    10:13
**include** 11:22
    21:19 22:1,12
    33:9
**included** 11:21
**including** 49:7
    64:8,10 75:21
**Incomplete** 71:4
**Incorporated**
    55:16
**incorrectly** 32:21
**increase** 12:8
    18:9,14 22:2
    24:19 35:7
    37:12,12,19
    55:19
**increased** 19:5,6
    22:4 34:1
**increases** 24:18
    25:19 55:3 56:2
    56:19 69:10
**independent**
    29:20 57:14,17
**INDEX** 5:1,6
**indicate** 16:11
**indicated** 33:3,10
**indication** 54:14

**indication-based**
    64:11
**indications** 32:17
    32:22 45:3,4,22
    46:4,8,11 50:18
    51:8 56:17 59:3
    59:22 66:18
**industry** 10:1,5
**infantile** 32:22
    33:6 54:16 58:7
    59:15 66:22
    69:21
**infection** 36:16
    44:14 45:18
**ingredients** 38:6
**instance** 44:14
    54:16 57:6 58:6
**interact** 14:5
    40:1
**interacts** 39:15
**interested** 74:16
**internet** 17:7
**interpose** 39:13
**INTERROGA...**
    5:1
**interrupted** 62:2
**interview** 64:6
**interviewed** 64:4
**introduce** 6:14
**investor** 9:17
    12:1
**investors** 11:4,18
    11:19 13:7
**invitations** 12:4
**invite** 63:20 68:1
**involved** 38:22
**involving** 44:20
**issue** 31:22 32:3
**issues** 52:17

**J**

**Jennifer** 63:3
**Jeune** 3:13
**job** 14:1 55:17
**joined** 8:17 21:12
**journal** 10:4
**Jude** 1:18 2:4

    6:12 74:3,20
**jury** 22:19 26:5

**K**

**keep** 30:12 43:15
    51:22
**Keeping** 52:3
**Keith** 4:7 6:22
**keithforst@qui...**
    4:9
**Khristian** 3:16
    6:20 63:6 65:17
    73:6
**kids** 31:17,17
**kind** 22:18 24:22
    41:5
**Kline** 27:10,12
    27:13 28:8
**know** 7:18 9:13
    9:16,16,21 10:5
    10:12 11:11
    13:3,21 15:11
    15:13 16:2 17:8
    18:22 19:2,4
    20:15 21:4,10
    24:1 26:2,9
    27:2,20 28:1
    30:3,6,13 31:19
    32:9,15 33:18
    35:5 37:15
    39:19,22 41:7
    41:21 42:3
    43:21 48:1
    49:15 51:2,11
    51:12 53:7
    54:12 57:13
    58:3,4 59:11
    60:19 62:7,15
    63:7 65:9 66:22
    67:14 68:3,8,10
    72:10
**knowingly** 47:17
    50:4,17 69:8
**knowledge** 29:20
    40:19,20 51:4
**knows** 51:10
**krasmussen@...**

    3:17

**L**

**L.L.C** 76:1
**label** 32:21 45:2
**Lack** 21:20 25:2
    58:1
**law** 6:17 8:4
**Le** 3:13
**left-hand** 64:1
**legal** 6:11
**let's** 12:20 18:2,6
    71:7
**leucovorin** 40:14
    40:16
**lieutenant** 14:15
    14:16
**life** 56:11
**life-saving** 69:16
**limited** 59:22
    61:11,21
**line** 27:11 58:21
    72:4 77:11
**lines** 35:17
**list** 33:2 36:2
**listed** 60:1
**lists** 47:12
**litigation** 7:7
    46:7
**little** 18:3 31:18
**lives** 56:9 69:18
**LLC** 1:7 3:11
    75:3 76:4 77:1
    77:8
**LLP** 4:3 75:1
**loaded** 63:10
**lodge** 23:10
    27:17
**long** 10:11
**look** 11:1
**looks** 15:9 28:6
**lot** 33:15 44:13
    50:8 66:11,11
**loud** 64:9 68:22
**Louis** 4:14
**Luke** 4:18 6:11

Case: 3:17-cv-50107 Document #: 853-2 Filed: 07/19/23 Page 83 of 88 PageID #:39641

