UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **CITY OF ROCKFORD** *on behalf of itself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **MALLINCKRODT ARD, INC.,** *formally known as* **QUESTCOR PHARMACEUTICALS, INC.; MALLINCKRODT PLC; EXPRESS SCRIPTS HOLDING COMPANY; EXPRESS SCRIPTS, INC.; CURASCRIPT, INC.,** *doing business as* **CURASCRIPT, SD; ACCREDO HEALTH GROUP, INC.,** *and* **UNITED BIOSOURCE CORPORATION** <br><br> Defendants. | Civil Action No.: 3:17-cv-50107 <br><br> Judge Iain D. Johnston <br><br> Magistrate Judge Lisa A. Jensen |

**PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
TO QUINN EMANUEL, FOR *IN CAMERA* REVIEW AND FOR SANCTIONS**

Plaintiff the City of Rockford hereby moves for the following relief in relation to the Court-ordered subpoena of Quinn Emanuel (QE)[1]:

(1) to compel full compliance with the Court-ordered subpoena issued to Quinn Emanuel (QE), overruling all objections to the subpoena[2];

(2) for in *camera review* of the 8 redacted documents for which QE has properly claimed privilege by including them on their privilege log;[3]

---

[1] A true and correct copy of the subpoena issued to QE on August _, 2023 is attached to the Declaration of Donald E. Haviland, Jr. Esquire ("Haviland Decl") as **Exhibit "A"**. Notice of issuance of the subpoena was timely filed in Court. *See* ECF No. 874.

[2] While the subpoena called for compliance by August 25, 2023, QE unilaterally granted itself an extension to comply until September 6, 2023. *See* QE Objections at Haviland Decl. **Exhibit "B"**.

[3] *See* QE Privilege Log at Haviland Decl. **Exhibit "C"**. The log attached as Haviland Decl. **Exhibit "D"** consists of 8 documents on QE's privilege log for which Rockford challenges the claimed privileged bases for the redactions. For the Court's convenience, the "Index of Privilege

1

  (3) to rule that any claims of privilege are waived by QE as to the 59 documents which it waived to log in the QE Privilege Log;[4] and

  (4) for sanctions under Federal Rule 37 and this Court's inherent powers given the years it has taken Rockford and this Court to get full production of the documents relevant to the exclusive distribution arrangement between ESI and MNK at issue in this case;

(4) because these newly produced documents demonstrate a failure to comply with related discovery of ESI and MNK, these parties should be ordered to produce all such documents forthwith.

Despite Rockford's efforts to meet and confer over QE's many objections,[5] the firm's new counsel, Mr. Olivar refused to discuss the objections prior to producing documents subject to such objections. On the new date of QE's production, QE counsel unilaterally declared, "[w]e do not believe [there is] any legitimate issue for a motion. **Ex. I.** Rockford disagrees.

While too much ink has been spilled and words spoken over the issue of discovery drafts of contracts and contract negotiations – including by this Court[6] – Rockford <u>still does not possess</u>

---

Challenge Documents" provides a cross-walk to the QE Privilege Log entry where QE raises its privilege claims, and attaches the 8 documents for the Court's ease of access.

[4] The log attached as Haviland Decl. **Exhibit "E"** consists of 59 documents <u>not</u> listed on QE's privilege log for which Rockford argues the privilege should be deemed for failure to do so. For the Court's convenience, the "Index of Privilege Waiver Documents" lists the documents by bates-number and attaches all 59 documents for the Court's ease of access.

[5] Upon receipt of the QE Objections, Rockford's counsel wrote to QE counsel seeking to meet and confer about the objections in an effort to narrow the dispute. Haviland Decl. **Exhibit "F".** Counsel for QE responded, standing by QE's objections and re-setting the date for compliance with the subpoena for September 6. **Exhibit "G".** Rockford' counsel wrote again, and QE responded, but the letter exchanges never led to a telephone conference. *See* **Exs. "H" and "I"**.

