**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

|  |  |
|---|---|
| CITY OF ROCKFORD,<br><br>                        Plaintiff,<br><br>      v.<br><br>MALLINCKRODT ARD, INC., *et al.*,<br><br>                        Defendants. | Case No. 3:17-cv-50107<br><br>District Judge Iain D. Johnston<br><br>Magistrate Judge Lisa A. Jensen |

**QUINN EMANUEL'S MEMORANDUM
IN SUPPORT OF ITS CLAIMS OF PRIVILEGE**

Quinn Emanuel Urquhart & Sullivan, LLP ("**Quinn Emanuel**"), outside counsel to the Express Scripts Entities, respectfully submits this memorandum in support of its claims of privilege and redactions, as directed by the Court.  ECF No. 890.

As noted at the September 12, 2023 hearing, Quinn Emanuel produced in response to Rockford's subpoena served on Quinn Emanuel (the "**Subpoena**") *without redaction* "drafts and communications exchanged between outside litigation counsel for Defendants and counsel for Mallinckrodt regarding negotiations of a new Wholesale Product Purchase Agreement during the instant litigation."  ECF No. 860 at 1.  Quinn Emanuel logged a limited set of documents—68 in total—which were produced with redactions or otherwise withheld as privileged.

Quinn Emanuel redacted or withheld only privileged, non-responsive material relating to (i) subject matters not properly within the scope of the Subpoena that involve (ii) matters of common interest and/or work product.  The redacted material appeared in otherwise responsive documents or family members; in other words, where portions of a string of communications were

"regarding negotiations of a new Wholesale Product Purchase Agreement," Quinn Emanuel produced those portions and redacted other subject matters protected by common interest and/or work product. The withheld and redacted documents include communications related to claims filed by Rockford and other Acthar litigants, including claims filed by Rockford and its counsel premised on *this* case and *this* operative complaint, and strategies related to achieving certain joint objectives in the Mallinckrodt bankruptcy proceedings. As ordered, ECF No. 889, Quinn Emanuel is producing the 68 documents on its privilege log to the Court in both redacted (where that applies) and unredacted form, so that the Court can confirm that the withheld materials reflect privileged, common-interest discussions on subject matters outside the scope of the Court's order.[1]

As discussed below, the withheld or redacted communications were prepared because of litigation, including this case, the Mallinckrodt bankruptcy proceedings, and other cases filed by Rockford's counsel. Work product protection was not waived by communications among counsel with a common interest; among other things, as Rockford itself has emphasized, Mallinckrodt's bankruptcy counsel at Latham & Watkins LLP ("**Latham**") "has not produced a single document." ECF No. 887 at 2. Thus, disclosure to Latham did not "substantially increase" the likelihood Rockford would obtain the documents at issue, a requirement of any work product waiver. Further, the common interest doctrine separately precludes any waiver through disclosure to Latham. Although Quinn Emanuel and Latham negotiated portions of the new Wholesale Product Purchase Agreement as counterparties—and Quinn Emanuel has, as ordered, produced all communications regarding that subject matter—they also coordinated on many matters of common interest outside

---

[1] In addition to two binders containing redacted and unredacted documents on Quinn Emanuel's privilege log, Quinn Emanuel will submit two printed copies of its privilege log. Quinn Emanuel will also submit to the Court's proposed order mailbox an Excel version of the privilege log and one Excel document on the privilege log that could not be formatted to print legibly.

of those negotiations. The common interests included defeating Rockford's and similar plaintiffs' Acthar-related claims, and coordinating to achieve approval of Mallinckrodt's bankruptcy plan (specifically, the distribution agreement, which required approval by the Bankruptcy Court by law) after negotiations had concluded. Indeed, throughout this time period, Mallinckrodt and the Express Scripts Entities were co-defendants in this and other Acthar-related matters.[2]

Accordingly, Quinn Emanuel respectfully requests that this Court uphold Quinn Emanuel's claims of privilege for the 68 documents on its privilege log following *in camera* review.

