IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| City Of Rockford, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:17-cv-50107 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Express Scripts Holding Company, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, Plaintiff's motion to compel compliance with the subpoena to Quinn Emanuel and for sanctions [886] is denied.[1]

**BACKGROUND**

The instant action arises out of Plaintiff City of Rockford's allegations that Mallinckrodt ARD, Inc. and Mallinckrodt PLC ("Mallinckrodt") and Express Scripts Holding Company, Express Scripts, Inc., Curascript, Inc., Accredo Health Group, Inc., and United Biosource Corp. ("Defendants") violated various federal and state antitrust statutes and consumer-protection laws by substantially inflating the price of the drug Acthar. Dkt. 98. Plaintiff alleges that since 2007 and continuing to the present, Mallinckrodt engaged in anticompetitive conduct and conspired with Defendants to raise Acthar prices and maintain Mallinckrodt's monopoly, in part by entering into an exclusive distribution agreement with Defendants. Since the beginning of discovery in this case, Plaintiff requested contract negotiations and the various drafts of the 2007 exclusive distribution agreement.

---

[1] This Court previously granted Plaintiff's request for *in camera* review.

1

On October 12, 2020, Mallinckrodt filed for Chapter 11 bankruptcy and the automatic stay took effect. Dkt. 506. On November 23, 2020, the bankruptcy court extended the stay to Defendants in this case. Dkt. 531-3 at 46–50 (finding a stay appropriate as to Defendants in this case to protect Mallinckrodt's reorganization efforts, citing an identity of interest between Defendants and Mallinckrodt due to the inextricably intertwined claims of antitrust conspiracy against them and Defendants' potential contractual indemnity claims). The stay as to Defendants was lifted in this case on April 7, 2022. Dkt. 577. Mallinckrodt was later discharged in bankruptcy on June 12, 2022, Dkt. 17, and on July 25, 2022, Mallinckrodt was dismissed from the instant case. Dkt. 657. However, Plaintiff's claims remain pending against Defendants.

Most recently in March 2023, Plaintiff sought to compel Defendants to produce all drafts of a renegotiated exclusive distribution agreement and related negotiations that Defendants had exchanged with Mallinckrodt between April 2017 (when Plaintiff filed suit) and April 2022 (when Mallinckrodt terminated its agreement with Defendants and contracted with a new distributor). Dkt. 790. This Court found that the drafts of the exclusive distribution agreement that had been exchanged only between Defendants and their counsel, before a final version was provided to Mallinckrodt, were protected by attorney-client privilege. Dkt. 829. But this Court clarified that revised drafts of the agreement that were ultimately exchanged between Defendants and Mallinckrodt, a third-party to the action, were unlikely to be privileged. However, Defendants represented that they did not withhold as privileged any drafts of the exclusive distribution agreement that they provided to or received from Mallinckrodt and that all responsive, non-privileged communications relating to those drafts had been produced. Dkt. 829.

Nevertheless, in June 2023, Plaintiff filed a motion for reconsideration or to compel, arguing that outside counsel for Defendants had contract drafts and communications regarding

2

negotiations of the exclusive distribution agreement in their possession that are responsive to Plaintiff's requests but have not been produced. Plaintiff alleged that during a recent deposition it learned of outside counsel's involvement in the renegotiation of a new exclusive distribution agreement with Mallinckrodt. Plaintiff argued that Defendants had withheld certain drafts of the agreement and related communications that were exchanged between outside counsel for Defendants, Quinn Emanuel, and bankruptcy counsel for Mallinckrodt, Latham & Watkins, based on privilege without identifying these documents on a privilege log. Dkt. 831.

In response, Defendants admitted that they had a small number of drafts in their possession that they did not disclose to Plaintiff. Dkt. 836, 838. Defendants acknowledged that sometime during the Mallinckrodt bankruptcy proceedings, Defendants' outside counsel were engaged in a renegotiation of certain terms of the exclusive distribution agreement directly with bankruptcy counsel for Mallinckrodt. However, Defendants argued, in part, that they were not required to search for, produce, or log communications or drafts in outside litigation counsel's files because "outside counsel's files are neither a party's 'custodial' files nor discoverable under Rule 34." Dkt. 838 at 1–2.