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.    Steve Miller

Page 6

## M

**M** 1:21 76:1 77:2
**majority** 46:2,3,4
58:6
**making** 22:3
33:12 44:3
53:11 64:7
69:21
**Mallinckrodt** 1:4
6:3 25:18 69:2
75:3 76:4 77:8
**manage** 51:14
**management**
26:7 32:13
48:20 57:4
**manager** 47:12
47:17,20 55:10
55:13
**manufactured**
38:10
**manufacturer**
38:5 49:17 67:7
**Maple** 3:6
**March** 1:14 2:2
6:9 75:4 76:5
77:10
**mark** 10:21
62:18 67:13
**marked** 13:15
22:20 26:19
58:12 62:19
67:21
**market** 58:4
**marketplace**
33:7 40:10
49:21 50:9 53:6
**Martin** 33:17,18
33:20,21
**matter** 6:3 75:6
**Matthew** 4:8 7:3
**matthewwham...**
4:10
**maximizing**
35:11
**mean** 10:20
14:17 32:7
37:22 38:9 40:5

44:6 45:12
55:13,15
**means** 28:1
**meant** 24:1 43:20
45:12
**Medicaid** 31:18
31:18
**medically** 56:16
**medically-nece...**
53:10
**medication** 20:2
49:5 52:12 54:4
54:6 55:2 56:16
56:18 59:8
64:18
**medications**
19:14 44:8 52:5
52:9 55:18
60:16
**meet** 41:13
**meeting** 12:2
**Megan** 27:19
28:7
**memory** 31:1
35:5
**mentioned** 43:16
60:22
**mentions** 24:17
**met** 7:15 34:2
40:21,22
**Milberg** 3:12,18
**Miller** 1:12 2:1
6:2 7:11,15 8:8
22:22 26:2
28:13 33:15
37:10 42:15
43:11 58:17
64:3 70:4 71:22
74:5 75:1,4
76:5 77:9
**million** 24:14
**mind** 12:12 20:7
**mine** 43:3
**minutes** 37:2
**Mischaracteriz...**
25:2 39:13 65:8
67:10

**miserable** 12:14
**misrepresent**
54:3
**Missouri** 1:13
2:4 6:9
**MO** 4:14
**model** 47:22
61:22
**models** 57:12
**modify** 21:10
**morning** 6:16,22
7:15 43:11,12
43:16
**motivation** 35:6
**MSP** 1:6 3:11
6:21 72:1 75:3
76:4 77:8
**multiple** 17:16
33:1,9,11,12
49:6 61:13,18

## N

**name** 6:11 11:17
15:4 16:21 18:5
20:16 24:17,18
33:16 42:12
76:5 77:9
**nauseam** 52:20
**necessary** 56:16
**need** 50:9 52:5,9
**needlessly** 49:12
**negative** 36:10
69:1
**neither** 74:12,14
**network** 64:12
66:7 70:7
**networks** 65:10
**never** 17:8 22:11
31:14 41:14,14
51:16 52:21
53:10 54:3 55:1
**Neville** 27:1,2,7
27:21 39:7,8,11
**new** 19:10 21:6
23:6 34:10
**news** 28:10
**Nicole** 63:4

**Nodding** 43:19
**non-benefit**
54:13
**North** 2:3 6:8
**Northern** 1:1 6:5
**NOTARY** 76:22
**noted** 76:11
**noticing** 75:12
**noting** 75:12
**November** 68:2
**number** 6:1,6
23:10 31:20
46:3 63:5 67:18
**numbers** 19:7
63:9
**NW** 1:21 4:4 75:2
76:1 77:2
**NY** 3:20

## O

**oath** 58:18
**object** 23:4 38:18
38:18 52:14
60:5 63:16
**objection** 16:13
16:13 17:20
18:16 19:21
21:20 22:15
23:10 24:3,11
25:1,11 27:16
27:17 28:19
30:1,1,8 35:16
36:4,21 39:9,12
39:13 41:9 42:2
42:7,19 47:3,10
48:10 50:6,20
51:17 52:14
53:1,13 54:19
56:21 57:9 58:1
59:10 60:18
61:17 62:5 65:7
65:14 66:3,15
66:20 67:9
69:11 70:22
71:3 72:19
**objections** 42:17
**obviously** 14:21