[6] In 2023 alone, this Court issued five (5) Orders on this issue. *See* ECF Nos. 828 (Memorandum and Order on Plaintiff's Motion to Compel), 833 (Minute Entry Order setting hearing on Plaintiff's Motion to Reconsider), 855 (Order striking Mallinckrodt's brief), 860 (Order re reconsideration), 868 (Minute Entry Order re hearing on objections or compliance with subpoenas).

a complete set of the drafts of contracts and communications exchanged between ESI and Mallinckrodt. QE must be ordered to comply fully with Rockford's subpoena and should pay the cost of Rockford having to bring this latest Motion to Compel.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The Court is well-aware of the history of Rockford's pursuit of discovery pertaining to the exclusive distribution agreement between Express Scripts/Curascript and Questcor/Mallinckrodt and the relevancy of the agreement to Rockford's claims of antitrust conspiracy. While it is unnecessary to recount such extensive history here, which history dates back to 2018 when then-Magistrate Judge Johnston first ordered production of the contract documents, a brief reminder is needed to orient the Court to what must be done to put an end to this dispute once and for all. The simple issue before the Court today is QE's failure to comply with the subpoena this Court granted Rockford leave to serve. *See* ECF No. 860.[7]

#### A. History of Dispute Over Contract Documents.

The history of Rockford's pursuit of contract documents is mainly set forth in the following motions, and the hearings and Court rulings thereon, among others:

- July 17, 2019: Rockford's Motion to Compel (ECF No. 218)

- April 29, 2022: Rockford Motion to Compel as to the Express Scripts Defendants' Claims of Privilege (ECF No. 591);

- May 2, 2022: Rockford's Motion to Compel The Express Scripts Defendants to Supplement Their Response to Plaintiff's Requests for Production of Documents through to March 31, 2022 (ECF No. 593);

- July 15, 2022: Rockford Motion to Compel the Express Scripts Defendants to Produce Corporate Designee(s) Pursuant to Fed. R.Civ.P. 30(b)(6) (ECF No. 629-1);

---

[7] "Plaintiff is given leave to issue a subpoena for drafts and communications exchanged between outside litigation counsel for Defendants and counsel for Mallinckrodt regarding negotiations of the Wholesale Product Purchase Agreement on or before August 11, 2023. Accordingly, fact discovery is extended solely to allow a response to Plaintiff's subpoena." *Id.* at 1.

- July 22, 2022: Rockford's Motion to Compel the Express Scripts Entities to Supplement Their Responses to Plaintiff's Requests for Production of Documents and Interrogatories through to May 31, 2022 (ECF no. 653);

- September 27, 2022: Rockford's Motion to Compel Discovery and for Sanctions Pursuant to Federal Rule 37 (ECF No. 690);

- November 16, 2022: Rockford's Motion for Sanctions Under Rule 37 for Spoliation of Evidence (ECF No. 719);

- March 31, 2023: Rockford's Motion to Compel Acthar Contract Drafts and Negotiation Documents (ECF No. 790);

- June 21, 2023: Rockford's Motion for Reconsideration of Order Dated June 13, 2023 (ECF No. 829), or in the Alternative, to Compel Contract Communications and Drafts (ECF 831);

- June 26, 2023: Rockford's Rule 72 Objections to the Order Dated June 13, 2023 (ECF No. 829);

**B.     Court-Ordered Subpoenas of QE and Latham**

After all this motion practice, the Court finally was able to tease out the truth about QE's involvement in the negotiations of the Acthar distribution contract. It took several Orders and three separate hearings, after which the Court re-opened discovery to allow Rockford to subpoena the documents. *See* May 19, 2023 Hrg. Tr. at Haviland Decl. **Exhibit "J",** June 20, 2023 Hrg. Tr. at **Exhibit "K",** and June 22, 2023 Hrg. Tr. at **Exhibit "L".**

As discussed above, Rockford issued subpoenas, calling for compliance by August 25, 2023. Exhibit "A" hereto. QE objected to the subpoena on August 25 and failed to produce any documents or privilege log that day, as required. Instead, despite the long history of the Court's involvement, QE resisted complying with the subpoena objecting to the definitions of "document", "relating to", "you/your" and the "relevant time period". QE tried to limit the scope by interposing its own definition of "Acthar litigations". And as to individual requests, QE objected to the "timeliness" of the subpoena, "scope" and "relevance". QE interposed broad

4

objections on grounds of "confidentiality" – despite the existence of Court Order in this case which ESI counsel negotiated – and "privilege", without producing a log. Each of these objections was addressed in Rockford's letter request for a meet and confer. *See* Exhibit "F".