## BACKGROUND

### A.      Rockford's Participation in Mallinckrodt's Bankruptcy

On October 12, 2020, Mallinckrodt declared bankruptcy, and the automatic stay took effect. ECF No. 506. On November 23, 2020, the stay was extended to the Express Scripts Entities based on "an identity of interest between the[m] . . . and debtors." ECF No. 531-3 at 49:13-16. Rockford filed "82 proofs of claim" in the bankruptcy, each "alleg[ing] a claim for at least $1.3 million," *In re Mallinckrodt PLC*, 2021 WL 2460227, at *1 (Bankr. D. Del. June 16, 2021), relying on (and often attaching) the complaint in this case, and Rockford unsuccessfully sought to consolidate other Acthar-related actions in this Court via an MDL, *see* ECF No. 554.

Rockford and other Acthar claimants represented by the Haviland Hughes law firm (comprising the "**Ad Hoc Acthar Group**" or "**AHAG**") were among the most active claimants in the bankruptcy. *See In re Mallinckrodt plc*, Case No. 1:20-bk-12522 (Bankr. D. Del.), ECF No. 2687 at 1 n.2; ECF No. 2703 at 1 n.2; ECF No. 3010 at 1 n.2. The AHAG collectively filed hundreds of proofs of claim based on the same or nearly identical allegations against Mallinckrodt and the Express Scripts Entities as those asserted here, as well as a motion to pursue their claims

---

[2] To this day, Mallinckrodt remains a named co-defendant in one Acthar-related matter brought by counsel for Rockford.

as a class. *Id.*, ECF No. 3048. The AHAG also filed dozens of substantive pleadings in the bankruptcy court, including, among other things, opposing Mallinckrodt's bankruptcy plan, *id.*, ECF Nos. 1135, 1451, 2244, 2415, 2551, opposing settlements between Mallinckrodt and other creditors, *id.*, ECF Nos. 1285, 2687, objecting to Mallinckrodt's discharge, *id.*, ECF Nos. 1380, 2163, seeking relief from the stay, *id.*, ECF Nos. 410, 1238, 2366, 2703, 3939, and moving to exclude Mallinckrodt's expert witnesses, *id.*, ECF Nos. 4783-84. Rockford and the AHAG also sought and participated in a wide range of discovery, including taking and attending depositions, serving discovery requests, and even serving expert reports. One of the consistent themes pursued through Rockford's filings and discovery were claims that Mallinckrodt had participated in an antitrust conspiracy with the Express Scripts Entities regarding Acthar. In other words, Rockford was making the same allegations as those asserted here and in the other Acthar-related cases.

Separately, Humana and Attestor (the "**Acthar Insurance Claimants**" or "**AIC**") filed similar claims against Mallinckrodt, *see id.*, ECF No. 2159, which were tried over nine days in the bankruptcy court. Rockford's counsel attended ***every day*** of the trial. The bankruptcy court ultimately rejected the AIC's antitrust and other claims on the merits, *id.*, ECF No. 5886, prompting Rockford and the AHAG to abandon their claims, *see id.*, ECF Nos. 5767, 6980.

## B. Negotiations of a New Wholesale Product Purchase Agreement

Rockford "has long known of Mallinckrodt and CuraScript's negotiations regarding a revised distribution agreement" because "draft agreements and documents related to the parties' negotiations were produced to City of Rockford in November 2019," well before the bankruptcy. ECF No. 562 at 7. Those years-long negotiations began in June 2018, and were led by businesspeople. ECF No. 838-1 ("**McCaffrey Decl.**") ¶ 4. The parties discussed numerous issues, including prompt-pay discounts, chargebacks, late fees, emergency orders, returns of expired products, replacements, and other administrative provisions. *Id.* The Express Scripts Entities

produced documents reflecting those business-to-business negotiations, including exchanged drafts, to Rockford in accordance with the Court's orders. *See* ECF No. 831-2 at 2 (identifying eight produced drafts dating from March 2019 to July 2021 that were exchanged between employees of Mallinckrodt and the Express Scripts Entities); *see also* ECF No. 709-2 at 12–13 (identifying additional drafts and negotiation-related documents dated between 2017 and 2022).