In light of Defendants' counsels' admission that they had withheld the sought-after drafts and communications exchanged between counsel, this Court granted Plaintiff leave to issue a subpoena for drafts and communications exchanged between outside litigation counsel for Defendants and counsel for Mallinckrodt regarding negotiations of the exclusive distribution agreement. Dkt. 860. On August 11, 2023, Plaintiff issued subpoenas to Quinn Emanuel and Latham & Watkins. Dkts. 873–74. Quinn Emanuel produced documents in response to Plaintiff's subpoena, but redacted portions of those documents and withheld others.

Now before the Court is Plaintiff's motion to compel compliance with the subpoena to Quinn Emanuel, for *in camera* review, and for sanctions. Dkt. 886.[2] This Court heard oral arguments on the motion at a hearing on September 12, 2023. Thereafter, pursuant to this Court's order, Quinn Emanuel provided the Court with unredacted versions of the 68 documents that had been withheld or redacted, which this Court has reviewed *in camera*. Dkt. 889. Quinn Emanuel filed a memorandum in support of its claims of privilege, Plaintiff filed a response, and Quinn Emanuel filed a reply. Dkts. 892, 900, 905.

## **DISCUSSION**

Plaintiff seeks to compel compliance with the subpoena it issued to Quinn Emanuel. As an initial matter, the Court notes that Plaintiff's subpoena went far beyond the scope of what this Court allowed. *See* Dkt. 886-2. At the hearing on Plaintiff's motion, this Court ruled that Plaintiff was only allowed to subpoena drafts and communications exchanged between outside litigation counsel for Defendants and counsel for Mallinckrodt regarding negotiations of the exclusive distribution agreement. Dkt. 890 at 16. Plaintiff did not object to this Court limiting the subpoena accordingly. In light of this ruling, Quinn Emanuel represented that it had fully complied with the subpoena and produced all drafts and communications exchanged between counsel regarding negotiations of a new exclusive distribution agreement. Dkt. 892 at 1; Dkt. 890 at 26–28 ("[W]e have produced everything responsive to the subpoena. We have produced all drafts. We have produced all communications regarding negotiations. . . . There are no redactions related to negotiations of the wholesale product purchase agreement."). It has also produced a privilege log

---

[2] Plaintiff's motion to compel compliance with the subpoena to Latham & Watkins, Dkt. 887, was granted, and this Court ordered Latham & Watkins to turn over all documents related to the negotiation of the exclusive distribution agreement between Quinn Emanuel and Latham & Watkins and any privilege log by October 3, 2023. Dkt. 889. Plaintiff was ordered to file any opposition to the assertion of privilege by October 17, 2023. To date, no opposition has been filed.

4

for 68 documents in which it withheld or redacted communications between counsel on other subjects based on work-product protections and attorney-client privilege. Quinn Emanuel asserts that while communicating with Latham & Watkins regarding negotiations of the new exclusive distribution agreement, they also communicated about topics that were non-responsive to the subpoena, namely "assessments of and strategies for the Acthar-related litigation, and certain aspects of the bankruptcy that would impact the course of those cases." Dkt. 892 at 5. Quinn Emanuel asserts that it has:

> redacted or withheld only privileged, non-responsive material relating to (i) subject matters not properly within the scope of the Subpoena that involve (ii) matters of common interest and/or work product. The redacted material appeared in otherwise responsive documents or family members; in other words, where portions of a string of communications were "regarding negotiations of a new Wholesale Product Purchase Agreement," Quinn Emanuel produced those portions and redacted other subject matters protected by common interest and/or work product.

Dkt. 892 at 1–2.