20:5,6 31:19
40:21
**occur** 31:6
**occurring** 53:21
**off-label** 44:8
**office** 75:7,15
**Oh** 9:21 11:16
38:12 40:17
67:20
**okay** 8:8 11:20
13:5 14:7,21
15:22 16:2
17:10 19:4,8,19
20:9 21:7 23:11
24:7 25:8 27:15
30:6 32:17 34:2
37:1 38:8,12,15
40:4,17 41:5
45:9 46:14
47:16 48:15
49:2,9 50:3
52:4,8 55:17
59:2,6 62:13
63:11,20 64:6
67:20 68:13,20
70:19 71:9,19
73:2
**older** 19:14 23:6
23:7
**ones** 23:6 40:1
**open** 16:4
**operated** 15:17
**opinion** 50:16
54:7 72:6
**opportunity**
13:18 35:3
65:17
**option** 75:9,10
**options** 50:19
**order** 23:5 28:20
38:4
**orders** 73:7
**organization**
44:5
**original** 72:15
75:11
**outside** 23:5

3/29/2023     MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.     Steve Miller

26:16 28:19
29:21 63:17
66:22 67:15
**overcharge** 65:3
**overnight** 18:9
**overpriced** 22:7
50:9
**owned** 53:4 61:7
61:19
**owners** 53:4

**P**
**PA** 3:7 27:22
**page** 5:2,3,4,7,8,9
5:10,11,12
58:15,21 62:22
63:2,21 70:2
75:12 76:4
77:11
**pages** 24:14 76:7
**paid** 59:7
**paragraph** 14:22
18:5 19:9
**Paranjpe** 7:6
**parentheses**
23:14,15
**part** 34:13
**participate** 50:18
**particular** 11:14
13:20 16:10
17:6,15,21
23:18 28:10
38:21 42:1
49:22 50:12
57:6 59:6
**particularly** 55:7
**parties** 74:14
**partner** 8:4
**Pass** 71:17
**passing** 41:4
**pasted** 28:6
**patient** 26:8
45:17,19 46:20
47:1 50:10
53:12
**patients** 31:20
32:10,12,14

36:14,15 43:21
45:6 46:1,21
50:10 51:15,19
51:22 52:3,5,8
52:12,22 53:21
56:4,10 57:20
58:6 59:11
60:16,20 64:14
69:18
**pay** 60:16
**paying** 43:3
57:22
**PBM** 47:17 48:15
49:1 55:15,17
56:18 57:1,2,3
57:15 62:7
**PBM's** 48:18
**PBMs** 48:13
**pending** 48:8
53:18
**people** 33:13
39:22 41:3
44:14 45:7
51:18
**percent** 18:9 19:6
37:12,18
**perfectly** 48:3
**period** 9:3 75:13
**permission** 21:18
**person** 34:4
**personally** 41:17
54:12 72:10
**pertains** 25:15
**pertinent** 45:15
**Pharma** 9:22
10:3,4,7 15:22
68:11
**pharmaceutical**
38:5 49:16
64:19
**Pharmaceuticals**
33:22
**pharmacies** 49:7
61:13,19,19,22
62:14 64:12,17
65:2 66:5,7
70:6 71:2,6

**pharmacy** 38:2,2
38:21 40:8,15
41:10 47:11,16
47:20,21 55:10
55:13 56:14
57:18 61:3,5,6
61:8,10,16,21
62:3,8,10,11
64:20,21 65:5
65:22 67:4
69:22 70:11,13
70:17
**phenomenon**
19:10
**Phillips** 3:12,18
**physician** 40:13
**place** 11:8 28:17
29:22 30:4,7,10
30:13,15 32:2
32:13 44:17
57:4 74:11
**placing** 51:15,19
**Plaintiff** 1:3
**plaintiffs** 1:7 3:3
6:21,21
**plan** 63:14
**planned** 26:9,14
**Platt** 3:9 5:2 6:16
6:17 7:14 12:11
13:16 16:15
18:1,18 20:3
22:5,10,16,21
23:7,11,12 24:6
24:13 25:7,12
26:1,20 27:18
28:22 30:5,11
35:19 36:8 37:1
37:9 39:1,10,18
41:16 42:9,20
54:1 71:18 73:8
**platt@havilan...**
3:10
**Plaza** 3:19
**please** 6:14 7:9
44:11 53:17
64:9 68:22 75:6
75:10,11,14