Each response by QE claimed there was "no dispute", as if saying it multiple times would make it so.

Finally, on September 6, 2023 at 9:30p.m., QE produced documents and a privilege log. It took Plaintiff's counsel until Friday, September 8, 2023 to access and review the documents and produce a log. The production raises concerns about how the lingering QE objections impacted the scope of the search and the breadth of the production. It is obvious documents are missing, from communications to attachments to emails. The most glaring gap is in the time.

      C.      **QE's Failure to Comply with Subpoena**

QE has produced a total of 95 documents, which were heavily redacted on grounds of privilege. According to the meta-data, the date range for the production is March 17, 2021 through December 16, 2021. *See* Documents from these 2 dates at Haviland Decl. **Exhibits "M" and "N"**, respectively. That means that despite this Court's multiple orders, and Rockford's multiple attempts to meet and confer, QE has stood on its objections to the date range for compliance with the subpoena. Worse, it appears QE has refused to produce any documents from 2019-2020 or 2022-2023 which documents are known to exist due to available evidence.

These few documents provide a window into the broader communications that took place between QE and Latham that have yet to be produced and now must be specifically ordered to be produced, without objection.

The first communication produced demonstrates that QE's Meghan McCaffrey, Esquire reached out to counsel for MNK on March 17, 2021, stating,

> [w]e wanted to connect with you all on some business-level-developments relating to the Acthar distribution agreement between MNK and Curascript ("CSD"). As you all know, there were discussions between CSD and MNL about entering into a new distribution agreement in 2019. Those discussions stopped, but we're being told by our business people that they've started back up again and that the business side of MNK would like to finalize a new agreement. Given the bankruptcy and, well, Don, we wanted to connect with your team about this. Know you have a lot on your plate, but let us know a good time to connect.

Haviland Decl. Ex. "M" at 2. Plainly, outside counsel for ESI and MNK took up the direct negotiations of the Acthar distribution agreement. The follow-on discussion on March 19 has been redacted. That discussion should be reviewed *in camera* and produced to Plaintiff.

The very next document in the production has been withheld on ground of privilege, but was never logged. *See* **Exhibit "E".** According to the meta-data produced, it is the third page of Exhibit "M". *See* Haviland Decl. **Exhibit "O"** hereto.

Rockford is tired of chasing discovery Judge Johnston ordered to be produced as his very first edict, along with the government and Retrophin documents. There is simply no excuse for withholding these documents any longer.

**II.     ARGUMENT**

    **A.     QE Must Be Ordered to Comply Fully with Rockford's Subpoena**

        **1.     QE's objections to the subpoena should be overruled**
            **a.     Relevance**

QE's relevance objection is offensive at this point. Despite Rockford's request that QE counsel confirm nothing was being withheld on relevancy grounds, QE stands on its objections.

            **b.     Time Period**

As Rockford pointed out in its letters, the issue of the relevant time period for the missing contract documents was post-2017 – ESI's arbitrary cutoff – and August 2023 – the date of the Court's Order allowing the subpoena. Again, Rockford's letters sought to explain the scope and

the reason therefor, to no avail. Despite this Court's multiple rulings that the relevant time period extends from April 2017 through August 2023, QE objected. The documents produced demonstrate QE stood on its objections. The objections as to the relevant time period should be overruled, and relevant documents from the files of QE between 2019-2020 and 2022-2023 should be produced.

We know by QE's production that the reason for the objection was to avoid producing documents from 2019-2020 and 2022-2023, despite MNK's production of a critical April 20, 2022 email from Latham to QE. *See* Exhibit "B" to the companion Motion to Enforce the subpoena to Latham.