Subsequently, at times during the Mallinckrodt bankruptcy case, Quinn Emanuel and Latham exchanged a small number of drafts of the new Wholesale Product Purchase Agreement. McCaffrey Decl. ¶ 6. The revisions primarily addressed the indemnity and litigation cooperation provisions. *Id.* ¶¶ 7–8. Quinn Emanuel and Latham's discussions took place amid ongoing litigation, including: this case and the coordinated MSP action; Rockford's pursuit of its Acthar claims in the bankruptcy; the other related Acthar cases; and a new Acthar case brought by Rockford's counsel in May 2021. *Id.* ¶ 9; *see also* ECF No. 560-7 at PDF p.62 (Ex. G, "Schedule of Acthar Actions" in unexecuted draft contract). While communicating regarding negotiations of the restated Wholesale Product Purchase Agreement,[3] Quinn Emanuel and Latham also communicated on protected subject matters involving work product, often in the same email chains: assessments of and strategies for the Acthar-related litigation, and certain aspects of the bankruptcy that would impact the course of those cases. McCaffrey Decl. ¶ 10. These discussions, redacted or withheld in the 68 documents provided to the Court, reflected counsels' conclusions, opinions, and strategies as they coordinated on matters of common interest, including how to defeat Rockford's and other plaintiffs' Acthar-related claims.

---

[3] As explained below, the exchanged drafts and negotiation-related communications were produced to Rockford in full by Quinn Emanuel in response to the Subpoena.

On September 27, 2021, after negotiations concluded, Mallinckrodt, as a bankrupt debtor, moved for permission of the bankruptcy court to assume the restated Wholesale Product Purchase Agreement. ECF No. 560-7 at PDF p.6. Mallinckrodt specifically sought a ruling on the merits "that the Contract, as amended, and the parties' performance thereunder in accordance with the Contract's terms, does not violate the Sherman Act." *Id.* That was necessary, Mallinckrodt argued, because various parties, including Rockford, had alleged that the original 2007 agreement violated the Sherman Antitrust Act and various other laws. *Id.* Mallinckrodt explained that Rockford had actively litigated in the bankruptcy, Rockford's counsel "repeatedly made clear" that his clients "intend[ed] to launch a new litigation barrage based on the Debtor's agreement with Express Scripts the moment the Debtors exit bankruptcy," and Rockford's counsel had even filed a new Acthar lawsuit during the bankruptcy. *See id.* at PDF p.14-17. The bankruptcy court's approval, including a finding that the restated contract did not violate the antitrust laws, was an express condition of CuraScript's "agreement to amend the contract and continue distributing Acthar." *Id.* at PDF p.10. Thus, though the parties were adverse in the negotiation communications that have been produced, they shared a common interest in the bankruptcy court's approval of the agreement addressed in other communications because that would allow them to continue a lawful commercial relationship while removing the cloud of future liability. *Id.* at PDF p.7-10.

The restated Wholesale Product Purchase Agreement never went into effect, and no Acthar was ever sold or distributed under it. Instead, in April 2022, citing the risk from its indemnification obligations to CuraScript under the 2007 version of the agreement, Mallinckrodt moved for an order allowing it to reject the 2007 agreement. ECF No. 593-11 at 1, 4–5. After Mallinckrodt rejected the 2007 agreement, Quinn Emanuel and Latham, as bankruptcy counsel, exchanged letters and a limited number of emails related to winding down the relationship, such as what to

do with remaining inventory and how to handle post-termination returns of Acthar distributed prior to termination, all of which have also been produced to Rockford. *E.g.*, ECF No. 887-3.[4]

### C. Counsel for Rockford's Other Efforts to Litigate This Case During the Bankruptcy

On May 26, 2021, Rockford's counsel filed a new complaint in this Court, *Law Enforcement Health Benefits v. Trudeau* ("**LEHB**"), No. 3:21-cv-50215, alleging that the Express Scripts Entities and Mallinckrodt had conspired regarding the pricing, marketing, sale, and distribution of Acthar. In other words, Rockford's counsel again made the same allegations asserted here, in the other related Acthar matters, and pursued by Rockford in the bankruptcy. Both Mallinckrodt and the Express Scripts Entities were named as Defendants, as well as certain Mallinckrodt executives. Counsel for Rockford did not dismiss the new matter until June 1, 2022.