Despite Quinn Emanuel's representation that it has produced all negotiation documents, Plaintiff maintains that Quinn Emanuel is "seeking to withhold negotiation documents on grounds of 'privilege.'" Dkt. 900 at 1 n.1. The Court has reviewed all 68 documents *in camera*. The documents are dated between March 2021 and December 2021.[3] Quinn Emanuel accurately represents that the redacted information includes "communications related to claims filed by Rockford and other Acthar litigants, including claims filed by Rockford and its counsel premised on *this* case and *this* operative complaint, and strategies related to achieving certain joint objectives in the Mallinckrodt bankruptcy proceedings." Dkt. 892 at 2 (emphasis in original). These documents are comprised mainly of emails between counsel along with draft bankruptcy

---

[3] Plaintiff takes issue with the scope of Quinn Emanuel's production, arguing that "QE has refused to produce (or log) any of its communications with Latham from October 2020 through April 2021." Dkt. 900 at 3. However, this Court overruled any objection to the subpoena based on time period, and Quinn Emanuel has represented that it has not withheld documents based on a time-period objection.

pleadings. To be clear, based on its review of the 68 documents, this Court can confirm that Quinn Emanuel has not redacted any documents responsive to the subpoena, namely drafts and communications exchanged between counsel regarding negotiations of the new exclusive distribution agreement, on grounds of privilege.

Overlooking this fact, Plaintiff spends the majority of its response brief arguing how these non-responsive communications are relevant to its claims in this case. Plaintiff argues that all communications "whether as to terms of the distribution agreement or the failed attempt to get the bankruptcy court to make findings as to the undersigned agreement under the Plan – should be produced." Dkt. 900 at 2. Plaintiff further argues that communications between Quinn Emanuel and Latham & Watkins should not be privileged because they "relate to the attempt to continue the conspiracy in bankruptcy" and "eliminat[e] the risk of antitrust liability" regarding the exclusive distribution agreement. Dkt. 900 at 2, 4.

This Court need not engage in Plaintiff's relevance argument, however, because even assuming such communications are relevant to Plaintiff's claims in this case, a court must quash or modify a subpoena if it requires the disclosure of privileged information. *See* Fed. R. Civ. P. 45(d)(3)(A)(iiI) ("[T]he court for the district where compliance is required must quash or modify the subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies."); *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022 (7th Cir. 2012) ("Rule 26(b)(3)(A) protects, as privileged, *relevant material* that constitutes work product.") (emphasis added). Here, Quinn Emanuel asserts work-product protection and attorney-client privilege regarding redacted or withheld communications shared with Latham & Watkins. Thus, if this Court rules that the communications at issue are privileged, their relevance is of no issue.

**I. Work Product**

"The work-product doctrine exists, in pertinent part, to protect an attorney's thought processes and mental impressions against disclosure." *In re Local TV Advert. Antitrust Litig.*, No. 18-06785, 2023 WL 5956851, at *14 (N.D. Ill. July 28, 2023) (internal quotation marks and citation omitted). Federal Rule of Civil Procedure 26(b)(3) defines work product as "documents ... that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." "More specifically, there must be a showing that the document was prepared ... *because* of the prospect of litigation." *In re Local TV Advert. Antitrust Litig.*, 2023 WL 5956851, at *14 (emphasis in original) (internal quotation marks and citation omitted). Work product which reveals the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" is given greater protection. Fed. R. Civ. P. 26(b)(3)(B). Quinn Emanuel bears the burden of showing that the work-product doctrine applies. *See In re Local TV Advert. Antitrust Litig.*, 2023 WL 5956851, at *15.