**PM** 28:7
**point** 22:3 26:18
64:2 67:19
**points** 63:22
**policies** 32:13
70:20
**policy** 28:17
29:15 30:10
31:8 70:20
**poor** 45:16,22
46:5,8,12
**poorly** 32:15
45:10 46:14,16
**positive** 36:9
**possible** 48:5
**post** 10:17 16:10
17:6,15,19,22
19:13 20:15,16
20:18 21:18
22:13
**posted** 17:1,6,19
**posts** 16:20 17:11
17:16
**potential** 45:22
46:7
**practice** 17:10
**pregnancy** 36:16
**prepared** 10:16
10:19,20
**prescribe** 44:13
**prescribed** 57:21
60:20
**prescribes** 40:13
**prescribing**
51:12
**prescription** 38:4
**present** 4:18
**presentation**
34:18
**president** 14:4
68:11
**press** 9:16,19
15:10,12 34:11
**prevent** 53:10
**prevented** 52:10
**prevents** 53:21
**previously** 9:5

46:6 58:18
69:13
**price** 9:14,18
10:10 11:4 18:9
18:14 19:5,5
21:11,13,14
22:2 24:18,19
25:19 31:19
32:3,5 34:1
35:7,10 37:11
37:12,16 43:17
49:17 50:13
55:3 56:2,19
67:6 69:3,10
**priced** 47:18
49:13,20 50:5
56:5
**prices** 8:10 9:2
9:10 10:18 12:8
13:10 21:8 22:4
24:9 25:4,9,10
42:17 43:3
57:16 62:14
**pricing** 64:7,11
**primary** 47:4
**printing** 63:8
**prior** 26:2,5,14
28:3,14,16
29:14,21 30:3,6
30:10,14,17,18
31:7 32:1,1
33:14 45:8 60:6
67:10 74:5
**priority** 47:2
**probably** 49:20
50:1 59:18 63:9
**Procedure** 75:14
**proceedings** 74:9
**process** 38:17
**produce** 38:3
**produced** 2:1
23:6,8 33:16
**product** 25:6
26:10 31:16
38:7,9,11 40:9
40:10,15 50:14
51:14 52:22

3/29/2023          MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.          Steve Miller

Page 8

**products** 33:7
38:5,14,21 45:5
45:6,7 47:13
59:17 60:11,12
64:22 66:2,5,10
69:16
**profit** 47:17
49:12 50:4 55:2
56:1,18 69:8
**profiting** 50:1
**profits** 49:16
53:12
**programs** 44:17
48:20 57:4
**protested** 25:10
**prove** 55:11
**provide** 59:12
**provided** 51:3
58:18
**provides** 64:13
**providing** 69:5
**public** 11:21,22
12:6 13:2,8
16:4 17:12
24:22 68:7
**publication** 14:6
**publications** 9:21
**publicly** 8:9 9:7
9:11 13:1 25:18
**purchased** 75:8
**put** 15:3,4 20:22
21:5 32:1,13
44:17 45:17
53:11
**puts** 57:3
**putting** 15:13,16

**Q**

**Questcor** 53:4,5
**question** 12:10
12:15,18,21
25:15 34:20,22
35:3,4,6,20,22
48:4,5,7,8
53:15,18 64:15
69:4 72:1,4,12
72:15

**questions** 7:21
22:18 71:16
75:14 76:10,13
**quick** 12:16 71:8
**Quinn** 4:3 7:1,4
75:1

**R**

**R** 74:1
**radar** 31:15
**raise** 35:10
**raised** 69:2
**Rasmussen** 3:16
5:3 6:20,20
43:10 47:7,15
48:6,14 50:15
51:6,20 52:18
53:8,16 54:22
57:5,19 58:8,13
59:20 60:9 61:1
62:1,12,20 63:7
63:12,15,19
65:11,19 66:8
66:16 67:2,11
67:14,20,22
71:1,7,15 72:19
73:9
**rationing** 53:6
**reaction** 36:9
56:10
**read** 18:2,6 23:21
32:20 48:6,7,8
53:16,18 64:8
68:21,21 72:2
76:6
**reading** 60:6
**ready** 75:6
**really** 44:4,9,22
50:10 66:10
71:5
**reask** 65:18
**reasonable** 47:16
50:4 69:7
**reasons** 31:15
54:14
**recall** 10:6,14,16
11:2,7 16:16,17