### c. Privilege

QE has had ample time to prepare and produce a privilege log as to all its communications with Latham. Its failure to properly log the following withheld documents should be deemed a waiver, and the documents produced forthwith. *See* Haviland Decl. **Exhibit "E"** (Index and exhibits of documents not logged).

B. **QE Should Be Sanctioned for its Willful Non-Compliance with the Court-Ordered Subpoena, and Its Prior Misstatements to Plaintiff's Counsel and This Court.**

1. **Sanctions under Federal Rule 37 are appropriate.**

The Court is authorized to sanction a party for discovery violations. Fed.R.Civ. P. 37 (2003). Courts have broad discretion in deciding the appropriate sanction for a discovery violation, and the type of sanction administered generally depends on the unique factual circumstances of the case. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642, 49 L. Ed. 2d 747, 96 S. Ct. 2778 (1976). The court should ensure that the sanction be proportionate to the offending conduct. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303

(7th Cir. 1994) (upholding decision to dismiss case with prejudice as a result of plaintiff's repeated failure to comply with court orders).

Here, monetary sanctions are at least appropriate to reimburse Rockford for the effort to enforce the Court's Order and the Subpoena, including the costs of bringing the motion and the attendant costs of attending the hearing in Rockford.

### 2. Sanctions under this Court's inherent powers are appropriate.

"A district court has inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009)). These sanctions are appropriate where a party or their counsel has practiced fraud upon the Court, acts in "bad faith by delaying or disrupting the litigation," hampers enforcement of a court order, or when a party is responsible for defiling "the very temple of justice." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (quotations omitted). "This power is 'permissibly exercised not merely to remedy prejudice to a party, but also to reprimand the offender and to deter future parties from trampling upon the integrity of the court.'" *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 906-07 (N.D. Ill. 2017) (quoting *Salmeron*, 579 F.3d at 797).

Here, counsel to a party has abused the discovery process. When directly asked about who was involved in contract negotiations after 2017, in the context of Rockford's Motion to compel, ESI counsel identified three individuals – Earl English, Rob Osborne and Christie Vivod. Counsel never disclosed to opposing counsel of this Court what we now know to be true: that none of these individuals was involved after MNK filed for bankruptcy because Quinn Emanuel directly negotiated with Debtors' counsel at Latham. To have not told the truth at that

time cost Rockford and this Court literally more than a year, hundreds of hours and thousands to dollars, chasing the truth. Beyond the Rules, candor to the tribunal required more than ESI counsel chose to share about their personal involvement in their clients' business. *See, e.g., Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, (7th Cir. 2000) (finding no abuse of discretion in district ordering payment of monetary sanctions for failing to remit duty of "candor to the tribunal" which includes "a continuing duty to inform the Court of any development which may conceivably effect the outcome of the litigation"); *Chavelle v. Chicago Transit Auth.*, 2020 U.S. Dist. LEXIS 5050 *20 (N.D.Ill. Jan. 13, 2020) (Dow, J.) (duty of candor exists beyond the discovery rules to disclose names).

### III. CONCLUSION

For the foregoing reasons, and all the reasons presented since 2018 as to why discovery of contract documents and negotiation communications should be produced in discovery in this case, Rockford respectfully requests that this Honorable Court grant the relief sought in the form of Order accompanying this Motion.

Dated: September 8, 2023

Respectfully submitted,
<u>s/ Donald E. Haviland, Jr.</u>
Donald E. Haviland, Jr., Esq., *pro hac vice*
William H. Platt II, Esq., *pro hac vice*
**HAVILAND HUGHES**
124 South Maple Avenue
Suite 220
Ambler, PA 19002
T: 215-609-4661

Ifeanyi C. Mogbana, Esq., City Attorney,
Legal Department
425 East State Street
Rockford, IL 61104-1068
T: 779-348-7154

*Attorneys for Plaintiff, City of Rockford and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2023 a true and correct copy of the foregoing Motion to Compel was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                */s/ Donald E. Haviland, Jr.*
                                                Donald E. Haviland, Jr.