On March 12, 2021, Rockford's counsel also moved to consolidate various Acthar matters, including this case, in a multidistrict litigation ("**MDL**") in this Court. *See In re Acthar Gel Antitr. Litig.*, MDL No. 2999, ECF Nos. 1-2. Briefing occurred during the spring of 2021; the Judicial Panel on Multidistrict Litigation denied Rockford's motion on June 7, 2021. *Id.*, ECF No. 65.

SUBJECT MATTERS THAT QUINN EMANUEL PROPERLY REDACTED AS WORK PRODUCT

### I. Quinn Emanuel Complied with the Court's Order by Producing Without Redaction All Communications Relating to Negotiations and All Drafts of the Wholesale Product Purchase Agreement.

As explained at the September 12, 2023 hearing, Quinn Emanuel fully complied with the Court's order. Quinn Emanuel did not redact or withhold information responsive to the Court's order: "drafts and communications exchanged between outside litigation counsel for Defendants

---

[4] Quinn Emanuel agreed to produce these letters and related emails to Rockford.

and counsel for Mallinckrodt regarding negotiations of a new Wholesale Product Purchase Agreement during the instant litigation." ECF No. 860.

The redacted material and withheld documents submitted to the Court do not reflect counterparty negotiations. Instead, they reflect work product and coordination between Quinn Emanuel and Latham on various matters of common interest in the bankruptcy, identified in the privilege log. The common interest discussions, where redacted, occurred in documents that are otherwise responsive because they include negotiation communications, but the redactions relate to different subjects of common interest, not contract negotiations. Quinn Emanuel's privilege log provides document-by-document explanations, and the table below provides additional explanation of the subject matters reflected in the documents.[5]

**Chart of Examples of Work Product Subject Matters Withheld or Redacted**

| Log Entries | Subject Matter | Explanation |
|---|---|---|
| 1, 5, 14, 15, 16, 17, 29, 30, 31, 32, 33, 34, 35, 36, 41, 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 68 | Litigation by Rockford, the AHAG, and Other Clients of Rockford's Counsel | These entries reflect discussion and coordination between Quinn Emanuel and Latham regarding claims filed by the AHAG (led by Rockford and its counsel) based on the substantially similar claims to those alleged in this case, including LEHB and the MDL motion. |
| 2, 3, 4, 14, 15, 16, 17 | AIC Litigation | These entries reflect discussion and coordination related to Acthar claims filed by parties not represented by Rockford's counsel, namely the AIC (Humana and Attestor). |

---

[5] Many of the documents fall into multiple categories.

| Log Entries | Subject Matter | Explanation |
|---|---|---|
| 6, 7, 9, 10, 11, 12, 13, 16, 17, 21, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68 | Motion to Assume | These entries reflect discussion and coordination between Quinn Emanuel and Latham regarding joint efforts to demonstrate to the bankruptcy court that it should grant Mallinckrodt's motion to assume the restated contract and find, on the merits, that it did not violate the antitrust laws, including strategy related to defeating the AHAG's efforts to prevent assumption of the contract. |
| 5, 8, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 42, 43, 44, 48, 49, 50, 51, 52, 54, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 67 | Confirmation of Mallinckrodt's Bankruptcy Plan | These entries reflect discussions and coordination related to Quinn Emanuel and Latham's joint efforts to obtain the bankruptcy court's confirmation of Mallinckrodt's bankruptcy plan, insofar as confirmation was required for Mallinckrodt to assume the restated Acthar distribution agreement. |

These documents (and the others on Quinn Emanuel's log) were redacted or withheld only to the extent they contained material that (i) did not relate to negotiation of the new Wholesale Product Purchase Agreement, (ii) is protected work product, and (iii) relates to common interests.