Quinn Emanuel asserts that the documents at issue here were created because of pending litigation, namely the instant litigation, other Acthar litigation, and the bankruptcy proceedings. Quinn Emanuel cites to Plaintiff's counsel's express intention to pursue antitrust claims following the bankruptcy. Quinn Emanuel also asserts that the documents reflect counsels' evaluations of the instant case and other Acthar litigation and strategies related to the motion to assume the new exclusive distribution agreement and Mallinckrodt's bankruptcy plan. In reviewing the documents at issue *in camera*, this Court agrees that the documents exchanged between counsel were created because of pending and anticipated litigation and reveal litigation strategies and draft pleadings that are opinion work product. The Court finds Plaintiff's arguments to the contrary without merit.

7

Plaintiff argues that there is no work-product protection related to Plaintiff's proofs of claim in bankruptcy because Quinn Emanuel was not acting as bankruptcy counsel for Defendants. Dkt. 900 at 8. Yet, Quinn Emanuel states that it represented Defendants throughout the Chapter 11 case, just as Latham & Watkins represented Mallinckrodt. Dkt. 905 at 2. The bankruptcy docket confirms that counsel at Quinn Emanuel filed appearances on behalf of Defendants. *See In re Mallinckrodt plc*, Case No. 1:20-bk-12522 (Bankr. D. Del.), Dkts. 274–77.

Plaintiff also cursorily argues that work-product protection cannot be afforded to discussions about the instant case because it was stayed. Although the instant case was stayed during the communications at issue, Plaintiff provides no support for its argument that work-product protection would not apply. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding perfunctory and undeveloped arguments forfeited). This case was stayed, not dismissed, pending the bankruptcy proceedings. Accordingly, Defendants could expect the stay to ultimately be lifted. Furthermore, Quinn Emanuel has gone to great lengths to explain the substantial overlap between the instant case, other Acthar litigation, and the bankruptcy proceedings, including Plaintiff's counsel's extensive involvement in the bankruptcy proceedings despite the stay in this case.

Plaintiff also argues that Quinn Emanuel has no work-product protection regarding discussions of related Acthar administrative proofs of claim from Acthar Insurance Claimants ("AIC") because those entities did not sue Defendants. Yet, Quinn Emanuel alleges that the bankruptcy court's rejection of AIC's antitrust claims prompted Plaintiff and other Acthar litigants to withdraw their claims in the bankruptcy proceedings. Dkt. 892 at 4. Accordingly, Quinn Emanuel and Latham & Watkins were discussing all Acthar litigation because of the prospect of future litigation and its impact on the bankruptcy proceedings.

As to discussions about the bankruptcy proceedings, Plaintiff argues that any discussions about the motion to assume the new exclusive distribution agreement are "intertwined with the contract negotiations and should be produced." Dkt. 900 at 9. In reviewing the documents *in camera*, this Court does not find that the discussions relating to the motion to assume are intertwined with negotiations of the exclusive distribution agreement. Moreover, Quinn Emanuel has not redacted any communications related to negotiations of the exclusive distribution agreement. Dkt. 890 at 28.

Plaintiff also argues there is no work-product protection for discussions related to the bankruptcy confirmation plan, citing Latham & Watkins' fiduciary duty to its creditors to maximize the value of the estate. At first blush, this argument would seem to support a common interest between Defendants and Mallinckrodt in defeating proofs of claim that would decrease the value of the bankruptcy estate. *See, e.g., Costello v. Poisella*, 291 F.R.D. 224, 232 (N.D. Ill. 2013), *objections overruled sub nom. Costello as Litig. Tr. under Comdisco Litig. Tr. v. Poisella*, No. 05 C 736, 2013 WL 12450787 (N.D. Ill. Aug. 12, 2013) ("Because it is undisputed that Defendants and [the debtor] were actively working together to defeat Bank One's proof of claim [in the bankruptcy proceedings], the Court concludes that their interests were sufficiently aligned to bring them within the scope of the common interest doctrine.") (internal quotation marks and citation omitted). Nonetheless, this Court need not delve into this argument any further because Plaintiff provides no support for why a debtor's fiduciary duty would eliminate any work-product protection for communications with a creditor. *See Crespo*, 824 F.3d at 674.