16:18 17:14,17
23:18 28:13
32:17 42:22
**receive** 32:14
52:5,8,12 59:8
60:16 69:19
**received** 22:19
24:14
**receiving** 23:18
41:3 59:12,15
59:16,18
**recess** 37:6 71:12
**recollection** 18:3
**record** 6:15 8:9
25:2 26:22 37:2
37:4,7 63:1
71:10,13 73:3,5
**recorded** 76:10
76:14
**Recovery** 1:6
3:11 75:3 76:4
77:8
**reduce** 55:9,18
**refer** 58:11
**reference** 26:18
**referenced** 28:6
75:6
**referencing**
18:14 19:20
**referring** 9:20
23:22 58:10
**refresh** 18:3
**regard** 32:4
**regarding** 10:7
10:18 39:3
41:18 42:5
**regulation** 40:12
**reinforced** 70:5
**relates** 65:22
66:1 67:5 70:11
**relations** 14:6
68:7
**relationship** 66:6
**relative** 54:13
74:13,15
**release** 15:10
**releasing** 15:12

**remember** 17:5
17:18,21,22
20:20 28:12
34:9 36:5 42:21
49:16 68:15
**removal** 64:11
**remove** 65:4
**removed** 65:2
**removing** 62:13
64:16
**repeat** 53:15
**reporter** 1:18 2:5
2:6 6:12 7:8
12:14 48:9
53:19 73:6 74:4
74:4
**reporters** 64:4
**represent** 8:5
13:17 46:16
47:13
**represents** 32:16
45:10 46:15
**requirements**
41:14
**RESERVED**
73:11
**respect** 47:8
48:17 65:5
**response** 35:20
35:21
**responsibility**
35:10
**responsible**
35:12 49:4
50:17
**rest** 64:9
**resulted** 53:6
**retail** 64:12
65:10
**return** 35:11
**Reuters** 70:5
**revealed** 18:7
**review** 17:10
23:21 24:16
33:5 75:8
**reviewed** 21:17
32:20

**reviewing** 17:14
**right** 9:1 10:6
11:13 12:2,5
13:10,21 15:1
15:15 16:9 17:5
18:2,15,20 20:4
20:12,16 21:9
22:7,17 23:14
24:1 25:10 27:8
35:8 36:20 39:2
43:5 49:5 51:21
55:9,21 58:20
60:12 63:13
65:1 67:3,12
68:10 71:7
**rights** 34:1 69:3
**risk** 52:6
**Road** 3:13
**Robert** 3:21
**Rockford** 1:3 3:3
6:3,18 43:3
**role** 38:16 47:4,9
48:16,18 49:1
51:13,13 55:8
55:10 57:2 69:4
**round** 7:17
**RPR** 1:18 74:20
**rules** 12:3 57:13
75:14
**runs** 57:15
**rwallner@mil...**
3:22

**S**

**safe** 9:1 51:22
52:3 70:19
**safer** 47:5
**safety** 47:1 53:12
66:11
**sales** 70:12
**save** 56:9,11
**saying** 28:15
65:16
**says** 15:3,4 16:21
18:5,19 19:9,13
23:14 28:1
58:22 64:3,6

3/29/2023    MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.    Steve Miller

Page 9

68:17 70:4 72:6
**sclerosis** 33:1,9
  33:11,12
**scope** 23:5 28:20
  36:21 42:19
  52:15 60:6
  63:18 67:15
**screen** 6:10 31:15
**Scripts** 1:8 4:2,11
  4:12 7:2,4,7
  8:16 9:3 10:17
  14:1,5 15:17,17
  15:21 16:6,7
  17:3,7 21:9
  27:14 28:14,16
  31:6 35:14,18
  36:2,10,19
  37:17 38:15,20
  39:20 41:8,21
  42:5 43:4 47:2
  47:11 48:16
  49:3,6 50:4,17
  53:9 54:2,9
  55:8,14,16 57:8
  62:7,8,10,11
  64:7 65:21
  70:16 72:7,16
**Scripts'** 40:6
  47:9
**second** 7:18
  13:19 18:5
  62:22 63:21
**second-to-last**
  64:1
**see** 14:11,21 15:6
  18:10 19:11,15
  22:22 23:13,16
  26:22 27:21
  28:5,10 32:11
  33:15 58:20
  63:22 64:3
  68:17 70:1
**seeing** 16:16
**selected** 75:10
**sell** 48:13
**selling** 47:17
  49:12 50:18