## II. The Documents Quinn Emanuel Has Redacted or Withheld Are Protected Work Product, and Disclosure to Latham Did Not Waive Work Product Protection

### A. The Withheld Material Is Protected Opinion Work Product

As noted, the 68 documents on Quinn Emanuel's log include protected work product. The work product doctrine shields "mental impressions, conclusions, opinions or legal theories of an attorney concerning litigation, and all documents prepared by or for an attorney in anticipation of

litigation." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *10 (N.D. Ill. June 19, 1987). "It is well-established that the work-product privilege may be invoked by either the client or the attorney," since "[a]n attorney has an independent interest in privacy." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006). Although "ordinary work product" reflecting factual material can be discovered in limited circumstances, "opinion work product" reflecting "mental impressions, legal theories, conclusions, or opinions" is "near absolutely protected." *Abbott Lab'ys v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 409 (N.D. Ill. 2001). To qualify for work product protection a document must (i) "contain an attorney's thought processes and mental impressions," *Lislewood Corp. v. AT&T Corp.*, 2015 WL 1539051, at *2 (N.D. Ill. Mar. 31, 2015), and (ii) "have been prepared or obtained because of the prospect of litigation,'" *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (cleaned up). The privilege is not limited to one case, "especially if the old and new matters are related." *Hobley*, 433 F.3d at 949.[6]

As can be seen from the Chart above, the redacted and withheld communications involve subject matters that are protected work product. The parties were communicating about litigation, specifically the AHAG litigation, AIC litigation, other cases filed by Rockford's counsel, and the motion to assume the restated contract and Mallinckrodt's bankruptcy plan. As the Court will see during its *in camera* review of the 68 documents on Quinn Emanuel's log, the withheld communications reflect Quinn Emanuel's and Latham's evaluations of Rockford's and other Acthar claimants' cases, and strategies related to the motion to assume and bankruptcy plan, including draft pleadings. Because the documents reflect counsel's "mental impressions, theories and strategies" and "were only prepared 'because of' the litigation," they are work product.

---

[6] Work product protection applies to bankruptcy proceedings. *See, e.g.*, *In re JMP Newcor Int'l, Inc.*, 204 B.R. 963, 964 (Bankr. N.D. Ill. 1997); *see also* Fed. R. Bankr. P. 7026.

*Cf. St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, 2021 WL 4745385, at *6 (N.D. Ill. Oct. 12, 2021) ("[d]raft pleading" was "clearly protected work product"), *aff'd*, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022); *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 2010 WL 11587903, at *7 (N.D. Ill. Sept. 9, 2010) ("discussions of legal opinions[ and] litigation strategies" is work product); *In re ContiCommodity Servs., Inc., Sec. Litig.*, 123 F.R.D. 574, 578 (N.D. Ill. 1988) (materials prepared "for a discussion of litigation strategy among the attorneys" were work product).

### B. Disclosure to Latham Did Not Waive Work Product Protection

A disclosure waives work product only if it "substantially increase[s] the opportunities for potential adversaries to obtain the information." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012) (citation omitted). "In contrast to the attorney-client privilege, the party asserting work product immunity is not required to prove non-waiver. The party asserting waiver has the burden to show that a waiver occurred." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 737 (N.D. Ill. 2014). That showing requires concrete evidence: "Unsupported statements in briefs don't count." *Id.* Rockford has never argued, let alone provided evidence, that disclosure to Latham "substantially increased" the Rockford's likelihood of obtaining the documents. Nor could it, since Latham "has not produced a single document." ECF No. 887 at 2. In communicating with Latham, counsel to a client with common interests, Quinn Emanuel "had a reasonable basis for believing that" Latham "would keep the disclosed material confidential." *Miller*, 17 F. Supp. 3d at 738. Rockford cannot show waiver.

### III. The Common Interest Doctrine Precludes Waiver Through Disclosure to Latham

The common interest doctrine prevents any waiver of attorney client privilege or work product protection. "Under the common interest doctrine . . . the disclosure of privileged material to a third party will not result in waiver if the parties share a common interest in the case." *Costello v. Poisella*, 291 F.R.D. 224, 231 (N.D. Ill. 2013) (citation omitted), *objections overruled*, 2013