Lastly, Plaintiff argues that any work-product protections were waived because Quinn Emanuel's communications about the motion to assume and the confirmation plan were shared with Plaintiff's counsel during the bankruptcy. "Because the work-product doctrine serves to

protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not automatically waive work-product protection." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014). Disclosure of a protected communication does not waive work-product protection unless it "substantially increase[s] the opportunity for potential adversaries to obtain the information." *Id.* (citing *Appleton Papers, Inc.*, 702 F.3d at 1025).

Although amendments to the plan were shared with Plaintiff's counsel, the discussions relating to those amendments were not. Plaintiff also argues that such communications had to have been shared with the first lien lenders and other interested creditors in the bankruptcy. But again, disclosing that Mallinckrodt made amendments to the bankruptcy confirmation plan is a far cry from disclosing counsels' underlying communications about the plan. Accordingly, Plaintiff has not met its burden to establish that a waiver occurred. *See Miller UK Ltd.*, 17 F. Supp. 3d at 737 ("In contrast to the attorney-client privilege, the party asserting work product immunity is not required to prove non-waiver. The party asserting waiver has the burden to show that a waiver occurred.").[4]

**II. Common Interest**

Plaintiff also argues that the privilege was waived because Quinn Emanuel shared its communications with Mallinckrodt's counsel at Latham & Watkins. Quinn Emanuel asserts that the common interest doctrine protects its communications with Latham & Watkins.

The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 417 (N.D. Ill. 2006). The doctrine applies "when (1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or

---

[4] Because this Court finds the communications at issue are protected work-product, it need not address Quinn Emanuel's assertions of attorney-client privilege.

rooting interest, and (3) the withheld communications are made to further said ongoing legal enterprise." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007)). The doctrine "encourages parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly. This planning serves the public interest by advancing compliance with the law, facilitating the administration of justice and averting litigation." *BDO Seidman, LLP*, 492 F.3d at 816 (internal quotation marks and citation omitted). It is Quinn Emanuel's burden to establish a common interest. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004).

Quinn Emanuel asserts that it shared a common legal interest with Latham & Watkins in "defeating Rockford's and similar plaintiffs' Acthar-related claims, and coordinating to achieve approval of Mallinckrodt's bankruptcy plan," which included the exclusive distribution agreement. Dkt. 892 at 3. Quinn Emanuel elaborates that the withheld and redacted communications were exchanged between counsel to develop a joint legal strategy to get the new exclusive distribution agreement approved by the bankruptcy court to ensure compliance with the law and avoid future litigation. As Quinn Emanuel asserts, Plaintiff's counsel repeatedly made clear that his clients intended to pursue claims against Defendants, Mallinckrodt, and the reorganized debtors for antitrust violations based on the exclusive distribution agreement once Mallinckrodt exited bankruptcy. Dkt. 892 at 6 (citing Dkt. 560-7 at 11–12). Quinn Emanuel also cites to the Acthar lawsuit Plaintiff's counsel filed during the bankruptcy proceedings which similarly alleged an antitrust conspiracy against Defendants and Mallinckrodt. *See Law Enforcement Health Benefits Inc. v. Trudeau et al*, Case No. 3:21-cv-50215 (N.D. Ill.). In light of such litigation, Mallinckrodt sought a ruling by the bankruptcy court that the terms of the new exclusive distribution agreement

11

did not violate antitrust laws. Quinn Emanuel argues that the parties to the communications at issue had identical legal interests in seeking that approval.[5]

Plaintiff disagrees, arguing that there could be no common interest in defeating the claims in the instant case because Mallinckrodt is no longer a co-defendant. However, "[t]he 'common interest' doctrine is not limited to defendants, to formal parties to litigation, or to litigated matters." *Miller UK Ltd.*, 17 F. Supp. 3d at 732 (citing *BDO Seidman, LLP*, 492 F.3d at 815). Moreover, "[w]hile often arising in the context of a joint defense, the common interest doctrine more generally applies to any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *Dexia Credit Local*, 231 F.R.D. at 273. Accordingly, even if Defendants and Mallinckrodt no longer have a common interest as it relates to defeating the claims in the instant case, they still have a common interest in complying with the law and avoiding future Acthar litigation.