51:1 55:2 56:18
  69:8 70:17
**sending** 15:1
**sense** 65:17
**sentence** 64:9
  68:17,21
**separate** 36:6
  50:22
**September** 10:22
**series** 1:6,6,7
  3:11 75:3 76:4
  77:8
**services** 26:15,16
**set** 67:6 74:11
**sets** 49:17 57:12
**share** 58:4
**shareholders**
  35:11,12
**sheet** 75:11 76:11
  77:6
**shipping** 52:11
**Shkreli** 33:17,18
  33:20,21 34:2
  34:12,16,17,18
  34:20 35:1,13
  36:11,18
**short** 43:15
**shortage** 53:5
**Shorthand** 2:5
  74:3
**show** 45:4 62:17
  67:12
**sic** 18:14
**sick** 43:13
**side** 8:4 36:6
  45:20 64:1
**sign** 20:15 75:7,8
**signature** 20:11
  20:14 73:11
  75:6,12 76:4,17
  77:22
**signed** 75:11
**significantly** 69:2
**signing** 75:10
**simple** 59:14
**Sincerely** 75:18
**sir** 7:18 8:7 9:1

13:17 23:13
  24:7 26:4,17,21
  31:5 36:1 39:7
  43:2
**sitting** 25:17
**situations** 44:20
**sketchy** 31:1
**small-volume**
  31:16
**society** 51:11
**solution** 37:20
  38:1 40:3,5,6
  41:12,15 64:12
  67:7
**soon** 15:5 37:3
**sorry** 12:12
  34:13 38:18
  52:14 60:4
**sort** 14:7 15:8
**South** 3:6,13
**spasm** 32:22
  54:16 58:7
  59:15 66:22
  69:21
**spasms** 33:6
**specialty** 47:20
  49:7 56:14
  57:18 61:13,22
  62:8 69:22
**specific** 9:15 10:9
  11:9 16:17
  24:21 25:5,6,17
  25:21 33:3 35:2
  36:15 39:16
  46:3,12 54:15
  58:5 59:13
**specifically** 16:18
  17:17 20:7 22:3
  25:13 34:19
  41:2 47:8 68:16
  72:3
**specifics** 60:19
**speculation**
  19:22 62:6
**Spencer** 2:2 6:7
**spend** 55:11
**spending** 31:13

32:16 45:11
  46:15,17
**spoke** 42:13 70:4
**sponsor** 26:9,14
**St** 4:14
**staff** 24:16
**stance** 69:5
**started** 28:17
**starts** 72:4
**state** 2:4 26:21
**stated** 8:8 9:5,6
  9:10 52:1
**statement** 10:17
  11:3 13:2,3,8
  18:4 21:22
  24:22 35:14
  36:10 60:22
  64:16
**statements** 10:7
  10:19,20
**States** 1:1 6:4
**stating** 25:8
**stayed** 8:17
**steer** 45:7
**stenographically**
  74:10
**Steve** 1:12 2:1
  64:3 70:4 74:5
  75:1,4 76:5
  77:9
**Steven** 6:2 7:11
**story** 68:14,18
  69:1,4
**Street** 1:21 3:6
  4:4 75:2 76:1
  77:2
**strike** 14:8 46:19
  49:10 52:9 54:7
  55:7 72:6
**studies** 45:4
**subject** 39:21
  61:15 69:9
**subjected** 55:3
  56:2,19
**submitted** 17:12
**subordinate**
  14:18

**subsequently**
  20:6
**subsidiaries** 49:3
  49:7 54:10
  57:11 72:8,17
**subsidiary** 57:7
**subsidize** 26:9
**substitutable**
  38:13
**substitute** 38:7,9
  40:15
**substitution** 40:9
**substitution** 40:9
**Suite** 1:21 2:3 3:6
  4:4 6:8 75:2
  76:1 77:2
**Sullivan** 4:3 7:1
  75:1
**supply** 27:6
  52:16
**sure** 10:9 21:11
  33:12 44:3,18
  48:19 53:16
  57:2 58:9,9,9
  62:17
**surprise** 36:12
**swap** 63:13
**swear** 7:9
**sworn** 2:2 7:12
  74:6
**system** 63:10