WL 12450787 (N.D. Ill. Aug. 12, 2013). Parties facing a common opponent in "separate courts of law," like those represented by Quinn Emanuel and Latham, can claim common interest. *See, e.g.*, *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 274-75 (N.D. Ill. 2004) (bankrupt debtor and creditor suing same party in different courts); *Cadillac Ins. Co. v. Am. Nat. Bank*, 1992 WL 58786, at *5 (N.D. Ill. Mar. 12, 1992) (defendants in different federal courts). The doctrine "is not limited to situations in which the positions of the parties are compatible in all respects." *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). Parties may "ha[ve] an identical interest in the privileged communications, albeit from different perspectives." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 294 (N.D. Ill. 2005). Thus, contractual counterparties with divergent *business* interests may still share a common *legal* interest in coordinating against a common opponent. *See, e.g.*, *Lislewood*, 2015 WL 1539051, at *4 (indemnitor "share[d] a common legal interest…that the [indemnitee] is found not liable"); *Tenneco Packaging Specialty & Consumer Prod., Inc. v. S.C. Johnson & Son, Inc.*, 1999 WL 754748, at *2 (N.D. Ill. Sept. 14, 1999) (seller and purchaser).[7]

In addition to work product, the 68 documents also contain attorney client privileged information and communications. The Court previously held that "the process of drafting and editing, reflecting as it often does both requests for and provision of, legal advice, is protected by the attorney-client privilege." ECF No. 829 at 5 (quoting *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 183 (N.D. Ill. 2018)). Numerous log entries are either drafts or include draft language intended to go into pleadings in the bankruptcy, including the motion to assume and pleadings in Mallinckrodt's adversary proceeding against the AHAG. *See, e.g.*, Log Entries 25-28, 43, 45-47, 53, 59-61. 63. Numerous other entries reflect Quinn Emanuel and

---

[7] The adverse interest exception to the common interest doctrine applies only in litigation between parties to the common interest. *See, e.g.*, *Lislewood*, 2015 WL 1539051, at *5.

Latham sharing, pursuant to a common interest, communications with their respective clients. *See, e.g.*, Log Entry 68. Such communications by a "lawyer to a lawyer representing another in a matter of common interest" are attorney client privileged, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007), and the common interest "doctrine allows attorneys representing different clients with the same legal interest to share information to advance that interest," *In re Local TV Advert. Antitr. Litig.*, 2023 WL 5956851, at *16 & nn.129-30 (N.D. Ill. July 28, 2023).

When Quinn Emanuel was negotiating with Latham (and again, all communications regarding negotiations have been produced), Mallinckrodt was still a defendant in this case and was actively opposing Rockford's identical claims in its bankruptcy. *See In re Mallinckrodt*, 2021 WL 2460227, at *1-2. Discussions of Acthar litigation were therefore protected from waiver under the common interest doctrine whether they related to one case or multiple cases. *Cf. Costello*, 291 F.R.D. at 232 (participants in bankrupt debtor's shared investment plan shared common interest where they "filed *joint briefs* opposing [a third party's] claim in the bankruptcy action"); *Dexia*, 231 F.R.D. at 274 (parties shared common interest where they brought "two sets of claims in two separate courts of law" that "all have their basis" in the same underlying conduct). Nor does the presence of an indemnity claim between Mallinckrodt and the Express Scripts Entities obviate the common interest. The parties shared a common interest in defending, defeating, and/or minimizing any indemnified liabilities. Quinn Emanuel and Latham's communications regarding the defense of Acthar-related claims, including those asserted by Rockford and its counsel, were therefore in support of their clients' common legal interests. *Cf., e.g.*, *Lislewood*, 2015 WL 1539051, at *4 (indemnitor "share[d] a common legal interest . . . that the [indemnitee] is found not liable"). Likewise, in discussing and strategizing around the motion to assume and plan confirmation, Quinn Emanuel and Latham were coordinating on matters of common interest,

because it was in both their clients' interests for the bankruptcy court to approve the restated contract and find that it was lawful as part of the confirmation plan. *See supra* Background § A-B.

## CONCLUSION

For these reasons, the Court should uphold Quinn Emanuel's claims of privilege.

Dated: September 26, 2023          Respectfully Submitted,

*/s/ Harry A. Olivar, Jr.*

Harry A. Olivar, Jr. (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
Fax: (213) 443-3100
harryolivar@quinnemanuel.com

*Attorney for Quinn Emanuel Urquhart & Sullivan, LLP*