However, Plaintiff argues that counsels' discussions related to the bankruptcy proceedings were strictly "business negotiations" and were not related to a common legal interest. Dkt. 900 at 8. Plaintiff alleges that counsels' communications had nothing to do with the instant case or any litigation because Defendants and Mallinckrodt merely sought approval of the agreement to continue their alleged antitrust conspiracy. Plaintiff is correct that shared business, commercial, and financial interests do not trigger the common interest exception. *See, e.g., Miller UK Ltd.*, 17 F. Supp. 3d at 733 (finding plaintiff waived attorney-client privilege over documents it shared with prospective funders because plaintiff sought funders for money, not for legal advice or litigation strategies). However, Plaintiff's argument falls short because Quinn Emanuel states that these

---

[5] Ultimately, the new exclusive distribution agreement never went into effect. The bankruptcy court did not make the requested findings that the new exclusive distribution agreement did not violate antitrust laws, and Mallinckrodt later rejected the agreement and contracted with a new distributor. *See* Dkt. 593-11; Dkt. 887-3.

communications took place because of anticipated future litigation related to the agreement, citing Plaintiff's counsel's express intention to pursue antitrust claims against both Defendants and Mallinckrodt following the bankruptcy.

Plaintiff also argues that Defendants, as unsecured creditors seeking contractual indemnity, were adverse to Mallinckrodt in negotiating certain terms of the new exclusive distribution agreement and in the bankruptcy and therefore could have no common interest. This argument fails for two reasons. First, Quinn Emanuel represents that as it relates to the parties' contract negotiations, the parties were adverse. Accordingly, it has turned over all drafts and communications and not withheld communications relating to the parties' negotiation of the new exclusive distribution agreement. Second, Quinn Emanuel correctly maintains that although the parties must have identical legal interests, they need not be "compatible in all respects." *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). It is sufficient if the parties have some interests in common and formed a common strategy to advance those interests. *See BDO Seidman, LLP*, 492 F.3d at 816. Separate from the parties negotiating and agreeing to the final terms of the new exclusive distribution agreement and litigating contractual indemnity, Quinn Emanuel and Latham & Watkins communicated in a joint effort to get the final draft of the exclusive distribution agreement approved by the bankruptcy court. Accordingly, the parties' adversity in contract negotiations and as creditor and debtor in the bankruptcy alone does not eliminate their joint legal interest in seeking approval of the agreement to advance their interest in avoiding future Acthar litigation.

Lastly, Plaintiff argues that there was never a common interest and cites Defendants' in-house counsel's declaration that there was no written joint defense or written common interest agreement between Mallinckrodt and Defendants. Dkt. 900 at 5. However, as Quinn Emanuel

points out, a written agreement memorializing a common interest is not necessary to assert and enforce the privilege. Dkt. 905 at 3 (citing *In re Maxus Energy Corp.*, 617 B.R. 806, 821 (Bankr. D. Del. 2020) ("Although a written agreement is evidence of such common interest, it is not necessary."); *In re Cherokee Simeon Venture I, LLC*, No. 12-12913 (KG), 2012 WL 12940975, at *2 n.12 (Bankr. D. Del. May 31, 2012) ("[N]either a written agreement nor participation in litigation are requirements for invocation of the common-interest doctrine.")); *see also Costello*, 291 F.R.D. at 232. As such, this Court finds that the common interest doctrine applies to the communications at issue between Quinn Emanuel and Latham & Watkins.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to compel compliance with the subpoena to Quinn Emanuel and for sanctions [886] is denied.

Date: December 11, 2023     By:     *Lisa A. J.*
                                                                   Lisa A. Jensen
                                                                   United States Magistrate Judge