**T**

**T** 74:1,1
**tablet** 20:22
**take** 37:1 44:1,7
  71:7
**taken** 9:13 37:6
  70:11,16 71:12
  74:10
**talked** 25:5,14
  41:11 42:17
  45:1 54:12 68:6
  72:11
**talking** 18:12
  25:9 43:14
  52:20 58:4
  68:14

talks 20:18,19
team 14:19 31:22
technique 26:7
tell 11:9,16 23:9
   28:14 63:17
   67:18
telling 17:18
   22:11 51:7
   52:19
tendency 12:15
tenets 47:6
term 61:2
testified 7:12
   21:7 46:6
testify 74:6
testifying 37:10
   72:20
testimony 25:1
   32:20 39:14
   42:21,22 53:2
   58:11,11,17
   60:6 65:8 67:10
Thank 7:16 43:7
Thanks 15:5
   71:15
therapy 33:11
thing 15:13 18:6
things 9:22 33:3
   44:9 46:12 60:7
   63:8 66:21
think 8:9 13:12
   15:11 23:7
   33:10 43:16
   49:15 50:3,12
   51:18 62:2
   67:16 69:7
   71:22 72:3,14
third 70:1
thought 10:12
   15:11
three-fourths
   58:21
time 6:10 7:16
   8:2,3 10:11
   31:19 43:8
   52:13 58:3
   65:20 74:10

75:13
times 10:20
   40:21 44:13
   56:12 69:12
tired 43:13
tirelessly 25:3
today 7:17 25:18
   28:11 42:21
   45:10
told 15:15 16:9
tool 28:3
top 23:13 47:2
   63:2
toxoplasmosis
   18:8
trade 10:4
transcript 5:10
   72:2 74:9 75:6
   75:7 76:7
transcription
   76:10,12
treat 32:18 44:8
   44:21 50:19
treatment 53:10
treats 18:8
trends 31:12
tried 59:17
triggered 31:7
true 74:9 76:9,11
truly 33:3
truth 74:6,7,7
try 12:20 43:15
   65:4
trying 35:14,18
   36:2,11,13,19
   67:4
Turing 33:21
turn 58:14 62:21
two 20:21 21:5
   24:8 32:21 33:3
   46:11,11 60:21
two-pack 56:6
type 36:16
typical 16:19
typically 16:19

_____

U

U.S 64:7
ubaumann@ex...
   4:16
Uh-huh 20:13
   64:5
unclear 36:5
underlined 18:13
understand 8:6
   12:15 24:10
   27:22 41:6 63:8
understanding
   7:20
unfortunately
   19:9
unhappiness
   9:10 10:8 11:4
unhappy 8:10 9:2
   9:6,18 21:8,13
   37:11
United 1:1 6:4
unnecessary
   32:16 45:10
   46:15,16
Urmila 4:15 7:6
Urquhart 4:3 7:1
   75:1
use 44:12,16,21
   51:2,14 58:7
usually 40:1
utilization 26:7
   32:6,8,13 43:17
   48:20 57:4 58:5
   59:22
utilize 26:15,16
   38:6 41:15
   47:14
utilized 31:21
   32:12 40:7
utilizes 61:8

_____

V

v 75:3 76:4 77:8
Valeant 65:22
   66:1,5,9
Valeant's 66:1
value 60:1,17
variety 45:2

vast 46:2,3,4
versus 6:3
vice 14:4 68:11
video 1:12 6:10
   34:21
videographer
   4:18 6:1,11 7:8
   37:4,7 71:10,13
   73:3
videotaped 6:2
viewed 13:2
Vimovo 20:19,20
   20:21
violate 40:11
viral 44:14
virus 44:15
vital 56:4,9
vs 1:4,8

_____

W

wait 12:9 60:3
waive 75:9
Wallner 3:21
want 15:4 17:19
   22:12 25:13
   40:11 48:4
   51:21 63:20
   68:20
wanting 45:5
wants 15:3
Washington 1:21
   4:5 75:2 76:2
   77:3
wasn't 11:20 59:9
way 4:13 12:13
   13:3 18:17
   28:15 58:21
   63:17 67:18
we'll 32:13 63:13
website 16:5,6,8
   17:3
week 13:18 18:7
went 22:11 30:10
   30:17 31:19,21
   48:20 56:6,7
weren't 59:15,16
Western 1:2 6:5

Whitrap 14:10
   14:13 68:3
widely 34:10
William 3:9 6:16
   73:6
witness 4:2 7:2,5
   7:9,11 71:17
   75:8 76:5,17
   77:9
witnesses 12:14
words 43:18
work 8:15 44:17
   47:12
worked 14:14,19
   35:10
works 27:13 68:6
worth 57:22 59:4
   59:9
writes 18:4 27:21
written 75:22
wrong 28:15
wrote 20:11,16

_____

X

X 1:2,5,10

_____

Y

yeah 10:19 12:7
   21:10 25:3
   35:17 36:5
   39:15 40:21
   43:21 48:13
   51:18 52:1 56:3
   57:6 63:15
   68:19 73:8,9
years 8:15 43:14
   52:20 53:7
yesterday 73:7
York 34:10
YouTube 34:21

_____

Z

_____

0

_____

084-004847
   74:21

_____

1

3/29/2023     MSP Recovery Claims, Series LLC, et al. v. Mallinckrodt Ard Inc., et al.     Steve Miller

**1** 2:3 4:13 5:7 6:1
    6:7 10:21 13:12
    13:15 14:9
**10:28** 71:10
**10:33** 71:14
**10:34** 73:3
**100** 3:19
**11530** 3:20
**1200** 2:3 6:8
**124** 3:6
**13** 5:7
**1300** 4:4 75:2
**1450** 74:22
**15th** 63:3
**17** 45:21 46:7
**17-03-615** 1:6
**1730** 1:21 76:1
    77:2
**18** 58:21
**19** 45:21 46:7
**19002** 3:7

_____

**2**
**2** 5:8 22:20
**20005** 4:5 75:2
**20036** 1:21 76:2
    77:3
**2005** 8:17 28:17
**2006** 29:1
**2007** 29:3
**2008** 29:5
**2009** 29:7
**2010** 29:9
**2011** 29:11
**2012** 29:13,22
    30:19,22 31:4
**2013** 30:7
**2014** 65:20
**2015** 10:16,22
    18:20 19:4 21:7
    21:15 22:6
    30:20,22 31:4
    63:3 65:20 68:2
    68:15
**2016** 23:1,19
**2017** 11:10,12
    27:8 30:13,15

**2018** 28:7
**2019** 8:22
**202** 1:22 76:2
**202-538-8000** 4:6
**202)-232-0646**
    75:15
**202)232-0646**
    77:4
**2023** 1:14 2:2 6:9
    75:4,20 76:5
    77:10
**212-594-5300**
    3:21
**215-609-4661** 3:8
**22** 5:8
**220** 3:6
**22nd** 10:22
**232-0646** 1:22
    76:2
**23rd** 68:2
**26** 5:9
**2701** 3:13
**29** 1:14 2:2 6:9
    75:4 76:5 77:10

_____

**3**
**3** 5:9 26:18,19
**3:17-cv-50107**
    1:4 6:6
**3:20-cv-50056**
    1:8
**300** 56:7
**31st** 23:1
**33134** 3:14

_____

**4**
**4** 5:10 58:12
**43** 5:3
**43:22** 72:5
**45** 58:15

_____

**5**
**5** 5:11 62:18,19
    63:1
**5,000** 18:9,14
    19:6 37:12,18
**58** 5:10

_____

**6**
**6** 5:12 67:13,21
**6:25** 28:7
**600** 56:7
**62** 5:11
**62-year-old** 18:8
    18:20
**63121** 4:14
**67** 5:12

_____

**7**
**7** 5:2 28:7
**71** 5:4

_____

**8**
**812** 1:21 76:1
    77:2
**866-252-0878**
    3:15

_____

**9**
**9:13** 1:15 6:10
**9:43** 37:4
**9:50** 37:8
**900** 4:4 75:2
**94** 56:6